# Exhibit 2

## DECLARATION OF ROBERT MORGAN

I, Robert Morgan, declare under penalty of perjury that the following is true and correct:

1.      This declaration is based on my personal knowledge. If I am called as a witness, I could and would testify competently to the truth of the matters discussed in this declaration.

2.      My name is Robert Morgan; I go by Bob. I am a resident of Deerfield, Illinois. I am also a member of the Illinois House of Representatives, where I represent Illinois's 58th House District. My district includes Deerfield, Highland Park, and other communities in the northern suburbs of Chicago.

3.      In addition to my work in the Illinois General Assembly, I am also a practicing attorney. I work in the Chicago office of a national law firm.

**The July 4, 2022 Mass Shooting in Highland Park**

4.      On July 4, 2022, I was in Highland Park, Illinois, for what was supposed to be the annual Independence Day parade—the first in a few years after a pandemic hiatus.

5.      A few minutes after 10:00 a.m., I was lining up to walk in the parade as one of the community's elected representatives. My wife and two young children were with me. A member of my staff was with us, as well.

6.      Shortly before I was about to start walking the parade route, my staff member began yelling: "Gunshots! Gunshots!" I then saw hundreds of people running away from the parade route. I also saw multiple police vehicles moving at high speed toward the parade route.

7.      I quickly took my family to a nearby sheltered area. After I was able to get them to a secure area, I ran toward an area on the parade route where I could see a large number of law enforcement officers. As I was running, I saw multiple people with gunshot wounds. Two of the

1

people I saw were motionless and appeared to have died from their wounds. I later learned that they had in fact passed away.

8.     When I got to the scene of the shooting, I saw a Commander from the Highland Park Police Department and asked how I could help. I tried to help law enforcement clear the area by asking people to move away from the scene.

9.     At one point, I noticed a grandmother with her two grandchildren. The grandmother was holding a very young child and attempting to leave. But her other grandchild, a toddler, was refusing to leave with her. The grandmother was unable to pick up the toddler with the other grandchild in her arms. The children's mother, father, and grandfather had all been shot—fortunately, none fatally.

10.    To help the grandmother, I picked up the toddler and helped carry her to a safe area with the grandmother and her other grandchild. I remember noticing that the toddler's clothes had dried blood on them.

11.    After about thirty minutes of trying to help clear the scene of the shooting and assist those in need when I could, I left the area to return to my family.

12.    I will never forget the bloodshed, carnage, and chaos I witnessed that morning. I have never seen something so horrific in my life.

13.    After reuniting with my family, I returned with them to our home in Deerfield. I changed clothes and headed to the Deerfield Police Department. I spent much of the rest of the day monitoring events from the Deerfield Police Department. At that time, Highland Park was in a lockdown because the suspected shooter remained at large. Numerous law enforcement agencies in the area, from the local, state, and federal levels, diverted their resources to help with the search. Other communities in the area were also impacted—other July 4th parades and

celebration were canceled, beaches were closed, and what was supposed to be a day of celebration became a day gripped with widespread fear. I was profoundly relieved when law enforcement apprehended the suspected shooter that evening.

### The Weapons Used and Casualties Inflicted on July 4th

14.     The July 4th mass shooting in Highland Park was one of the most impactful events of my life—as a human being who saw the carnage that day, as a parent raising my kids nearby, and as an elected representative of the community. I recognized on the day of the shooting that I had a moral obligation to do what I could as a legislator to try to prevent, or at least reduce the likelihood, of another similar tragedy.

15.     As the investigation of the shooting proceeded on July 4th and in the days and weeks after, I maintained frequent contact with law enforcement and other elected officials in the area. It was important to me to understand in detail what happened that day so I could develop legislative proposals aimed at preventing similar tragedies in the future.

16.     What I learned about the details of that day horrified me even more. The suspected shooter used an assault weapon to perpetrate the massacre: specifically, a Smith & Wesson M&P 15. The gun is an AR-15-style rifle. I learned that AR-15 rifles trace their origins to the ArmaLite AR-15, which was developed for use by the U.S. Army in the late 1950s. The original ArmaLite AR-15 was subsequently re-named with minimal modifications to become the M-16—the standard-issue infantry weapon for members of the U.S. military beginning in the mid-1960s.

17.     I also learned that there is not much difference between the M-16 and the AR-15-style rifles available to civilians in our country. The M-16 has the capability to engage in fully automatic fire and three-shot bursts, whereas the civilian AR-15 models that are legally sold have

only semi-automatic capability. Other than that difference, the AR-15s available to civilians are essentially the same as the M-16s that our soldiers have carried into battle for decades.

18.     I also learned that the gun used by the suspected Highland Park shooter, the Smith & Wesson M&P 15, is marketed as "M&P" because "M&P" implies "Military & Police". In other words, the gun's manufacturer intentionally markets the weapon by touting its use as a weapon of war.

19.     The Smith & Wesson M&P 15 used by the suspected Highland Park shooter functioned as a weapon of war that day. The suspected shooter fired approximately 83 rounds into the crowd gathered to celebrate our nation's independence, killing 7 people and wounding an additional 48 victims. This all happened in under 60 seconds.

20.     In addition to the rapid rate of semi-automatic fire allowed by the Smith & Wesson M&P 15, the suspected Highland Park shooter also utilized multiple large-capacity magazines. These large-capacity magazines minimized the need to pause to reload, allowing the suspected shooter to discharge approximately 30 rounds before having to reload.

21.     The suspected Highland Park shooter escaped the scene of the massacre and remained on the loose for approximately 8 hours that day. After the suspected shooter was apprehended, law enforcement recovered an additional assault weapon from his vehicle, a Kel-Tec SUB-2000.

22.     I learned that both of the suspected shooter's assault weapons, the Smith & Wesson M&P 15 and the Kel-Tec SUB-2000, had been legally purchased in Illinois.

23.     The details of the Highland Park shooting affirmed for me that the incredible lethality of the weapons used that day is what made the carnage as widespread as it was. As a

legislator, I felt it was my duty to pursue legislation that would take assault weapons and large-capacity magazines out of the legal civilian market in Illinois.

24.     As an attorney, I understand that based on the U.S. Supreme Court's interpretation of the Second Amendment, law-abiding gun owners are entitled to have access to firearms commonly used for self-defense, such as a handgun. I am familiar with the Firearm Owners Identification Card Act, which establishes the process by which Illinois residents can obtain a license to lawfully purchase and possess firearms for self-defense, hunting, or other lawful purposes.

25.     But I believe that assault weapons, like those carried by the suspected Highland Park shooter, are weapons of war that have no place in the civilian market. I likewise believe that large-capacity magazines that magnify the lethality of assault weapons have no place in the civilian market.

26.     In the weeks and months following the Highland Park shooting, I  reviewed things like Highland Park's 2013 ordinance banning assault weapons and large-capacity magazines. I learned that the Highland Park ordinance had survived a Second Amendment challenge and been upheld by the U.S. Court of Appeals for the Seventh Circuit in 2015 in *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015).

27.     I also reviewed a federal law passed in 1994, the Public Safety and Recreational Firearms Use Protection Act, which is often referred to as the federal assault weapons ban. I learned that that federal law had been in place for ten years from 1994 until it expired in September 2004, and that the law had never been struck down by the U.S. Supreme Court as violating the Second Amendment.

28.     I also reviewed existing laws from eight other states (California, Connecticut, Delaware, Hawai'i, Maryland, Massachusetts, New Jersey, and New York) that significantly restrict access to assault weapons, large-capacity magazines, or both.

29.     I also learned that assault weapons, particularly AR-15 semi-automatic rifles, and large-capacity magazines were frequently what other mass shooters chose to perpetrate their massacres. For instance, the suspected shooter in Uvalde, Texas used an AR-15-style semi-automatic rifle to murder 19 children and 2 teachers at Robb Elementary School on May 24, 2022—less than six weeks before our own AR-15-inflicted massacre in Highland Park.

30.     At the time of the Highland Park shooting there was already a bill filed in the House of Representatives, House Bill 5522, with some of the same concepts that were ultimately incorporated in what would become the Protect Illinois Communities Act, which passed as Public Act 102-1116. I became a chief co-sponsor of House Bill 5522 on July 7, 2022—three days after the Highland Park shooting. I have attached a copy of House Bill 5522 as Exhibit A to this declaration. A few months later, on December 1, 2022, I introduced a new bill, House Bill 5855, that added additional elements to the proposed legislation. I have attached a copy of House Bill 5855 as Exhibit B to this declaration.

31.     Over the course of  three public hearings, a House Committee heard gut-wrenching testimony from survivors of the Highland Park massacre and family members of the deceased. We also heard from community members from across Illinois about the tragic toll that gun violence inflicts on a daily basis—often without the type of front-page attention that the Highland Park mass shooting generated.

32.     The Committee heard from many members of the public who supported greater restrictions on access to assault weapons and large-capacity magazines. The Committee also

heard from members of the public opposed to restrictions on assault weapons and large-capacity magazines. In total, across the three public hearings on December 12, December 15, and December 20, the Committee heard approximately 15 hours of live public testimony regarding assault weapons, large-capacity magazines, and the toll of gun violence in our state.

33.     The final version of what became Public Act 102-1116, the Protect Illinois Communities Act, passed both the House and the Senate as House Bill 5471. Governor Pritzker subsequently signed House Bill 5471 into law.

34.     My sincere hope is that the Protect Illinois Communities Act will help prevent another massacre like the one I witnessed on July 4th in Highland Park. At the very least, I hope that restricting access to assault weapons and large-capacity magazines in Illinois will make it harder for future mass murderers to inflict so much death and carnage in so little time. No community should have to live with the fear that a moment of celebration, a day at school, or a day at work can instantly become a massacre. I refuse to accept that mass shootings must simply be accepted as a fact of modern American life.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _February 5, 2023_ at _Deerfield, Illinois_.

/s/ _Robert Morgan_

8

# EXHIBIT A

**HB5522**



# 102ND GENERAL ASSEMBLY

# State of Illinois

# 2021 and 2022

## HB5522

Introduced 1/31/2022, by Rep. Maura Hirschauer

## SYNOPSIS AS INTRODUCED:

720 ILCS 5/24-1.9 new
720 ILCS 5/24-1.10 new

    Amends the Criminal Code of 2012. Makes it unlawful to deliver, sell, or purchase or cause to be delivered, sold, or purchased or cause to be possessed by another, an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge. Makes it unlawful for any person to knowingly possess an assault weapon, .50 caliber rifle, or .50 caliber cartridge 300 days after the effective date of the amendatory Act, except possession of weapons registered with the Illinois State Police in the time provided. Provides exemptions and penalties. Prohibits delivery, sale, purchase or possession of large capacity ammunition feeding devices. Provides exemptions and penalties.

LRB102 25017 RLC 34274 b

A BILL FOR

HB5522                                          LRB102 25017 RLC 34274 b

1        AN ACT concerning criminal law.


2        **Be it enacted by the People of the State of Illinois,**

3        **represented in the General Assembly:**


4        Section 5. The Criminal Code of 2012 is amended by adding

5        Sections 24-1.9 and 24-1.10 as follows:


6        (720 ILCS 5/24-1.9 new)

7        Sec. 24-1.9. Possession, delivery, sale, and purchase of

8        assault weapons, .50 caliber rifles, and .50 caliber

9        cartridges.

10       (a) Definitions. In this Section:

11       (1) "Assault weapon" means:

12           (A) any rifle that has a belt fed ammunition

13           system or which has a detachable magazine capable of

14           holding more than 10 rounds of ammunition;

15           (B) a semi-automatic rifle that has the ability to

16           accept a detachable magazine and has any of the

17           following:

18               (i) a folding or telescoping stock; or

19               (ii) a shroud that is attached to, or

20               partially or completely encircles the barrel that

21               permits the shooter to hold the firearm with the

22               non-trigger hand without being burned;

23           (C) a semi-automatic pistol that has the ability

1    to accept a detachable magazine and has any of the
2    following:
3         (i) a folding or telescoping stock;
4         (ii) a shroud that is attached to, or
5    partially or completely encircles the barrel, that
6    permits the shooter to hold the firearm with the
7    non-trigger hand without being burned; or
8         (iii) a manufactured weight of 50 ounces or
9    more when the pistol is unloaded.
10   (D) a semi-automatic rifle with a fixed magazine
11   that has the capacity to accept more than 10 rounds of
12   ammunition;
13        (E) a semi-automatic shotgun that has:
14             (i) a folding or telescoping stock; and
15             (ii) contains its ammunition in a revolving
16   cylinder; or
17             (iii) a fixed magazine capacity in excess of 5
18   rounds of ammunition, except as may be authorized
19   under the Wildlife Code and excluding magazine
20   extensions during the snow geese conservation
21   order season; or
22             (iv) an ability to accept a detachable
23   magazine of more than 5 rounds of ammunition.
24        "Assault weapon" does not include:
25        (A) any firearm that:
26             (i) is manually operated by bolt, pump, lever,

HB5522                          - 3 -          LRB102 25017 RLC 34274 b

1              or slide action;
2                   (ii) is an unserviceable firearm or has been
3              made permanently inoperable;
4                   (iii) is an antique firearm;
5                   (iv) uses rimfire ammunition or cartridges; or
6                   (iv) has been excluded as an assault weapon in
7              a  Department  of  Natural  Resources  rule.  The
8              Department  of  Natural  Resources  shall  have  the
9              authority  to  adopt  rules  to  further  define
10             exclusions  of  assault  weapon  types  under  this
11             Section, provided the make, model, and caliber of
12             the  firearm  excluded  has  a  viable  application  to
13             hunting  game  and  conforms  to  accepted  hunting
14             principles of fair chase;
15                  (B) any air rifle as defined in Section 24.8-0.1
16             of this Code.
17             In  this  Section,  a  firearm  is  considered  to  have  the
18        ability to accept a detachable magazine unless the magazine or
19        ammunition  feeding  device  can  only  be  removed  through
20        disassembly of the firearm action.
21                  (2)  "Assault  weapon  attachment"  means  any  device
22             capable  of  being  attached  to  a  firearm  that  is
23             specifically designed for making or converting a firearm
24             into any of the firearms listed in paragraph (1) of this
25             subsection (a).
26                  (3)  "Antique  firearm"  has  the  meaning  ascribed  to  it

HB5522                          - 4 -          LRB102 25017 RLC 34274 b

1      in 18 U.S.C. 921 (a)(16).

2          (4) ".50 caliber rifle" means a centerfire rifle

3      capable of firing a .50 caliber cartridge. The term does

4      not include any antique firearm, any shotgun including a

5      shotgun that has a rifle barrel, or any muzzle-loader

6      which uses black powder for hunting or historical

7      re-enactments.

8          (5) ".50 caliber cartridge" means a cartridge in .50

9      BMG caliber, either by designation or actual measurement,

10     that is capable of being fired from a centerfire rifle.

11     The term ".50 caliber cartridge" does not include any

12     memorabilia or display item that is filled with a

13     permanent inert substance or that is otherwise permanently

14     altered in a manner that prevents ready modification for

15     use as live ammunition or shotgun ammunition with a

16     caliber measurement that is equal to or greater than .50

17     caliber.

