IN THE DISTRICT OF THE UNITED STATES OF AMERICA

FOR THE SOUTHERN DISTRICT OF ILLINOIS

```
------------------------------------------------------------------
DANE HARREL, et al.,                  |
                                      |
                 Plaintiffs,          |
                                      |
v.                                    | Case No. 23-cv-141-SPM
                                      |
KWAME RAOUL, et al.,                  |
                                      |
                 Defendants.          |
------------------------------------------------------------------
FEDERAL FIREARMS LICENSEES OF         |
ILLINOIS, et al.,                     |
                                      |
                 Plaintiffs,          |
                                      | Case No. 23-cv-215-SPM
v.                                    |
                                      |
JAY ROBERT "J.B." PRITZKER, et al.,   |
                                      |
                 Defendants.          |
------------------------------------------------------------------
CALEB BARNETT, et al.,                |
                                      |
                 Plaintiffs,          |
                                      |
v.                                    | Case No. 23-cv-209-SPM
                                      |
KWAME RAOUL, et al.,                  |
                                      |
                 Defendants.          |
------------------------------------------------------------------
JEREMY W. LANGLEY, et al.,            |
                                      |
                 Plaintiffs,          |
                                      |
v.                                    | Case No. 23-cv-192-SPM
                                      |
BRENDAN KELLY, et al.,                |
                                      |
                 Defendants.          |
------------------------------------------------------------------
        Transcript of Status Conference/Motion Hearing
                      February 24, 2023
------------------------------------------------------------------
```

```
-----------------------------------------------------------------
            Transcript of Status Conference/Motion Hearing
                        February 24, 2023

            Proceedings held by Zoom Videoconference before
                    the Honorable STEPHEN P. McGLYNN,
                 United States District Judge Presiding

                        East St. Louis, Illinois
-----------------------------------------------------------------
```

REPORTED BY:        **HANNAH JAGLER**, RMR, CRR, FCRR
                    Official Court Reporter
                    750 Missouri Avenue
                    East St. Louis, Illinois 62201
                    618-482-9481
                    Hannah_Jagler@ilsd.uscourts.gov


          Following proceedings recorded by mechanical stenography;
            transcript produced by computer-aided transcription.

**APPEARANCES**:        **(Case No. 23-cv-141-SPM)**


FOR PLAINTIFFS:        **DAVID G. SIGALE**
                       Law Firm of David G. Sigale, P.C.
                       430 West Roosevelt Road
                       Wheaton, Illinois 60187
                       630-452-4547
                       Dsigale@sigalelaw.com

FOR DEFENDANTS:        **CHRISTOPHER GRAHAM WELLS**
                       Illinois Attorney General's Office
                       Public Interest Division
                       100 West Randolph Street
                       Chicago, Illinois 60601
                       312-814-1134
                       Christopher.wells@ilag.gov

                       **LAURA BAUTISTA**
                       Illinois Attorney General's Office
                       500 South Second Street
                       Springfield, Illinois 62701
                       217-557-0261
                       Laura.Bautista@ilag.gov

                       **THOMAS R. YSURSA**
                       Becker, Hoerner & Ysursa, P.C.
                       Generally Admitted
                       5111 West Main Street
                       Belleville, Illinois 62226
                       618-235-0020
                       Try@bhylaw.com

                       **JAMES E. GODFREY, JR.**
                       Evans & Dixon, LLC
                       211 North Broadway, Suite 2500
                       St. Louis, Missouri 63102
                       314-552-4001
                       Jgodfrey@evans-dixon.com

                       **TROY OWENS**
                       McHenry County State's Attorney's Office
                       2200 North Seminary Avenue, Suite 150
                       Woodstock, Illinois 60098
                       815-334-4159
                       Tcowens@mchenrycountyil.gov

**<u>APPEARANCES</u>**:        **(Case No. 23-cv-215-SPM)**

FOR PLAINTIFFS:      **MARK L. SHAW**
                     **JENNIFER CRAIGMILE NEUBAUER**
                     Shaw Law Ltd.
                     33 North County Street, Suite 300
                     Waukegan, Illinois 60085
                     847-244-4696
                     Mlshaw@shawlawltd.com
                     Jcneubauer@shawlawltd.com

                     **CARL D. MICHEL**
                     **KONSTADINOS T. MOROS**
                     Michel & Associates, P.C.
                     180 East Ocean Boulevard, Suite 200
                     Long Beach, California 90802
                     562-216-4444
                     Cmichel@michellawyers.com
                     Kmoros@michellawyers.com

FOR DEFENDANTS:      **CHRISTOPHER GRAHAM WELLS**
                     Illinois Attorney General's Office
                     Public Interest Division
                     100 West Randolph Street
                     Chicago, Illinois 60601
                     312-814-1134
                     Christopher.wells@ilag.gov

                     **LAURA BAUTISTA**
                     Illinois Attorney General's Office
                     500 South Second Street
                     Springfield, Illinois 62701
                     217-557-0261
                     Laura.Bautista@ilag.gov

**APPEARANCES**:      (Case No. 23-cv-209-SPM)


FOR PLAINTIFFS:      **ERIN E. MURPHY**
                     **MATTHEW ROWEN**
                     Clement & Murphy, PLLC
                     706 Duke Street
                     Alexandria, Virginia 22314
                     202-742-8900
                     Erin.murphy@clementmurphy.com
                     Matthew.rowen@clementmurphy.com

                     **DAVID G. SIGALE**
                     Law Firm of David G. Sigale, P.C.
                     430 West Roosevelt Road
                     Wheaton, Illinois 60187
                     630-452-4547
                     Dsigale@sigalelaw.com

                     **THOMAS G. MAAG**
                     **PETER J. MAAG**
                     Maag Law Firm, LLC
                     22 West Lorena Avenue
                     Wood River, Illinois 62095
                     618-216-5291
                     Tmaag@maaglaw.com
                     Lawmaag@gmail.com

FOR DEFENDANTS:      **CHRISTOPHER GRAHAM WELLS**
                     Illinois Attorney General's Office
                     Public Interest Division
                     100 West Randolph Street
                     Chicago, Illinois 60601
                     312-814-1134
                     Christopher.wells@ilag.gov

