IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEREMY W. LANGLEY, TIMOTHY B. JONES, and MATTHEW WILSON,<br><br>      Plaintiffs,<br><br>v.<br><br>BRENDAN KELLY, in his official capacity as Director of the Illinois State Police, and COLE PRICE SHANER, in his official capacity as State's Attorney of Crawford County, Illinois,<br><br>      Defendants. | No. 3:23-cv-192-SPM |

## DEFENDANT KELLY'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Brendan Kelly ("Defendant"), by and through his attorney, Kwame Raoul, the Illinois Attorney General, for his Answer to Plaintiff's Complaint, Affirmative Defenses, and Jury Demand states as follows:

1. This case is a challenge to purported Public Act 102-1116.

**ANSWER: Defendant admits that Plaintiff purports to bring this action to challenge Public Act 102-1116, but denies that Public Act 102-1116 is unconstitutional or otherwise invalid.**

2. At all times relevant, Plaintiffs Timothy B. Jones, Jeremy Wayne Langley and Matthew Wilson, are citizens and residents of Crawford County, Illinois.

**ANSWER: Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in this paragraph.**

3. At all times relevant, Defendant Cole Price Shaner is the state's attorney of Plaintiffs county of residence.

1

**ANSWER**: **Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in this paragraph.**

4. At all times relevant, Defendant Brendan Kelly, is the Director of the Illinois State Police, and in such capacity has enforcement power over the challenged statute, and has personally testified in the Illinois General Assembly that he will enforce the statute at issue, and make the changes necessary at the state police to enforce same. Defendant Shaner is the chief prosecutorial officer in Crawford County, and while many states attorneys have announced they will not prosecute such actions, he has not so announced as of the time of this filing.

**ANSWER**: **Defendant admits that he is the Director of the Illinois State Police, that he has enforcement power over the challenged statute, and that he has personally testified in the Illinois General Assembly that he will enforce the statute at issue and make any necessary changes for the Illinois State Police to enforce the same. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in this paragraph.**

5. That at all times relevant, Defendants are being sued in their official capacities.

**ANSWER**: **Defendant admits that Plaintiff purports to sue him in his official capacity.**

## COUNT I

6. That in January, 2023, in a lame duck session of the General Assembly, using a shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade, through political games, the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a wide ranging firearm and magazine ban, which is both poorly written, and unconstitutional.

**ANSWER**: **Defendant admits that the General Assembly passed the challenged statute into law in January of 2023. Defendant admits that the bill referred to in this paragraph is House Bill 5471 of the 102nd General Assembly. Defendant further admits that House Bill 5471, as introduced, amended sections 1510 and 1575, and repealed Article XXXI 3/4, of the Illinois Insurance Code. Defendant further admits that in January 2023, during what is informally referred to as the General Assembly's "lame duck" session, the Senate adopted, and the House of Representatives concurred in, Senate Floor Amendment 3, Senate Floor Amendment 4, and Senate Floor Amendment 5 to House Bill 5471, which replaced everything after the enacting clause with, among other things, amendments to the Criminal Code of 2012 restricting the sale and possession of certain firearms and magazines. Defendant denies that the challenged statute is**

unconstitutional. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in this paragraph.

7. That while the purported ban purports to grandfather the existing possession of such firearms, the grandfathering mechanism, as written, violates the Fifth and Fourteenth Amendments to the U.S. Constitution, as explained in *Haynes v. United States*, 390 U.S. 85 (1968), in that it requires persons, without being provided any form of immunity, and for use of and by a criminal law enforcement agency, to complete a form with the Illinois State Police, and provide information on current and past conduct, which can be used against that person in a criminal court, and admit possession of certain firearms that under state law are generally declared to be unlawful.

**ANSWER: Defendant admits that the challenged statute contains a grandfather provision exempting firearms lawfully owned prior to the enactment of the statute that would otherwise be covered by the statute, so long as the owner of said firearm fills out the paperwork described by the statute no later than January 1, 2024. Defendant denies that this grandfather provision violates the Fifth or Fourteenth Amendments to the Constitution or is otherwise invalid. Defendant denies the remaining allegations in this paragraph.**

8. The statute further requires those who come into possession of such firearms in the future, to also disclose said information to the state police, and in the process, potentially incriminate themselves.

