10452-229

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CALEB BARNETT, et al., | ) | Case No.:  3:23-cv-209-SPM |
| | ) | ** DESIGNATED Lead Case |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KWAME RAOUL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DANE HARREL, et al., | ) | Case No.:  3:23-cv-141-SPM |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KWAME RAOUL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| JEREMY W. LANGLEY, et al., | ) | Case No.:  3:23-cv-192-SPM |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KWAME RAOUL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| FEDERAL FIREARMS LICENSEES OF ILLINOIS, et al., | ) | Case No.:  3:23-cv-215-SPM |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAY ROBERT "JB" PRITZKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

10452-229

## ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

NOW COMES Defendant COLE SHANER, in his official capacity as State's Attorney of Crawford County, Illinois, by and through his attorney, Keith B. Hill of HEYL, ROYSTER, VOELKER & ALLEN, P.C., and for his Answer to Plaintiff's Complaint, states:

1.      This case is a challenge to purported Public Act 102-1116.

**ANSWER:**   Defendant admits the allegations in this paragraph.

2.      At all times relevant, Plaintiffs Timothy B. Jones, Jeremy Wayne Langley and Matthew Wilson, are citizens and residents of Crawford County, Illinois.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

3.      At all times relevant, Defendant Cole Price Shaner is the state's attorney of Plaintiff's county of residence.

**ANSWER:**   Defendant admits that he has served as Crawford County State's Attorney since December 2020. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

4.      At all times relevant, Defendant Brendan Kelly, is the Director of the Illinois State Police, and in such capacity has enforcement power over the challenged statute and has personally testified in the Illinois General Assembly that he will enforce the statute at issue and make the changes necessary at the state police to enforce same. Defendant Shaner is the chief prosecutorial officer in Crawford County, and while many states attorneys have announced they will not prosecute such actions, he has not so announced as of the time of this filing.

**ANSWER:**   Defendant admits that Defendant Brendan Kelly has served as the Director of the Illinois State Police since 2019. Defendant admits that the powers and duties of State's

10452-229

Attorneys are prescribed by Illinois law. Defendant admits that he had not announced that he will not prosecute actions to enforce the challenged statute as of the filing of this action. But on January 17, 2023, he issued a press release regarding HB 5471. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

5.      That at all times relevant, Defendants are being sued in their official capacities.

**ANSWER:**    Defendant admits the allegations of this paragraph.

## COUNT I

6.      That in January of 2023, in a lame duck session of the General Assembly, using a shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade, through political games, the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a wide ranging firearm and magazine ban, which is both poorly written, and unconstitutional.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

7.      That while the purported ban purports to grandfather the existing possession of such firearms, the grandfathering mechanism, as written, violates the Fifth and Fourteenth Amendments to the U.S. Constitution, as explained in *Haynes v. United States*, 390 U.S. 85 (1968), in that it requires persons, without being provided any form of immunity, and for use of and by a criminal law enforcement agency, to complete a form with the Illinois State Police, and provide information on current and past conduct, which can be used against that person in a criminal court, and admit possession of certain firearms that under state law are generally declared to be unlawful.

10452-229

**ANSWER:**    Defendant admits that 720 ILCS 5/24-1.9(d) states: "[T]his Section does not apply to a person's possession of an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge device if the person lawfully possessed that assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge prohibited by subsection (c) of this Section, if the person has provided in an endorsement affidavit, prior to January 1, 2024, under oath or affirmation and in the form and manner prescribed by the Illinois State Police, no later than October 1, 2023." Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

8.    The statute further requires those who come into possession of such firearms in the future, to also disclose said information to the state police, and in the process, potentially incriminate themselves.