18         (6) "Locking mechanism" means secured by a device or

19     mechanism, other than the firearm safety, designed to

20     render a firearm temporarily inoperable; or a box or

21     container capable of containing the firearm and that can

22     be securely locked.

23     (b)  The Illinois State Police shall take all steps

24     necessary to carry out the requirements of this Section within

25     180 days after the effective date of this amendatory Act of the

26     102nd General Assembly.

HB5522                           - 5 -          LRB102 25017 RLC 34274 b

1      (c) Except as provided in subsections (d), (e), (f), and
2   (h), on or after the effective date of this amendatory Act of
3   the 102nd General Assembly, it is unlawful for any person
4   within this State to knowingly deliver, sell, or purchase or
5   cause to be delivered, sold, or purchased or cause to be
6   possessed by another, an assault weapon, assault weapon
7   attachment, .50 caliber rifle, or .50 caliber cartridge.

8      (d) Except as otherwise provided in subsections (e), (f),
9   and (h), 300 days after the effective date of this amendatory
10  Act of the 102nd General Assembly, it is unlawful for any
11  person within this State to knowingly possess an assault
12  weapon, .50 caliber rifle, or .50 caliber cartridge.

13     (e) This Section does not apply to a person who possessed
14  an assault weapon or .50 caliber rifle prohibited by
15  subsection (d) of this Section before the effective date of
16  this amendatory Act of the 102nd General Assembly, provided
17  the person has provided in a registration affidavit, under
18  oath or affirmation and in the form and manner prescribed by
19  the Illinois State Police on or after 180 days after the
20  effective date of this amendatory Act of the 102nd General
21  Assembly but within 300 days after the effective date of this
22  amendatory Act of the 102nd General Assembly:

23          (1) his or her name;
24          (2) date of birth;
25          (3) Firearm Owner's Identification Card number;
26          (4) the make, model, caliber, and serial number of the

HB5522                         - 6 -         LRB102 25017 RLC 34274 b

1      weapon; and

2           (5) proof of a locking mechanism that properly fits

3      the weapon. The affidavit shall include a statement that

4      the weapon is owned by the person submitting the affidavit

5      and that he or she owns a locking mechanism for the weapon.

6      The affidavit form shall include the following statement

7      printed in bold type: "Warning: Entering false information on

8      this form is punishable as perjury under Section 32-2 of the

9      Criminal Code of 2012."

10          Beginning 300 days after the effective date of this

11     amendatory Act of the 102nd General Assembly, the person may

12     transfer the assault weapon or .50 caliber rifle only to an

13     heir, an individual residing in another state maintaining it

14     in another state, or a dealer licensed as a federal firearms

15     dealer under Section 923 of the federal Gun Control Act of

16     1968. Within 10 days after transfer of the weapon except to an

17     heir, the person shall notify the Illinois State Police of the

18     name and address of the transferee and comply with the

19     requirements of subsection (b) of Section 3 of the Firearm

20     Owners Identification Card Act. The person to whom the weapon

21     is transferred shall, within 60 days of the transfer, complete

22     an affidavit and pay the required registration fee under this

23     Section. A person to whom the weapon is transferred may

24     transfer it only as provided in this subsection.

25          (f) This Section does not apply to a peace officer who has

26     retired in good standing from a law enforcement agency of this

HB5522                    - 7 -        LRB102 25017 RLC 34274 b

1    State and who possesses an assault weapon or .50 caliber rifle

2    prohibited by subsection (d), if the weapon was lawfully

3    possessed and acquired by the peace officer prior to

4    retirement and the retired peace officer within 30 days of

5    retirement registers the weapon with the Illinois State Police

6    and pays the required registration fee under this Section. The

7    retired peace officer shall comply with the transfer and

8    notification requirements in subsection (e).

9        (g) For the purpose of registration required under

10   subsections (e) and (f), the Illinois State Police shall

11   assess a registration fee of $25 per person to the owner of an

12   assault weapon and $25 per person to the owner of a .50 caliber

13   rifle. The fees shall be deposited into the State Police

14   Firearm Services Fund.

15       (h) This Section does not apply to or affect any of the

16   following:

17       (1) Peace officers as defined in Section 2-13 of this

18   Code.

19       (2) Acquisition and possession by a local law

20   enforcement agency for the purpose of equipping the

21   agency's peace officers as defined in paragraph (1) of

22   this subsection (h).

23       (3) Wardens, superintendents, and keepers of prisons,

24   penitentiaries, jails, and other institutions for the

25   detention of persons accused or convicted of an offense.

26       (4) Members of the Armed Services or Reserve Forces of

HB5522                    - 8 -        LRB102 25017 RLC 34274 b

1      the United States or the Illinois National Guard, while in

2      the  performance  of  their  official  duties  or  while

3      traveling to or from their place of duty.

4          (5) Any company that employs armed security officers

5      in this State at a nuclear energy, storage, weapons, or

6      development site or facility regulated by the federal

7      Nuclear Regulatory Commission and persons employed as an

8      armed security force member at a nuclear energy, storage,

9      weapons, or development site or facility regulated by the

10     federal Nuclear Regulatory Commission who have completed

11     the  background  screening  and  training  mandated  by  the

12     rules and regulations of the federal Nuclear Regulatory

13     Commission and while in the performance of their official

14     duties.

15         (6) Manufacture, transportation, or sale of weapons,

16     attachments,  or  ammunition  to  persons  authorized  under

17     subdivisions  (1)  through  (5)  of  this  subsection  (h)  to

18     possess those items.

19         (7) Manufacture, transportation, or sale of weapons,

20     attachments, or ammunition for sale or transfer in another

21     state.

22         (8)  Possession  of  any  firearm  if  that  firearm  is

23     sanctioned by the International Olympic Committee and by

24     USA  Shooting,  the  national  governing  body  for

25     international shooting competition in the United States,

26     but only when the firearm is in the actual possession of an

1    Olympic target shooting competitor or target shooting
2    coach for the purpose of storage, transporting to and from
3    Olympic target shooting practice or events if the firearm
4    is broken down in a non-functioning state, is not
5    immediately accessible, or is unloaded and enclosed in a
6    firearm case, carrying box, shipping box, or other similar
7    portable container designed for the safe transportation of
8    firearms, and when the Olympic target shooting competitor
9    or target shooting coach is engaging in those practices or
10   events. For the purposes of this paragraph (8), "firearm"
11   is as defined in Section 1.1 of the Firearm Owners
12   Identification Card Act.
13       (9) Any non-resident who transports, within 24 hours,
14   a weapon for any lawful purpose from any place where he or
15   she may lawfully possess and carry that weapon to any
16   other place where he or she may lawfully possess and carry
17   that weapon if, during the transportation the weapon is
18   unloaded, and neither the weapon nor any ammunition being
19   transported is readily accessible or is directly
20   accessible from the passenger compartment of the
21   transporting vehicle. Provided that, in the case of a
22   vehicle without a compartment separate from the driver's
23   compartment the weapon or ammunition shall be contained in
24   a locked container other than the glove compartment or
25   console.
26       (10) Possession of a weapon at events taking place at

HB5522                        - 10 -        LRB102 25017 RLC 34274 b

1       the World Shooting and Recreational Complex at Sparta,
2       only while engaged in the legal use of this weapon, or
3       while traveling to or from this location if the weapon is
4       broken down in a non-functioning state, or is not
5       immediately accessible, or is unloaded and enclosed in a
6       firearm case, carrying box, shipping box, or other similar
7       portable container designed for the safe transportation of
8       firearms.
9           (11) Possession of a weapon only for hunting use
10      expressly permitted under the Wildlife Code, or while
11      traveling to or from a location authorized for this
12      hunting use under the Wildlife Code if the weapon is
13      broken down in a non-functioning state, or is not
14      immediately accessible, or is unloaded and enclosed in a
15      firearm case, carrying box, shipping box, or other similar
16      portable container designed for the safe transportation of
17      firearms.
18          (12) The manufacture, transportation, possession,
19      sale, or rental of blank-firing assault weapons and .50
20      caliber rifles, or the weapon's respective attachments, to
21      persons authorized or permitted, or both authorized and
22      permitted to acquire and possess these weapons or
23      attachments for the purpose of rental for use solely as
24      props for a motion picture, television, or video
25      production or entertainment event.
26      (i) Sentence.

HB5522                          - 11 -        LRB102 25017 RLC 34274 b

1          (1) A person who knowingly delivers, sells, purchases,
2     or possesses or causes to be delivered, sold, purchased,
3     or possessed an assault weapon in violation of this
4     Section commits a Class 3 felony for a first violation and
5     a Class 2 felony for a second or subsequent violation or
6     for the possession or delivery of 2 or more of these
7     weapons at the same time.
8          (2) A person who knowingly delivers, sells, purchases,
9     or possesses or causes to be delivered, sold, purchased,
10    or possessed in violation of this Section an assault
11    weapon attachment commits a Class 4 felony for a first
12    violation and a Class 3 felony for a second or subsequent
13    violation.
14         (3) A person who knowingly delivers, sells, purchases,
15    or possesses or causes to be delivered, sold, purchased,
16    or possessed in violation of this Section a .50 caliber
17    rifle commits a Class 3 felony for a first violation and a
18    Class 2 felony for a second or subsequent violation or for
19    the possession or delivery of 2 or more of these weapons at
20    the same time.
21         (4) A person who knowingly delivers, sells, purchases,
22    or possesses or causes to be delivered, sold, purchased,
23    or possessed in violation of this Section a .50 caliber
24    cartridge commits a Class A misdemeanor.
25         (5) Any other violation of this Section is a Class A
26    misdemeanor.

HB5522                          - 12 -        LRB102 25017 RLC 34274 b

1       (720 ILCS 5/24-1.10 new)

2       Sec.  24-1.10.  Delivery  or  sale  of  large  capacity

3   ammunition feeding devices.

4       (a) In this Section:

5       "Large capacity ammunition feeding device" means:

6           (1) a magazine, belt, drum, feed strip, or similar

7       device that has a capacity of, or that can be readily

8       restored or converted to accept, more than 10 rounds of

9       ammunition; or

10          (2) any combination of parts from which a device

11      described in paragraph (1) can be assembled.

12      "Large  capacity  ammunition  feeding  device"  does  not

13  include  an  attached  tubular  device  designed  to  accept,  and

14  capable  of  operating  only  with,  .22  caliber  rimfire

15  ammunition. "Large capacity ammunition feeding device" does

16  not  include  a  tubular  magazine  that  is  contained  in  a

17  lever-action  firearm  or  any  device  that  has  been  made

18  permanently inoperable.

19      (b) Except as provided in subsection (c), it is unlawful

20  for any person within this State to knowingly deliver, sell,

21  purchase,  or  possess  or  cause  to  be  delivered,  sold,  or

22  purchased a large capacity ammunition feeding device.

23      (c) This Section does not apply to or affect any of the

24  following:

25          (1) Peace officers as defined in Section 2-13 of this

1    Code.

2        (2) A local law enforcement agency for the purpose of
3    equipping the agency's peace officers as defined in
4    paragraph (1) of this subsection (c).

5        (3) Wardens, superintendents, and keepers of prisons,
6    penitentiaries, jails, and other institutions for the
7    detention of persons accused or convicted of an offense.

8        (4) Members of the Armed Services or Reserve Forces of
9    the United States or the Illinois National Guard, for the
10   performance of their official duties.

11       (5) Any company that employs armed security officers
12   in this State at a nuclear energy, storage, weapons, or
13   development site or facility regulated by the federal
14   Nuclear Regulatory Commission and persons employed as an
15   armed security force member at a nuclear energy, storage,
16   weapons, or development site or facility regulated by the
17   federal Nuclear Regulatory Commission who have completed
18   the background screening and training mandated by the
19   rules and regulations of the federal Nuclear Regulatory
20   Commission for the performance of their official duties.

21       (6) Sale of large capacity ammunition feeding devices
22   to persons authorized under subdivisions (1) through (5)
23   of this subsection (c) to possess those devices.

24       (7) Sale of large capacity ammunition feeding devices
25   for sale or transfer in another state.

26       (8) Sale or rental of large capacity ammunition

HB5522                      - 14 -      LRB102 25017 RLC 34274 b

1      feeding devices for blank-firing assault weapons and .50

2      caliber rifles, to persons authorized or permitted, or

3      both authorized and permitted to acquire these devices for

4      the purpose of rental for use solely as props for a motion

5      picture, television, or video production or entertainment

6      event.

7          (d) Sentence. A person who knowingly delivers, sells,

8      purchases, or causes to be delivered, sold, or purchased in

9      violation of this Section a large capacity ammunition feeding

10     device capable of holding more than 15 rounds of ammunition

11     commits a Class 3 felony for a first violation and a Class 2

12     felony for a second or subsequent violation or for delivery or

13     possession of 2 or more of these devices at the same time. Any

14     other violation of this Section is a Class A misdemeanor.

# EXHIBIT B



# HB5855

L R B 1 0 2 2 9 8 3 4 R J T 4 1 9 5 1 b

## 102ND GENERAL ASSEMBLY

## State of Illinois

## 2021 and 2022

### HB5855

by Rep. Bob Morgan

## SYNOPSIS  AS  INTRODUCED:

See Index

Amends the Illinois State Police Law of the Civil Administrative Code of Illinois. Provides that the Division of Criminal Investigation of the Illinois State Police shall conduct other investigations as provided by law, including, but not limited to, investigations of human trafficking, illegal drug trafficking, and illegal firearms trafficking. Provides that the Division of Criminal Investigation shall provide statewide coordination and strategy pertaining to firearm-related intelligence, firearms trafficking interdiction, and investigations. Amends the Firearm Owners Identification Card Act. Eliminates provisions that permit a person under 21 years of age who is not an active duty member of the United States Armed Forces or the Illinois National Guard to obtain a Firearm Owner's Identification Card with parental consent. Amends the Wildlife Code. Provides that when a person under 21 years of age is hunting under the supervision of a adult, the adult must possess a Firearm Owners Identification Card. Amends the Firearms Restraining Order Act. Provides that the State's Attorney of the county where the petition is filed may act as a friend of the court in any action filed under the Act. Provides that a petitioner may request a one-year (rather than 6-month) firearms restraining order. Amends the Criminal Code of 2012. Makes it unlawful to manufacture, deliver, sell, or purchase or cause to be manufactured, delivered, sold, or purchased or cause to be possessed by another, an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge. Makes it unlawful for any person to knowingly possess an assault weapon, .50 caliber rifle, or .50 caliber cartridge 300 days after the effective date of the amendatory Act, except possession of weapons registered with the Illinois State Police in the time provided. Provides exemptions and penalties. Prohibits the manufacture, delivery, sale, purchase, or possession of large capacity ammunition feeding devices. Defines terms. Provides exemptions and penalties. Makes other changes. Effective immediately.