                     **LAURA BAUTISTA**
                     Illinois Attorney General's Office
                     500 South Second Street
                     Springfield, Illinois 62701
                     217-557-0261
                     Laura.Bautista@ilag.gov

                     **THOMAS R. YSURSA**
                     Becker, Hoerner & Ysursa, P.C.
                     Generally Admitted
                     5111 West Main Street
                     Belleville, Illinois 62226
                     618-235-0020
                     Try@bhylaw.com

**APPEARANCES**:      (Case No. 23-cv-209-SPM)

FOR DEFENDANTS:      **JAMES E. GODFREY, JR.**
Evans & Dixon, LLC
211 North Broadway, Suite 2500
St. Louis, Missouri 63102
314-552-4001
Jgodfrey@evans-dixon.com

**KEITH B. HILL**
Heyl, Royster, Voelker & Allen, PC
105 West Vandalia Street,
Mark Twain Plaza III, Suite 100
Edwardsville, Illinois 62025
618-656-4646
Khill@heylroyster.com

**APPEARANCES**:      (Case No. 23-cv-192-SPM)

FOR PLAINTIFFS:      **PETER J. MAAG**
**THOMAS G. MAAG**
Maag Law Firm, LLC
22 West Lorena Avenue
Wood River, Illinois 62095
618-216-5291
Lawmaag@gmail.com
Tmaag@maaglaw.com

FOR DEFENDANTS:      **CHRISTOPHER GRAHAM WELLS**
Illinois Attorney General's Office
Public Interest Division
100 West Randolph Street
Chicago, Illinois 60601
312-814-1134
Christopher.wells@ilag.gov

**LAURA BAUTISTA**
Illinois Attorney General's Office
500 South Second Street
Springfield, Illinois 62701
217-557-0261
Laura.Bautista@ilag.gov

**KEITH B. HILL**
Heyl, Royster, Voelker & Allen, PC
105 West Vandalia Street,
Mark Twain Plaza III, Suite 100
Edwardsville, Illinois 62025
618-656-4646
Khill@heylroyster.com

1          **<u>TRANSCRIPT OF PROCEEDINGS</u>**

2          (Proceedings commenced at 10:05 a.m.)

3          THE COURTROOM DEPUTY:  United States District

4   Court for the Southern District of Illinois is now in session,

5   the Honorable Stephen McGlynn presiding.

6          Court calls Case Number 23-141, Dane Harrel, et

7   al., v. Kwame Raoul, et al.; Case Number 23-192, Jeremy Langley,

8   et al., v. Brendan Kelly, et al.; Case Number 23-209, Caleb

9   Barnett, et al., v. Kwame Raoul, et al.; And 23-215, Federal

10  Firearms Licensees of Illinois, et al., v. Jay Robert Pritzker,

11  et al.  Case is called for a status hearing.

12         Parties, if you would please identify yourselves

13  for the record.

14         THE COURT:  Let's start with the lawyers who are

15  lawyers of record in Harrel v. Raoul.

16         MR. SIGALE:  Good morning, Your Honor.  David

17  Sigale, S-i-g-a-l-e, on behalf of the Plaintiffs in Harrel, 141.

18         MR. WELLS:  Good morning, Your Honor.  This is

19  Christopher Wells from the Illinois Attorney General's Office on

20  behalf of the state defendants in that case, Attorney General

21  Raoul and Governor Pritzker and ISP Director Kelly.

22         MS. BAUTISTA:  Good morning, Your Honor.  Laura

23  Bautista from the Illinois Attorney General's Office also on

24  behalf of the state defendants, Attorney General Raoul,

25  Governor Pritzker, and Director Kelly.

```
1              THE COURT:  All right.  And then we have
2    Defendants Gomric and Watson.
3              MR. YSURSA:  Thomas Ysursa for Defendants Gomric
4    and Watson.
5              THE COURT:  And then Defendant Jeremy Walker and
6    Sheriff Peters, Randolph County.
7              MR. GODFREY:  Judge, James Godfrey on behalf of
8    those defendants.
9              THE COURT:  All right.  And then once again, we
10   have Defendants Patrick Kenneally and Sheriff Tadelman of
11   McHenry County.  Anyone appearing on their behalf?
12             THE COURTROOM DEPUTY:  Judge, actually getting
13   Mr. Owens in, admitting him right now.
14             THE COURT:  All right.
15             MR. SIGALE:  Your Honor, Mr. Owens is --
16             MR. OWENS:  Your Honor, I apologize for the
17   delay.  We had an ice storm yesterday and my wi-fi has been
18   weird.  I'm actually doing this through my cell phone.  I
19   apologize for that.
20             THE COURT:  Not a problem.  I had a case where
21   someone was apologizing for being 15 minutes late.  And after a
22   long heartfelt apology, I had to point out to him that I had
23   been 12 minutes late, so it was not that big a deal in the grand
24   scheme of things.  So you haven't missed anything.
25             Just go ahead and identify your record --
```

1    yourself for the record.

2                    MR. OWENS:  Your Honor, my name is Troy Owens.  I

3    represent the McHenry County State's Attorney's Office, Patrick

4    Kenneally, and Sheriff Rob Tadelman in McHenry County.

5                    THE COURT:  All right.  Next we have Langley v.

6    Brendan Kelly, et al.  Who's appearing for Plaintiffs?

7                    MR. T. MAAG:  Thomas Maag for Plaintiffs.

8                    MR. P. MAAG:  Peter Maag for Plaintiffs.

9                    THE COURT:  All right.  And then for Defendant

10   Kelly?

11                   MR. WELLS:  Your Honor, Christopher Wells from

12   the Attorney General's Office on behalf of Defendant Kelly.

13                   MS. BAUTISTA:  Also Laura Bautista for Defendant

14   Kelly from the Illinois Attorney General's Office.

15                   THE COURT:  And then in this case, we also have

16   Defendant Shaner, Crawford County.

17                   MR. HILL:  Good morning, Your Honor.  Keith Hill

18   on behalf of Crawford County, Cole Shaner.