**ANSWER: Defendant admits that the challenged statute requires certain individuals who lawfully inherit firearms covered by the statute to fill out the paperwork described by the statute. Defendant denies the remaining allegations of this paragraph.**

9. In that the registration or "endorsement" provision of the purported statute is unconstitutional, all provisions of the purported statute purporting to require registration or "endorsement", penalizing failure to so register and/or differentiating between registered and unregistered, or disclosed and undisclosed firearms should be stricken, as unconstitutional, and preliminarily and permanently enjoined.

**ANSWER: Defendant denies the allegations of this paragraph.**

10. That Plaintiff's [sic] have no adequate remedy at law.

**ANSWER: Defendant denies the allegations of this paragraph.**

WHEREFORE, Plaintiffs humbly request that this Honorable Court enjoin defendants from enforcing any portion of the Public Act 102-1116 which requires persons in possession of any so called assault weapons to register them or otherwise disclosed them to the State Police, and in the process potentially incriminate themselves, and enjoining

3

Defendants from taking any action against possessors of unregistered firearms on account of their status of being unregistered assault weapons, plus such other, further and different relief as allowed by law, plus costs and fees under 42 U.S.C. 1988.

**ANSWER: Defendant Kelly denies Plaintiffs are entitled to any relief in relation to Count I, respectfully requests that judgment be entered in his favor and against Plaintiffs in Count I, including the costs of defending this suit, and any other relief this Court deems necessary and proper.**

## COUNT II

1 – 5 Plaintiff [sic] adopts and incorporates paragraphs 1 through 5 above.

**ANSWER: Defendant adopts and incorporates his answers to paragraphs 1 through 5 above.**

6. That in January, 2023, in a lame duck session of the General Assembly, using a shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade through political games the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a wide ranging firearm and magazine ban.

**ANSWER: Defendant admits that the General Assembly passed the challenged statute into law in January of 2023 and that the statute restricts certain firearms and magazines. Defendant admits that the bill referred to in this paragraph is House Bill 5471 of the 102nd General Assembly. Defendant further admits that House Bill 5471, as introduced, amended sections 1510 and 1575, and repealed Article XXXI 3/4, of the Illinois Insurance Code. Defendant further admits that in January 2023, during what is informally referred to as the General Assembly's "lame duck" session, the Senate adopted, and the House of Representatives concurred in, Senate Floor Amendment 3, Senate Floor Amendment 4, and Senate Floor Amendment 5 to House Bill 5471, which replaced everything after the enacting clause with, among other things, amendments to the Criminal Code of 2012 restricting the sale and possession of certain firearms and magazines. Defendant denies that the challenged statute is unconstitutional. Defendant denies the remaining allegations contained in this paragraph.**

7. At all times relevant Plaintiff [sic] has a right, under the Second and Fourteenth Amendments to the Constitution of the United States, to keep and bear arms, including arms for self defense in both the home, and outside of the home.

**ANSWER: Defendant admits that the Second Amendment, as incorporated by the Fourteenth Amendment, provides a right for law-abiding, responsible individuals to keep and bear arms for self-defense purposes. Defendant lacks sufficient information or knowledge to form a belief as to the remaining allegations in this paragraph.**

8. That the right to keep and bear arms includes modern firearm and modern devices.

**ANSWER: Defendant admits that the right to keep and bear arms can include some modern firearms. Defendant denies the remaining allegations in this paragraph.**

9. Included in the ban is a ban on the transportation, outside of the home, except in very limited circumstances, as listed below:

(1) on private property owned or immediately controlled by the person;

(2) on private property that is not open to the public with the express permission of the person who owns or immediately controls such property;

(3) while on the premises of a licensed firearms dealer or gunsmith for the purpose of lawful repair;

(4) while engaged in the legal use of the assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge at a properly licensed firing range or sport shooting competition venue; or

(5) while traveling to or from these locations, provided that the assault weapon, assault weapon attachment, or .50 caliber rifle is unloaded and the assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge is enclosed in a case, firearm carrying box, shipping box, or other container.

**ANSWER: Defendant admits that (1)–(5) in this paragraph quote a portion of 720 ILCS 5/24-1.9(d). Defendant denies the remaining allegations in this paragraph.**

10. That under the Second Amendment to the U.S. Constitution, as incorporated by the 14th Amendment, and per the Supreme Court ruling in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. ___ (2022), as the Second Amendment's plain text covers an individual's conduct [here the right to bear arms outside of their home generally], the Constitution presumptively protects that conduct.