**ANSWER:**    Defendant admits that 720 ILCS 5/24-1.9(d) states: "[b]eginning on January 1, 2024, the person with the endorsement for an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge or a person authorized under subdivisions (1) through (5) of subsection (e) to possess an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge may transfer the assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge only to an heir, an individual residing in another state maintaining it in another state, or a dealer licensed as a federal firearms dealer under Section 923 of the federal Gun Control Act of 1968. Within 10 days after transfer of the weapon except to an heir, the person shall notify the Illinois State Police of the name and address of the transferee and comply with the requirements of subsection (b) of Section 3 of the Firearm Owners Identification Card Act. The person to whom the weapon or ammunition is transferred shall, within 60 days of the transfer, complete an affidavit required under this Section. A person

10452-229

to whom the weapon is transferred may transfer it only as provided in this subsection."
Defendant lacks knowledge or information sufficient to form a belief about the truth of the
remaining allegations in this paragraph.

9.      In that the registration or "endorsement" provision of the purported statute is
unconstitutional, all provisions of the purported statute purporting to require registration or
"endorsement", penalizing failure to so register and/or differentiating between registered and
unregistered, or disclosed and undisclosed firearms should be stricken, as unconstitutional, and
preliminarily and permanently enjoined.

**ANSWER:**    Defendant denies that any state or federal court in Illinois has held that
"the registration or 'endorsement' provision" of Public Act 102-1116 violates the Fifth and
Fourteenth Amendments.

10.     That Plaintiffs have no adequate remedy at law.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief
about the truth of the allegations in this paragraph.

WHEREFORE, Defendant COLE SHANER, in his official capacity as State's Attorney
of Crawford County, Illinois, requests the Court deny Plaintiffs' requested relief, and enter
judgment for Defendant.

## COUNT II

1-5.    Plaintiff adopts and incorporates paragraphs 1 through 5 above.

**ANSWER:**    Defendant adopts and incorporates his answers to paragraphs 1 through 5
above as and for his answers to paragraphs 1 through 5 of Count II.

6.      That in January of 2023, in a lame duck session of the General Assembly, using a
shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade through

10452-229

political games the requirements of the Illinois Constitution to pass a bill into law, amended a

bill into a wide ranging firearm and magazine ban.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

7.      At all times relevant Plaintiff has a right, under the Second and Fourteenth

Amendments to the Constitution of the United States, to keep and bear arms, including arms for

self-defense in both the home, and outside of the home.

**ANSWER:** Defendant admits that in *New York State Rifle & Pistol Ass 'n v. Bruen*,

142 S. Ct. 2111 (2022), the Supreme Court recognized that the Second Amendment's plain text

guarantees a right to "bear" arms in the home and in public for self-defense.

8.      That the right to keep and bear arms includes modern firearm and modern

devices.

**ANSWER:** Defendant admits that in *District of Columbia v. Heller*, 554 U.S. 570

(2008), the Supreme Court recognized that "the Second Amendment extends, prima facie, to all

instruments that constitute bearable arms, even those that were not in existence at the time of the

founding"; and that in *New York State Rifle & Pistol Ass 'n v. Bruen*, 142 S. Ct. 2111 (2022), the

Supreme Court recognized that the Second Amendment's definition of "arms" "covers modern

instruments that facilitate armed self-defense." Defendant denies the remaining allegations of

this paragraph.

9.      Included in the ban is a ban on the transportation, outside of the home, except in

very limited circumstances, as listed below:

           (1) on private property owned or immediately controlled by the person;

10452-229

(2) on private property that is not open to the public with the express

permission of  the person who owns or immediately controls such property;

(3) while on the premises of a licensed firearms dealer or gunsmith for the

purpose of lawful repair;

(4) while engaged in the legal use of the assault weapon, assault weapon

attachment, .50 caliber rifle, or .50 caliber cartridge at a properly licensed

firing range or sport shooting competition venue; or

(5) while traveling to or from these locations, provided that the assault

weapon, assault weapon attachment, or .50 caliber rifle is unloaded and the

assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber

cartridge is enclosed in a case, firearm carrying box, shipping box, or other

container.