LRB102 29834 RJT 41951 b

## A  BILL  FOR

HB5855                                    LRB102 29834 RJT 41951 b

1        AN ACT concerning safety.

2        **Be it enacted by the People of the State of Illinois,**

3        **represented in the General Assembly:**

4        Section 1. This Act may be referred to as the Protect

5    Illinois Communities Act.

6        Section 5. The Illinois State Police Law of the Civil

7    Administrative Code of Illinois is amended by changing

8    Sections 2605-35 and 2605-51.1 as follows:

9        (20 ILCS 2605/2605-35) (was 20 ILCS 2605/55a-3)

10       Sec. 2605-35. Division of Criminal Investigation.

11       (a) The Division of Criminal Investigation shall exercise

12   the following functions and those in Section 2605-30:

13           (1) Exercise the rights, powers, and duties vested by

14       law in the Illinois State Police by the Illinois Horse

15       Racing Act of 1975, including those set forth in Section

16       2605-215.

17           (2) Investigate the origins, activities, personnel,

18       and incidents of crime and enforce the criminal laws of

19       this State related thereto.

20           (3) Enforce all laws regulating the production, sale,

21       prescribing, manufacturing, administering, transporting,

22       having   in   possession,   dispensing,   delivering,

1     distributing, or use of controlled substances and

2     cannabis.

3        (4) Cooperate with the police of cities, villages, and

4     incorporated towns and with the police officers of any

5     county in enforcing the laws of the State and in making

6     arrests and recovering property.

7        (5) Apprehend and deliver up any person charged in

8     this State or any other state with treason or a felony or

9     other crime who has fled from justice and is found in this

10    State.

11       (6) Investigate recipients and providers under the

12    Illinois Public Aid Code and any personnel involved in the

13    administration of the Code who are suspected of any

14    violation of the Code pertaining to fraud in the

15    administration, receipt, or provision of assistance and

16    pertaining to any violation of criminal law; and exercise

17    the functions required under Section 2605-220 in the

18    conduct of those investigations.

19       (7) Conduct other investigations as provided by law,

20    including, but not limited to, investigations of human

21    trafficking, illegal drug trafficking, and illegal

22    firearms trafficking.

23       (8) Investigate public corruption.

24       (9) Exercise other duties that may be assigned by the

25    Director in order to fulfill the responsibilities and

26    achieve the purposes of the Illinois State Police, which

HB5855                     - 3 -        LRB102 29834 RJT 41951 b

1     may include the coordination of gang, terrorist, and

2     organized crime prevention, control activities, and

3     assisting local law enforcement in their crime control

4     activities.

5         (b) (Blank).

6         (c) The Division of Criminal Investigation shall provide

7     statewide coordination and strategy pertaining to

8     firearm-related intelligence, firearms trafficking

9     interdiction, and investigations reaching across all divisions

10    of the Illinois State Police, including providing crime gun

11    intelligence support for suspects and firearms involved in

12    firearms trafficking or the commission of a crime involving

13    firearms that is investigated by the Illinois State Police and

14    other federal, State, and local law enforcement agencies, with

15    the objective of reducing and preventing illegal possession

16    and use of firearms, firearms trafficking, firearm-related

17    homicides, and other firearm-related violent crimes in

18    Illinois.

19    (Source: P.A. 102-538, eff. 8-20-21; 102-813, eff. 5-13-22.)


20        (20 ILCS 2605/2605-51.1)

21        (Section scheduled to be repealed on June 1, 2026)

22        Sec. 2605-51.1. Commission on Implementing the Firearms

23    Restraining Order Act.

24        (a) There is created the Commission on Implementing the

25    Firearms Restraining Order Act composed of at least 12 members

HB5855                         - 4 -        LRB102 29834 RJT 41951 b

1     to advise on the strategies of education and implementation of

2     the Firearms Restraining Order Act. The Commission shall be

3     appointed by the Director of the Illinois State Police or his

4     or her designee and shall include a liaison or representative

5     nominated from the following:

6          (1) the Office of the Attorney General, appointed by

7          the Attorney General;

8          (2) the Director of the Illinois State Police or his

9          or her designee;

10         (3) at least 3 State's Attorneys, nominated by the

11         Director of the Office of the State's Attorneys Appellate

12         Prosecutor;

13         (4) at least 2 municipal police department

14         representatives, nominated by the Illinois Association of

15         Chiefs of Police;

16         (5) an Illinois sheriff, nominated by the Illinois

17         Sheriffs' Association;

18         (6) the Director of Public Health or his or her

19         designee;

20         (7) the Illinois Law Enforcement Training Standards

21         Board, nominated by the Executive Director of the Board;

22         (8) a representative from a public defender's office,

23         nominated by the State Appellate Defender;

24         (9) a circuit court judge, nominated by the Chief

25         Justice of the Supreme Court;

26         (10) a prosecutor with experience managing or

HB5855                          - 5 -          LRB102 29834 RJT 41951 b

1    directing   a   program   in   another   state   where   the
2    implementation  of  that  state's  extreme  risk  protection
3    order  law  has  achieved  high  rates  of  petition  filings
4    nominated by the National District Attorneys Association;
5    ~~and~~

6         (11) an expert from law enforcement who has experience
7    managing or directing a program in another state where the
8    implementation  of  that  state's  extreme  risk  protection
9    order  law  has  achieved  high  rates  of  petition  filings
10   nominated by the Director of the Illinois State Police;
11   and

12        (12) a circuit court clerk, nominated by the President
13   of the Illinois Association of Court Clerks.

14   (b) The Commission shall be chaired by the Director of the
15   Illinois State Police or his or her designee. The Commission
16   shall  meet,  either  virtually  or  in  person,  to  discuss  the
17   implementation  of  the  Firearms  Restraining  Order  Act  as
18   determined by the Commission while the strategies are being
19   established.

20        (c)  The  members  of  the  Commission  shall  serve  without
21   compensation and shall serve 3-year terms.

22        (d)  An  annual  report  shall  be  submitted  to  the  General
23   Assembly  by  the  Commission  that  may  include  summary
24   information about firearms restraining order use by county,
25   challenges to Firearms Restraining Order Act implementation,
26   and   recommendations   for   increasing   and   improving

HB5855                          - 6 -          LRB102 29834 RJT 41951 b

1    implementation.

2        (e) The Commission shall develop a model policy with an

3    overall framework for the timely relinquishment of firearms

4    whenever a firearms restraining order is issued. The model

5    policy shall be finalized within the first 4 months of

6    convening. In formulating the model policy, the Commission

7    shall consult counties in Illinois and other states with

8    extreme risk protection order laws which have achieved a high

9    rate of petition filings. Once approved, the Illinois State

10   Police shall work with their local law enforcement agencies

11   within their county to design a comprehensive strategy for the

12   timely relinquishment of firearms, using the model policy as

13   an overall framework. Each individual agency may make small

14   modifications as needed to the model policy and must approve

15   and adopt a policy that aligns with the model policy. The

16   Illinois State Police shall convene local police chiefs and

17   sheriffs within their county as needed to discuss the

18   relinquishment of firearms.

19       (f) The Commission shall be dissolved June 1, 2025 (3

20   years after the effective date of Public Act 102-345).

21       (g) This Section is repealed June 1, 2026 (4 years after

22   the effective date of Public Act 102-345).

23   (Source: P.A. 102-345, eff. 6-1-22; 102-813, eff. 5-13-22.)


24       Section 10. The Firearm Owners Identification Card Act is

25   amended by changing Sections 2, 4, and 8 as follows:

1     (430 ILCS 65/2) (from Ch. 38, par. 83-2)

2     Sec. 2. Firearm Owner's Identification Card required;

3     exceptions.

4     (a) (1) No person may acquire or possess any firearm, stun

5     gun, or taser within this State without having in his or her

6     possession a Firearm Owner's Identification Card previously

7     issued in his or her name by the Illinois State Police under

8     the provisions of this Act.

9     (2) No person may acquire or possess firearm ammunition

10    within this State without having in his or her possession a

11    Firearm Owner's Identification Card previously issued in his

12    or her name by the Illinois State Police under the provisions

13    of this Act.

14    (b)  The  provisions  of  this  Section  regarding  the

15    possession of firearms, firearm ammunition, stun guns, and

16    tasers do not apply to:

17        (1)  United  States  Marshals,  while  engaged  in  the

18        operation of their official duties;

19        (2) Members of the Armed Forces of the United States

20        or the National Guard, while engaged in the operation of

21        their official duties;

22        (3)  Federal  officials  required  to  carry  firearms,

23        while engaged in the operation of their official duties;

24        (4) Members of bona fide veterans organizations which

25        receive  firearms  directly  from  the  armed  forces  of  the

1    United States, while using the firearms for ceremonial
2    purposes with blank ammunition;

3        (5) Nonresident hunters 21 years of age or older
4    during hunting season, with valid nonresident hunting
5    licenses and while in an area where hunting is permitted;
6    however, at all other times and in all other places these
7    persons must have their firearms unloaded and enclosed in
8    a case;

9        (6) Those hunters exempt from obtaining a hunting
10   license who are required to submit their Firearm Owner's
11   Identification Card when hunting on Department of Natural
12   Resources owned or managed sites;

13       (7) Nonresidents while on a firing or shooting range
14   recognized by the Illinois State Police; however, these
15   persons must at all other times and in all other places
16   have their firearms unloaded and enclosed in a case;

17       (8) Nonresidents while at a firearm showing or display
18   recognized by the Illinois State Police; however, at all
19   other times and in all other places these persons must
20   have their firearms unloaded and enclosed in a case;

21       (9) Nonresidents whose firearms are unloaded and
22   enclosed in a case;

23       (10) Nonresidents who are currently licensed or
24   registered to possess a firearm in their resident state;

25       (11) Unemancipated minors while in the custody and
26   immediate control of their parent or legal guardian or

HB5855                         - 9 -           LRB102 29834 RJT 41951 b

1     other person in loco parentis to the minor if the parent or
2     legal guardian or other person in loco parentis to the
3     minor has a currently valid Firearm Owner's Identification
4     Card;

5         (12) Color guards of bona fide veterans organizations
6     or members of bona fide American Legion bands while using
7     firearms for ceremonial purposes with blank ammunition;

8         (13) Nonresident hunters 21 years of age or older
9     whose state of residence does not require them to be
10    licensed or registered to possess a firearm and only
11    during hunting season, with valid hunting licenses, while
12    accompanied by, and using a firearm owned by, a person who
13    possesses a valid Firearm Owner's Identification Card and
14    while in an area within a commercial club licensed under
15    the Wildlife Code where hunting is permitted and
16    controlled, but in no instance upon sites owned or managed
17    by the Department of Natural Resources;

18        (14) Resident hunters who are properly authorized to
19    hunt and, while accompanied by a person who possesses a
20    valid Firearm Owner's Identification Card, hunt in an area
21    within a commercial club licensed under the Wildlife Code
22    where hunting is permitted and controlled; and

23        (15) A person who is otherwise eligible to obtain a
24    Firearm Owner's Identification Card under this Act and is
25    under the direct supervision of a holder of a Firearm
26    Owner's Identification Card who is 21 years of age or

1    older while the person is on a firing or shooting range or

2    is a participant in a firearms safety and training course

3    recognized by a law enforcement agency or a national,

4    statewide shooting sports organization~~; and~~

5         ~~(16) Competitive shooting athletes whose competition~~

6         ~~firearms are sanctioned by the International Olympic~~

7         ~~Committee, the International Paralympic Committee, the~~

8         ~~International Shooting Sport Federation, or USA Shooting~~

9         ~~in connection with such athletes' training for and~~

10        ~~participation in shooting competitions at the 2016 Olympic~~

11        ~~and Paralympic Games and sanctioned test events leading up~~

12        ~~to the 2016 Olympic and Paralympic Games.~~

13    (c)  The provisions of this Section regarding the

14    acquisition and possession of firearms, firearm ammunition,

15    stun guns, and tasers do not apply to law enforcement

16    officials of this or any other jurisdiction, while engaged in

17    the operation of their official duties.

18    (c-5)  The provisions of paragraphs (1) and (2) of

19    subsection (a) of this Section regarding the possession of

20    firearms and firearm ammunition do not apply to the holder of a

21    valid concealed carry license issued under the Firearm

22    Concealed Carry Act who is in physical possession of the

23    concealed carry license.

24    (d) Any person who becomes a resident of this State, who is

25    not otherwise prohibited from obtaining, possessing, or using

26    a firearm or firearm ammunition, shall not be required to have

HB5855                    - 11 -     LRB102 29834 RJT 41951 b

1   a Firearm Owner's Identification Card to possess firearms or
2   firearms ammunition until 60 calendar days after he or she
3   obtains    an    Illinois    driver's    license    or    Illinois
4   Identification Card.
5   (Source: P.A. 102-538, eff. 8-20-21.)


6       (430 ILCS 65/4) (from Ch. 38, par. 83-4)
7       Sec. 4. Application for Firearm Owner's Identification
8   Cards.
9       (a) Each applicant for a Firearm Owner's Identification
10  Card must:
11          (1) Submit an application as made available by the
12      Illinois State Police; and
13          (2) Submit evidence to the Illinois State Police that:
14              (i) (Blank); This subparagraph (i) applies through
15          the 180th day following July 12, 2019 (the effective
16          date of Public Act 101-80). He or she is 21 years of
17          age or over, or if he or she is under 21 years of age
18          that he or she has the written consent of his or her
19          parent or legal guardian to possess and acquire
20          firearms and firearm ammunition and that he or she has
21          never been convicted of a misdemeanor other than a
22          traffic offense or adjudged delinquent, provided,
23          however, that such parent or legal guardian is not an
24          individual prohibited from having a Firearm Owner's
25          Identification Card and files an affidavit with the

HB5855                        - 12 -          LRB102 29834 RJT 41951 b

1      ~~Department as prescribed by the Department stating~~
2      ~~that he or she is not an individual prohibited from~~
3      ~~having a Card;~~

4          (i-5) ~~This subparagraph (i-5) applies on and after~~
5      ~~the 181st day following July 12, 2019 (the effective~~
6      ~~date of Public Act 101-80).~~ He or she is 21 years of
7      age or over, or if he or she is under 21 years of age
8      that he or she has never been convicted of a
9      misdemeanor other than a traffic offense or adjudged
10     delinquent and is an active duty member of the United
11     States Armed Forces <u>or the Illinois National Guard;</u>
12     <u>provided, however that</u> ~~or has the written consent of~~
13     ~~his or her parent or legal guardian to possess and~~
14     ~~acquire firearms and firearm ammunition, provided,~~
15     ~~however, that such parent or legal guardian is not an~~
16     ~~individual prohibited from having a Firearm Owner's~~
17     ~~Identification Card and files an affidavit with the~~
18     ~~Illinois State Police as prescribed by the Illinois~~
19     ~~State Police stating that he or she is not an~~
20     ~~individual prohibited from having a Card or~~ the active
21     duty member of the United States Armed Forces <u>or the</u>
22     <u>Illinois National Guard</u> under 21 years of age annually
23     submits proof to the Illinois State Police, in a
24     manner prescribed by the Illinois State Police;

25         (ii) He or she has not been convicted of a felony
26     under the laws of this or any other jurisdiction;

HB5855                          - 13 -          LRB102 29834 RJT 41951 b

1          (iii) He or she is not addicted to narcotics;

2          (iv) He or she has not been a patient in a mental

3      health facility within the past 5 years or, if he or

4      she has been a patient in a mental health facility more

5      than 5 years ago submit the certification required

6      under subsection (u) of Section 8 of this Act;

7          (v) He or she is not a person with an intellectual

8      disability;

9          (vi) He or she is not a noncitizen who is

10     unlawfully present in the United States under the laws

11     of the United States;

12         (vii) He or she is not subject to an existing order

13     of protection prohibiting him or her from possessing a

14     firearm;

15         (viii) He or she has not been convicted within the

16     past 5 years of battery, assault, aggravated assault,

17     violation of an order of protection, or a

18     substantially similar offense in another jurisdiction,

19     in which a firearm was used or possessed;

20         (ix) He or she has not been convicted of domestic

21     battery, aggravated domestic battery, or a

22     substantially similar offense in another jurisdiction

23     committed before, on or after January 1, 2012 (the

24     effective date of Public Act 97-158). If the applicant

25     knowingly and intelligently waives the right to have

26     an offense described in this clause (ix) tried by a

1      jury, and by guilty plea or otherwise, results in a

2      conviction for an offense in which a domestic

3      relationship is not a required element of the offense

4      but in which a determination of the applicability of

5      18 U.S.C. 922(g)(9) is made under Section 112A-11.1 of

6      the Code of Criminal Procedure of 1963, an entry by the

7      court of a judgment of conviction for that offense

8      shall be grounds for denying the issuance of a Firearm

9      Owner's Identification Card under this Section;

10         (x) (Blank);

11         (xi) He or she is not a noncitizen who has been

12     admitted to the United States under a non-immigrant

13     visa (as that term is defined in Section 101(a)(26) of

14     the Immigration and Nationality Act (8 U.S.C.