19                   THE COURT:  All right.  Next case, Barnett v.

20   Raoul.  Who's appearing for Plaintiff?

21                   MS. MURPHY:  Good morning, Your Honor.  Erin

22   Murphy on behalf of Plaintiffs.

23                   MR. ROWEN:  Good morning, Your Honor.  Matthew

24   Rowen on behalf of Plaintiffs as well.

25                   THE COURT:  All right.  And of course Christopher

1    and Laura, you're representing the defendants in that case as

2    well.

3                   And then finally Federal Firearms Licensees of

4    Illinois v. Pritzker.  Who's on for Plaintiffs?

5                   MR. SHAW:  Mark Shaw on behalf of plaintiffs.

6                   MR. MICHEL:  And Carl Michel on behalf of

7    Plaintiffs as well, Your Honor.

8                   MS.  NEUBAUER:  Jennifer Neubauer on behalf of

9    Plaintiffs, Your Honor.

10                   MR. MOROS:  And Konstadinos Moros on behalf of

11   Plaintiffs.  Good morning, Your Honor.

12                   THE COURT:  All right.  Anyone on behalf of Sean

13   Brady, his firm?  Anybody on for Jasmine Young?  Did you already

14   announce?  There's so many.

15                   MR. MICHEL:  Sean Brady won't be appearing today,

16   Your Honor.  We have me and Kostas covering.

17                   THE COURT:  All right.  And again in that case,

18   we have Mr. Wells and Ms. Bautista.  All right.

19                   I set this for a hearing because I did receive

20   your stipulation, your proposed stipulation and order.  And I

21   wanted to just talk through that for a little bit and get an

22   idea of what we need to do to get this case moving forward.

23                   Of course our local rules state that reply briefs

24   are not favored and are allowed only for exceptional

25   circumstances, and that surreply briefs are never allowed.  And

1    I know that in the proposal, the proposed order, there is a

2    notion that there could be up to 80 pages in reply briefs filed

3    to the government -- the defendant's response to the request for

4    injunctive relief.

5              Who for Plaintiffs wants to tell me why it's --

6    these are exceptional circumstances?

7              MR. MICHEL:  Well, I guess I could weigh in on

8    that, Your Honor.  I've kind of --

9              THE COURT:  So identify yourself for the record.

10             MR. MICHEL:  Carl Michel appearing for the FFL

11   Illinois Plaintiffs.

12             THE COURT:  All right.

13             MR. MICHEL:  I was the one who sort of wrangled

14   the cats to put that -- coordinate that stipulation and I want

15   to thank all counsel for their cooperative efforts to try and

16   come up with that.

17             The reason that we think *Hayes* limitations and

18   the reply brief probably need to be -- there needs to be an

19   exception to local rules is the -- our motion for preliminary --

20   all of our motions for preliminary injunction kind of set the

21   stage, but then it's the state's -- assuming that the state

22   agrees, the state's burden to establish historical analogs that

23   would justify the state's laws.  And so we expect if it's

24   anything like what's been filed in some other states in other

25   parts of the country, that that will be fairly voluminous, will

1    include expert declarations, perhaps some exhibits.  I know the

2    Court has asked for sort of a pictorial exhibit.  And so that is

3    something that the plaintiffs are going to need an opportunity

4    to rebut because most of that stuff will be new.

5              We won't -- you know, it will be their burden.

6    It will have to rebut that burden.  So we attempted to set it up

7    so that the defendants -- excuse me, the plaintiffs can divvy up

8    that 80 pages any way they want, and maybe we won't need it all,

9    but we don't know what we're going to see from the defendants'

10   opposition.  So to make sure we had enough room, we allocated

11   that much.  But that's in the aggregate.  That's a total of

12   80 pages between four briefs.

13             The idea -- one side, 20 pages each.  And then

14   since we don't want to say the same thing four times, the

15   plaintiffs can sort of allocate some more of their pages to

16   another plaintiff and just join their opposition, if that makes

17   sense, once we all meet and confer and see what the defendants

18   submit.

19             MR. SIGALE:  If I may add to that very briefly,

20   Your Honor.  David Sigale for the Harrel plaintiffs.  The

21   defendants -- the state defendants actually filed a motion for

22   extension a couple weeks ago, which the Court has already ruled

23   on.  And as part of the basis for their motion, the state

24   defendants flat out stated that they were already looking to

25   retain at least two expert witnesses that they name, and then

1    stated that they plan to retain several more.  So based on that,

2    just to further what Mr. Michel said, based on what we believe

3    is coming, we would like that opportunity to respond to that,

4    and that's why the reply briefs we believe are warranted in this

5    circumstance.

6              THE COURT:  All right.  It's my opinion that

7    these cases ought to be consolidated for purposes of hearing an

8    oral argument if it's requested.  Anybody have an objection or

9    reason they want to express why these cases should not be

10   consolidated?

11             MR. MICHEL:  Could I ask a question, Your Honor?

12   When you say "consolidated," I think four cases combined into

13   one as opposed to coordinated, which would still be four

14   separate cases but managed on the Court's docket as, you know,

15   on the same -- for all the same hearing dates.  Am I missing a

16   distinction or drawing a falsehood?

17             THE COURT:  Anybody want to be heard on that?  My

18   intention -- it's my intention -- no one's requested oral

19   argument.  Let's get -- let's do this.  Does anybody expect

20   there to be an evidentiary hearing on this where witnesses are

21   called and witnesses are cross-examined?

22             MR. WELLS:  So, Your Honor, I can speak on behalf

23   of the state.  I think we would of course be willing to do that

24   if the Court would appreciate it, if you would find it necessary

25   after you see our papers.  Our present intention is to argue

1    this on the papers with our declarations.  To the extent the

2    Court wants to hear from our experts in person, we're of course

3    happy to do that, but our intention is to proceed on the papers.

4              MR. MICHEL:  I think I can speak for all

5    plaintiffs based on conversations I had in negotiating the stip,

6    that that's our hope too.  We don't --

7              THE COURT:  All right.  And again --

8              MR. MICHEL:  Up to the Court.

9              THE COURT:  Again, we have at least a dozen

10   lawyers on, so any time you speak, so that my court reporter can

11   get it correct, you should identify who's speaking.