**ANSWER: Defendant denies the allegations in this paragraph.**

11. The government cannot justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation, as it is not. In fact, this prohibition is unprecedented in Illinois, and inconsistent with the nations tradition of firearm regulation.

**ANSWER: Defendant denies the allegations in this paragraph.**

12. That while the state may prohibit the carriage of arms in certain narrow sensitive places, the challenged prohibition flips this on its head, not merely prohibiting carriage in certain sensitive places (which is already prohibited by other law), but totally prohibiting the carriage of these arms, such to only minimally listed areas, and even those are limited to basically wealthy landowners, as almost no firing ranges in Illinois require a license, and under the statute land that is open to the public for such use prohibits such use and possession.

**ANSWER: Defendant denies the allegations in this paragraph.**

13. That the prohibition on the transport and carriage of regulated items under the challenged statute is, in fact, unconstitutional and void.

**ANSWER: Defendant denies the allegations in this paragraph.**

WHEREFORE, this Court should declare all carriage, transport and use prohibitions contained in the statute unconstitutional under the Second and 14th Amendment, and enjoining the enforcement of same, plus such other, further and different relief as allowed by law, plus costs and attorney fees under 42 U.S.C. 1988.

**ANSWER: Defendant Kelly denies Plaintiffs are entitled to any relief in relation to Count II, respectfully requests that judgment be entered in his favor and against Plaintiffs in Count II, including the costs of defending this suit, and any other relief this Court deems necessary and proper.**

## COUNT III

1 – 5 Plaintiffs adopt paragraphs 1 through 5 above.

**ANSWER: Defendant adopts and incorporates his answers to paragraphs 1 through 5 above.**

6. That in January, 2023, in a lame duck session of the General Assembly, using a shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade through political games the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a wide ranging firearm and magazine ban.

**ANSWER: Defendant admits that the General Assembly passed the challenged statute into law in January of 2023 and that the statute restricts certain firearms and magazines. Defendant admits that the bill referred to in this paragraph is House Bill 5471 of the 102nd General Assembly. Defendant further admits that House Bill 5471, as introduced, amended sections 1510 and 1575, and repealed Article XXXI 3/4, of the Illinois Insurance Code. Defendant further admits that in January 2023, during what is informally referred to as the General Assembly's "lame duck" session, the Senate**

adopted, and the House of Representatives concurred in, Senate Floor Amendment 3, Senate Floor Amendment 4, and Senate Floor Amendment 5 to House Bill 5471, which replaced everything after the enacting clause with, among other things, amendments to the Criminal Code of 2012 restricting the sale and possession of certain firearms and magazines. Defendant denies that the challenged statute is unconstitutional. Defendant denies the remaining allegations contained in this paragraph.

7. At all times relevant Plaintiff has a right, under the Second and Fourteenth Amendments to the Constitution of the United States, to keep and bear arms, including arms for self defense in both the home, and outside of the home.

**ANSWER: Defendant admits that the Second Amendment, as incorporated by the Fourteenth Amendment, provides a right for law-abiding, responsible individuals to keep and bear arms for self-defense purposes. Defendant lacks sufficient information or knowledge to form a belief as to the remaining allegations in this paragraph.**

8. That the right to keep and bear arms includes modern firearm and modern devices.

**ANSWER: Defendant admits that the right to keep and bear arms can include some modern firearms. Defendant denies the remaining allegations in this paragraph.**

9. That the challenged statute purports to ban the possession or use of ammunition feeding devices, including magazines, for long guns over 10 rounds, and for handguns over 15 rounds.

**ANSWER: Defendant admits that the challenged statute prohibits possession and use of large capacity ammunition feeding devices, subject to certain exceptions in the statute. Defendant admits the statute restricts magazines for long guns that can accept more than 10 rounds, and magazines for handguns that can accept more than 15 rounds. Defendant denies the remaining allegations in this paragraph.**

10. Since at least 1780, rifles have actually existed which included a magazine capacity of well in excess of 15 shots. Such rifles include the Austrian Girardoni rifle, which was used by Meriwether Lewis in his famous expedition to and through the West.

**ANSWER: Defendant denies the first sentence in this paragraph. Defendant admits that Meriwether Lewis brought a Girardoni Air Rifle on his famous expedition to and through the West. Defendant denies the remaining allegations in this paragraph.**

11. In about 1860, the predecessor of Winchester arms, produced its Henry rifle, which, in .44 Henry held 15 rounds in its magazine, plus 1 round in the chamber.