**ANSWER:**    Defendant admits that Plaintiffs have accurately quoted from 720 ILCS

5/24-1.9(d)'s subparagraphs (1) through (5).

10.    That under the Second Amendment to the U.S. Constitution, as incorporated by

the 14th Amendment, and per the Supreme Court ruling in New York State Rifle & Pistol

Association, Inc. v. Bruen, 597 U.S. ____ (2022), as the Second Amendment's plain text covers

an individual's conduct [here the right to bear arms outside of their home generally], the

Constitution presumptively protects that conduct.

**ANSWER:**    Defendant admits that in *New York State Rifle & Pistol Association, Inc. v.*

*Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court held "that when the Second Amendment's

plain text covers an individual's conduct, the Constitution presumptively protects that conduct."

10452-229

11.     The government cannot justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation, as it is not. In fact, this prohibition is unprecedented in Illinois, and inconsistent with the nations traditions of firearm regulation.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of whether the government can demonstrate that Public Act 102-1116 "is consistent with this Nation's historical tradition of firearm regulation, such that a court may conclude that the conduct falls outside the Second Amendment's "unqualified command."

12.     That while the state may prohibit the carriage of arms in certain narrow sensitive places, the challenged prohibition flips this on its head, not merely prohibiting carriage in certain sensitive places (which is already prohibited by other law), but totally prohibiting the carriage of these arms, such to only minimally listed areas, and even those are limited to basically wealthy landowners, as almost no firing ranges in Illinois require a license, and under the statute land that is open to the public for such use prohibits such use and possession.

**ANSWER:**     Defendant admits that in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court reiterated that government may prohibit "the carrying of firearms in sensitive places such as schools and government buildings …." Defendant lacks knowledge or information sufficient to form a belief about the truth of whether the government can demonstrate that Public Act 102-1116 "is consistent with this Nation's historical tradition of firearm regulation, such that a court may conclude that the conduct falls outside the Second Amendment's "unqualified command."

13.     That the prohibition on the transport and carriage of regulated items under the challenged statute is, in fact, unconstitutional and void.

10452-229

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of whether the government can demonstrate that Public Act 102-1116 "is consistent with this Nation's historical tradition of firearm regulation, such that a court may conclude that the conduct falls outside the Second Amendment's "unqualified command."

WHEREFORE, Defendant COLE SHANER, in his official capacity as State's Attorney of Crawford County, Illinois, requests the Court deny Plaintiffs' requested relief, and enter judgment for Defendant.

### COUNT III

1-5.    Plaintiffs adopt paragraphs 1 through 5 above.

**ANSWER:**    Defendant adopts and incorporates his answers to paragraphs 1 through 5 above as and for his answers to paragraphs 1 through 5 of Count III.

6.    That in January of 2023, in a lame duck session of the General Assembly, using a shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade through political games the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a wide ranging firearm and magazine ban.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

7.    At all times relevant Plaintiff has a right, under the Second and Fourteenth Amendments to the Constitution of the United States, to keep and bear arms, including arms for self-defense in both the home, and outside of the home.

**ANSWER:**    Defendant admits that in *New York State Rifle & Pistol Ass 'n v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court recognized that the Second Amendment's plain text guarantees a right to "bear" arms in the home and in public for self-defense.

10452-229

8.      That the right to keep and bear arms includes modern firearm and modem devices.

**ANSWER:**   Defendant admits that in *District of Columbia v. Heller*, 554 U.S. 570

(2008), the Supreme Court recognized that "the Second Amendment extends, prima facie, to all

instruments that constitute bearable arms, even those that were not in existence at the time of the

founding"; and that in *New York State Rifle & Pistol Ass 'n v. Bruen*, 142 S. Ct. 2111 (2022), the

Supreme Court recognized that the Second Amendment's definition of "arms" "covers modern

instruments that facilitate armed self-defense." Defendant denies the remaining allegations of

this paragraph.

9.      That the challenged statute purports to ban the possession or use of ammunition

feeding devices, including magazines, for long guns over 10 rounds, and for handguns over 15

rounds.