15     1101(a)(26))), or that he or she is a noncitizen who

16     has been lawfully admitted to the United States under

17     a non-immigrant visa if that noncitizen is:

18             (1) admitted to the United States for lawful

19             hunting or sporting purposes;

20             (2) an official representative of a foreign

21             government who is:

22                 (A) accredited to the United States

23                 Government or the Government's mission to an

24                 international organization having its

25                 headquarters in the United States; or

26                 (B) en route to or from another country to

HB5855                          - 15 -          LRB102 29834 RJT 41951 b

1           which that noncitizen is accredited;

2               (3)  an  official  of  a  foreign  government  or

3           distinguished  foreign  visitor  who  has  been  so

4           designated by the Department of State;

5               (4)  a  foreign  law  enforcement  officer  of  a

6           friendly  foreign  government  entering  the  United

7           States on official business; or

8               (5)  one  who  has  received  a  waiver  from  the

9           Attorney  General  of  the  United  States  pursuant  to

10          18 U.S.C. 922(y)(3);

11          (xii)  He  or  she  is  not  a  minor  subject  to  a

12      petition  filed  under  Section  5-520  of  the  Juvenile

13      Court  Act  of  1987  alleging  that  the  minor  is  a

14      delinquent minor for the commission of an offense that

15      if committed by an adult would be a felony;

16          (xiii)  He  or  she  is  not  an  adult  who  had  been

17      adjudicated  a  delinquent  minor  under  the  Juvenile

18      Court Act of 1987 for the commission of an offense that

19      if committed by an adult would be a felony;

20          (xiv)  He  or  she  is  a  resident  of  the  State  of

21      Illinois;

22          (xv) He or she has not been adjudicated as a person

23      with a mental disability;

24          (xvi)  He  or  she  has  not  been  involuntarily

25      admitted into a mental health facility; and

26          (xvii)  He  or  she  is  not  a  person  with  a

HB5855                         - 16 -         LRB102 29834 RJT 41951 b

1        developmental disability; and

2            (3) Upon request by the Illinois State Police, sign a

3        release on a form prescribed by the Illinois State Police

4        waiving any right to confidentiality and requesting the

5        disclosure to the Illinois State Police of limited mental

6        health institution admission information from another

7        state, the District of Columbia, any other territory of

8        the United States, or a foreign nation concerning the

9        applicant for the sole purpose of determining whether the

10       applicant is or was a patient in a mental health

11       institution and disqualified because of that status from

12       receiving a Firearm Owner's Identification Card. No mental

13       health care or treatment records may be requested. The

14       information received shall be destroyed within one year of

15       receipt.

16       (a-5) Each applicant for a Firearm Owner's Identification

17   Card who is over the age of 18 shall furnish to the Illinois

18   State Police either his or her Illinois driver's license

19   number or Illinois Identification Card number, except as

20   provided in subsection (a-10).

21       (a-10) Each applicant for a Firearm Owner's Identification

22   Card, who is employed as a law enforcement officer, an armed

23   security officer in Illinois, or by the United States Military

24   permanently assigned in Illinois and who is not an Illinois

25   resident, shall furnish to the Illinois State Police his or

26   her driver's license number or state identification card

HB5855                           - 17 -          LRB102 29834 RJT 41951 b

1    number from his or her state of residence. The Illinois State
2    Police may adopt rules to enforce the provisions of this
3    subsection (a-10).

4        (a-15) If an applicant applying for a Firearm Owner's
5    Identification Card moves from the residence address named in
6    the application, he or she shall immediately notify in a form
7    and manner prescribed by the Illinois State Police of that
8    change of address.

9        (a-20) Each applicant for a Firearm Owner's Identification
10   Card shall furnish to the Illinois State Police his or her
11   photograph. An applicant who is 21 years of age or older
12   seeking a religious exemption to the photograph requirement
13   must furnish with the application an approved copy of United
14   States Department of the Treasury Internal Revenue Service
15   Form 4029. In lieu of a photograph, an applicant regardless of
16   age seeking a religious exemption to the photograph
17   requirement shall submit fingerprints on a form and manner
18   prescribed by the Illinois State Police with his or her
19   application.

20       (a-25) Beginning January 1, 2023, each applicant for the
21   issuance of a Firearm Owner's Identification Card may include
22   a full set of his or her fingerprints in electronic format to
23   the Illinois State Police, unless the applicant has previously
24   provided a full set of his or her fingerprints to the Illinois
25   State Police under this Act or the Firearm Concealed Carry
26   Act.

1      The fingerprints must be transmitted through a live scan
2   fingerprint vendor licensed by the Department of Financial and
3   Professional Regulation. The fingerprints shall be checked
4   against the fingerprint records now and hereafter filed in the
5   Illinois State Police and Federal Bureau of Investigation
6   criminal history records databases, including all available
7   State and local criminal history record information files.

8      The Illinois State Police shall charge applicants a
9   one-time fee for conducting the criminal history record check,
10  which shall be deposited into the State Police Services Fund
11  and shall not exceed the actual cost of the State and national
12  criminal history record check.

13     (a-26) The Illinois State Police shall research, explore,
14  and report to the General Assembly by January 1, 2022 on the
15  feasibility of permitting voluntarily submitted fingerprints
16  obtained for purposes other than Firearm Owner's
17  Identification Card enforcement that are contained in the
18  Illinois State Police database for purposes of this Act.

19     (b) Each application form shall include the following
20  statement printed in bold type: "Warning: Entering false
21  information on an application for a Firearm Owner's
22  Identification Card is punishable as a Class 2 felony in
23  accordance with subsection (d-5) of Section 14 of the Firearm
24  Owners Identification Card Act.".

25     (c) Upon such written consent, pursuant to Section 4,
26  paragraph (a)(2)(i), the parent or legal guardian giving the

HB5855                    - 19 -        LRB102 29834 RJT 41951 b

1    consent shall be liable for any damages resulting from the

2    applicant's use of firearms or firearm ammunition.

3    (Source: P.A. 101-80, eff. 7-12-19; 102-237, eff. 1-1-22;

4    102-538, eff. 8-20-21; 102-813, eff. 5-13-22; 102-1030, eff.

5    5-27-22.)


6        (430 ILCS 65/8) (from Ch. 38, par. 83-8)

7        Sec. 8. Grounds for denial and revocation. The Illinois

8    State Police has authority to deny an application for or to

9    revoke and seize a Firearm Owner's Identification Card

10   previously issued under this Act only if the Illinois State

11   Police finds that the applicant or the person to whom such card

12   was issued is or was at the time of issuance:

13       (a) A person under 21 years of age who has been

14       convicted of a misdemeanor other than a traffic offense or

15       adjudged delinquent;

16       (b) (Blank); ~~This subsection (b) applies through the~~

17       ~~180th day following July 12, 2019 (the effective date of~~

18       ~~Public Act 101-80). A person under 21 years of age who does~~

19       ~~not have the written consent of his parent or guardian to~~

20       ~~acquire and possess firearms and firearm ammunition, or~~

21       ~~whose parent or guardian has revoked such written consent,~~

22       ~~or where such parent or guardian does not qualify to have a~~

23       ~~Firearm Owner's Identification Card;~~

24       (b-5) ~~This subsection (b-5) applies on and after the~~

25       ~~181st day following July 12, 2019 (the effective date of~~

1       ~~Public Act 101-80).~~ A person under 21 years of age who is

2       not an active duty member of the United States Armed

3       Forces or the Illinois National Guard ~~and does not have~~

4       ~~the written consent of his or her parent or guardian to~~

5       ~~acquire and possess firearms and firearm ammunition, or~~

6       ~~whose parent or guardian has revoked such written consent,~~

7       ~~or where such parent or guardian does not qualify to have a~~

8       ~~Firearm Owner's Identification Card~~;

9           (c) A person convicted of a felony under the laws of

10      this or any other jurisdiction;

11          (d) A person addicted to narcotics;

12          (e) A person who has been a patient of a mental health

13      facility within the past 5 years or a person who has been a

14      patient in a mental health facility more than 5 years ago

15      who has not received the certification required under

16      subsection (u) of this Section. An active law enforcement

17      officer employed by a unit of government or a Department

18      of Corrections employee authorized to possess firearms who

19      is denied, revoked, or has his or her Firearm Owner's

20      Identification Card seized under this subsection (e) may

21      obtain relief as described in subsection (c-5) of Section

22      10 of this Act if the officer or employee did not act in a

23      manner threatening to the officer or employee, another

24      person, or the public as determined by the treating

25      clinical psychologist or physician, and the officer or

26      employee seeks mental health treatment;

1      (f)  A  person  whose  mental  condition  is  of  such  a
2    nature that it poses a clear and present danger to the
3    applicant, any other person or persons, or the community;

4      (g) A person who has an intellectual disability;

5      (h) A person who intentionally makes a false statement
6    in the Firearm Owner's Identification Card application;

7      (i)  A  noncitizen  who  is  unlawfully  present  in  the
8    United States under the laws of the United States;

9      (i-5) A noncitizen who has been admitted to the United
10    States under a non-immigrant visa (as that term is defined
11    in Section 101(a)(26) of the Immigration and Nationality
12    Act (8 U.S.C. 1101(a)(26))), except that this subsection
13    (i-5)  does  not  apply  to  any  noncitizen  who  has  been
14    lawfully  admitted  to  the  United  States  under  a
15    non-immigrant visa if that noncitizen is:

16      (1)  admitted  to  the  United  States  for  lawful
17      hunting or sporting purposes;

18      (2)  an  official  representative  of  a  foreign
19      government who is:

20        (A) accredited to the United States Government
21        or  the  Government's  mission  to  an  international
22        organization having its headquarters in the United
23        States; or

24        (B) en route to or from another country to
25        which that noncitizen is accredited;

26      (3)  an  official  of  a  foreign  government  or

1            distinguished    foreign    visitor    who    has    been    so
2            designated by the Department of State;
3                (4)    a    foreign    law    enforcement    officer    of    a
4            friendly foreign government entering the United States
5            on official business; or
6                (5)    one    who    has    received    a    waiver    from    the
7            Attorney General of the United States pursuant to 18
8            U.S.C. 922(y)(3);
9            (j) (Blank);
10           (k) A person who has been convicted within the past 5
11       years of battery, assault, aggravated assault, violation
12       of an order of protection, or a substantially similar
13       offense in another jurisdiction, in which a firearm was
14       used or possessed;
15           (l) A person who has been convicted of domestic
16       battery, aggravated domestic battery, or a substantially
17       similar offense in another jurisdiction committed before,
18       on or after January 1, 2012 (the effective date of Public
19       Act 97-158). If the applicant or person who has been
20       previously issued a Firearm Owner's Identification Card
21       under this Act knowingly and intelligently waives the
22       right to have an offense described in this paragraph (l)
23       tried by a jury, and by guilty plea or otherwise, results
24       in a conviction for an offense in which a domestic
25       relationship is not a required element of the offense but
26       in which a determination of the applicability of 18 U.S.C.

HB5855                        - 23 -        LRB102 29834 RJT 41951 b

1      922(g)(9) is made under Section 112A-11.1 of the Code of
2      Criminal Procedure of 1963, an entry by the court of a
3      judgment of conviction for that offense shall be grounds
4      for denying an application for and for revoking and
5      seizing a Firearm Owner's Identification Card previously
6      issued to the person under this Act;

7           (m) (Blank);

8           (n) A person who is prohibited from acquiring or
9      possessing firearms or firearm ammunition by any Illinois
10     State statute or by federal law;

11          (o) A minor subject to a petition filed under Section
12     5-520 of the Juvenile Court Act of 1987 alleging that the
13     minor is a delinquent minor for the commission of an
14     offense that if committed by an adult would be a felony;

15          (p) An adult who had been adjudicated a delinquent
16     minor under the Juvenile Court Act of 1987 for the
17     commission of an offense that if committed by an adult
18     would be a felony;

19          (q) A person who is not a resident of the State of
20     Illinois, except as provided in subsection (a-10) of
21     Section 4;

22          (r) A person who has been adjudicated as a person with
23     a mental disability;

24          (s) A person who has been found to have a
25     developmental disability;

26          (t) A person involuntarily admitted into a mental

HB5855                        - 24 -        LRB102 29834 RJT 41951 b

1     health facility; or

2          (u) A person who has had his or her Firearm Owner's

3     Identification Card revoked or denied under subsection (e)

4     of this Section or item (iv) of paragraph (2) of

5     subsection (a) of Section 4 of this Act because he or she

6     was a patient in a mental health facility as provided in

7     subsection (e) of this Section, shall not be permitted to

8     obtain a Firearm Owner's Identification Card, after the

9     5-year period has lapsed, unless he or she has received a

10    mental health evaluation by a physician, clinical

11    psychologist, or qualified examiner as those terms are

12    defined in the Mental Health and Developmental

13    Disabilities Code, and has received a certification that

14    he or she is not a clear and present danger to himself,

15    herself, or others. The physician, clinical psychologist,

16    or qualified examiner making the certification and his or

17    her employer shall not be held criminally, civilly, or

18    professionally liable for making or not making the

19    certification required under this subsection, except for

20    willful or wanton misconduct. This subsection does not

21    apply to a person whose firearm possession rights have

22    been restored through administrative or judicial action

23    under Section 10 or 11 of this Act.