12             MR. OWENS:  Your Honor, may I ask --

13             THE COURT:  Wait, the last speaker was --

14             MR. MICHEL:  Carl Michel, Your Honor.

15             THE COURT:  Mr. Owens, you wanted to say

16   something?

17             MR. OWENS:  Yes, Your Honor.  In terms of

18   consolidating the pleadings and the filings, to me, I just want

19   to be clear, would each of the litigants be permitted to file

20   their own brief?  I mean, for instance, I have a very strong

21   suspicion that my brief is going to be almost polar opposite of

22   the state defendants' brief, and I don't know that -- we're also

23   both in the stage in litigation, where, you know, Plaintiffs

24   were consolidated and had to file a consolidated brief.  There's

25   going to be no way of reconciling how my office responds to how

1    the state defendants respond.  So would we be permitted to file

2    our own briefs?

3                MR. WELLS:  Your Honor, if I could speak to that.

4    This is Chris Wells from the Attorney General's Office.  I'm

5    happy to address it if the Court would allow me.

6                THE COURT:  Please proceed.

7                MR. WELLS:  So I understand Mr. Owens'

8    perspective.  We certainly -- the brief that we are going to be

9    filing is going to be on behalf of the state-level defendants,

10   so they're a little bit different from case to case.  But it

11   will be the attorney general, ISP Director Kelly, and

12   Governor Pritzker.  Certainly if there are state's attorneys who

13   would like to join portions of that, they are welcome to do

14   that.  We're happy to have those conversations.

15               As for Mr. Kenneally, he can -- we wouldn't have

16   an objection to him filing a brief.  I can tell Your Honor that

17   he has a separate lawsuit pending against the attorney general

18   on this issue in the Northern District, where we'll be briefing

19   both sides of this issue there.  So just for the Court's

20   awareness, that's our perspective.

21               THE COURT:  Does anybody anticipate requesting

22   oral argument?

23               MR. T. MAAG:  Yes, for Langley.

24               THE COURT:  Okay.  Anybody else?

25               MR. SIGALE:  David Sigale for Harrel.  I had

1    anticipated an oral argument of some sort as well.

2              MS. MURPHY:  Erin Murphy for the Barnett

3    Plaintiffs.  You know, we basically defer to Your Honor on

4    whether you think oral argument would be helpful.  We're very

5    happy to do that.  If you're comfortable with ruling on the

6    papers, we're happy with that as well.

7              MR. MICHEL:  Carl Michel for the FFL Illinois

8    Plaintiffs.  I join Ms. Murphy's sentiments.

9              MR. WELLS:  Your Honor, this is Christopher Wells

10   from the Attorney General's Office.  We share the same position

11   as Ms. Murphy.  If it would benefit the Court, we're happy to do

12   it, but we don't intend to make the request on our own.

13             MR. SIGALE:  And okay, David Sigale again for

14   Harrel.  Yes, I guess to clarify, I would agree with that

15   sentiment.  If the Court wishes oral argument, we certainly

16   would be ready and of course willing to do that.  If the Court

17   doesn't want it, we're not going to -- we're not going to insist

18   over the Court's wishes of course.

19             THE COURT:  All right.  For purposes of

20   consolidation, there's going to be a briefing schedule that

21   applies to all parties.  If there's oral arguments, applies to

22   all parties.  I will designate a particular case as lead case.

23   I do not anticipate if I set it for oral argument that every

24   lawyer's going to get to get up and make the same argument.

25             The only parties that have raised -- the only

1    plaintiffs that have raised issues other than the issues raised

2    in Harrel, Barnett, and Federal Firearms Licenses is Langley.

3    So I would give the Langley Plaintiffs' attorneys the

4    opportunity to argue Fifth and Fourteenth Amendments that

5    they've advanced.  But I anticipate if I set this for oral

6    argument, that I designate a particular case to be the lead

7    case, and their counsel would argue.

8         Now if among the lawyers, they decide that one

9    lawyer will argue a particular aspect and then hand it off to

10   somebody else, I don't have a problem with that.  But that's

11   what I'm talking about with respect to consolidation.

12         MR. WELLS:  Your Honor, this is Mr. Wells, if I

13   may just be heard on one point about that.

14         THE COURT:  Yeah.

15         MR. WELLS:  So I think from our perspective, that

16   all sounds fine.  I would just note that one part of the

17   stipulation as it relates to the briefing, the preliminary

18   injunction motions, which is what I think we were primarily

19   focused on, a piece of that is that the Langley Plaintiffs agree

20   not to proceed on their arguments as it relates to the Fifth

21   Amendment and Fourteenth Amendment for purposes of the

22   preliminary injunction motions.  I understand they're continuing

23   to press those claims and we will litigate those at the

24   appropriate time, but our understanding is that one of the

25   benefits of the stipulation is that it streamlines the approach

1    to focus on the Second Amendment claims that are common across
2    all the different plaintiffs.
3                    THE COURT:  Tom or Peter, do you agree with that?
4                    MR. T. MAAG:  That was the agreement that we
5    reached, yes.
6                    THE COURT:  All right.  Getting back to my
7    original question about the necessity for reply briefs, if I
8    understood your argument, you believe that the government's
9    analysis in its response to the complaints that set out a great
10   deal of the history of regulations on firearms and what type of
11   firearms were generally available and when in history they were
12   available, why do you say that -- I guess it was -- was it
13   Mr. Michel that said you anticipate everything -- or Troy Owens
14   maybe, that everything is going to be new from the state?  How's
15   that possible?  We're talking about history.
16                   MR. MICHEL:  Carl Michel for the FFL Illinois
17   Plaintiffs.  I don't know that it's going to be new.  Just -- I
18   can say from litigating these cases in California that the state
19   will make arguments that these perhaps are not in common use or
20   that there is a historical analog in place that should satisfy
21   the *Bruen* test to justify a modern firearms law.  Those are the
22   kinds of things that need to be rebutted in a reply so that, you
23   know, if the state -- and also their experts, whatever the scope
24   of their testimony may be, whether they're necessary at all,
25   those kinds of things all have to be responded to in order for

1     the Court to judge the value and legitimacy of the state's

2     position.