**ANSWER: Defendant admits that in about 1860 Oliver Winchester's New Haven Arms Company produced a Henry rifle that held 15 rounds in its magazine, plus 1 round in the chamber. Defendant denies that the challenged statute prohibits rifles like those produced in the 1860s because the statute excepts firearms that are operated by lever action from its definition of assault weapons. Defendant lacks sufficient information or knowledge to form a belief as to the remaining allegations in this paragraph.**

12. Over the next hundred years, firearm magazines capacities standardized to between 13 and 20 rounds for pistols, with about 17 being average, and 15 to 35 rounds for rifles, which is standard in 2023, across most states in the United States, and most countries in the world.

**ANSWER: Defendant denies the allegations in this paragraph.**

13. Rifles with magazine capacities of 10 rounds or less are widely considered in 2023, to be "curios and relics", historical firearm, obsolete, or otherwise technologically dated, at best, and obsolete, at worst.

**ANSWER: Defendant denies the allegations in this paragraph.**

14. For instance, the U.S. M1 Carbine, which has been one of the most popular firearms, both in the United States, and internationally, with civilian, military and police users, has, since 1941, had a standard 15 round magazine capacity, and since about 1944, a standard 30 round capacity.

**ANSWER: Defendant denies the allegations in this paragraph.**

15. The Browning Hi Power pistol, designed by Famous American Gun Designer John Browning, and Belgian engineer Dieudonné Saive, and placed in production in 1935, had a standard capacity of 13 rounds of 9mm ammunition, and was for more than 50 years, considered the standard 9mm pistol in the world, until replaced, starting in about 1980 by most users worldwide, with Glock style 17 pistols, with 17 round standard magazines.

**ANSWER: Defendant admits that the Glock 19 is designed with a standard 15 round magazine. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in this paragraph.**

16. The U.S Military M17 pistol uses a standard 17 round or 21 round magazine, depending on configuration.

**ANSWER: Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in this paragraph.**

17. The Colt SP1, often mis-called the AR15, was first released by Cold in 1964, with standard 20 round magazines, by about the 1970s, 30 round magazines had become standard.

**ANSWER: Defendant admits an AR-15 existed in 1964 and that Colt produced AR-15s. Defendant admits the AR-15 was equipped with a 20-round detachable magazine in the 1960s. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in this paragraph.**

18. Since 1964, excluding fully automatic versions sold to various government entities, semiautomatic rifles of the SP1 or AR15 type, by various manufacturers, have become the current American standard rifle, with literally more than 10 million sold domestically, most of them since 1994, which use standard 30 round magazines.

**ANSWER: Defendant denies the allegations in this paragraph.**

19. Of firearms designed and sold for self defense, those with magazine capacities of 10 rounds or less are rare and unusual, and those pistols with 15 or fewer rounds are usually compact versions of normal firearms, or historical and obsolete.

**ANSWER: Defendant denies the allegations in this paragraph.**

20. That in January 2023, the State of Illinois enacted a purported prohibition of the manufacture, sale, transfer or possession of ammunition feeding devices that can feed more than 10 rounds of ammunition for a rifle or shotgun, or 15 rounds for a pistol, a copy of said purported statute is attached hereto as Exhibit A.

**ANSWER: Defendant admits the allegations in this paragraph.**

21. That this action is brought pursuant to 42 USC 1983.

**ANSWER: Defendant admits that Plaintiffs purport to bring this suit pursuant to 42 U.S.C. § 1983, and deny the remaining allegations in this paragraph.**

14. That under the Second Amendment to the U.S. Constitution, as incorporated by the 14th Amendment, and per the Supreme Court ruling in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. ___ (2022), as the Second Amendment's plain text covers an individual's conduct [here the right to acquire and possess modern arms) the Constitution presumptively protects that conduct.

**ANSWER: Defendant denies the allegations in this paragraph.**

15. The government cannot justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation, as it is not. In fact, this kind of prohibition is inconsistent with the nations tradition of firearm regulation.

**ANSWER: Defendant denies the allegations in this paragraph.**

WHEREFORE, this Court should declare prohibitions on magazine capacity contained in the statute unconstitutional under the Second and 14th Amendment, and enjoining the enforcement of same, plus such other, further and different relief as allowed by law, plus costs and attorney fees under 42 U.S.C. 1988.