**ANSWER:**   Defendant admits that 720 ILCS 5/24-1.10(c) states "*[e]xcept as provided*

*in subsections (d), (e), and (f)* … it is unlawful to knowingly possess a large capacity

ammunition feeding device." Defendant admits that 720 ILCS 5/4-1.10(a) defines a "large

capacity ammunition feeding device" as "a magazine … that has a capacity of … more than 10

rounds of ammunition for long guns and more than 15 rounds of ammunition for handguns …."

(Emphasis added). Defendant denies the remaining allegations of this paragraph.

10.      Since at least 1780, rifles have actually existed which included a magazine

capacity of well in excess of 15 shots. Such rifles include the Austrian Girardoni rifle, which was

used by Meriwether Lewis in his famous expedition to and through the West.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief

about the truth of the allegations in this paragraph.

10452-229

11.      In about 1860, the predecessor of Winchester arms, produced its Henry rifle, which, in .44 Henry held 15 rounds in its magazine, plus 1 round in the chamber.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

12.      Over the next hundred years, firearm magazines capacities standardized to between 13 and 20 rounds for pistols, with about 17 being average, and 15 to 35 rounds for rifles, which is standard in 2023, across most states in the United States, and most countries in the world.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

13.      Rifles with magazine capacities of 10 rounds or less are widely considered in 2023, to be "curios and relics", historical firearm, obsolete, or otherwise technologically dated, at best, and obsolete, at worst.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

14.      For instance, the U.S. M1 Carbine, which has been one of the most popular firearms, both in the United States, and internationally, with civilian, military and police users, has, since 1941, had a standard 15 round magazine capacity, and since about 1944, a standard 30 round capacity.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

15.      The Browning Hi Power pistol, designed by Famous American Gun Designer John Browning, and Belgian engineer Dieudonne Saive, and placed in production in 1935, had a

standard capacity of 13 rounds of 9mm ammunition, and was for more than 50 years, considered the standard 9mm pistol in the world, until replaced, starting in about 1980 by most users worldwide, with Glock style 17 pistols, with 17 round standard magazines.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

16.   The U.S Military M17 pistol uses a standard 17 round or 21 round magazine, depending on configuration.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

17.   The Colt SP1, often mis-called the AR15, was first released by Cold in 1964, with standard 20 round magazines, by about the 1970s, 30 round magazines had become standard.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

18.   Since 1964, excluding fully automatic versions sold to various government entities, semi-automatic rifles of the SP1 or AR15 type, by various manufacturers, have become the current American standard rifle, with literally more than 10 million sold domestically, most of them since 1994, which use standard 30 round magazines.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

19.   Of firearms designed and sold for self-defense, those with magazine capacities of 10 rounds or less are rare and unusual, and those pistols with 15 or fewer rounds are usually compact versions of normal firearms, or historical and obsolete.

10452-229

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

20.    That in January 2023, the State of Illinois enacted a purported prohibition of the manufacture, sale, transfer or possession of ammunition feeding devices that can feed more than 10 rounds of ammunition for a rifle or shotgun, or 15 rounds for a pistol, a copy of said purported statute is attached hereto as Exhibit A.

**ANSWER:**    Defendant admits that the Illinois General Assembly enacted Public Act 102-1116 in January 2023. Defendant admits that 720 ILCS 5/24-1.10(c) states "[e]xcept as provided in subsections (d), (e), and (f) … it is unlawful to knowingly possess a large capacity ammunition feeding device." Defendant admits that 720 ILCS 5/4-1.10(a) defines a "large capacity ammunition feeding device" as "a magazine … that has a capacity of … more than 10 rounds of ammunition for long guns and more than 15 rounds of ammunition for handguns …." (Emphasis added). Defendant denies the remaining allegations of this paragraph.