24    Upon revocation of a person's Firearm Owner's

25    Identification Card, the Illinois State Police shall provide

26    notice to the person and the person shall comply with Section

HB5855                          - 25 -          LRB102 29834 RJT 41951 b

1    9.5 of this Act.

2    (Source: P.A. 101-80, eff. 7-12-19; 102-538, eff. 8-20-21;

3    102-645, eff. 1-1-22; 102-813, eff. 5-13-22; 102-1030, eff.

4    5-27-22.)


5        Section 15. The Firearms Restraining Order Act is amended

6    by changing Sections 10, 40, 45, and 55 as follows:


7        (430 ILCS 67/10)

8        Sec. 10. Commencement of action; procedure.

9        (a) An action for a firearms restraining order is

10   commenced by filing a verified petition for a firearms

11   restraining order in any circuit court.

12       (b) A petition for a firearms restraining order may be

13   filed in: (1) any county where the respondent resides or (2)

14   any county where an incident occurred that involved the

15   respondent posing an immediate and present danger of causing

16   personal injury to the respondent or another by having in his

17   or her custody or control, or purchasing, possessing, or

18   receiving, a firearm, ammunition, or firearm parts that could

19   be assembled to make an operable firearm.

20       (c) No fee shall be charged by the clerk for filing,

21   amending, vacating, certifying, printing, or photocopying

22   petitions or orders; or for issuing alias summons; or for any

23   related filing service. No fee shall be charged by the sheriff

24   or other law enforcement for service by the sheriff or other

HB5855                        - 26 -        LRB102 29834 RJT 41951 b

1    law enforcement of a petition, rule, motion, or order in an
2    action commenced under this Section.

3        (d)  The court shall provide, through the office of the
4    clerk of the court, simplified forms and clerical assistance
5    to help with the writing and filing of a petition under this
6    Section by any person not represented by counsel. In addition,
7    that assistance may be provided by the State's Attorney.

8        (e) The State's Attorney of the county where the petition
9    is filed may act as a friend of the court in any action filed
10   under this Act. An Assistant State's Attorney of the county
11   where the petition is filed may also be appointed as a friend
12   of the court to assist a petitioner in court regarding
13   firearms restraining orders.
14   (Source: P.A. 101-81, eff. 7-12-19; 102-345, eff. 6-1-22.)


15       (430 ILCS 67/40)

16       Sec. 40. One-year ~~Six month~~ orders.

17       (a)  A petitioner may request a one-year ~~6 month~~ firearms
18   restraining order by filing an affidavit or verified pleading
19   alleging that the respondent poses a significant danger of
20   causing personal injury to himself, herself, or another in the
21   near future by having in his or her custody or control,
22   purchasing, possessing, or receiving a firearm, ammunition,
23   and firearm parts that could be assembled to make an operable
24   firearm. The petition shall also describe the number, types,
25   and locations of any firearms, ammunition, and firearm parts

1    that could be assembled to make an operable firearm presently

2    believed by the petitioner to be possessed or controlled by

3    the respondent.

4    (b) If the respondent is alleged to pose a significant

5    danger of causing personal injury to an intimate partner, or

6    an intimate partner is alleged to have been the target of a

7    threat or act of violence by the respondent, the petitioner

8    shall make a good faith effort to provide notice to any and all

9    intimate partners of the respondent. The notice must include

10    that the petitioner intends to petition the court for a

11    <u>one-year</u> ~~6-month~~ firearms restraining order, and, if the

12    petitioner is a law enforcement officer, referral to relevant

13    domestic violence or stalking advocacy or counseling

14    resources, if appropriate. The petitioner shall attest to

15    having provided the notice in the filed affidavit or verified

16    pleading. If, after making a good faith effort, the petitioner

17    is unable to provide notice to any or all intimate partners,

18    the affidavit or verified pleading should describe what

19    efforts were made.

20    (c) Every person who files a petition for a <u>one-year</u>

21    ~~6-month~~ firearms restraining order, knowing the information

22    provided to the court at any hearing or in the affidavit or

23    verified pleading to be false, is guilty of perjury under

24    Section 32-2 of the Criminal Code of 2012.

25    (d) Upon receipt of a petition for a <u>one-year</u> ~~6-month~~

26    firearms restraining order, the court shall order a hearing

HB5855                      - 28 -      LRB102 29834 RJT 41951 b

1    within 30 days.

2        (e) In determining whether to issue a firearms restraining

3    order under this Section, the court shall consider evidence

4    including, but not limited to, the following:

5            (1)  The  unlawful  and  reckless  use,  display,  or

6        brandishing  of  a  firearm,  ammunition,  and  firearm  parts

7        that could be assembled to make an operable firearm by the

8        respondent.

9            (2) The history of use, attempted use, or threatened

10       use  of  physical  force  by  the  respondent  against  another

11       person.

12           (3)  Any  prior  arrest  of  the  respondent  for  a  felony

13       offense.

14           (4) Evidence of the abuse of controlled substances or

15       alcohol by the respondent.

16           (5) A recent threat of violence or act of violence by

17       the  respondent  directed  toward  himself,  herself,  or

18       another.

19           (6) A violation of an emergency order of protection

20       issued under Section 217 of the Illinois Domestic Violence

21       Act  of  1986  or  Section  112A-17  of  the  Code  of  Criminal

22       Procedure  of  1963  or  of  an  order  of  protection  issued

23       under Section 214 of the Illinois Domestic Violence Act of

24       1986 or Section 112A-14 of the Code of Criminal Procedure

25       of 1963.

26           (7)  A  pattern  of  violent  acts  or  violent  threats,

HB5855                          - 29 -          LRB102 29834 RJT 41951 b

1          including, but not limited to, threats of violence or acts

2          of  violence  by  the  respondent  directed  toward  himself,

3          herself, or another.

4          (f) At the hearing, the petitioner shall have the burden

5     of  proving,  by  clear  and  convincing  evidence,  that  the

6     respondent poses a significant danger of personal injury to

7     himself, herself, or another by having in his or her custody or

8     control,  purchasing,  possessing,  or  receiving  a  firearm,

9     ammunition, and firearm parts that could be assembled to make

10    an operable firearm.

11         (g) If the court finds that there is clear and convincing

12    evidence  to  issue  a  firearms  restraining  order,  the  court

13    shall  issue  a  firearms  restraining  order  that  shall  be  in

14    effect for one year, ~~6 months~~ subject to renewal under Section

15    45 of this Act or termination under that Section.

16         (g-5) If  the  court  issues  a  one-year ~~6 month~~  firearms

17    restraining order, it shall, upon a finding of probable cause

18    that  the  respondent  possesses  firearms,  ammunition,  and

19    firearm  parts  that  could  be  assembled  to  make  an  operable

20    firearm,  issue  a  search  warrant  directing  a  law  enforcement

21    agency  to  seize  the  respondent's  firearms,  ammunition,  and

22    firearm  parts  that  could  be  assembled  to  make  an  operable

23    firearm. The court may, as part of that warrant, direct the law

24    enforcement  agency  to  search  the  respondent's  residence  and

25    other places where the court finds there is probable cause to

26    believe  he  or  she  is  likely  to  possess  the  firearms,

HB5855                        - 30 -        LRB102 29834 RJT 41951 b

1    ammunition, and firearm parts that could be assembled to make
2    an operable firearm. A return of the search warrant shall be
3    filed by the law enforcement agency within 4 days thereafter,
4    setting forth the time, date, and location that the search
5    warrant was executed and what items, if any, were seized.

6        (h) A one-year ~~6 month~~ firearms restraining order shall
7    require:

8            (1) the respondent to refrain from having in his or
9        her custody or control, purchasing, possessing, or
10       receiving additional firearms, ammunition, and firearm
11       parts that could be assembled to make an operable firearm
12       for the duration of the order under Section 8.2 of the
13       Firearm Owners Identification Card Act; and

14           (2) the respondent to comply with Section 9.5 of the
15       Firearm Owners Identification Card Act and subsection (g)
16       of Section 70 of the Firearm Concealed Carry Act.

17       (i) Except as otherwise provided in subsection (i-5) of
18   this Section, upon expiration of the period of safekeeping, if
19   the firearms, ammunition, and firearm parts that could be
20   assembled to make an operable firearm or Firearm Owner's
21   Identification Card cannot be returned to the respondent
22   because the respondent cannot be located, fails to respond to
23   requests to retrieve the firearms, ammunition, and firearm
24   parts that could be assembled to make an operable firearm, or
25   is not lawfully eligible to possess a firearm, ammunition, and
26   firearm parts that could be assembled to make an operable

HB5855                        - 31 -        LRB102 29834 RJT 41951 b

1     firearm, upon petition from the local law enforcement agency,

2     the court may order the local law enforcement agency to

3     destroy the firearms, ammunition, and firearm parts that could

4     be assembled to make an operable firearm, use the firearms,

5     ammunition, and firearm parts that could be assembled to make

6     an operable firearm for training purposes, or use the

7     firearms, ammunition, and firearm parts that could be

8     assembled to make an operable firearm for any other

9     application as deemed appropriate by the local law enforcement

10    agency.

11        (i-5) A respondent whose Firearm Owner's Identification

12    Card has been revoked or suspended may petition the court, if

13    the petitioner is present in court or has notice of the

14    respondent's petition, to transfer the respondent's firearm,

15    ammunition, and firearm parts that could be assembled to make

16    an operable firearm to a person who is lawfully able to possess

17    the firearm, ammunition, and firearm parts that could be

18    assembled to make an operable firearm if the person does not

19    reside at the same address as the respondent. Notice of the

20    petition shall be served upon the person protected by the

21    emergency firearms restraining order. While the order is in

22    effect, the transferee who receives the respondent's firearms,

23    ammunition, and firearm parts that could be assembled to make

24    an operable firearm must swear or affirm by affidavit that he

25    or she shall not transfer the firearm, ammunition, and firearm

26    parts that could be assembled to make an operable firearm to

1    the respondent or to anyone residing in the same residence as
2    the respondent.

3        (i-6) If a person other than the respondent claims title
4    to any firearms, ammunition, and firearm parts that could be
5    assembled to make an operable firearm surrendered under this
6    Section, he or she may petition the court, if the petitioner is
7    present in court or has notice of the petition, to have the
8    firearm, ammunition, and firearm parts that could be assembled
9    to make an operable firearm returned to him or her. If the
10   court determines that person to be the lawful owner of the
11   firearm, ammunition, and firearm parts that could be assembled
12   to make an operable firearm, the firearm, ammunition, and
13   firearm parts that could be assembled to make an operable
14   firearm shall be returned to him or her, provided that:

15        (1) the firearm, ammunition, and firearm parts that
16        could be assembled to make an operable firearm are removed
17        from the respondent's custody, control, or possession and
18        the lawful owner agrees to store the firearm, ammunition,
19        and firearm parts that could be assembled to make an
20        operable firearm in a manner such that the respondent does
21        not have access to or control of the firearm, ammunition,
22        and firearm parts that could be assembled to make an
23        operable firearm; and

24        (2) the firearm, ammunition, and firearm parts that
25        could be assembled to make an operable firearm are not
26        otherwise unlawfully possessed by the owner.

1       The  person  petitioning  for  the  return  of  his  or  her
2   firearm, ammunition, and firearm parts that could be assembled
3   to make an operable firearm must swear or affirm by affidavit
4   that  he  or  she:  (i)  is  the  lawful  owner  of  the  firearm,
5   ammunition,  and  firearm  parts  that  could  be  assembled  to make
6   an  operable  firearm;  (ii)  shall  not  transfer  the  firearm,
7   ammunition,  and  firearm  parts  that  could  be  assembled  to make
8   an  operable  firearm  to  the  respondent;  and  (iii)  will  store
9   the  firearm,  ammunition,  and  firearm  parts  that  could  be
10  assembled  to  make  an  operable  firearm  in  a  manner  that  the
11  respondent  does  not  have  access  to  or  control  of  the  firearm,
12  ammunition,  and  firearm  parts  that  could  be  assembled  to make
13  an operable firearm.

14      (j)  If  the  court  does  not  issue  a  firearms  restraining
15  order  at  the  hearing,  the  court  shall  dissolve  any  emergency
16  firearms restraining order then in effect.

17      (k)  When  the  court  issues  a  firearms  restraining  order
18  under  this  Section,  the  court  shall  inform  the  respondent  that
19  he  or  she  is  entitled  to  one  hearing  during  the  period  of  the
20  order  to  request  a  termination  of  the  order,  under  Section  45
21  of  this  Act,  and  shall  provide  the  respondent  with  a  form  to
22  request a hearing.

23  (Source:  P.A.  101-81,  eff.  7-12-19;  102-237,  eff.  1-1-22;
24  102-345,  eff.  6-1-22;  102-538,  eff.  8-20-21;  102-813,  eff.
25  5-13-22.)

1     (430 ILCS 67/45)

2     Sec. 45. Termination and renewal.

3     (a) A person subject to a firearms restraining order

4    issued under this Act may submit one written request at any

5    time during the effective period of the order for a hearing to

6    terminate the order.

7      (1) The respondent shall have the burden of proving by

8      a preponderance of the evidence that the respondent does

9      not pose a danger of causing personal injury to himself,

10     herself, or another in the near future by having in his or

11     her custody or control, purchasing, possessing, or

12     receiving a firearm, ammunition, and firearm parts that

13     could be assembled to make an operable firearm.

14      (2) If the court finds after the hearing that the

15     respondent has met his or her burden, the court shall

16     terminate the order.

17     (b) A petitioner may request a renewal of a firearms

18    restraining order at any time within the 3 months before the

19    expiration of a firearms restraining order.

20      (1) A court shall, after notice and a hearing, renew a

21     firearms restraining order issued under this part if the

22     petitioner proves, by clear and convincing evidence, that

23     the respondent continues to pose a danger of causing

24     personal injury to himself, herself, or another in the

25     near future by having in his or her custody or control,

26     purchasing, possessing, or receiving a firearm,

HB5855                          - 35 -          LRB102 29834 RJT 41951 b

1      ammunition, and firearm parts that could be assembled to
2      make an operable firearm.

3          (2)  In  determining  whether  to  renew  a  firearms
4      restraining  order  issued  under  this  Act,  the  court  shall
5      consider  evidence  of  the  facts  identified  in  subsection
6      (e) of Section 40 of this Act and any other evidence of an
7      increased risk for violence.

8          (3)  At  the  hearing,  the  petitioner  shall  have  the
9      burden  of  proving  by  clear  and  convincing  evidence  that
10      the  respondent  continues  to  pose  a  danger  of  causing
11      personal  injury  to  himself,  herself,  or  another  in  the
12      near  future  by  having  in  his  or  her  custody  or  control,
13      purchasing,   possessing,   or   receiving   a   firearm,
14      ammunition,  and  firearm  parts  that  could  be  assembled  to
15      make an operable firearm.