3                    MR. MOROS:  Your Honor, Kostas Moros.  Just to

4     build on what my senior attorney Chuck was saying, just to

5     provide you an example, we do litigate these cases in

6     California, and in a case we're doing right now concerning the

7     magazine capacity limit, the state argued things like -- that

8     fire safety laws from the 18th century and concealed carry

9     restrictions and even racist laws from the 19th century, Jim

10    Crow era and before, are all analogs to a magazine ban.

11                   So although our complaints talk about this

12    history, we don't really know what the state is going to throw

13    at us because we can't -- we don't know what they think is an

14    analog essentially.  So to the extent maybe we've already

15    covered some things perhaps, but to -- our complaint couldn't

16    anticipate all their possible analogs, at least from experience

17    of what we've seen from California.

18                   MR. MICHEL:  I can assure the Court, Your

19    Honor -- Carl Michel again for FFL Illinois -- in talking to all

20    of the plaintiffs as we worked out this stip, we are all

21    interested in not being redundant and not wasting the Court's

22    time with the same arguments over and over.  So I think what

23    we're brainstorming about is kind of divvying up topics so that

24    the briefs are not the same brief.  There are a lot of topics

25    that the state will raise.  I mean, what is an --

1          THE COURT:  You raise a lot of topics in your

2    complaint, you guys went through a lot of history, both history

3    with respect to firearms regulations to firearms.

4          Mr. Shaw, you wanted to say something?

5          MR. SHAW:  Sorry.  The judge is probably aware

6    of, I'm assuming, the case of Naperville, *Bevis v. Naperville*.

7    It was handed down by Judge Kendall in the Northern District.

8    There was a -- the opinion went into a lengthy discussion of

9    knives, bowie knives, billy clubs, slingshots as being analogs.

10   And so the concern would be -- we didn't address that stuff.

11   The concern would be that all of a sudden, if for some reason

12   the Court was directed to read that opinion, we wouldn't get a

13   chance to deal with why we think it's wrong, because we're not

14   certain that they are analogs.

15         THE COURT:  I have read that opinion.  I think

16   the important thing -- hold on, Mr. Sigale.  The important thing

17   is, I don't need to be papered to death on this.

18         MR. SHAW:  I agree.

19         THE COURT:  I don't need to be papered to death.

20   But the important thing is that I want the parties to be able to

21   make the record they think they need to make.  It's no mystery

22   that however I rule, however my colleagues rule in the Northern

23   District, this is going to work its way up the food chain.  And

24   when it gets to the Seventh Circuit, ultimately to make sure at

25   least with respect to the case pending before me, Seventh

1    Circuit is comfortable that we have developed fully the record

2    that we need to develop.

3              And so the record we need to develop is probably

4    not as much briefs and memorandums as it is perhaps exhibits and

5    the -- the plaintiff or the government has some experts that

6    want to submit some affidavits from or material from.  But I

7    want to make sure that you have the opportunity to make the

8    record that needs to be made so the Seventh Circuit has what it

9    needs to evaluate this fully.

10             I don't know -- there was reference to California

11   litigation earlier.  One of the problems in the case that went

12   to the Ninth Circuit was the Ninth Circuit thought that the --

13   if I'm recalling properly, the Ninth Circuit thought that the

14   underlying record wasn't fully developed so it needed to be

15   remanded.  And we don't want to do that.  We want to just make

16   sure that in our first swing at this, we get the record fully

17   developed.

18             MR. WELLS:  Your Honor, this is Mr. Wells, if I

19   just may address a couple of points.

20             THE COURT:  If you could speak up a little bit,

21   I'd appreciate it.

22             MR. WELLS:  Sure.  I'm sorry, as you might

23   imagine, the technology at the Attorney General's Office leaves

24   a little bit to be desired.

25             I just wanted to speak to a couple things.  One,

1    I do want to acknowledge Mr. Michel in particular for his

2    professional courtesy and reasonableness in working out the

3    terms of the proposed stipulation and working with counsel for

4    the other plaintiffs.

5              With respect to the length of the briefs and then

6    also the declarations, just -- I think Mr. Michel and others

7    have been right to point out how these cases had been litigated

8    in other states.  I don't think they'll be particularly

9    surprised by the state's approach here, which will be similar to

10   other states.  Of course I think we're going to do our best to

11   do better than the other states, but the approach will be

12   similar in terms of the quantity of briefing and materials

13   submitted to the Court.

14             With respect to the length of the brief in

15   particular, so as Your Honor acknowledged, I mean, the

16   plaintiffs have filed a combined 105 pages in complaints and

17   67 pages in preliminary -- initial briefing.  I can tell you

18   that at the time we discussed the stipulation, we were looking

19   at 80 pages.  We now have a draft that we're working to

20   finalize.  It will not -- it will be probably closer to 70.  So

21   I think that's where we are candidly.

22             And I think in terms of the length of the brief

23   issue, the one thing that I would note from the state's

24   perspective that's particularly important is, one, we do -- as

25   this case will go up, we have to preserve our arguments for the

1    Seventh Circuit and potentially even United States Supreme

2    Court.  And in addition to that, while there are kind of

3    categories of plaintiffs that -- sort of broadly three groups of

4    plaintiffs, each of the different complaints has little pieces

5    that are not overlapping and little factual assertions that we

6    have to respond to.

7         So while I recognize coming in and asking for an

8    80-page brief is a big ask, we do feel we need it in order to

9    make the record as Your Honor stressed was something I think we

10   all have an interest in doing here.

11        THE COURT:  Well, Mr. Wells, I don't have a

12   problem with giving the defendants 80 pages to respond to these

13   lengthy complaints.  There's four of them.  They're lengthy.

14   They raise a lot of issues.  So I don't have a problem with

15   that.  But I am concerned about things just getting -- being

16   overwhelmed with too much paperwork and not getting to the

17   point.

18        I think that I will give each plaintiff 15 pages

19   max to respond to -- or to reply to the government's response.