**ANSWER: Defendant Kelly denies Plaintiffs are entitled to any relief in relation to Count III, respectfully requests that judgment be entered in his favor and against Plaintiffs in Count III, including the costs of defending this suit, and any other relief this Court deems necessary and proper.**

## COUNT IV

1 – 5 Plaintiffs adopt paragraphs 1 through 5 above.

**ANSWER: Defendant adopts and incorporates his answers to paragraphs 1 through 5 above.**

6. That in January, 2023, in a lame duck session of the General Assembly, using a shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade through political games the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a wide ranging firearm and magazine ban.

**ANSWER: Defendant admits that the General Assembly passed the challenged statute into law in January of 2023 and that the statute restricts certain firearms and magazines. Defendant admits that the bill referred to in this paragraph is House Bill 5471 of the 102nd General Assembly. Defendant further admits that House Bill 5471, as introduced, amended sections 1510 and 1575, and repealed Article XXXI 3/4, of the Illinois Insurance Code. Defendant further admits that in January 2023, during what is informally referred to as the General Assembly's "lame duck" session, the Senate adopted, and the House of Representatives concurred in, Senate Floor Amendment 3, Senate Floor Amendment 4, and Senate Floor Amendment 5 to House Bill 5471, which replaced everything after the enacting clause with, among other things, amendments to the Criminal Code of 2012 restricting the sale and possession of certain firearms and magazines. Defendant denies that the challenged statute is unconstitutional. Defendant denies the remaining allegations contained in this paragraph.**

7. At all times relevant Plaintiff has a right, under the due process clauses of the Constitution of the United States, to reasonable notice as to what the laws actually are, and how to comply.

**ANSWER: Defendant lacks sufficient information or knowledge to form a belief as to the allegations in this paragraph.**

8. That the challenged statute purports to ban the possession or use of ammunition feeding devices, including magazines, for long guns over 10 rounds, and for handguns over 15 rounds.

**ANSWER: Defendant admits that the challenged statute prohibits possession and use of large capacity ammunition feeding devices, subject to certain exceptions in the statute. Defendant admits the statute restricts magazines for long guns that can accept more than 10 rounds, and magazines for handguns that can accept more than 15 rounds. Defendant denies the remaining allegations in this paragraph.**

11. Since at least 1780, rifles have actually existed which included a magazine capacity of well in excess of 15 shots. Such rifles include the Austrian Girardoni rifle, which was used by Meriwether Lewis in his famous expedition to and through the West.

**ANSWER: Defendant denies the first sentence in this paragraph. Defendant admits that Meriwether Lewis brought a Girardoni Air Rifle on his famous expedition to and through the West. Defendant denies the remaining allegations in this paragraph.**

12. In about 1860, the predecessor of Winchester arms, produced its Henry rifle, which, in .44 Henry held 15 rounds in its magazine, plus 1 round in the chamber.

**ANSWER: Defendant admits that in about 1860 Oliver Winchester's New Haven Arms Company produced a Henry rifle that held 15 rounds in its magazine, plus 1 round in the chamber. Defendant denies that the challenged statute prohibits rifles like those produced in the 1860s because the statute excepts firearms that are operated by lever action from its definition of assault weapons. Defendant lacks sufficient information or knowledge to form a belief as to the remaining allegations in this paragraph.**

13. Over the next hundred years, firearm magazines capacities standardized to between 13 and 20 rounds for pistols, with about 17 being average, and 15 to 35 rounds for rifles, which is standard in 2023, across most states in the United States, and most countries in the world.

**ANSWER: Defendant denies the allegations in this paragraph.**

14. Rifles with magazine capacities of 10 rounds or less are widely considered in 2023, to be "curios and relics", historical firearm, obsolete, or otherwise technologically dated, at best, and obsolete, at worst.

**ANSWER: Defendant denies the allegations in this paragraph.**

15. For instance, the U.S. M1 Carbine, which has been one of the most popular firearms, both in the United States, and internationally, with civilian, military and police users, has, since 1941, had a standard 15 round magazine capacity, and since about 1944, a standard 30 round capacity.