21.    That this action is brought pursuant to 42 USC 1983.

**ANSWER:**    Defendant admits the allegations of this paragraph.

14.    That under the Second Amendment to the U.S. Constitution, as incorporated by the 14th Amendment, and per the Supreme Court ruling in New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S.  (2022), as the Second Amendment's plain text covers an individual's conduct [here the right to acquire and possess modern arms) the Constitution presumptively protects that conduct.

**ANSWER:**    Defendant admits that in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court held "that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."

10452-229

15.     The government cannot justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation, as it is not. In fact, this kind of prohibition is inconsistent with the nations traditions of firearm regulation.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of whether the government can demonstrate that Public Act 102-1116 "is consistent with this Nation's historical tradition of firearm regulation, such that a court may conclude that the conduct falls outside the Second Amendment's "unqualified command."

WHEREFORE, Defendant COLE SHANER, in his official capacity as State's Attorney of Crawford County, Illinois, requests the Court deny Plaintiffs' requested relief, and enter judgment for Defendant.

### COUNT IV

1-5.     Plaintiffs adopt paragraphs 1 through 5 above.

**ANSWER:**     Defendant adopts and incorporates his answers to paragraphs 1 through 5 above as and for his answers to paragraphs 1 through 5 of Count IV.

6.     That in January of 2023, in a lame duck session of the General Assembly, using a shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade through political games the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a wide ranging firearm and magazine ban.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

7.     At all times relevant Plaintiff has a right, under the due process clauses of the Constitution of the United States, to reasonable notice as to what the laws actually are, and how to comply.

10452-229

**ANSWER:**    Defendant admits that criminal statutes that lack sufficient definiteness or specificity may run afoul of the Due Process Clause. Defendant denies the remaining allegations of this paragraph.

8.    That the challenged statute purports to ban the possession or use of ammunition feeding devices, including magazines, for long guns over 10 rounds, and for handguns over 15 rounds.

**ANSWER:**    Defendant admits that 720 ILCS 5/24-1.10(c) states "*[e]xcept as provided in subsections (d), (e), and (f)* … it is unlawful to knowingly possess a large capacity ammunition feeding device." Defendant admits that 720 ILCS 5/4-1.10(a) defines a "large capacity ammunition feeding device" as "a magazine … that has a capacity of … more than 10 rounds of ammunition for long guns and more than 15 rounds of ammunition for handguns …." (Emphasis added). Defendant denies the remaining allegations of this paragraph.

11.    Since at least 1780, rifles have actually existed which included a magazine capacity of well in excess of 15 shots. Such rifles include the Austrian Girardoni rifle, which was used by Meriwether Lewis in his famous expedition to and through the West.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

12.    In about 1860, the predecessor of Winchester arms, produced its Henry rifle, which, in .44 Henry held 15 rounds in its magazine, plus 1 round in the chamber.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

13.    Over the next hundred years, firearm magazines capacities standardized to between 13 and 20 rounds for pistols, with about 17 being average, and 15 to 35 rounds for

10452-229

rifles, which is standard in 2023, across most states in the United States, and most countries in the world.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

14.   Rifles with magazine capacities of 10 rounds or less are widely considered in 2023, to be "curios and relics", historical firearm, obsolete, or otherwise technologically dated, at best, and obsolete, at worst.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

15.   For instance, the U.S. Ml Carbine, which has been one of the most popular firearms, both in the United States, and internationally, with civilian, military and police users, has, since 1941, had a standard 15 round magazine capacity, and since about 1944, a standard 30 round capacity.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

16.   The Browning Hi Power pistol, designed by Famous American Gun Designer John Browning, and Belgian engineer Dieudonne Saive, and placed in production in 1935, had a standard capacity of 13 rounds of 9mm ammunition, and was for more than 50 years, considered the standard 9mm pistol in the world, until replaced, starting in about 1980 by most users worldwide, with Glock style 17 pistols, with 17 round standard magazines.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

10452-229

17.     The U.S Military M17 pistol uses a standard 17 round or 21 round magazine, depending on configuration.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