16          (4)  The  renewal  of  a  firearms  restraining  order  issued
17      under  this  Section  shall  be  in  effect  for  <u>one year</u>  ~~6~~
18      ~~months~~,  subject  to  termination  by  further  order  of  the
19      court  at  a  hearing  held  under  this  Section  and  further
20      renewal by further order of the court under this Section.
21  (Source: P.A. 101-81, eff. 7-12-19; 102-345, eff. 6-1-22.)

22      (430 ILCS 67/55)
23      Sec. 55. Data maintenance by law enforcement agencies.
24      (a)  All  sheriffs  shall  furnish  to  the  Illinois  State
25  Police,  daily,  in  the  form  and  detail  the  <u>Illinois State</u>

HB5855                        - 36 -        LRB102 29834 RJT 41951 b

1    Police ~~Department~~ requires, copies of any recorded firearms

2    restraining orders issued by the court, and any foreign orders

3    of protection filed by the clerk of the court, and transmitted

4    to the sheriff by the clerk of the court under Section 50. Each

5    firearms   restraining   order   shall   be   entered   in   the   Law

6    Enforcement Agencies Data System (LEADS) on the same day it is

7    issued   by   the   court.   If   an   emergency   firearms   restraining

8    order was issued in accordance with Section 35 of this Act, the

9    order   shall   be   entered   in   the   Law   Enforcement   Agencies   Data

10   System   (LEADS)   as   soon   as   possible   after   receipt   from   the

11   clerk.

12       (b)  The  Illinois  State  Police  shall  maintain  a  complete

13   and   systematic   record   and   index   of   all   valid   and   recorded

14   firearms   restraining   orders   issued   or   filed   under   this   Act.

15   The   data   shall   be   used   to   inform   all   dispatchers   and   law

16   enforcement   officers   at   the   scene   of   a   violation   of   a   firearms

17   restraining   order   of   the   effective   dates   and   terms   of   any

18   recorded order of protection.

19       (c)  The  data,  records,  and  transmittals  required  under

20   this Section shall pertain to any valid emergency or one-year

21   ~~6-month~~ firearms restraining order, whether issued in a civil

22   or criminal proceeding or authorized under the laws of another

23   state, tribe, or United States territory.

24   (Source: P.A. 101-81, eff. 7-12-19; 102-538, eff. 8-20-21.)


25       Section  20.  The  Wildlife  Code  is  amended  by  changing

HB5855                        - 37 -        LRB102 29834 RJT 41951 b

1   Sections 3.1-5 and 3.1-9 as follows:

2       (520 ILCS 5/3.1-5)

3       Sec. 3.1-5. Apprentice Hunter License Program.

4       (a)  The Department shall establish an Apprentice Hunter
5   License Program.  The purpose of this Program shall be to
6   extend limited hunting privileges, in lieu of obtaining a
7   valid hunting license, to persons interested in learning about
8   hunting sports.

9       (b)  Any resident or nonresident may apply to the
10  Department for an Apprentice Hunter License. The Apprentice
11  Hunter License shall be a non-renewable license that shall
12  expire on the March 31 following the date of issuance.

13      (c)  The Apprentice Hunter License shall entitle the
14  licensee to hunt on private property while supervised by a
15  validly licensed resident or nonresident hunter who is 21
16  years of age or older.

17      (c-5) The Apprentice Hunter License shall entitle the
18  licensee to hunt on public property while supervised by a
19  validly licensed resident or nonresident who is 21 years of
20  age or older and has a hunter education certificate. When the
21  licensee is hunting with a firearm under the supervision of a
22  resident adult who is 21 years of age or older, the adult must
23  also possess a valid Firearm Owner's Identification Card.

24      (d)  In order to be approved for the Apprentice Hunter
25  License, the applicant must request an Apprentice Hunter

HB5855                          - 38 -          LRB102 29834 RJT 41951 b

1    License on a form designated and made available by the

2    Department and submit a $7 fee, which shall be separate from

3    and additional to any other stamp, permit, tag, or license fee

4    that may be required for hunting under this Code. The

5    Department shall adopt suitable administrative rules that are

6    reasonable and necessary for the administration of the

7    program, but shall not require any certificate of competency

8    or other hunting education as a condition of the Apprentice

9    Hunter License.

10   (Source: P.A. 100-638, eff. 1-1-19; 101-444, eff. 6-1-20.)


11       (520 ILCS 5/3.1-9)

12       Sec. 3.1-9. Youth Hunting and Trapping License.

13       (a) Before any youth under 18 years of age shall take or

14   attempt to take any species protected by Section 2.2 of this

15   Code for which an open season is established, he or she shall

16   first procure and possess a valid Youth Hunting and Trapping

17   License. The Youth Hunting and Trapping License shall be a

18   renewable license that shall expire on the March 31 following

19   the date of issuance. The fee for a Youth Hunting and Trapping

20   License is $7.

21       A Youth Hunting and Trapping License shall entitle the

22   licensee to hunt while supervised by an adult who is 21 years

23   of age or older and has a valid Illinois hunting license.

24       A youth licensed under this subsection (a) shall not hunt

25   or carry a hunting device, including, but not limited to, a

HB5855                         - 39 -        LRB102 29834 RJT 41951 b

1    firearm,  bow  and  arrow,  or  crossbow  unless  the  youth  is
2    accompanied by and under the close personal supervision of an
3    adult who is 21 years of age or older and has a valid Illinois
4    hunting  license.  <u>When  the  youth  is  hunting  with  a  firearm</u>
5    <u>under  the  supervision  of  a  resident  adult  who  is  21  years  of</u>
6    <u>age  or  older,  the  adult  must  also  possess  a  valid  Firearm</u>
7    <u>Owner's Identification Card.</u>
8        The Department shall adopt rules for the administration of
9    the  program,  but  shall  not  require  any  certificate  of
10   competency  or  other  hunting  or  trapping  education  as  a
11   condition  of  the  Youth  Hunting  and  Trapping  License.  If  a
12   youth has a valid certificate of competency for hunting from a
13   hunter safety course approved by the Department, he or she is
14   exempt  from  the  supervision  requirements  for  youth  hunters  in
15   this Section.
16       (b) A Youth Hunting and Trapping License shall entitle the
17   licensee to trap while supervised by an adult who is 21 years
18   of age or older and has a valid Illinois trapping license.
19       A  youth  licensed  under  this  Section  shall  not  trap  or
20   carry a hunting device, including, but not limited to, a
21   firearm,  bow  and  arrow,  or  crossbow  unless  the  youth  is
22   accompanied by and under the close personal supervision of an
23   adult who is 21 years of age or older and has a valid Illinois
24   trapping license.
25       The Department shall adopt rules for the administration of
26   the  program,  but  shall  not  require  any  certificate  of

HB5855                        - 40 -        LRB102 29834 RJT 41951 b

1    competency or other trapping education as a condition of the
2    Youth Hunting and Trapping License. If a youth has a valid
3    certificate of competency for trapping from a trapper safety
4    course approved by the Department, then he or she is exempt
5    from the supervision requirements for youth trappers in this
6    Section.
7    (Source: P.A. 100-638, eff. 1-1-19; 100-691, eff. 1-1-19;
8    101-81, eff. 7-12-19.)


9        Section 25. The Criminal Code of 2012 is amended by
10   changing Section 24-1 and by adding Sections 24-1.9 and
11   24-1.10 as follows:


12       (720 ILCS 5/24-1) (from Ch. 38, par. 24-1)
13       Sec. 24-1. Unlawful use of weapons.
14       (a) A person commits the offense of unlawful use of
15   weapons when he knowingly:
16           (1) Sells, manufactures, purchases, possesses or
17       carries any bludgeon, black-jack, slung-shot, sand-club,
18       sand-bag, metal knuckles or other knuckle weapon
19       regardless of its composition, throwing star, or any
20       knife, commonly referred to as a switchblade knife, which
21       has a blade that opens automatically by hand pressure
22       applied to a button, spring or other device in the handle
23       of the knife, or a ballistic knife, which is a device that
24       propels a knifelike blade as a projectile by means of a

1       coil spring, elastic material or compressed gas; or

2           (2) Carries or possesses with intent to use the same

3       unlawfully against another, a dagger, dirk, billy,

4       dangerous knife, razor, stiletto, broken bottle or other

5       piece of glass, stun gun or taser or any other dangerous or

6       deadly weapon or instrument of like character; or

7           (2.5) Carries or possesses with intent to use the same

8       unlawfully against another, any firearm in a church,

9       synagogue, mosque, or other building, structure, or place

10      used for religious worship; or

11          (3) Carries on or about his person or in any vehicle, a

12      tear gas gun projector or bomb or any object containing

13      noxious liquid gas or substance, other than an object

14      containing a non-lethal noxious liquid gas or substance

15      designed solely for personal defense carried by a person

16      18 years of age or older; or

17          (4) Carries or possesses in any vehicle or concealed

18      on or about his person except when on his land or in his

19      own abode, legal dwelling, or fixed place of business, or

20      on the land or in the legal dwelling of another person as

21      an invitee with that person's permission, any pistol,

22      revolver, stun gun or taser or other firearm, except that

23      this subsection (a) (4) does not apply to or affect

24      transportation of weapons that meet one of the following

25      conditions:

26              (i) are broken down in a non-functioning state; or

HB5855                          - 42 -          LRB102 29834 RJT 41951 b

1          (ii) are not immediately accessible; or

2          (iii) are unloaded and enclosed in a case, firearm

3       carrying box, shipping box, or other container by a

4       person who has been issued a currently valid Firearm

5       Owner's Identification Card; or

6          (iv) are carried or possessed in accordance with

7       the Firearm Concealed Carry Act by a person who has

8       been issued a currently valid license under the

9       Firearm Concealed Carry Act; or

10      (5) Sets a spring gun; or

11      (6) Possesses any device or attachment of any kind

12   designed, used or intended for use in silencing the report

13   of any firearm; or

14      (7) Sells, manufactures, purchases, possesses or

15   carries:

16          (i) a machine gun, which shall be defined for the

17       purposes of this subsection as any weapon, which

18       shoots, is designed to shoot, or can be readily

19       restored to shoot, automatically more than one shot

20       without manually reloading by a single function of the

21       trigger, including the frame or receiver of any such

22       weapon, or sells, manufactures, purchases, possesses,

23       or carries any combination of parts designed or

24       intended for use in converting any weapon into a

25       machine gun, or any combination or parts from which a

26       machine gun can be assembled if such parts are in the

1           possession or under the control of a person;

2               (ii) any rifle having one or more barrels less

3           than 16 inches in length or a shotgun having one or

4           more barrels less than 18 inches in length or any

5           weapon made from a rifle or shotgun, whether by

6           alteration, modification, or otherwise, if such a

7           weapon as modified has an overall length of less than

8           26 inches; or

9               (iii) any bomb, bomb-shell, grenade, bottle or

10          other container containing an explosive substance of

11          over one-quarter ounce for like purposes, such as, but

12          not limited to, black powder bombs and Molotov

13          cocktails or artillery projectiles; or

14      (8) Carries or possesses any firearm, stun gun or

15  taser or other deadly weapon in any place which is

16  licensed to sell intoxicating beverages, or at any public

17  gathering held pursuant to a license issued by any

18  governmental body or any public gathering at which an

19  admission is charged, excluding a place where a showing,

20  demonstration or lecture involving the exhibition of

21  unloaded firearms is conducted.

22      This subsection (a)(8) does not apply to any auction

23  or raffle of a firearm held pursuant to a license or permit

24  issued by a governmental body, nor does it apply to

25  persons engaged in firearm safety training courses; or

26      (9) Carries or possesses in a vehicle or on or about

HB5855                          - 44 -          LRB102 29834 RJT 41951 b

1        his or her person any pistol, revolver, stun gun or taser
2        or firearm or ballistic knife, when he or she is hooded,
3        robed or masked in such manner as to conceal his or her
4        identity; or

5            (10) Carries or possesses on or about his or her
6        person, upon any public street, alley, or other public
7        lands within the corporate limits of a city, village, or
8        incorporated town, except when an invitee thereon or
9        therein, for the purpose of the display of such weapon or
10       the lawful commerce in weapons, or except when on his land
11       or in his or her own abode, legal dwelling, or fixed place
12       of business, or on the land or in the legal dwelling of
13       another person as an invitee with that person's
14       permission, any pistol, revolver, stun gun, or taser or
15       other firearm, except that this subsection (a) (10) does
16       not apply to or affect transportation of weapons that meet
17       one of the following conditions:

18               (i) are broken down in a non-functioning state; or
19               (ii) are not immediately accessible; or
20               (iii) are unloaded and enclosed in a case, firearm
21           carrying box, shipping box, or other container by a
22           person who has been issued a currently valid Firearm
23           Owner's Identification Card; or
24               (iv) are carried or possessed in accordance with
25           the Firearm Concealed Carry Act by a person who has
26           been issued a currently valid license under the

1       Firearm Concealed Carry Act.

2       A "stun gun or taser", as used in this paragraph (a)

3   means (i) any device which is powered by electrical

4   charging units, such as, batteries, and which fires one or

5   several barbs attached to a length of wire and which, upon

6   hitting a human, can send out a current capable of

7   disrupting the person's nervous system in such a manner as

8   to render him incapable of normal functioning or (ii) any

9   device which is powered by electrical charging units, such

10  as batteries, and which, upon contact with a human or

11  clothing worn by a human, can send out current capable of

12  disrupting the person's nervous system in such a manner as

13  to render him incapable of normal functioning; or

14      (11) Sells, manufactures, or purchases any explosive

15  bullet. For purposes of this paragraph (a) "explosive

16  bullet" means the projectile portion of an ammunition

17  cartridge which contains or carries an explosive charge

18  which will explode upon contact with the flesh of a human

19  or an animal. "Cartridge" means a tubular metal case

20  having a projectile affixed at the front thereof and a cap

21  or primer at the rear end thereof, with the propellant

22  contained in such tube between the projectile and the cap;

23  or

24      (12) (Blank); or

25      (13) Carries or possesses on or about his or her

26  person while in a building occupied by a unit of

1        government, a billy club, other weapon of like character,

2        or other instrument of like character intended for use as

3        a weapon. For the purposes of this Section, "billy club"

4        means a short stick or club commonly carried by police

5        officers which is either telescopic or constructed of a

6        solid piece of wood or other man-made material; or

7            (14) Manufactures, possesses, sells, or offers to

8        sell, purchase, manufacture, import, transfer, or use:

9                (i) any manual, power-driven, electronic, or any

10            other device that is designed to and functions to

11            increase the rate of fire of a semiautomatic firearm

12            when the device is attached to the firearm;

13                (ii) any part of a semiautomatic firearm or

14            combination of parts that is designed to and functions

15            to increase the rate of fire of a semiautomatic

16            firearm by eliminating the need for the operator of

17            the firearm to make a separate movement for each

18            individual function of the trigger; or

19                (iii) any other device, part, kit, tool,

20            accessory, or combination of parts that is designed to

21            and functions to increase the rate of fire of a

22            semiautomatic firearm above the standard rate of fire

23            for semiautomatic firearms that is not equipped with

24            that device, part, or combination of parts.