20   I'm not going to -- I'm not going to save -- I'm not going to

21   allow one plaintiff to extend their briefing if another

22   plaintiff marshals the genius of brevity and uses only seven

23   pages of their reply brief as opposed to all 15.  So you're 15

24   max in replies.

25        Because there's affidavits, normally we only

1  allow 10 or 14 days, but I will give 21 days to file your
2  replies to the government's brief.
3              There are going to be other cases that are handed
4  down probably.  We might see appellate court cases in the state
5  system.  We might see cases in the other -- in other states that
6  you think are cases that came out after you filed your brief.
7  You can supplement the record with that by a simple pleading
8  that gives a citation and a copy, a courtesy copy, but there are
9  to be no argument associated with that.
10             Pardon me for a second.  I'm going to ask one of
11  my clerks a question.
12             (Discussion off the record.)
13             THE COURT:  All right.  What about -- so we've
14  heard from the Attorney General's Office with respect to how
15  many pages it needs to respond on behalf of the state
16  defendants.
17             How about those who are representing county
18  actors?  Mr. Ysursa, how much -- how many pages do you think you
19  need to respond?
20             MR. YSURSA:  Your Honor, on behalf of my clients,
21  I don't anticipate us really actively opposing it.  We'll
22  probably just file -- like Attorney General Wells had indicated,
23  we'll probably just join or file a me-too brief.  We're just
24  really in the case waiting for the Court to tell us what the law
25  is so that the state's attorney and sheriff know what the rules

1   of the game are.

2               THE COURT:  All right.  So I'll put in the --

3   if -- we'll put in our order that I would grant the non-state

4   defendants, the county officials, sheriffs, state's attorneys,

5   I'll give them 20 pages of briefing if they think that they need

6   it for whatever reason.

7               Okay.  I do think oral argument -- I prefer oral

8   argument.  It goes back to my old appellate court days.  There's

9   a lot to be learned.  And so I find it's always been -- it's

10  always helpful.  And I am going to designate Barnett v. Raoul to

11  be the lead case for purposes of oral argument for the

12  plaintiffs.

13              I'm looking at setting oral arguments the week of

14  April -- either Tuesday, April the 11th, Wednesday, April the

15  12th, Thursday, April the 13th.  I anticipate setting aside an

16  afternoon to allow for oral arguments, unless the parties prefer

17  a morning.  The reason I say afternoon is because we probably

18  will have lawyers who are traveling in from different parts of

19  the country or different parts of the state, and I want to give

20  them adequate travel time to get here, get settled and prepare

21  for their arguments.

22              Let's -- starting with -- because I'm designating

23  Barnett case to be the lead, tell me about the availability of

24  your firm, those days, April 11th, 12th, or 13th.

25              Ms. Murphy?

```
 1              MS. MURPHY:  Those dates work for us, Your Honor.
 2              THE COURT:  All right.  Now I do have this
 3     caveat:  I do oral argument in person.  I don't do it via Zoom.
 4     That will work for you, Ms. Murphy?
 5              MS. MURPHY:  I understand.  Yes.
 6              THE COURT:  All right.  Let's go to Mr. Wells,
 7     Ms. Bautista.  I know you guys have got a lot of these things
 8     going on.  Will those dates work for you?
 9              MR. WELLS:  Your Honor, they would work for me.
10     I would just say with one slight caveat, there's a preference,
11     just a personal preference, of the 12th or the 13th, that prior
12     weekend I believe is Easter and I may be -- my children --
13              THE COURT:  You are the Easter bunny after all.
14              MR. WELLS:  Don't tell them that.
15              THE COURT:  I'll seal that part of the record.
16              MR. WELLS:  So just a preference for either --
17     not the Tuesday, but the Wednesday or Thursday.  If the Tuesday
18     is what the Court needs, I can make it work, but.
19              THE COURT:  All right.  Let's talk about
20     Wednesday and Thursday, the 12th and 13th.  Plaintiff lawyers on
21     Harrel, do either of those days better than the other?
22              MR. SIGALE:  David Sigale for the Harrel
23     Plaintiffs.  And the 12th would be better.
24              THE COURT:  All right.  Let's go to -- let me get
25     my cheat sheet here.  On -- how about Mr. Ysursa?  How does that
```

1    work for you?

2              MR. YSURSA:  I'm available on those dates, Your

3    Honor.

4              THE COURT:  All right.  And then Mr. Godfrey?

5              MR. GODFREY:  Judge, if we're talking about

6    scheduling these in the afternoon, yes, those dates look

7    acceptable.

8              THE COURT:  All right.  And then on Langley v.

9    Kelly, Mr. Maag?

10             MR. T. MAAG:  Either date would be acceptable,

11   Your Honor.  Thomas Maag.  Question is whether it would be in

12   East St. Louis or Benton.  I assume East St. Louis.

13             THE COURT:  It will be in beautiful downtown East

14   St. Louis.

15             MR. T. MAAG:  Very good.

16             THE COURT:  Hopefully I'll be back in my chambers

17   that got flooded six months ago or whatever it was, so check

18   your local listings which courtroom we're in.

19             All right.  So on the Federal Firearm Licensees

20   of Illinois plaintiffs' counsel, the 12th or 13th?

21             MR. SHAW:  This is Mark Shaw.  I'm okay with

22   either one.  I would defer to my colleague Carl Michel because

23   he's in California.

24             MR. MICHEL:  Carl Michel for FFL Illinois

25   Plaintiffs.  Either date's fine, Your Honor.  Wednesday or

1    Thursday would be great.  If there's a choice, I'd take

2    Wednesday.

3                 THE COURT:  All right.  I'm sensing a consensus

4    on Wednesday the 12th.  Does anybody who's on have a problem

5    with Wednesday, April the 12th?  All right.  We will set this

6    for oral argument on Wednesday, April the 12th.  I will probably

7    give -- let me ask you.  It sounds like for most of you, these

8    cases have been cited on the briefs and not oral argument.

9                 Ms. Murphy, since there's going to be oral

10   argument, how much time do you think would be appropriate to

11   extend to the plaintiffs?