**ANSWER: Defendant denies the allegations in this paragraph.**

16. The Browning Hi Power pistol, designed by Famous American Gun Designer John Browning, and Belgian engineer Dieudonné Saive, and placed in production in 1935, had a standard capacity of 13 rounds of 9mm ammunition, and was for more than 50 years, considered the standard 9mm pistol in the world, until replaced, starting in about 1980 by most users worldwide, with Glock style 17 pistols, with 17 round standard magazines.

**ANSWER: Defendant admits that the Glock 19 is designed with a standard 15 round magazine. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in this paragraph.**

17. The U.S Military M17 pistol uses a standard 17 round or 21 round magazine, depending on configuration.

**ANSWER: Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in this paragraph.**

18. The Colt SP1, often mis-called the AR15, was first released by Cold in 1964, with standard 20 round magazines, by about the 1970s, 30 round magazines had become standard.

**ANSWER: Defendant admits an AR-15 existed in 1964 and that Colt produced AR-15s. Defendant admits the AR-15 was equipped with a 20-round detachable magazine in the 1960s. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in this paragraph.**

19. Since 1964, excluding fully automatic versions sold to various government entities, semiautomatic rifles of the SP1 or AR15 type, by various manufacturers, have become the current American standard rifle, with literally more than 10 million sold domestically, most of them since 1994, which use standard 30 round magazines.

**ANSWER: Defendant denies the allegations in this paragraph.**

20. Of firearms designed and sold for self defense, those with magazine capacities of 10 rounds or less are rare and unusual, and those pistols with 15 or fewer rounds are usually compact versions of normal firearms, or historical and obsolete.

**ANSWER: Defendant denies the allegations in this paragraph.**

21. That in January 2023, the State of Illinois enacted a purported prohibition of the manufacture, sale, transfer or possession of ammunition feeding devices that can feed more than 10 rounds of ammunition for a rifle or shotgun, or 15 rounds for a pistol, a copy of said purported statute is attached hereto as Exhibit A.

**ANSWER: Defendant admits the allegations in this paragraph.**

22. That this action is brought pursuant to 42 USC 1983.

**ANSWER: Defendant admits that Plaintiffs purport to bring this suit pursuant to 42 U.S.C. § 1983, and deny the remaining allegations in this paragraph.**

16. That that as a practical matter, there is no difference between a rifle or handgun magazine, such that it is objectively impossible to tell, from merely looking at a given device whether it is a legal 15 round handgun magazine, or a prohibited 15 round rifle magazine.

**ANSWER: Defendant denies the allegation in this paragraph.**

17. That many rifles use magazines commonly used by handguns, and vice versa.

**ANSWER: Defendant denies the allegation in this paragraph.**

18. In addition, the ammunition capacity of a given magazine may well, and often is different, depending on the ammunition loaded into it. For instance, standard 9mm Luger ammunition, which has been manufactured worldwide since 1908, actually is manufactured to a wide variety of specifications, such that with some magazines, one more or fewer rounds might fit in a given magazine.

**ANSWER: Defendant admits that ammunition capacity of certain magazines can be different depending on the ammunition loaded into it. Defendant denies the remaining allegations in this paragraph.**

19. Likewise, with tubular magazine rifles and shotguns, the magazine capacity can and will vary widely, based on the type of ammunition used, such as with 38 special and .357 magnum ammunition, or 3 inch, 2.75 inch, or so called mini 12 gauge rounds.

**ANSWER: Defendant denies the allegations in this paragraph.**

20. Likewise, most 15 round .40 pistol type magazines will hold and function with more than 15 9mm rounds, STANAG rifle magazines will function with different number of rounds depending on the caliber of ammunition loaded.

**ANSWER: Defendant denies the allegations in this paragraph.**

21. Such that it is objectively impossible to determine a given ammunition capacity, without knowing what ammunition will be fed into it.

**ANSWER: Defendant denies the allegations in this paragraph.**

22. As such, no objectively intelligent person can determine whether a given ammunition magazine is legal, simply be looking at it, and likely even with expert advice.

**ANSWER: Defendant denies the allegations in this paragraph.**

23. Accordingly, the magazine ban is unconstitutionally vague.

**ANSWER: Defendant denies the allegations in this paragraph.**

WHEREFORE, this Court should declare prohibitions on magazine capacity contained in the statute unconstitutional under due process, and enjoining the enforcement of same, plus such other, further and different relief as allowed by law, plus costs and attorney fees under 42 U.S.C. 1988.