18.     The Colt SP1, often mis-called the AR15, was first released by Cold in 1964, with standard 20 round magazines, by about the 1970s, 30 round magazines had become standard.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

19.     Since 1964, excluding fully automatic versions sold to various government entities, semi-automatic rifles of the SP1 or AR15 type, by various manufacturers, have become the current American standard rifle, with literally more than 10 million sold domestically, most of them since 1994, which use standard 30 round magazines.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

20.     Of firearms designed and sold for self-defense, those with magazine capacities of 10 rounds or less are rare and unusual, and those pistols with 15 or fewer rounds are usually compact versions of normal firearms, or historical and obsolete.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

21.     That in January 2023, the State of Illinois enacted a purported prohibition of the manufacture, sale, transfer or possession of ammunition feeding devices that can feed more than 10 rounds of ammunition for a rifle or shotgun, or 15 rounds for a pistol, a copy of said purported statute is attached hereto as Exhibit A.

10452-229

**ANSWER:**    Defendant admits that the Illinois General Assembly enacted Public Act 102-1116 in January 2023. Defendant admits that 720 ILCS 5/24-1.10(c) states "*[e]xcept as provided in subsections (d), (e), and (f)* … it is unlawful to knowingly possess a large capacity ammunition feeding device." Defendant admits that 720 ILCS 5/4-1.10(a) defines a "large capacity ammunition feeding device" as "a magazine … that has a capacity of … more than 10 rounds of ammunition for long guns and more than 15 rounds of ammunition for handguns …." (Emphasis added). Defendant denies the remaining allegations of this paragraph.

22.    That this action is brought pursuant to 42 USC 1983.

**ANSWER:**    Defendant admits the allegations of this paragraph.

16.    That that as a practical matter, there is no difference between a rifle or handgun magazine, such that it is objectively impossible to tell from merely looking at a given device whether it is a legal 15 round handgun magazine, or a prohibited 15 round rifle magazine.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

17.    That many rifles use magazines commonly used by handguns, and vice versa.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

18.    In addition, the ammunition capacity of a given magazine may well, and often is different, depending on the ammunition loaded into it. For instance, standard 9mm Luger ammunition, which has been manufactured worldwide since 1908, actually is manufactured to a wide variety of specifications, such that with some magazines, one more or fewer rounds might fit in a given magazine.

10452-229

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

19.    Likewise, with tubular magazine rifles and shotguns, the magazine capacity can and will vary widely, based on the type of ammunition used, such as with 38 special and .357 magnum ammunition, or 3 inch, 2.75 inch, or so called mini 12 gauge rounds.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

20.    Likewise, most 15 round .40 pistol type magazines will hold and function with more than 15 9mm rounds, STANAG rifle magazines will function with different number of rounds depending on the caliber of ammunition loaded.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

21.    Such that it is objectively impossible to determine a given ammunition capacity, without knowing what ammunition will be fed into it.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

22.    As such, no objectively intelligent person can determine whether a given ammunition magazine is legal, simply be looking at it, and likely even with expert advice.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

23.    Accordingly, the magazine ban is unconstitutionally vague.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of whether "the magazine ban is unconstitutionally vague."

10452-229

WHEREFORE, Defendant COLE SHANER, in his official capacity as State's Attorney of Crawford County, Illinois, requests the Court deny Plaintiffs' requested relief, and enter judgment for Defendant.

## COUNT V

1-6.    Plaintiffs adopts paragraph 1 through 6 above.

**ANSWER:**    Defendant adopts and incorporates his answers to paragraphs 1 through 6 above as and for his answers to paragraphs 1 through 6 of Count V.