25    (b)  Sentence. A person convicted of a violation of

26    subsection 24-1(a)(1) through (5), subsection 24-1(a)(10),

HB5855                          - 47 -        LRB102 29834 RJT 41951 b

1    subsection 24-1(a)(11), or subsection 24-1(a)(13) commits a

2    Class A misdemeanor. A person convicted of a violation of

3    subsection 24-1(a)(8) or 24-1(a)(9) commits a Class 4 felony;

4    a person convicted of a violation of subsection 24-1(a)(6) or

5    24-1(a)(7)(ii) or (iii) commits a Class 3 felony. A person

6    convicted of a violation of subsection 24-1(a)(7)(i) commits a

7    Class 2 felony and shall be sentenced to a term of imprisonment

8    of not less than 3 years and not more than 7 years, unless the

9    weapon is possessed in the passenger compartment of a motor

10   vehicle as defined in Section 1-146 of the Illinois Vehicle

11   Code, or on the person, while the weapon is loaded, in which

12   case it shall be a Class X felony. A person convicted of a

13   second or subsequent violation of subsection 24-1(a)(4),

14   24-1(a)(8), 24-1(a)(9), or 24-1(a)(10) commits a Class 3

15   felony. A person convicted of a violation of subsection

16   24-1(a)(2.5) or 24-1(a)(14) commits a Class 2 felony. The

17   possession of each weapon or device in violation of this

18   Section constitutes a single and separate violation.

19        (c) Violations in specific places.

20        (1) A person who violates subsection 24-1(a)(6) or

21        24-1(a)(7) in any school, regardless of the time of day or

22        the time of year, in residential property owned, operated

23        or managed by a public housing agency or leased by a public

24        housing agency as part of a scattered site or mixed-income

25        development, in a public park, in a courthouse, on the

26        real property comprising any school, regardless of the

HB5855                           - 48 -           LRB102 29834 RJT 41951 b

1          time of day or the time of year, on residential property
2          owned, operated or managed by a public housing agency or
3          leased by a public housing agency as part of a scattered
4          site or mixed-income development, on the real property
5          comprising  any  public  park,  on  the  real  property
6          comprising any courthouse, in any conveyance owned, leased
7          or contracted by a school to transport students to or from
8          school or a school related activity, in any conveyance
9          owned, leased, or contracted by a public transportation
10         agency, or on any public way within 1,000 feet of the real
11         property comprising any school, public park, courthouse,
12         public  transportation  facility,  or  residential  property
13         owned, operated, or managed by a public housing agency or
14         leased by a public housing agency as part of a scattered
15         site or mixed-income development commits a Class 2 felony
16         and shall be sentenced to a term of imprisonment of not
17         less than 3 years and not more than 7 years.

18            (1.5) A person who violates subsection 24-1(a)(4),
19         24-1(a)(9), or 24-1(a)(10) in any school, regardless of
20         the time of day or the time of year, in residential
21         property owned, operated, or managed by a public housing
22         agency or leased by a public housing agency as part of a
23         scattered site or mixed-income development, in a public
24         park, in a courthouse, on the real property comprising any
25         school, regardless of the time of day or the time of year,
26         on residential property owned, operated, or managed by a

1          public housing agency or leased by a public housing agency
2          as part of a scattered site or mixed-income development,
3          on the real property comprising any public park, on the
4          real property comprising any courthouse, in any conveyance
5          owned, leased, or contracted by a school to transport
6          students to or from school or a school related activity,
7          in any conveyance owned, leased, or contracted by a public
8          transportation agency, or on any public way within 1,000
9          feet of the real property comprising any school, public
10         park, courthouse, public transportation facility, or
11         residential property owned, operated, or managed by a
12         public housing agency or leased by a public housing agency
13         as part of a scattered site or mixed-income development
14         commits a Class 3 felony.

15              (2)  A person who violates subsection 24-1(a)(1),
16         24-1(a)(2), or 24-1(a)(3) in any school, regardless of the
17         time of day or the time of year, in residential property
18         owned, operated or managed by a public housing agency or
19         leased by a public housing agency as part of a scattered
20         site or mixed-income development, in a public park, in a
21         courthouse, on the real property comprising any school,
22         regardless of the time of day or the time of year, on
23         residential property owned, operated or managed by a
24         public housing agency or leased by a public housing agency
25         as part of a scattered site or mixed-income development,
26         on the real property comprising any public park, on the

1      real property comprising any courthouse, in any conveyance

2      owned, leased or contracted by a school to transport

3      students to or from school or a school related activity,

4      in any conveyance owned, leased, or contracted by a public

5      transportation agency, or on any public way within 1,000

6      feet of the real property comprising any school, public

7      park, courthouse, public transportation facility, or

8      residential property owned, operated, or managed by a

9      public housing agency or leased by a public housing agency

10      as part of a scattered site or mixed-income development

11      commits a Class 4 felony. "Courthouse" means any building

12      that is used by the Circuit, Appellate, or Supreme Court

13      of this State for the conduct of official business.

14          (3) Paragraphs (1), (1.5), and (2) of this subsection

15      (c) shall not apply to law enforcement officers or

16      security officers of such school, college, or university

17      or to students carrying or possessing firearms for use in

18      training courses, parades, hunting, target shooting on

19      school ranges, or otherwise with the consent of school

20      authorities and which firearms are transported unloaded

21      enclosed in a suitable case, box, or transportation

22      package.

23          (4) For the purposes of this subsection (c), "school"

24      means any public or private elementary or secondary

25      school, community college, college, or university.

26          (5) For the purposes of this subsection (c), "public

1       transportation agency" means a public or private agency
2       that provides for the transportation or conveyance of
3       persons by means available to the general public, except
4       for transportation by automobiles not used for conveyance
5       of the general public as passengers; and "public
6       transportation facility" means a terminal or other place
7       where one may obtain public transportation.

8       (d)  The presence in an automobile other than a public
9   omnibus of any weapon, instrument or substance referred to in
10  subsection (a)(7) is prima facie evidence that it is in the
11  possession of, and is being carried by, all persons occupying
12  such automobile at the time such weapon, instrument or
13  substance is found, except under the following circumstances:
14  (i) if such weapon, instrument or instrumentality is found
15  upon the person of one of the occupants therein; or (ii) if
16  such weapon, instrument or substance is found in an automobile
17  operated for hire by a duly licensed driver in the due, lawful
18  and proper pursuit of his or her trade, then such presumption
19  shall not apply to the driver.

20      (e) Exemptions.

21      (1) Crossbows, Common or Compound bows and Underwater
22      Spearguns are exempted from the definition of ballistic
23      knife as defined in paragraph (1) of subsection (a) of
24      this Section.

25      (2) The provision of paragraph (1) of subsection (a)
26      of this Section prohibiting the sale, manufacture,

HB5855                       - 52 -       LRB102 29834 RJT 41951 b

1        purchase, possession, or carrying of any knife, commonly
2        referred to as a switchblade knife, which has a blade that
3        opens automatically by hand pressure applied to a button,
4        spring or other device in the handle of the knife, does not
5        apply to a person who possesses a currently valid Firearm
6        Owner's Identification Card previously issued in his or
7        her name by the Illinois State Police or to a person or an
8        entity engaged in the business of selling or manufacturing
9        switchblade knives.
10   (Source: P.A. 101-223, eff. 1-1-20; 102-538, eff. 8-20-21.)


11       (720 ILCS 5/24-1.9 new)
12       Sec. 24-1.9. Manufacture, possession, delivery, sale, and
13   purchase of assault weapons, .50 caliber rifles, and .50
14   caliber cartridges.
15       (a) Definitions. In this Section:
16       (1) "Assault pistol" means any of the following or a copy,
17   regardless of the producer or manufacturer:
18            (A) AA Arms AP-9 pistol.
19            (B) Armalite M15 11.5 pistol.
20            (C) Beretta 93R pistol.
21            (D) Bushmaster pistol.
22            (E) Claridge HI-TEC pistol.
23            (F) D Max Industries pistol.
24            (G) EKO Cobra pistol.
25            (H) Encom MK-IV, MP-9, or MP-45 pistol.

HB5855                          - 53 -      LRB102 29834 RJT 41951 b

1            (I) Heckler and Koch MP5K, MP7, SP-89, or VP70 pistol.

2            (J) Holmes MP-83 pistol.

3            (K)  Ingram MAC 10/11 pistol and variations, including

4       the Partisan Avenger and the SWD Cobray.

5            (L)   Intratec  TEC-9/DC-9  pistol  in  any  centerfire

6       variation.

7            (M) P.A.W.S. type pistol.

8            (N) Skorpion pistol.

9            (O)  Spectre  double  action  pistol  (Sile,  F.I.E.,

10      Mitchell).

11           (P) Stechkin automatic pistol.

12           (Q) Steyer tactical pistol.

13           (R) UZI pistol.

14           (S) Weaver Arms Nighthawk pistol.

15           (T) Wilkinson "Linda" pistol.

16      (2) "Assault shotgun or rifle" means any of the following

17   or a copy, regardless of the producer or manufacturer:

18           (A) American Arms Spectre da Semiautomatic carbine.

19           (B) AR10.

20           (C) AR15.

21           (D) AR70.

22           (E) Armalite M15.

23           (F)  Avtomat  Kalashnikov  semiautomatic  rifle  in  any

24      format, including the AK-47 in all forms.

25           (G) Algimec AGM-1 type semi-auto.

26           (H) AR 100 type semi-auto.

1            (I)  AR 180 type semi-auto.

2            (J)  Argentine L.S.R. semi-auto.

3            (K)  Australian Automatic Arms SAR type semi-auto.

4            (L)    Auto-Ordnance    Thompson    M1    and    1927

5    semi-automatics.

6            (M)  Barrett light .50 cal. semi-auto.

7            (N)  Beretta AR70 type semi-auto.

8            (O)  Bushmaster semi-auto rifle.

9            (P)  Calico models M-100 and M-900.

10           (Q)  CIS SR 88 type semi-auto.

11           (R)  Claridge HI TEC C-9 carbines.

12           (S)  Colt AR-15, CAR-15, and all imitations except Colt

13   AR-15 Sporter H-BAR rifle.

14           (T)  Daewoo MAX 1 and MAX 2, aka AR 100, 110C, K-1, and

15   K-2.

16           (U)  Dragunov Chinese made semi-auto.

17           (V)  Famas semi-auto (.223 caliber).

18           (W)  Feather AT-9 semi-auto.

19           (X)  FN LAR and FN FAL assault rifle.

20           (Y)  FNC semi-auto type carbine.

21           (Z)  F.I.E./Franchi LAW 12 and SPAS 12 assault shotgun.

22           (AA) Smith & Wesson M&P 15.

23           (BB) Steyr-AUG-SA semi-auto.

24           (CC) Galil models AR and ARM semi-auto.

25           (DD) Heckler and Koch HK-91 A3, HK-93 A2, HK-94 A2 and

26   A3.

1           (EE) Holmes model 88 shotgun.

2           (FF) Manchester Arms "Commando" MK-45, MK-9.

3           (GG) Mandell TAC-1 semi-auto carbine.

4           (HH) Mossberg model 500 Bullpup assault shotgun.

5           (II) Sterling Mark 6.

6           (JJ) P.A.W.S. carbine.

7           (KK) Ruger mini-14 folding stock model (.223 caliber).

8           (LL) SIG 550/551 assault rifle (.223 caliber).

9           (MM) SKS with detachable magazine.

10          (NN) AP-74 Commando type semi-auto.

11          (OO) Springfield Armory BM-59, SAR-48, G3, SAR-3, M-21

12      sniper rifle, and M1A, excluding the M1 Garand.

13          (PP) Street sweeper assault type shotgun.

14          (QQ) Striker 12 assault shotgun in all formats.

15          (RR) Unique F11 semi-auto type.

16          (SS) Daewoo USAS 12 semi-auto shotgun.

17          (TT) UZI 9mm carbine or rifle.

18          (UU) Valmet M-76 and M-78 semi-auto.

19          (VV) Weaver Arms "Nighthawk" semi-auto carbine.

20          (WW) Wilkinson Arms 9mm semi-auto "Terry".

21      (3) "Assault weapon" means:

22          (A) An assault shotgun or rifle.

23          (B) An assault pistol.

24          (C) A semiautomatic, centerfire rifle that can accept

25      a  detachable  magazine  and  has  at  least  one  of  the

26      following:

1     (i) A folding or telescoping stock.

2     (ii) Any grip of the weapon, including a pistol

3    grip, a thumbhole stock, or any other stock, the use of

4    which would allow an individual to grip the weapon,

5    resulting in any finger on the trigger hand in

6    addition to the trigger finger being directly below

7    any portion of the action of the weapon when firing.

8     (iii) A forward pistol grip.

9     (iv) A flash suppressor.

10     (v) A grenade launcher or flare launcher.

11    (D) A semiautomatic, centerfire rifle that has an

12   overall length of less than 30 inches.

13    (E) A semiautomatic pistol that can accept a

14   detachable magazine and has at least one of the following:

15     (i) An ability to accept a detachable ammunition

16    magazine that attaches at some location outside of the

17    pistol grip.

18     (ii) A threaded barrel capable of accepting a

19    flash suppressor, forward pistol grip or silencer.

20     (iii) A shroud that is attached to, or partially

21    or completely encircles, the barrel and that permits

22    the shooter to fire the firearm without being burned,

23    except a slide that encloses the barrel.

24     (iv) A second hand grip.

25    (F) A semiautomatic shotgun that has both of the

26   following:

HB5855                        - 57 -        LRB102 29834 RJT 41951 b

1          (i) A folding or telescoping stock.

2          (ii) Any grip of the weapon, including a pistol
3      grip, a thumbhole stock, or any other stock, the use of
4      which would allow an individual to grip the weapon,
5      resulting in any finger on the trigger hand in
6      addition to the trigger finger being directly below
7      any portion of the action of the weapon when firing.

8      (G) A semiautomatic shotgun that has the ability to
9  accept a detachable magazine.

10     (H) A shotgun with a revolving cylinder.

11     (I) A semiautomatic pistol with a fixed magazine that
12 can accept more than 10 rounds.

13     (J) A semiautomatic, centerfire rifle that has a fixed
14 magazine that can accept more than 10 rounds.