12                MS. MURPHY:  I'm not super familiar with

13   Your Honor's practices, so I'm very happy to kind of defer to

14   you in terms of what is a timeframe that seems reasonable to

15   you.

16                MR. MICHEL:  Carl Michel for FFL Illinois.  Your

17   Honor, I can represent that as a practical matter, what's

18   happened in other courtrooms is it doesn't take much time to lay

19   out the plaintiffs' case, but there kind of becomes a dialogue

20   usually instigated by the Court as the Court focuses the lawyers

21   to narrow the issues, and that takes longer than sort of a

22   prepared, you know, a ten-minute oral argument or whatever.

23                THE COURT:  But judges are longer-winded than the

24   attorneys in these cases.

25                MR. MICHEL:  They're just curious, Your Honor.

```
 1                    THE COURT:  That's how we are.
 2                    Okay.  Mr. Wells or Ms. Bautista?
 3                    MR. WELLS:  Your Honor --
 4                    THE COURT:  We're going to be talking about
 5        affidavits, history.  How long do you think is necessary?  I
 6        don't want to shortchange people.  I want to give you the
 7        opportunity to make your arguments, make your record.
 8                    MR. WELLS:  Your Honor --
 9                    THE COURT:  How long do you think?
10                    MR. WELLS:  We appreciate that.  Just based on
11        picking up some of the comments from Mr. Michel and Ms. Murphy,
12        which I think are accurate, that it's likely to be a dialogue at
13        various points in time.  I think being conservative, an hour per
14        side, recognizing that a lot of it may be in dialogue as opposed
15        to strictly allocated.  That's at the high end.  But that's kind
16        of I think just similar to the briefing approach, making sure
17        that everybody has the space they need to say what they need to
18        say.
19                    MR. MICHEL:  Your Honor, Carl Michel.  If I could
20        ask a question.  Is the Court going to have other things on its
21        calendar that afternoon?
22                    THE COURT:  Not if I set this for two hours' oral
23        argument.  No, I plan to --
24                    MR. MICHEL:  Respectfully suggest --
25                    THE COURT:  -- give it the time it needs.  So
```

1    I'll set aside the whole afternoon.

2              MS. MURPHY:  This is Ms. Murphy --

3              THE COURT:  If you want an hour-three, if you

4    start repeating yourself, I'll have my clerk wake me up when you

5    get back to making a point that's not repetitive.

6              Erin, you wanted to say something?  Who was

7    speaking?

8              MS. MURPHY:  I was simply saying, I think

9    Mr. Wells' proposal makes -- sounds about right to what was kind

10   of in my head.  Hopefully we'd be somewhere between a half-hour

11   and an hour a side.  So if we could --

12             THE COURT:  Mr. Shaw?

13             MR. SHAW:  Just to clarify, does it start at 1 or

14   1:30?

15             THE COURT:  1:30.

16             MR. SHAW:  And is it in East St. Louis or Benton?

17             THE COURT:  East St. Louis.

18             MR. SHAW:  Okay.  Thank you.

19             THE COURT:  If you're traveling from downtown St.

20   Louis, once you cross the bridge, the courthouse in East St.

21   Louis is probably less than three minutes, depending on what

22   bridge.  It's three minutes if it's the Poplar Street Bridge.

23   It's two minutes if you use the Eads Bridge.

24             And I'll make the courtroom available in the

25   morning or even before if people have -- we do have IT equipment

1    that's in the courtroom.  If you have -- if you need to use IT

2    as part of your presentation or arguments, and that might happen

3    since I'm asking for schematics or depictions of what it is

4    that's being restricted or outlawed in the present statute, that

5    will be available earlier in the morning to run through your

6    stuff with IT to make sure that it's keyed in with what we have.

7    And I'll make IT available to talk to anybody by telephone in

8    advance so that your IT wizards and our IT wizards can make sure

9    that we have we've got equipment that works well together.

10                All right.  Somebody else wanted to -- Mr. Maag,

11   I think you were going to say something?

12                MR. T. MAAG:  Oh, I was just agreeing as to the

13   amount of time that I thought that oral argument would likely

14   take.

15                THE COURT:  My experience has been that in the --

16   with -- complicated cases are a lot to go through at the trial

17   court level where we're still trying to make a record.  Oral

18   arguments tend to go longer than oral arguments at the appellate

19   court level where the record is fixed.  And so I think an hour

20   for each side is -- I'm very comfortable with that.  If we have

21   to go a little longer so that people are answering my questions,

22   then we can do that.

23                In the meantime, I think -- or as we -- once the

24   briefs are in, the lawyers should speak amongst themselves -- as

25   I say, I've designated the lead case to be the Barnett case.

1    But if you guys decide amongst yourselves that certain lawyers

2    are going to argue certain aspects and you're going to get X

3    number of minutes to do that, I'm perfectly fine with that.  The

4    AG's Office should talk with the lawyers representing the county

5    defendants to see if they need to -- need any time to make oral

6    arguments or want to make some presentations.

7              MR. OWENS:  Judge, could I just add one fact?

8    This is Troy Owens from McHenry County.

9              THE COURT:  Yes, sir.

10             MR. OWENS:  As I reiterated in the briefing, and

11   I mean this with great respect to my friends at the state level,

12   I envision -- we're plaintiffs in the Northern District and

13   we're defendants in Southern District.  There's no reconciling

14   our position with the state's position.  So if -- I don't know

15   if it's a friction to what you're proposing, but I anticipate

16   vastly different arguments and different positions between at

17   least our county and the state.

18             THE COURT:  All right.  Well, we'll figure out a

19   way to get your two cents in, five cents in.  And you're a party

20   to the case so you'll be given the opportunity to present your

21   arguments.  We can cross that bridge as we get closer.

22             MR. OWENS:  Yes, sir.

23             THE COURT:  Yeah.  All right.  Anything else we

24   need to -- so we're set for April the 12th at 1:30.  Anything

25   else for Plaintiffs in Barnett?

1      MS. MURPHY:  Nothing else, Your Honor.

2      THE COURT:  Anything else for Plaintiffs in

3  Harrel?

4      MR. SIGALE:  No, Your Honor.

5      THE COURT:  Anything else for Plaintiffs in

6  Langley?

7      MR. T. MAAG:  No.  Thank you.

8      MR. P. MAAG:  Judge, this is Peter Maag.  Just

9  one clarification question.