**ANSWER: Defendant Kelly denies Plaintiffs are entitled to any relief in relation to Count IV, respectfully requests that judgment be entered in his favor and against Plaintiffs in Count IV, including the costs of defending this suit, and any other relief this Court deems necessary and proper.**

## COUNT V

1 – 6 Plaintiffs adopts paragraph 1 through 6 above.

**ANSWER: Defendant adopts and incorporates his answers to paragraphs 1 through 6 above.**

7. That the challenged law purports to ban possession, manufacture and transfer, to and by ordinary law abiding citizens, of the following, mostly, but not exclusively semi-automatic firearms:

A: A semiautomatic rifle that has the capacity to accept a detachable magazine or that may be readily modified to accept a detachable magazine, if the firearm has one or more of the following:

(i) a pistol grip or thumbhole stock;

(ii) any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) a folding, telescoping, thumbhole, or detachable stock, or a stock that is otherwise foldable or adjustable in a manner that operates to reduce the length, size, or any other dimension, or otherwise enhances the concealability of, the weapon;

(iv) a flash suppressor;

(v) a grenade launcher;

(vi) a shroud attached to the barrel or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel.

(B) A semiautomatic rifle that has a fixed magazine with the capacity to accept more than 10 rounds, except for an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.

(C) A semiautomatic pistol that has the capacity to accept a detachable magazine or that may be readily modified to accept a detachable magazine, if the firearm has one or more of the following:

(i) a threaded barrel;

(ii) a second pistol grip or another feature capable of functioning as a protruding grip that can be held by the non-trigger hand; (iii) a shroud attached to the barrel or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

(iv) a flash suppressor;

(v) the capacity to accept a detachable magazine at some location outside of the pistol grip; or (vi) a buffer tube, arm brace, or other part that protrudes horizontally behind the pistol grip and is designed or redesigned to allow or facilitate a firearm to be fired from the shoulder.

(D) A semiautomatic pistol that has a fixed magazine with the capacity to accept more than 15 rounds.

(E) Any shotgun with a revolving cylinder.

15

(F) A semiautomatic shotgun that has one or more of the following:

(i) a pistol grip or thumbhole stock;

(ii) any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) a folding or thumbhole stock;

(iv) a grenade launcher;

(v) a fixed magazine with the capacity of more than 5 rounds; or

(vi) the capacity to accept a detachable magazine.

(G) Any semiautomatic firearm that has the capacity to accept a belt ammunition feeding device.

**ANSWER: Defendant admits that this paragraph quotes a portion of 720 ILCS 5/24-1.9(a)(1). Defendant denies the remaining allegations in this paragraph.**

8. That in 2022, the U.S. Supreme Court in *Bruen* made clear that, "In the years since, the Courts of Appeals have coalesced around a "two-step" framework for analyzing Second Amendment challenges that combines history with means-end scrutiny. *Today*, we decline to adopt that two-part approach. ... Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history. But Heller and McDonald do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

**ANSWER: Defendant admits that this paragraph contains quotes from *Bruen*. Defendant denies the remaining factual allegations in this paragraph.**

9. That applying the narrow, well defined historical tradition of this nation, the firearms ban at issue simply cannot stand, as all challenged firearms are of the type and kind traditionally owned for lawful purposes. See Staples v. United States, 511 U.S. 600 (1994) ("guns (like the semi automatic AR15 at issue in that case) falling outside those categories (referring to machineguns and grenades) traditionally have been widely accepted as lawful possessions").

**ANSWER: Defendant denies the allegations in this paragraph.**

10. That revolving cylinder shotguns, like the Colt Model 1855 Revolving Shotgun, and the more recent Ross revolving shotguns, have also long been traditionally legal items in the United States.

**ANSWER: Defendant denies the allegations in this paragraph.**

11. As these banned firearms are traditionally lawful items, under the Second Amendment they may not be banned.

**ANSWER: Defendant denies the allegations in this paragraph.**

WHEREFORE, this Court should declare prohibitions on manufacture, transfer and possession of the firearms contained in the statute unconstitutional under the Second and Fourteenth Amendments, and enjoining the enforcement of same by Defendants, plus such other, further and different relief as allowed by law, plus costs and attorney fees under 42 U.S.C. 1988.