7.    That the challenged law purports to ban possession, manufacture and transfer, to and by ordinary law-abiding citizens, of the following, mostly, but not exclusively semi-automatic firearms:

A;    A semiautomatic rifle that has the capacity to accept a detachable magazine or that may be readily modified to accept a detachable magazine, if the firearm has one or more of the following:

(i) a pistol grip or thumbhole stock;

(ii) any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) a folding, telescoping, thumbhole, or detachable stock, or a stock that is otherwise foldable or adjustable in a manner that operates to reduce the length, size, or any other dimension, or otherwise enhances the concealability of, the weapon;

(iv) a flash suppressor;

(v) a grenade launcher;

10452-229

(vi) a shroud attached to the barrel or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel.

(B)     A semiautomatic rifle that has a fixed magazine with the capacity to accept more than 10 rounds, except for an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.

(C)     A semiautomatic pistol that has the capacity to accept a detachable magazine or that may be readily modified to accept a detachable magazine, if the firearm has one or more of the following:

(i) a threaded barrel;

(ii) a second pistol grip or another feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) a shroud attached to the barrel or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

(iv) a flash suppressor;

(v) the capacity to accept a detachable magazine at some location outside of the pistol grip; or

(vi) a buffer tube, arm brace, or other part that protrudes horizontally behind the pistol grip and is designed or redesigned to allow or facilitate a firearm to be fired from the shoulder.

(D)     A semiautomatic pistol that has a fixed magazine with the capacity to accept more than 15 rounds.

10452-229

(E)    Any shotgun with a revolving cylinder.

(F)    A semiautomatic shotgun that has one or more of the following:

(i) a pistol grip or thumbhole stock;

(ii) any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) a folding or thumbhole stock;

(iv) a grenade launcher;

(v) a fixed magazine with the capacity of more than 5 rounds; or

(vi) the capacity to accept a detachable magazine.

(G)    Any semiautomatic firearm that has the capacity to accept a belt ammunition feeding device.

**ANSWER:**    Defendant admits that 720 ILCS 5/24-1.9(b) states "*[e]xcept as provided in subsections (c), (d), and (e)* … it is unlawful for any person within this State to knowingly manufacture, sell, import, or purchase or cause to be manufactured, delivered, sold, imported, or purchased by another, an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge. (Emphasis added). Defendant admits that 720 ILCS 5/24-1.9(c) states "*[e]xcept as provided in subsection (d)* … it is unlawful for any person within this State to knowingly possess an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge. (Emphasis added). Defendant admits that Plaintiffs have accurately quoted from a portion of 720 ILCS 5/24-1.9(a)'s definition of an "assault weapon." Defendant denies the remaining allegations of this paragraph.

8.    That in 2022, the U.S. Supreme Court in **Bruen** made clear that

10452-229

"In the years since, the Courts of Appeals have coalesced around a "two-step" framework for analyzing Second Amendment challenges that combines history with means-end scrutiny. Today, we decline to adopt that two-part approach. Despite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history. But Heller and McDonald do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

**ANSWER:**    Defendant admits that Plaintiffs have accurately quoted from the Supreme Court's opinion in *New York State Rifle & Pistol Ass 'n v. Bruen*, 142 S. Ct. 2111 (2022)

9.    That applying the narrow, well defined historical tradition of this nation, the firearms ban at issue simply cannot stand, as all challenged firearms are of the type and kind traditionally owned for lawful purposes. See Staples v. United States, 511 U.S. 600 (1994) ("guns (like the semi-automatic AR15 at issue in that case) falling outside those categories (referring to machineguns and grenades) traditionally have been widely accepted as lawful possessions").

**ANSWER:**    Defendant denies the allegations of this paragraph because *Staples v. United States*, 511 U.S. 600 (1994) did not involve a Second Amendment challenge to a gun regulation.

10.    That revolving cylinder shotguns, like the Colt Model 1855 Revolving Shotgun, and the more recent Ross revolving shotguns, have also long been traditionally legal items in the United States.

10452-229

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

11.     As these banned firearms are traditionally lawful items, under the Second Amendment they may not be banned.

**ANSWER:**     Defendant denies the allegations of this paragraph because they are inconsistent with the framework for analyzing Second Amendment challenges established by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008).