15 "Assault weapon" does not include:

16     (A) any firearm that:

17          (i) is manually operated by bolt, pump, lever, or
18      slide action;

19          (ii) is an unserviceable firearm or has been made
20      permanently inoperable;

21          (iii) is an antique firearm;

22          (iv) uses rimfire ammunition or cartridges; or

23          (v) has been excluded as an assault weapon in a
24      Department of Natural Resources rule; the Department
25      of Natural Resources shall have the authority to adopt
26      rules to further define exclusions of assault weapon

HB5855                        - 58 -        LRB102 29834 RJT 41951 b

1        types under this Section, so long as the make, model,
2        and caliber of the firearm excluded has a viable
3        application to hunting game and conforms to accepted
4        hunting principles of fair chase; or
5            (B) any air rifle as defined in Section 24.8-0.1
6        of this Code.
7        In this Section, a firearm is considered to have the
8    ability to accept a detachable magazine unless the magazine or
9    ammunition feeding device can only be removed through
10   disassembly of the firearm action.
11       (4) "Assault weapon attachment" means any device capable
12   of being attached to a firearm that is specifically designed
13   for making or converting a firearm into any of the firearms
14   listed in paragraph (1) of this subsection (a).
15       (5) "Antique firearm" has the meaning ascribed to it in 18
16   U.S.C. 921(a)(16).
17       (6) ".50 caliber rifle" means a centerfire rifle capable
18   of firing a .50 caliber cartridge. The term does not include
19   any antique firearm, any shotgun including a shotgun that has
20   a rifle barrel, or any muzzle-loader which uses black powder
21   for hunting or historical reenactments.
22       (7) ".50 caliber cartridge" means a cartridge in .50 BMG
23   caliber, either by designation or actual measurement, that is
24   capable of being fired from a centerfire rifle. The term ".50
25   caliber cartridge" does not include any memorabilia or display
26   item that is filled with a permanent inert substance or that is

HB5855                          - 59 -          LRB102 29834 RJT 41951 b

1    otherwise permanently altered in a manner that prevents ready
2    modification for use as live ammunition or shotgun ammunition
3    with a caliber measurement that is equal to or greater than .50
4    caliber.
5        (8) "Detachable magazine" means an ammunition feeding
6    device that can be removed readily from a firearm without
7    requiring disassembly of the firearm action or without the use
8    of a tool, including a bullet or cartridge.
9        (9) "Locking mechanism" means secured by a device or
10   mechanism, other than the firearm safety, designed to render a
11   firearm temporarily inoperable; or a box or container capable
12   of containing the firearm and that can be securely locked.
13       (b)  The  Illinois  State  Police  shall  take  all  steps
14   necessary to carry out the requirements of this Section within
15   180 days after the effective date of this amendatory Act of the
16   102nd General Assembly.
17       (c) Except as provided in subsections (d), (e), and (g),
18   on or after the effective date of this amendatory Act of the
19   102nd General Assembly, it is unlawful for any person within
20   this  State  to  knowingly  manufacture,  deliver,  sell,  or
21   purchase or cause to be manufactured, delivered, sold, or
22   purchased or cause to be possessed by another, an assault
23   weapon, assault weapon attachment, .50 caliber rifle, or .50
24   caliber cartridge.
25       (d) Except as otherwise provided in subsections (e) and
26   (f), 300 days after the effective date of this amendatory Act

HB5855                        - 60 -        LRB102 29834 RJT 41951 b

1   of the 102nd General Assembly, it is unlawful for any person

2   within this State to knowingly possess an assault weapon, .50

3   caliber rifle, or .50 caliber cartridge.

4        (e) This Section does not apply to a person who possessed

5   an  assault  weapon  or  .50  caliber  rifle  prohibited  by

6   subsection (d) of this Section before the effective date of

7   this amendatory Act of the 102nd General Assembly, if the

8   person has provided in a registration affidavit, under oath or

9   affirmation  and  in  the  form  and  manner  prescribed  by  the

10  Illinois State Police on or after 180 days after the effective

11  date of this amendatory Act of the 102nd General Assembly but

12  within  300  days  after  the  effective  date  of  this  amendatory

13  Act of the 102nd General Assembly:

14           (1) the affiant's name;

15           (2) the affiant's date of birth;

16           (3) the affiant's Firearm Owner's Identification Card

17       number;

18           (4) the make, model, caliber, and serial number of the

19       weapon; and

20           (5) proof of a locking mechanism that properly fits

21       the weapon, in the form of a statement that the weapon is

22       owned by the person submitting the affidavit and that the

23       affiant owns a locking mechanism for the weapon.

24       The affidavit form shall include the following statement

25  printed in bold type: "Warning: Entering false information on

26  this form is punishable as perjury under Section 32-2 of the

HB5855                    - 61 -      LRB102 29834 RJT 41951 b

1    Criminal Code of 2012."

2        Beginning 300 days after the effective date of this
3    amendatory Act of the 102nd General Assembly, the person with
4    a registered assault weapon or .50 caliber rifle may transfer
5    the assault weapon or .50 caliber rifle only to an heir, an
6    individual residing in another state maintaining it in another
7    state, or a dealer licensed as a federal firearms dealer under
8    Section 923 of the federal Gun Control Act of 1968. Within 10
9    days after transfer of the weapon except to an heir, the person
10   shall notify the Illinois State Police of the name and address
11   of the transferee and comply with the requirements of
12   subsection (b) of Section 3 of the Firearm Owners
13   Identification Card Act. The person to whom the weapon is
14   transferred shall, within 60 days of the transfer, complete an
15   affidavit and pay the required registration fee under this
16   Section. A person to whom the weapon is transferred may
17   transfer it only as provided in this subsection.

18       (f) For the purpose of registration required under
19   subsection (e), the Illinois State Police shall assess a
20   registration fee of $25 per person to the owner of an assault
21   weapon and $25 per person to the owner of a .50 caliber rifle.
22   The fees shall be deposited into the State Police Firearm
23   Services Fund. If a person owns more than one assault weapon or
24   more than one .50 caliber rifle, the person shall only pay one
25   registration fee.

26       (g) This Section does not apply to or affect any of the

HB5855                        - 62 -        LRB102 29834 RJT 41951 b

1    following:

2         (1) Peace officers, as defined in Section 2-13 of this
3    Code, while performing their official duties or while
4    traveling to or from their places of duty.

5         (2) Acquisition and possession by a local law
6    enforcement agency for the purpose of equipping the
7    agency's peace officers as defined in paragraph (1) of
8    this subsection (g).

9         (3) Wardens, superintendents, and keepers of prisons,
10   penitentiaries, jails, and other institutions for the
11   detention of persons accused or convicted of an offense.

12        (4) Members of the Armed Services or Reserve Forces of
13   the United States or the Illinois National Guard, while
14   performing their official duties or while traveling to or
15   from their places of duty.

16        (5) Any company that employs armed security officers
17   in this State at a nuclear energy, storage, weapons, or
18   development site or facility regulated by the federal
19   Nuclear Regulatory Commission and any person employed as
20   an armed security force member at a nuclear energy,
21   storage, weapons, or development site or facility
22   regulated by the federal Nuclear Regulatory Commission who
23   has completed the background screening and training
24   mandated by the rules and regulations of the federal
25   Nuclear Regulatory Commission and while performing
26   official duties.

1          (6) Manufacture, transportation, or sale of weapons,

2      attachments, or ammunition to persons authorized under

3      subdivisions (1) through (5) of this subsection (g) to

4      possess those items.

5          (7) Possession of any firearm if that firearm is

6      sanctioned by the International Olympic Committee and by

7      USA Shooting, the national governing body for

8      international shooting competition in the United States,

9      but only when the firearm is in the actual possession of an

10     Olympic target shooting competitor or target shooting

11     coach for the purpose of storage, transporting to and from

12     Olympic target shooting practice or events if the firearm

13     is broken down in a nonfunctioning state, is not

14     immediately accessible, or is unloaded and enclosed in a

15     firearm case, carrying box, shipping box, or other similar

16     portable container designed for the safe transportation of

17     firearms, and when the Olympic target shooting competitor

18     or target shooting coach is engaging in those practices or

19     events. For the purposes of this paragraph (8), "firearm"

20     has the meaning provided in Section 1.1 of the Firearm

21     Owners Identification Card Act.

22         (8) Any nonresident who transports, within 24 hours, a

23     weapon for any lawful purpose from any place where the

24     nonresident may lawfully possess and carry that weapon to

25     any other place where the nonresident may lawfully possess

26     and carry that weapon if, during the transportation, the

1     weapon  is  unloaded,  and  neither  the  weapon  nor  any

2     ammunition being transported is readily accessible or is

3     directly accessible from the passenger compartment of the

4     transporting vehicle. In the case of a vehicle without a

5     compartment  separate  from  the  driver's  compartment,  the

6     weapon  or  ammunition  shall  be  contained  in  a  locked

7     container other than the glove compartment or console.

8         (9) Possession of a weapon at an event taking place at

9     the  World  Shooting  and  Recreational  Complex  at  Sparta,

10    only while engaged in the legal use of the weapon, or while

11    traveling to or from that location if the weapon is broken

12    down  in  a  nonfunctioning  state,  is  not  immediately

13    accessible, or is unloaded and enclosed in a firearm case,

14    carrying  box,  shipping  box,  or  other  similar  portable

15    container  designed  for  the  safe  transportation  of

16    firearms.

17        (10)  Possession  of  a  weapon  only  for  hunting  use

18    expressly  permitted  under  the  Wildlife  Code,  or  while

19    traveling  to  or  from  a  location  authorized  for  this

20    hunting  use  under  the  Wildlife  Code  if  the  weapon  is

21    broken down in a nonfunctioning state, is not immediately

22    accessible, or is unloaded and enclosed in a firearm case,

23    carrying  box,  shipping  box,  or  other  similar  portable

24    container  designed  for  the  safe  transportation  of

25    firearms.

26        (11)  The  manufacture,  transportation,  possession,

1    sale, or rental of blank-firing assault weapons and .50

2    caliber rifles, or the weapon's respective attachments, to

3    persons authorized or permitted, or both authorized and

4    permitted, to acquire and possess these weapons or

5    attachments for the purpose of rental for use solely as

6    props for a motion picture, television, or video

7    production or entertainment event.

8    (h) Sentence.

9    (1) A person who knowingly manufactures, delivers, sells,

10   purchases, or possesses or causes to be manufactured,

11   delivered, sold, purchased, or possessed an assault weapon in

12   violation of this Section commits a Class 3 felony for a first

13   violation and a Class 2 felony for a second or subsequent

14   violation or for the possession or delivery of 2 or more of

15   these weapons at the same time.

16   (2) A person who knowingly manufactures, delivers, sells,

17   purchases, or possesses or causes to be manufactured,

18   delivered, sold, purchased, or possessed in violation of this

19   Section an assault weapon attachment commits a Class 4 felony

20   for a first violation and a Class 3 felony for a second or

21   subsequent violation.

22   (3) A person who knowingly manufactures, delivers, sells,

23   purchases, or possesses or causes to be manufactured,

24   delivered, sold, purchased, or possessed in violation of this

25   Section a .50 caliber rifle commits a Class 3 felony for a

26   first violation and a Class 2 felony for a second or subsequent

HB5855                         - 66 -         LRB102 29834 RJT 41951 b

1    violation or for the possession or delivery of 2 or more of

2    these weapons at the same time.

3         (4) A person who knowingly manufactures, delivers, sells,

4    purchases, or possesses or causes to be manufactured,

5    delivered, sold, purchased, or possessed in violation of this

6    Section a .50 caliber cartridge commits a Class A misdemeanor.

7         (5) Any other violation of this Section is a Class A

8    misdemeanor.


9         (720 ILCS 5/24-1.10 new)

10        Sec. 24-1.10. Manufacture, delivery, or sale of large

11   capacity ammunition feeding devices.

12        (a) In this Section:

13   "Large capacity ammunition feeding device" means:

14        (1) a magazine, belt, drum, feed strip, or similar

15   device that has a capacity of, or that can be readily

16   restored or converted to accept, more than 10 rounds of

17   ammunition; or

18        (2) any combination of parts from which a device

19   described in paragraph (1) can be assembled.

20   "Large capacity ammunition feeding device" does not

21   include an attached tubular device designed to accept, and

22   capable of operating only with, .22 caliber rimfire

23   ammunition. "Large capacity ammunition feeding device" does

24   not include a tubular magazine that is contained in a

25   lever-action firearm or any device that has been made

HB5855                    - 67 -        LRB102 29834 RJT 41951 b

1    permanently inoperable.

2        (b) Except as provided in subsection (c), it is unlawful

3    for any person within this State to knowingly manufacture,

4    deliver, sell, purchase, or possess or cause to be

5    manufactured, delivered, sold, or purchased a large capacity

6    ammunition feeding device.

7        (c) This Section does not apply to or affect any of the

8    following:

9        (1) Peace officers as defined in Section 2-13 of this

10       Code while performing their official duties or while

11       traveling to or from their places of duty.

12       (2) A local law enforcement agency for the purpose of

13       equipping the agency's peace officers as defined in

14       paragraph (1) of this subsection (c).

15       (3) Wardens, superintendents, and keepers of prisons,

16       penitentiaries, jails, and other institutions for the

17       detention of persons accused or convicted of an offense.

18       (4) Members of the Armed Services or Reserve Forces of

19       the United States or the Illinois National Guard, while

20       their official duties or while traveling to or from their

21       places of duty.

22       (5) Any company that employs armed security officers

23       in this State at a nuclear energy, storage, weapons, or

24       development site or facility regulated by the federal

25       Nuclear Regulatory Commission and any person employed as

26       an armed security force member at a nuclear energy,

HB5855                          - 68 -          LRB102 29834 RJT 41951 b

1    storage, weapons, or development site or facility
2    regulated by the federal Nuclear Regulatory Commission who
3    has completed the background screening and training
4    mandated by the rules and regulations of the federal
5    Nuclear Regulatory Commission and while performing
6    official duties.

7        (6) Sale of large capacity ammunition feeding devices
8    to persons authorized under subdivisions (1) through (5)
9    of this subsection (c) to possess those devices.

10       (7) Sale or rental of large capacity ammunition
11   feeding devices for blank-firing assault weapons and .50
12   caliber rifles, to persons authorized or permitted, or
13   both authorized and permitted, to acquire these devices
14   for the purpose of rental for use solely as props for a
15   motion picture, television, or video production or
16   entertainment event.

17   (d) Sentence. A person who knowingly delivers, sells,
18   purchases, or causes to be delivered, sold, or purchased in
19   violation of this Section a large capacity ammunition feeding
20   device capable of holding more than 10 rounds of ammunition
21   commits a Class 3 felony for a first violation and a Class 2
22   felony for a second or subsequent violation or for delivery or
23   possession of 2 or more of these devices at the same time. Any
24   other violation of this Section is a Class A misdemeanor.

25   Section 99. Effective date. This Act takes effect upon
26   becoming law.

HB5855                          - 69 -     LRB102 29834 RJT 41951 b

1                              INDEX
2                 Statutes amended in order of appearance

3     20 ILCS 2605/2605-35        was 20 ILCS 2605/55a-3
4     20 ILCS 2605/2605-51.1
5     430 ILCS 65/2               from Ch. 38, par. 83-2
6     430 ILCS 65/4               from Ch. 38, par. 83-4
7     430 ILCS 65/8               from Ch. 38, par. 83-8
8     430 ILCS 67/10
9     430 ILCS 67/40
10    430 ILCS 67/45
11    430 ILCS 67/55
12    520 ILCS 5/3.1-5
13    520 ILCS 5/3.1-9
14    720 ILCS 5/24-1             from Ch. 38, par. 24-1
15    720 ILCS 5/24-1.9 new
16    720 ILCS 5/24-1.10 new