10      THE COURT:  Okay.

11      MR. P. MAAG:  The 15-page page limit, I'm

12  assuming that that's excluding exhibits; correct?

13      THE COURT:  Yes, it is.

14      MR. P. MAAG:  Very good.  It was kind of spelled

15  out in the proposed order.  I just don't know that that was

16  explicitly stated.

17      THE COURT:  Well, I would -- as I said, I want

18  you guys to -- I want a complete record.  And so if you feel you

19  need to file exhibits in response, I don't consider those part

20  of the brief, the page limit on briefs.

21      All right.  Anything else from the FFLI

22  Plaintiffs?

23      MR. MICHEL:  I don't -- Carl Michel.  I don't

24  believe so, Your Honor.

25      THE COURT:  All right.  How about for the AG's

1    Office?

2              MR. WELLS:  Your Honor, this is Mr. Wells.

3    Just -- I would appreciate some clarification as to the date for

4    filing for our -- what sounds like now consolidated brief.  In

5    the stipulation, we had proposed March 2nd, which I think was

6    the date that we had in at least one of the cases.  That date

7    continues to be fine with us.  We just didn't know whether it

8    was going to be the earliest of the February 28th date or

9    March 2nd, so --

10             THE COURT:  No.  I'm going to make everybody's --

11   all defendants, your replies will be due March the 2nd.

12             MR. WELLS:  Thank you, Your Honor.

13             THE COURT:  Or response, I should say.  And then

14   reply briefs from the plaintiffs are 21 days after that.

15             MR. WELLS:  And just again for the sake of

16   clarification, we'll be addressing the Second Amendment issues

17   that all plaintiffs raise, but not the Fifth Amendment and

18   Fourteenth Amendment vagueness claims that are in I believe the

19   case that was removed.  I'm blanking on the name.  But

20   Mr. Maag's case.

21             THE COURT:  That's --

22             MR. T. MAAG:  Langley.

23             THE COURT:  That's what the parties are agreeing

24   to, I'm happy to do that.  But at some point, we are going to

25   have to address those.

```
 1                    MR. WELLS:  We understand, Your Honor.

 2                    THE COURT:  All right.  And all right.  Other

 3         than that, anything else from the AG's Office?  All right.

 4         Anything else from the lawyers defending county officials?

 5                    MR. OWENS:  Not for McHenry, Your Honor.

 6                    MR. YSURSA:  Thomas Ysursa.  Nothing, Your Honor.

 7                    THE COURT:  All right.

 8                    MR. WELLS:  Your Honor, I spoke too soon.  I

 9         apologize.  Just as clarification on when the state should

10         answer otherwise plead, I think in the stipulation, we had

11         proposed that the -- our date to answer all the various

12         complaints would be after we file our consolidated response

13         brief.  I think we had proposed two weeks later, so I believe it

14         was March 16th.  We would just ask to have until that date to

15         file our answers in respective cases and where appropriate, if

16         we decide to do it, otherwise plead.

17                    THE COURT:  And that's fine with me because you

18         guys had all agreed to that.  Right?  Yeah, so that's fine with

19         me.

20                    MR. WELLS:  Thank you.

21                    MR. SIGALE:  Your Honor, I'm sorry, I do actually

22         have one other tiny point.  The Randolph County defendant, I

23         think -- I think that's Mr. Ysursa's clients.

24                    THE COURT:  No.  I think Mr. Ysursa has

25         St. Clair.  Randolph County, Randolph County -- it's Jim
```

1    Godfrey.

2              MR. SIGALE:  Godfrey.  Mr. Godfrey.  It's my

3    understanding that Mr. Walker is not actually the state's

4    attorney in that county anymore, that it's someone named Kelley

5    and not to be confused with State Police Director Kelly.  This

6    Mr. Kelley I believe is spelled K-e-l-l-e-y.  I was just going

7    to ask that we're all -- since we're all together, that under

8    the appropriate federal rule, if the defendant -- the official

9    capacity defendant could be substituted in standard and that

10   could be reflected going forward, including on whatever

11   responsive pleading that defendant files.

12             MR. GODFREY:  Judge, I consent to that.  I have

13   no objection to that.

14             THE COURT:  Yeah.  That's something we can handle

15   in a separate order if you guys want to do something, just an

16   agreed substitution of party.

17             MR. SIGALE:  Okay.  I'll e-mail Mr. Godfrey and

18   we'll figure out the easiest way to handle that.

19             MR. GODFREY:  Great.

20             THE COURT:  All right.  Anything else?

21             MR. HILL:  Your Honor, this is Keith Hill in the

22   Langley case.  For the county defendants in all the cases, will

23   the March 16th date also be the date for us to answer or

24   otherwise plead in response to the complaints?

25             THE COURT:  Yes, sir.

1          MR. HILL:  Thank you.

2          THE COURT:  All right.  Going once, going twice?

3     Anything else from any of the attorneys?  All right.

4          Well, thank you for your input and your patience.

5     We'll see you on April the 12th.  Again, if you anticipate using

6     IT as part of your presentation and oral argument, contact my

7     office and we can set you up with IT so you guys can get that

8     set up in advance.  I don't anticipate that I'll have -- I don't

9     anticipate that I'll set anything else for hearing on that date.

10    And so the courtrooms, if you're here earlier and you want to

11    set up in the courtroom until the morning, that will be --

12    that's perfectly fine with us.

13         All right.  We are adjourned.  Everyone enjoy

14    your weekend.

15              (Proceedings concluded at 10:56 a.m.)

16

17              °  °  °  °  °  °  °  °  °  °  °

18              **COURT REPORTER'S CERTIFICATE**

19         I certify that the foregoing is a correct
      transcript from the record of proceedings in the above-entitled
20    matter.

21

22         Dated this 4th day of March, 2023

23    /s/ Hannah Jagler
      _____
24
      Hannah Jagler, RMR, CRR, FCRR
25    Official Court Reporter