**ANSWER: Defendant Kelly denies Plaintiffs are entitled to any relief in relation to Count V, respectfully requests that judgment be entered in his favor and against Plaintiffs in Count V, including the costs of defending this suit, and any other relief this Court deems necessary and proper.**

## COUNT IV

1 – 6 Plaintiffs adopts paragraph 1 through 6 above.

**ANSWER: Defendant adopts and incorporates his answers to paragraphs 1 through 6 above.**

7. That the challenged law purports to ban possession, manufacture and transfer, to and by ordinary law abiding citizens, of the following, mostly, but not exclusively semi-automatic rifles, pistols and shotguns (but apparently not receivers), by make and model, along with "copies, duplicates, variants, or altered facsimiles with the capability of any such weapon"

**ANSWER: Defendant denies the allegations in this paragraph.**

8. That, as noted in Springfield Armory, Inc. *v.* City of Columbus, 29 F.3d 250 (6th Cir. 1994), such a ban is unconstitutionally vague, as nothing in the ordinance provides sufficient information to enable a person of average intelligence to determine whether a weapon they wish to purchase has a design history of the sort which would bring it within this ordinance's coverage.

**ANSWER: Defendant denies the allegations in this paragraph.**

9. That this action is brought under 42 U.S.C. 1983.

**ANSWER: Defendant admits that Plaintiffs purport to bring this suit pursuant to 42 U.S.C. § 1983, and deny the remaining allegations in this paragraph.**

WHEREFORE, this Court should declare prohibitions on manufacture, transfer and possession of the firearms contained in Sections J, K and L of the statute unconstitutional, as facially unconstitutionally vague, under due process of the U.S. Constitution, and enjoining the enforcement of same by Defendants, plus such other, further and different relief as allowed by law, plus costs and attorney fees under 42 U.S.C. 1988.

**ANSWER: Defendant Kelly denies Plaintiffs are entitled to any relief in relation to Count IV, respectfully requests that judgment be entered in his favor and against Plaintiffs in Count IV, including the costs of defending this suit, and any other relief this Court deems necessary and proper.**

**Defendant denies all headings, unnumbered paragraphs, and each and every allegation in Plaintiffs' Complaint not previously admitted or otherwise qualified.**

### JURY DEMAND

**Defendant demands a trial by jury in this matter for any and all claims that can be tried by jury.**

### AFFIRMATIVE DEFENSES

Defendant Brendan Kelly, in his official capacity, by and through his attorney, Illinois Attorney General Kwame Raoul, asserts the following affirmative defenses to Plaintiffs' complaint:

1. Plaintiffs lack standing because they have not alleged that they suffered an injury in fact from any of Defendant's alleged acts, including allegations of any actual, impending, or threatened criminal enforcement actions against Plaintiffs.

2. Plaintiffs have failed to carry their burden of demonstrating the challenged portions of the Act regulate conduct covered by the "plain text" of the Second Amendment. *Bruen*, 142 S. Ct. at 2131. The weapons and accessories regulated by the Act are not "arms" in common use for self-defense and, as a result, are not covered by Second Amendment's "plain text". *Id.*; *McDonald*, 561 U.S. at 749–50 ("the Second

Amendment protects the right to keep and bear arms for the purpose of self-defense"). In addition, Plaintiffs have not shown that they intends to engage in conduct that is both regulated by the Act and covered by the "plain text" of the Second Amendment. *Bruen*, 142 S. Ct. at 2131.

3. In the alternative, even if Plaintiffs can meet their textual burden under *Bruen*'s first step, the Act fits well within the Nation's historical tradition of regulating "dangerous or unusual weapons." *Id*. The Act is relevantly similar to historical analogues from this tradition in "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. As a result, Plaintiff's claim that the Act infringes the Second Amendment fails.

Dated: March 16, 2023

                                              Respectfully submitted,

                                             /s/ *Laura K. Bautista*
                                             Laura K. Bautista

Kathryn Hunt Muse                           *Assistant Chief Deputy Attorney General*
Christopher G. Wells                          Office of the Illinois Attorney General
Hal Dworkin                                            500 S. Second Street
Office of the Illinois Attorney General       Springfield, IL 62701
100 W. Randolph Street, 12th Floor          217-782-5819
Chicago, IL 60601                                Laura.Bautista@ilag.gov
312-814-3000

## CERTIFICATE OF SERVICE

      I certify that on March 16, 2023, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

                                             /s/ *Laura K. Bautista*
                                               Laura K. Bautista
                                               Assistant Chief Deputy Attorney General