WHEREFORE, Defendant COLE SHANER, in his official capacity as State's Attorney of Crawford County, Illinois, requests the Court deny Plaintiffs' requested relief, and enter judgment for Defendant.

**COUNT IV**

1-6.     Plaintiffs adopts paragraph 1 through 6 above.

**ANSWER:**     Defendant adopts and incorporates his answers to paragraphs 1 through 6 above as and for his answers to paragraphs 1 through 6 of "Count IV" [sic].

7.     That the challenged law purports to ban possession, manufacture and transfer, to and by ordinary law-abiding citizens, of the following, mostly, but not exclusively semi-automatic rifles, pistols and shotguns (but apparently not receivers), by make and model, along with "copies, duplicates, variants, or altered facsimiles with the capability of any such weapon"

**ANSWER:**     Defendant admits that 720 ILCS 5/24-1.9(b) states "*[e]xcept as provided in subsections (c), (d), and (e)* … it is unlawful for any person within this State to knowingly manufacture, sell, import, or purchase or cause to be manufactured, delivered, sold, imported, or purchased by another, an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge. (Emphasis added). Defendant admits that 720 ILCS 5/24-1.9(c) states "*[e]xcept*

10452-229

*as provided in subsection (d)* … it is unlawful for any person within this State to knowingly possess an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge. (Emphasis added). Defendant admits that Plaintiffs have accurately quoted from a portion of 720 ILCS 5/24-1.9(a)'s definition of an "assault weapon." Defendant denies the remaining allegations of this paragraph.

8.      That, as noted in Springfield Armory, Inc. v. City of Columbus, 29 F.3d 250 (6th Cir. 1994), such a ban is unconstitutionally vague, as nothing in the ordinance provides sufficient information to enable a person of average intelligence to determine whether a weapon they wish to purchase has a design history of the sort which would bring it within this ordinance's coverage.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of whether a person of average intelligence can determine whether a weapon they wish to purchase has a design history of the sort which would bring it within the ordinance's coverage.

9.      That this action is brought pursuant to 42 USC 1983.

**ANSWER:**     Defendant admits the allegations of this paragraph.

WHEREFORE, Defendant COLE SHANER, in his official capacity as State's Attorney of Crawford County, Illinois, requests the Court deny Plaintiffs' requested relief, and enter judgment for Defendant.

## <u>AFFIRMATIVE DEFENSES TO COMPLAINT</u>

NOW COMES Defendant COLE SHANER, in his official capacity as State's Attorney of Crawford County, Illinois, by and through his attorney, Keith B. Hill of HEYL, ROYSTER, VOELKER & ALLEN, P.C., and for his Affirmative Defenses to Plaintiffs' Complaint, states:

10452-229

1.      Plaintiffs lack standing.

2.      At all times relevant to Plaintiffs' claims, Defendant was acting within the scope of his prosecutorial duties. Defendant is, therefore, protected from liability by the doctrine of absolute immunity.

3.      At all times relevant to Plaintiffs' claims, Defendant acted in good faith in the performance of his official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendant is, therefore, protected from suit by the doctrine of qualified immunity.

4.      Plaintiff's claims are barred by sovereign immunity.

WHEREFORE, Defendant SEAN FEATHERSTUN, in his Official Capacity as State's Attorney for Jefferson County, Illinois, requests the Court deny Plaintiffs' requested relief, and enter judgment for Defendant.

COLE SHANER, in his official capacity as State's
Attorney for Crawford County, Illinois, Defendant,


BY: _____/s/ Keith B. Hill_____
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Keith B. Hill, ARDC #6277660


HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Suite 100, Mark Twain Plaza III
105 West Vandalia
Edwardsville, Illinois 62025 0467
Telephone 618.656.4646
Facsimile 309.420.0402
edwecf@heylroyster.com
khill@heylroyster.com
nsinclair@heylroyster.com

10452-229

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this **16th** day of **March, 2023**, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ Keith B. Hill

_____