IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CALEB BARNETT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 23-cv-209-SPM |
| | ) | |
| KWAME RAOUL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| DANE HARREL, et. el., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 23-cv-141-SPM |
| | ) | |
| KWAME RAOUL, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| JEREMY W. LANGLEY, et. el., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 23-cv-192-SPM |
| | ) | |
| BRENDAN KELLY, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| FEDERAL FIREARMS LICENSEES OF ILLINOIS, et. el., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 23-cv-2015-SPM |
| | ) | |
| JAY ROBERT "JB" PRITZKER, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS, JAMES GOMRIC, IN HIS OFFICIAL CAPACITY AS STATE'S
ATTORNEY OF ST. CLAIR COUNTY, ILLINOIS AND
RICHARD WATSON, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ST.
CLAIR COUNTY ILLINOIS ANSWER TO PLAINTIFF, DANE HARREL,
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COMES NOW, Defendants, James Gomric, in his official capacity as State's Attorney of St. Clair County, Illinois, and Richard Watson, in his official capacity as Sheriff of St. Clair County, Illinois, ("St. Clair County Defendants"), by and through their undersigned counsel, and for their Answer to Plaintiff, Dane Harrel's, Complaint for Declaratory and Injunctive Relief, and states as follows:

1.      The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms " U.S. CONST. amend. II. Under this constitutional provision, Plaintiff Harrel, and all oth.er law-abiding, responsible Illinoisans have a fundamental, constitutionally guaranteed right to keep and bear common firearms for defense of self and family and for other lawful pursuits.

> **ANSWER: Paragraph 1 calls for legal conclusion to which no response is required.**

2.      But the State has enacted, and Defendants have authority to enforce, a flat prohibition on the manufacture, delivery, sale, import, purchase, and possession of many common firearms-tendentiously labeled "assault weapons"-by ordinary citizens, making it a crime for law-abiding citizens to ,exercise their fundamental right to keep and bear such arms. See 720-ILL. COMP. STAT. 5/24 1.9(b) & (c); 5/24-l(a)(15) & (a)16.

> **ANSWER: Paragraph 2 calls for legal conclusion to which no response is required. To the extent paragraph 2 contains factual allegations against the St. Clair County Defendants, the St. Clair County Defendants deny that they had any role in any legislative enactments.**

3.      Defendants also have enacted and enforced a flat prohibition on the manufacture, delivery, sale, purchase, and possession of common ammunition feeding devices-arbitrarily deemed to have "large capacity' -by ordinary citizens, making it  a

crime for law-abiding citizens to exercise their fundamental right to keep and bear such arms. See 720 ILL. COMP. STAT. 5/24-1.lO(b) and (c).

> **ANSWER: Paragraph 3 calls for legal conclusion to which no response is required. To the extent paragraph 3 contains factual allegations against the St. Clair County defendants, the St. Clair County defendants deny that they had any role in any legislative enactments.**

4.     The State's highly limited set of exemptions for certain persons and purposes from its blanket ban do not allow typical law-abiding citizens to keep and bear these common firearms. See 720 ILL. COMP. STAT. 5/24-l.9(d) and (e) and id. at 1.lO(d) and (e).

> **ANSWER: Paragraph 4 calls for legal conclusion to which no response is required. To the extent paragraph 4 contains factual allegations against the St. Clair County defendants, the St. Clair County defendants deny that they had any role in any legislative enactments.**

5.     The State's enactment, and Defendants' enforcement, of the prohibition on common semiautomatic firearms, tendentiously and inaccurately labeled assault weapons, and on certain magazines arbitrarily deemed to be of "large capacity," denies individuals who reside in the State, including individual Plaintiffs, their customers, and other members of ISRA, FPC, and SAF, their fundamental, individual right to keep and bear common arms.

> **ANSWER: Paragraph 5 calls for legal conclusion to which no response is required. To the extent paragraph 5 contains factual allegations against the St. Clair County defendants, the St. Clair County defendants deny that they had any role in any legislative enactments.**

6.     While Plaintiffs acknowledge that their sought result is contrary to *Wilson v. Cook Cnty.*, 937 F.3d 1028 (7th Cir. 2019), and *Friedman v. City of Highland Park, Ill.*, 784 F.3d 406 (7th Cir. 2015), those cases have been abrogated by *N.Y. State Rifle and*

*Pistol Ass'n v. Bruen*, 597 U.S. , 142 S. Ct. 211 L (2022). In particular, *Bruen* displaced *Friedman's* inquiry in Second Amendment cases into "whether a regulation bans weapons that were common at the time of ratification or those that have 'some reasonable relationship to the preservation or efficiency of a well-regulated militia,' and whether law-abiding citizens retain adequate means of self-defense," *Friedman*, 784 E.3d at 410 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 622 (2008)) (citations omitted). *Bruen's* replacement test: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2127, 2129-30.

> ***ANSWER: Paragraph 6 calls for legal conclusion to which no response is required.***

7.      The plain text of the Second Amendment covers the conduct the Plaintiffs wish-to engage in because it "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." Id. at 2132 (quoting *Heller*, 554 U.S. 582). By prohibiting Plaintiffs from possessing and carrying popular semiautomatic firearms and common ammunition magazines, Illinois has prevented them from "keeping and bearing Arms" within the meaning of the Amendment's text. As a result, "[t]o justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's tradition of firearm regulation." 142 S. Ct. at 2126.

> ***ANSWER: Paragraph 7 calls for legal conclusion to which no response is required.***

8.      Here, Defendants will not be able to demonstrate any such thing. *Heller* and *Bruen* have already established the only historical tradition can remove a firearm from

the Second Amendment's protective scope-the tradition of banning dangerous and unusual weapons. *Heller*, 554 U.S. at 627; *Bruen*, 142 S. Ct. at 2143. But to be banned, a firearm must be both dangerous and unusual. *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alita, J., concurring). Arms that are in ,common use-as the firearms and magazines Illinois has banned unquestionably are-cannot be unusual or dangerous. Therefore, they cannot be banned, and the Illinois laws challenged herein must be declared unconstitutional.

> **ANSWER: Paragraph 7 calls for legal conclusion to which no response is required**

## JURISDICTION & VENUE

9.    This Court has subject-matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

> **ANSWER: St. Clair County Defendants are not disputing subject-matter jurisdiction.**

10.    Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

> **ANSWER: St. Clair County Defendants are not disputing the statutory provisions under which Plaintiff is seeking relief.**

11.    "Venue lies in this Court under 28 U.S.C. § 1391(b)(l) and (b)(2).

> **ANSWER: St. Clair County Defendants are not disputing venue.**

## PARTIES

### Plaintiffs

12.    Plaintiff Dane Harrel is a natural person, a resident of St. Clair County, Illinois, an adult over the age of 21, a citizen of the United States, and legally eligible under

federal and state law to possess and acquire firearms. Harrel is a member of Plaintiffs ISRA, FPC, and SAF.

> **ANSWER:  *St. Clair County Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 12.***

13.     Plaintiff C4 Gun Store, LLC is an Illinois limited liability company with its principal place of business located in Sparta, Randolph County, Illinois. C4 Gun Store sells the semiautomatic firearms prohibited by the State's ban, and also sells standard capacity magazines, both as standard equipment for many of the firearms it sells and also as standalone products. Since Illinois's semiautomatic rifle and standard capacity magazine bans have gone into effect, C4 Gun Store has been forced to stop selling such semiautomatic firearms and standard capacity magazines to civilians and to limit its sales to those specifically exempted from the state-wide ban.

> **ANSWER:  *St. Clair County Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 13.***

14.     Plaintiff Marengo Guns, Inc. is an Illinois corporation with its principal place of business located in Marengo, McHenry County, Illinois. Marengo Guns sells the semiautomatic firearms prohibited by the State's ban, and also sells standard capacity magazines, both as standard equipment for many of the firearms it sells and also as standalone products. Since Illinois's semiautomatic rifle and standard capacity magazine bans have gone into  effect, Marengo Guns has been forced to stop selling such semiautomatic firearms and, standard capacity magazines to civilians ,and to limit its sales to those specifically exempted from the state-wide ban.

> **ANSWER:  *St. Clair County Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 14.***

15.     Plaintiff Illinois State Rifle Association ("ISRA") is a nonprofit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. The purposes. of ISRA include securing the constitutional right to privately own; possess, and carry firearms in Illinois, through education, outreach, and litigation. ISRA has thousands of members and supporters in Illinois, and many members outside the State of Illinois. ISRA brings this action on behalf of its members, including the named Plaintiffs, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

> **ANSWER:  *St. Clair County Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 15.***

16.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights, especially, but not limited to, the Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf of its members, including the named Plaintiffs, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

> **ANSWER:  *St. Clair County Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 16.***

17.     Plaintiff Second Amendment Foundation ("SAF") is a nonprofit, educational foundation incorporated in 197.4 under the laws of, Washington with its principal-,place, of business in Bellevue, Washington. SAF is a 501(c)(3) organization under Title 26 of the United States Code. SAF's mission is to preserve the individual constitutional right to keep and bear arms-through public education, judicial, historical, and economic research, publishing, and legal action, programs focused on their civil right guaranteed by the Second Amendment to the United States Constitution. SAF has members nationwide, including in the State of Illinois. SAF brings this action on behalf of its. members, including the named Plaintiffs, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, customs challenged herein.

> **_ANSWER:  St. Clair County Defendants lack sufficient information to either admit or deny the allegations contained in paragraph 17._**

### **Defendants**

18.     Defendant Kwame Raoul is sued in his official capacity as the Attorney General  of Illinois. As Attorney General, he is responsible for enforcing the State's laws and has concurrent authority with State's Attorney's to initiate prosecutions on behalf of the People of Illinois. See *People v. Buffalo Confectionary Co.*, 401 N.E.2d 546, 549 (Ill. 1980). This authority includes the authority to enforce the State's general prohibition on the manufacture, delivery, sale, purchase, and possession of common semiautomatic firearms and ammunition magazines.

> **_ANSWER: Paragraph 18 calls for legal conclusion to which no response is required._**

19.     Defendant Brendan F. Kelly is sued in his official capacity as the Director of the Illinois Department of State Police. As Director, Kelly is responsible for managing and controlling enforcement of the State's criminal laws by the State Police, see 20 ILL. COMP. STAT. 2610/2, 2610/16, including the State's general prohibition on the manufacture, delivery, sale, import, purchase, and possession of common semiautomatic firearms and ammunition magazines.

> **ANSWER: Paragraph 19 calls for legal conclusion to which no response is required.**

20.     Defendant James 'Gomric is sued in his official capacity as State's Attorney for St. Clair County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for [his] county, in which the people of the State or county may be concerned," including violations of Illinois' ban on common firearms and ammunition magazines. 55 ILL. COMP. STAT. 5/3-9005.

> **ANSWER:  Defendant, James Gomric, admits that he has been sued in his official capacity and is the State's Attorney for St. Clair County, Illinois. Paragraph 20 calls for legal conclusion to which no response is required; however, Defendants admit that 55 ILCS 5/3-9005 is entitled powers and duties as an Illinois County State's Attorney, including the exercising of prosecutorial discretion**

21.     Defendant Jeremy Walker is sued in his official capacity as State's Attorney for Randolph County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for [his] county, in' which the people of the State or county may be concerned," including violations, of Illinois' ban on common firearms and ammunition magazines. 55 ILL. COMP. STAT. 5/3-9005.

> ***ANSWER: Paragraph 21 calls for legal conclusion to which no response is required.***

22.     Defendant Patrick D. Kenneally is sued in his official capacity as State's Attorney for McHenry County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for [his] county, in which the people of the State or county may be concerned," including violations of Illinois' ban on common firearms and ammunition magazines. 55 ILL. COMP. STAT. 5/3-9005.

> ***ANSWER: Paragraph 22 calls for legal conclusion to which no response is required.***

23.     Defendant Richard Watson is sued in his official capacity as Sheriff of St. Clair County, Illinois. As sheriff, "he has the duty to prevent crime and keep the peace and order in his county, and he has the authority to arrest offenders and bring them to the proper court." *Gibbs v. Madison Cnty. Sheriffs Dep't*, 326 Ill. App. 3d 473,478 (2001).

> ***ANSWER:   Defendant, Richard Watson, admits that he has been sued in his official capacity and is the Sheriff for St. Clair County, Illinois. Paragraph 23 calls for legal conclusion to which no response is required.***

24.     Defendant Jarrod Peters is sued in his official capacity as Sheriff of Randolph County, Illinois. As sheriff, "he as the duty to prevent crime and keep the peace and order in his county, and he has the authority ,to arrest offenders and bring them to the proper court." *Id.*

> ***ANSWER: Paragraph 24 calls for legal conclusion to which no response is required.***

25. Defendant Robb Tadelman is sued in his official capacity  as Sheriff  of McHenry County, Illinois. As sheriff, 'he has the duty to prevent crime and keep the peace

and order in his county, and he has the authority to arrest offenders and bring them to the proper court." *Id.*

> ***ANSWER: Paragraph 25 calls for legal conclusion to which no response is required.***

## FACTUAL ALLEGATIONS

## I.   ILLINOIS' UNCONSTITUTIONAL SEMIAUTOMATIC FIREARM BAN.

26.   On January 10, 2023, Illinois enacted a ban on so-called "assault weapons," which are, in fact common semiautomatic firearms, and criminalized any act to "manufacture, deliver, sell, import, [] purchase," or "possess" such firearms in Illinois. 720 ILL. COMP. STAT. 5/24-1.9(b) and (c) ("the Firearm, Ban").

> ***ANSWER:   The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation. Paragraph 26 calls for a legal conclusion to which no response is required.***

27.   This criminal prohibition applies to "any person within [the State of Illinois]" and excepts from its ambit only peace officers, current and retired law enforcement officers, government agencies, prison officials, members of the military, and certain private security contractors. 720 ILL. COMP. STAT. 5/24-1.9(e)(l)-(7).

> ***ANSWER:   The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation. Paragraph 27 calls for a legal conclusion to which no response is required.***

28.   Any ordinary person in Illinois who legally possessed a so-called assault weapon before the law's enactment now must register the firearm with the Illinois State Police, can only possess it on a very limited set of locations, and may transport them only to and from those locations, unloaded and in a case. 720 ILL. COMP. STAT. 5/24-1.9(d).

> ***ANSWER:  The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation. Paragraph 28 calls for a legal conclusion to which no response is required.***

29.     A first-time violation of the prohibition on possession constitutes a Class A misdemeanor, while a first-time violation of the prohibition on manufacture, sale, deliver, import, and purchase constitutes a Class 3 felony. 720 ILL. COMP. STAT. 5/24-l(b). Class, A misdemeanors carry "a determinate sentence of less than one year" and "[a] fine not to exceed $2,500". 730 ILL. COMP. STAT. 5/5:-4.5-55(a) and (e). Class 3 felonies carry "a determinate sentence of not less than 2 years and not more than 5 years," 730 ILL. COMP. STAT. 5/5-4.5-40(a), and "a fine not to exceed, for each offense, $25,000." 730 ILL. COMP. STAT. 5/5-4 .5.5-5O(b).

> ***ANSWER:  Paragraph 29 calls for a legal conclusion to which no response is required.***

## A.     The Firearm Ban Bans Firearms in Common Use.

30.     Among other things, the Firearm Ban defines as an "assault weapon" and bans  any semiautomatic rifle with the capacity to accept a magazine holding more than ten rounds of ammunition, if it has any one of the following features:

(i)      a  pistol grip or thumbhole stock;
(ii)     any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;
(iii)    a folding, telescoping, thumbhole, or detachable stock, or a stock that is otherwise foldable or adjustable in a manner that operates to reduce the length, size, or any other dimension, or otherwise enhances the concealability of, the weapon;
(iv)    a flash suppressor;
(v)     a grenade launcher;
(vi)    a shroud attached to the barrel or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel.

720 ILL. COMP. STAT. 5/24-1.9(a)(l)(A).

> ***ANSWER:  The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation. Paragraph 30 calls for a legal conclusion to which no response is required.***

31.    Further, the Statute bans "[a]ny part or combination of parts designed or intended to convert a firearm into an assault weapon, including any combination of parts from which an assault weapon may be readily assembled if those parts are in the possession or under the control of the same person." 720 ILL. COMP. STAT. 5/24-1.9(a)(1)(I).

> ***ANSWER:  The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation. Paragraph 31 calls for a legal conclusion to which no response is required.***

32.    Finally, the Statute lists specific banned "assault weapons models," the "copies, duplicates, variants, [and] altered facsimiles" of which are also banned:

(i)      All AK types, including the following:
(I) AK, AK47, AK47S, AK-74, AKM, AKS, ARM, MAK.90, MISR, NHM90, NHM91, SA85, SA93, Vector Arms AK--47, VEPR, WASR-10, and WUM.
(II)     IZHMASH Saiga AK.
(III)    MAADI AK47 and ARM.
(IV)    Norinco 56S, 56S2, 84S, and 86S.
(V)     Poly Technologies AK47 and AKS.
(VI)    SKS with a detachable magazine.
(ii)     all AR types, including the following:
(I)      AR-10.
(II)     AR-15.
(III)    Alexander Arms Overmatch Plus 16.
(IV)    Armalite M15 22LR Carbine.
(V)     Armalite M15-T.
(VI)    Barrett REC7.
(VII)   Beretta AR- 70.
(VIII) Black Rain Ordnance Recon Scout.
(IX)    Bushmaster  ACR.
(X)     Bushmaster Carbon 15.
(XI)    Bushmaster MOE series.
(XII)   Bushmaster XM15.

(XIII)  Chiappa Firearms MFour rifles.
(XIV)  Colt Match Target rifles.
(XV)   CORE Rifle Systems CORE15 rifles.
(XVI)  Daniel Defense M4Al rifles.
(XVII) Devil Dog Arms 15 Series rifles.
(XVIII) Diamondback DB15 rifles.
(XIX)  DoubleStar AR rifles.
(XX)   DPMS Tactical rifles.
(XXI)  DSA Inc. ZM-4 Carbine.
(XXII) Heckler & Koch MR556.
(XXIII) High Standard HSA-15 rifles.
(XXIV) Jesse James Nomad AR-15 rifle.
(XXV) Knight's Armament SR-15.
(XXVI) Lancer Ll5 rifles.
(XXVII) MGI Hydra Series rifles.
(XXVIII) Mossberg MMR Tactical rifles.
(XXIX) Noreen Firearms BN 36 rifle.
(XXX) Olympic Arms.
(XXXI) POF USA P415.
(XXXII) Precision Firearms AR rifles.
(XXXIII) Remington R-15 rifles.
(XXXIV) Rhino Arms AR rifles.
(XXXV) Rock Riv r Arms LAR-15 or Rock River Arms LAR-47.
(XXXVI) Sig Sauer SIG516 rifles and MCX rifles.
(XXXVII) Smith & Wesson M&P15 rifles.
(XXXVIII) Stag Arms AR rifles.
(XXXIX) Sturm, Ruger & Co. SR556 and AR-556 rifles.
(XL) Uselton Arms Air-Lite M-4 rifles.
(XLI) Windham Weaponry AR rifles. (XLII) WMD Guns Big Beast.
(XLIII) Yankee.Hill Machine Company, Inc. YHM-15 rifles.

(iii)    Barrett M107A l., ,-
(iv)    Barrett M82Al.
(v)     Beretta CX4 Storm.
(vi)    Calico Liberty Series.
(vii)   CETME Sporter.
(viii)  Daewoo K-1, K-2, Max 1, Max 2, AR 100, and AR 1loC.
(ix)    Fabrique Nationale/FN Herstal FAL, LAR, 22 FNC, 308 Match, LlAl
        Sporter, PS90, SCAR, and FS2000.
(x)     Feather Industries AT-9.   ,
(xi)    Galil Model AR and Model ARM.
(xii)   Hi-Point Carbine.
(xiii)  HK-91, HK-93, HK-94, HK-PSG-1, and HK USC.
(xiv)   IWI TAVOR, Galil ACE rifle.
(xv)    Kel-Tec  Sub-2000,  SU-16, and RFB.       ,
(xvi)   SIG AMT, SIG PE-57; Sig Sauer SG 550, Sig Sauer SG 551; and SIG MCX.
(xvii)  Springfield Armory SAR-48.
(xviii) Steyr AUG.

    (xix)   Sturm, Ruger & Co. Mini-14 Tactical Rifle M-14/20CF.
    (xx)   All Thompson rifles, including the following:
          (I)     Thompson M1SB.
          (II)    Thompson Tl 100D.
          (III)   Thompson T150D.
          (IV)   Thompson TlB.
          (V)    Thompson TlBlO0D.
          (VI)   Thompson T1B50D.
          (VII)  Thompson TlBSB.
          (VIII) Thompson T1-C.
          (IX)   Thompson TlD.
          (X)    Thompson Tl SB.
          (XI)   Thompson T5.
          (XII)  Thompson T5100D.
          (XIII) Thompson TMl.
          (XIV) Thompson TMl C.
    (xxi)   UMAREX UZI rifle.
    (xxii)  UZI Mini Carbine, UZI Model A Carbine, and UZI Model B Carbine.
    (xxiii) Valmet M62S, M71S, and M78.
    (xxiv) Vector Arms UZI Type.
    (xxv)  Weaver Arms Nighthawk.
    (xxvi) Wilkinson Arms Linda Carbine.

720 ILL. COMP. STAT. 5/2 4-1.9(a)(l)(J).

> ***ANSWER: The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation. Paragraph 32 calls for a legal conclusion to which no response is required.***

    33.    Semiautomatic rifles "traditionally have been widely accepted as lawful possessions," see *Staples v. United States*, 511 U.S. 600, 612 (1994) (so categorizing an AR-15 semiautomatic rifle), and they are in ,common use, see *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*") ("We think it clear enough in the record that semi- automatic rifles ... are indeed in 'common use' as the plaintiffs contend.").

> ***ANSWER: Paragraph 33 calls for a legal conclusion to which no response is required.***

34.     Rifles built on an "AR-style" platform are a paradigmatic example of the type of arm Illinois bans ("AR" is short for ArmaLite Rifle; ArmaLite originally designed the platform).

> **ANSWER: *St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 34.***

35.     AR-15 rifles are among the most popular firearms in the nation, and they are owned by millions of Americans. A recent survey of gun owners indicates . that about 24.6 million Americans have owned AR-15 or similar modem semiautomatic rifles, with the median owner" identified as owning a single rifle. William English, PhD, 2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned at 2 33 (May 13, 2022), https://bit.ly/3yPfoHw. A recent industry publication similarly estimated that over 24 million AR-15 or similar rifles have been produced for the U.S. market. NAT'L SHOOTING SPORTS FOUND., Commonly Owned: NSSF Announces Over 24 Million MSRs in Circulation, (July 20, 2022), https://bit.ly/3QBXiyv.

> **ANSWER: *St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 35.***

36.     Approximately 20% of all firearms sold in recent years were rifles of the type banned by Illinois. NAT'L SHOOTING SPORTS FOUND., INC., Firearms Retailer Survey Report, 2021 at 9, available at https://bit.ly/3gWhI8E. And in 2020, more than 20 million adults participated in target or sport shooting with semiautomatic rifles like those banned by Illinois. NAT'L SHOOTING SPORTS FOUND., INC., Sport Shooting Participation in the U.S. in 2020 at iii, available at https://bit.ly/3sPuEQl (last accessed Jan. 12, 2023).

> ***ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 36.***

37.    The banned semiautomatic firearms, like all other semiautomatic firearms, fire only one round for each pull of the trigger. They are not machine guns. *Staples*, 511 U.S. at 620 n.l. What is more, the designation "assault weapons" is a misnomer, "developed by anti-gun publicists" in their crusade against lawful firearm ownership. *Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting).

> ***ANSWER:  Paragraph 37 contains a legal conclusion to which no response is required. To the extent it contains factual allegations, the St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 37.***

38.    A comparison to firearms used by the military demonstrates just how disingenuous the "assault weapon" moniker is. While an AR-15 can only fire as often as a person can pull its trigger, an M249 light machine gun, commonly used by the U.S. military, can fire between 750 and 1,000 rounds per, minute, MILITARY ANALYSIS NETWORK, *Squad Automatic Weapon (SAW), M249 Light Machine Gun*, available at https://bit.ly/3tsQGtd (last accessed Jan. 12, 2023). "Heavy" machine guns like the M61 series can fire significantly larger caliber ammunition (20mm) much faster yet (6,000 rounds per minute), MILITARY ANALYSIS NETWORK, *GAU-4mm Vulcan M61AJIM6JA2 20mm Automatic Gun*, available at https://bit.ly/3ttnemV Oast accessed Jan. 12, 2023).

> ***ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 38.***

39.    Central among the common uses of semiautomatic firearms banned in Illinois is self-defense. A majority of owners of AR-style rifles said that they owned their

firearms for self-defense. English, *2021 National Firearms Survey, supra*, at 34 (61.9% owned for home defense; 34.6% owned for defense outside the home). Owners of AR-15s and other similar rifles rated "Home/self-defense" as over 8 out of 10 in importance for owning them, the second-highest rating after recreational target shooting. NAT'L SHOOTING SPORTS FOUND., INC., *Modern Sporting Rifle: Comprehensive Consumer Report 18* (July 14, 2022), available at https://bit.ly/3SSrVjM.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 39.**

40.     An AR-15 rifle is an optimal firearm to rely on in a self-defense encounter. Most AR-style firearms are chambered for 5.56x45mm NATO, which is similar to .223 Remington ammunition. This is a relatively inexpensive and common cartridge that is particularly well  suited for home-defense purposes because it has sufficient stopping power in the event of a home intrusion, but quickly loses velocity after passing through a target and other objects, thus decreasing the chance that an errant shot will strike an unintended target. Although most pistol rounds have less muzzle velocity than a 5.56x45mrn NATO round, they have greater mass, maintain velocity after passing through walls and other objects, and pose substantially greater risks to unintended targets in, or even outside, the home.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 40.**

41.     Like the AR-15 generally,  many of the specific  features  banned by Illinois, aid home defense. A flash suppressor, for example, not only reduces the chances that a home invader will identify his victim's position but also protects a homeowner against

momentary blindness when firing in self-defense. David B. Kopel, *Rational Basis Analysis of. "Assault Weapon" Prohibition*, 20 J. CONTEMP. L. 381,397 (1994).

> **ANSWER:   St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 41.**

42.     Folding and telescoping stocks increase the likelihood of successful home defense by permitting safe storage of defense instruments in accessible spaces and making the ripe maneuverable in confined spaces. *Id*. at 398-99. A telescoping stock also allows a firearm to be better fitted to an individual shooter, thereby enhancing the ability of an individual to use the firearm safely and effectively.

> **ANSWER:   St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 42.**

43.     Pistol grips improve accuracy and reduce the risk of stray shots by stabilizing the firearm while firing from the shoulder. *Id*. at 396.

> **ANSWER:   St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 43.**

44.     Most common semiautomatic rifles, including those banned under Illinois law, can accept a detachable magazine. Detachable magazines not only assist law-abiding shooters in reloading their firearm in stressful defense circumstances, but in the case of some platforms, including the common AR-15, they are required to safely and quickly remedy malfunctions.

> **ANSWER:   St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 44.**

45.     Encounters with criminal intruders in the home, where the AR-style rifle may be most useful; are not uncommon. For instance, according to a report by the U.S.

Department of Justice, Bureau ,of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases. Studies on the frequency of defensive gun uses in the United States have determined that there are up to 2.5 million instances each year in which civilians use firearms to defend themselves or their property. Gary Kleck, Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. OF CRIM. L. & CRIMINOLOGY 150, 164 (1995); see also, English, *National Firearms Survey, supra* at 9 (finding 31.1% of firearms owners, or approximately 25.3 million adult Americans, have used a firearm in self-defense and there are 1.67 million defensive firearm uses a year). Both Kleck and English found that over 100,000 of these annual defensive gun uses were with rifles. See Kleck, *Armed Resistance to Crime, supra*, at 185, English, 2021 *National Firearms Survey, supra*, at 11.

> **ANSWER: St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 45.**

46.     Other common, lawful uses of the banned firearms are hunting and sport. At least a third of all gun-owners use a firearm for hunting or sport shooting, and recreational target shooting is a top reason for owning semiautomatic rifles like those banned by Illinois.

> **ANSWER: St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 46.**

47.     Here, again, the banned features of semiautomatic firearms—mischaracterized as assault weapons—serve lawful purposes. Folding and telescoping stocks, for example, allow for safe transportation, including in a hiking pack, an ATV, or a boat. These stocks also ease carriage over long distances while hunting.

> ***ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 47.***

48.     Both telescoping stocks and protruding grips open hunting and sport-shooting to those for whom recoil poses a challenge. Detachable magazines have the same benefits .in hunting. and sport-shooting as they do in home defense—improved reloading and remedying of malfunctions. And flash suppressors promote accuracy in target-shooting and hunting (especially at dawn).

> ***ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 48.***

49.     By contrast, one use that is not common for so-called assault weapons is crime. According to a widely cited 2004 study, these arms "are used in a small fraction of gun crimes." Christopher Koper, et al., *Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence,· 1994-2003* (2004), U.S. DEP'T OF JUST., available at https://bit.ly/3hZiy5v. This has long been true. Gary Kleck, *Targeting Guns: Firearms and Their Control 112*  (1997) (evidence indicates that "well under 1% [of crime guns] are assault rifles.'"). Indeed, according to FBI statistics in 2019 there were only 364 homicides known to be committed with rifles of any type, compared to 6,368 with handguns, 1,476 with knives or o her cutting  instruments,  600 with personal  weapons  (hands,  feet, etc.) and 397 with blunt objects. U.S. *Expanded Homicide Table 8, Crime in the United States*, DEP'T OF JUST. (FBI 2019), available at https://bit.ly/3Hd01Nd.

> ***ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 49.***

50.     The rifles that Illinois bans as "assault weapons" are, in all respects, ordinary semiautomatic rifles. To the extent they are different from other semiautomatic rifles, their distinguishing features make them safer and easier to use. But even if they are considered as a separate group of "assault weapons," they cannot be banned because they are not dangerous and unusual.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 50.**

51.     The arms banned as "assault weapons" by Illinois are common by all counts: (1) They are common categorically, as they are all semiautomatic in their function and operation; (2) they are common characteristically, as they are all popular configurations of arms (e.g., rifles) with varying barrel lengths and common characteristics like pistol grips; and (3) they are common jurisdictionally, lawful to possess and use in the vast majority of states, now and throughout relevant history, for a wide variety of lawful purposes that include self-defense, proficiency training, competition, recreation, hunting, and collecting.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 51. To the extent that paragraph 51 calls for a legal conclusion then no response is required.**

52.     The Statute's ban on manufacturing, delivering, selling, importing, or purchasing an "assault weapon" is, therefore, a ban on keeping and bearing semiautomatic firearms that are commonly possessed and used for lawful purposes, including self-defense in the home.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 52. To the extent that paragraph 52 calls for a legal conclusion then no response is required.**

## II.     ILLINOIS' UNCONSTITUTIONAL BAN ON MAGAZINES

53.     On January 10, 2023, the State of Illinois also  made  it  a  crime  to "manufacture,  deliver, sell, purchase," or "possess" magazines it considers "large capacity ammunition feeding devices." 720 ILL. COMP. STAT. 5/24-1.10(b) and (c) (the "Magazine Ban").

> **ANSWER:   *The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation. Paragraph 53 calls for a legal conclusion to which no response is required.***

54.     The Statute defines "large capacity ammunition devices" as "(1) a magazine, belt, drum, ,feed strip, or similar device that has a capacity of, or that can be readily restored., pr converted to accept, more than 10 rounds of ammunition for long guns and more than 15 rounds of ammunition for handguns; or (2) any combination of parts from which a device described in paragraph (1) can be assembled." 720 ILL. COMP. STAT. 5/24-1.10(a)(l)-(2).

> **ANSWER:   *The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation. Paragraph 54 calls for a legal conclusion to which no response is required.***

55.     The Magazine Ban applies to "any person within [the State of Illinois]" and excepts from its ambit only peace officers, current and retired law enforcement officers, government agencies, prison officials, members of the military, and certain private security contractors. 720 ILL. COMP. STAT. 5/24-1.10(e)(l)-(7).

> **ANSWER:   *The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation.***

> *Paragraph 55 calls for a legal conclusion to which no response is required.*

56.     Any ordinary person in Illinois who legally possessed a banned magazine before the law's enactment now can only possess that magazine on a very limited set of premises and must transport it only to and from those locations, unloaded and in a case. 720 ILL. COMP. STAT. 5/24-1.10(d).

> *ANSWER:   The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation. Paragraph 56 calls for a legal conclusion to which no response is required.*

57.     A violation of the Magazine Ban carries "a fine of $1,000 for each violation." 720 ILL. COMP. STAT. 5/24-1.10(g).

> *ANSWER:   The St. Clair County Defendants admits that P.A. 102-1116 went into effect on January 10, 2023. The St. Clair County Defendants have no role in the enactment of legislation. Paragraph 57 calls for a legal conclusion to which no response is required.*

**A.  Illinois Has Criminalized a Common and Important Means of Self-Defense.**

58.     Although the State of Illinois describes magazines that can accept more than 10 rounds of ammunition for long guns and those that can accept more than 15 rounds for handguns as "large capacity magazines," this is a misnomer. Magazines capable of holding more than 10 or 15 rounds of ammunition are normal features of firearms in the United States and are more accurately described as "standard capacity magazines."

> *ANSWER:   St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 58. To the extent that paragraph 58 calls for a legal conclusion then no response is required.*

59.     As many as half a billion standard capacity magazines holding over 1Q. rounds have been owned by Americans throughout the United States.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 59. To the extent that paragraph 59 calls for a legal conclusion then no response is required.**

60.     According to the 2021·National Firearms Survey, 48% of gun owners have owned magazines that hold more than 10 rounds. William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned, supra*, at 22. Given the survey's estimate that 81.4 million Americans own firearms, approximately 39 million Americans have owned at least one magazine that holds more than 10 rounds. And that is a conservative estimate since  only current gun owners were polled. Those individuals frequently owned more than one such magazine. In fact, Professor English found that American gun owners have owned as many as 269 million handgun magazines that hold over 10 rounds and an additional 273 million rifle magazines over that threshold for a total of 542 million such magazines. *Id.* at 24.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 60.**

61.     Professor English's study also found that the average respondent  who had owned a magazine over 10 rounds owned 4.4 handgun magazines capable of holding more than 15 rounds. In fact, handgun magazines of over 15 rounds were almost twice as popular as those with 11 to 15 rounds. *Id.* at 24. As a result, using Professor English's calculations, of the handgun magazines holding over 10 rounds of ammunition, as many as 170 million are capable of holding over 15 rounds.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 61.**

62.    The prevalence of these magazines should not come as a surprise. Many popular handguns are typically sold with magazines holding more than 15 rounds of ammunition, and standard issue magazines for many popular rifles-including the most popular  semiautomatic rifles in the country-have a capacity of more than 10 rounds.

> ***ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 62.***

63.    Magazines such as these are common throughout the country. Indeed, a majority of states do not impose any restrictions on magazine capacity.

> ***ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 63.***

64.    The ubiquity of standard capacity magazines among law-abiding Americans demonstrates that they are useful for lawful purposes such as self-defense and hunting. In fact, Professor English found that recreational target shooting (64.3%), home defense (62.4%), hunting (47%), and defense outside the home (41.7%) are the most common reasons cited by individuals who own standard capacity magazines that hold more than 10 rounds. *Id*. at 23.

> ***ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 64.***

65.    For some purposes, magazines over 10 rounds are m fact the overwhelming choice. According to the Firearm Industry Trade Association, over three-quarters of all magazines used with modem sporting rifles have a capacity of more than 10 rounds. See NSSF, *Modern Sporting Rifle Comprehensive Consumer Report, supra*.

> ***ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 65.***

66.     There is no historical tradition of prohibiting the manufacture, importation, or sale of magazines capable of holding more than ten rounds. Magazine bans were unknown in the United States before the 20th century. Bans like Illinois' are recent phenomena—indeed, until enactment of the Magazine Ban, Illinois did not restrict manufacturing, transferring, possessing, or using magazines of any capacity.

> **ANSWER: *St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 66.***

67.     This is true even though firearms capable of holding multiple rounds have existed since the late 15th century, and firearms capable of firing more than ten rounds without reloading have existed at least since the late 16th century. See David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 ALB. L. REV. 849, 852-53 (2015) ("The first known firearm that was able to fire more than ten rounds without reloading was a sixteen-shooter created around 1580, using 'superposed' loads (each round stacked on top of the other.)").

> **ANSWER: *St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 67.***

68.     Multiple round firearm technology quickly developed from multi-shot wheel lock rifles to repeating, magazine-fed rifles, with the English military employing magazine-fed repeating firearms as early as 1658. Clayton E. Cramer & Joseph E. Olson, *Pistols, Crime, and Public: Safety in Early America*, 44 WILLAMETTE L. REV. 699, 716 (2008) (citing A. V B. Norman & Don Pottinger, ENGLISH WEAPONS & WARFARE: 449-1660 206-07 (1979)), The now famous "Puckle Gun," or "Defence Gun," was patented by James Puckle in 1718 in England and operated using "a Sett of Chambers ready Charg'd

to be Slip'd on when the first Sett are pull' d off to be recharg' d." U.K. Patent No. 418 (filed May 15, 1718), available at https://bit.ly/3t5UGzu; Charles Foulkes, THE GUN-FOUNDERS OF ENGLAND: WITH A LIST OF ENGLISH AND CONTINENTAL GUN-FOUNDERS FROM THE XIV TO THE XIX CENTURIES 32-33 (1937).

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 68.**

69.     Firearms capable of firing multiple rounds without reloading were well known to the founding generation. In 1777, Joseph Belton demonstrated a repeating rifle that could hold 16 rounds of ammunition to members of the Continental Congress. Robert Held, THE BELTON SYSTEMS, 1758 & 1784-86: AMERICA'S FIRST REPEATING FIREARMS 37 (1986). Belton also informed Congress that he could equip his rifle with as many as 20 rounds at a time. Id. at 17. And Meriwether Lewis carried a Girandoni air rifle, with a 22-round tubular, spring-loaded magazine on his expedition with William Clark. James B. Garry, WEAPONS OF THE LEWIS AND CLARK EXPEDITION 100-01 (2012).

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 69.**

70. "Repeater" firearms were extremely popular in the 19th century and came in many forms. The New York Evening Post in 1821 lauded Isaiah Jennings for inventing a repeater "important[t] for both public and private use," whose "number of charges may be extended to fifteen or even twenty." *Newly Invented Muskets*, N.Y. EVENING POST, Apr. 10, 1822, in 59 Alexander Tilloch, THE PHILOSOPHICAL MAGAZINE AND JOURNAL COMPREHENDING THE VARIOUS BRANCHES OF SCIENCE, THE LIBERAL AND FINE ARTS, GEOLOGY, AGRICULTURE, MANUFACTURES, AND COMMERCE 467-68 (Richard Taylor ed., 1822).

>**ANSWER: *St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 70.***

71.      Around the time of the Civil War, multi-round rifles became commonplace. The 16-shot Henry Rifle, invented in 1861, was very popular. Soon after, the first Winchester rifle was produced and it could hold 17 rounds in the magazine with one more in the chamber. See Norm Flayderman, FLAYDERMAN'S GUIDE TO ANTIQUE FIREARMS AND THEIR VALUES 268 (6th ed. 1994). As a result, magazines holding over 10 rounds were commonly possessed already in the 1860s, 130 years before attempts to strictly regulate them would come along. David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions, supra*, at 871.

>**ANSWER: *St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 71.***

72.      Magazine capacity is important for average citizens seeking to defend themselves because most shots fired in armed altercations miss their target. Professional police, who are trained and must regularly practice with their firearms, miss their targets more often than not. In a fourteen-year study of the Dallas Police Department, for example, officers achieved an accuracy rate of just 35%, and half of all Dallas officers missed every shot they  fired. Christopher M. Donner and Nicole Popovich, *Hitting (or missing) the mark: An examination of police shooting accuracy in officer-involved shooting incidents*, POLICING: AN INTERNATIONAL JOURNAL 42, no. 3 (2019), *available at* https://bit.ly/3LrpoJC. An average citizen forced to defend herself suddenly is not likely to have a higher accuracy rate than professional police officers would.

>**ANSWER: *St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 72.***

73.     In 2020, 14% of New York City police officers involved in incidents in which they fired their weapons to defend themselves and others fired more than 10 rounds. NEW YORK POLICE DEP'T, *2020 Use of Force Report* at 27, available at https://on.nyc.gov/3Glx.AKH (last accessed Jan. 12, 2023). Likely for this reason, the Magazine Ban exempts from its prohibitions manufacture, import, and sale to law enforcement agencies. 720 ILL. COMP. STAT. 5/24- 1.10. But the average Illinoisan has just as much right as a police officer to defend herself with standard capacity magazines.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 73. Further, to the extent that paragraph 73 calls for a legal conclusion then no response is required.**

74.     Unlike law-abiding citizens, violent criminals will not be meaningfully constrained by the State's Magazine Ban. Given the hundreds of millions of such magazines in circulation in. the country (including in Illinois, where they remain widely possessed), it will not be difficult for violent criminals to acquire them through illegal sales or importation despite the State's ban. And unlike law-abiding citizens, violent criminals will have no compunction about violating Illinois' Magazine Ban. Even if violent criminals were effectively prevented from acquiring banned magazines, they could easily compensate by bringing multiple firearms or magazines with them to the scene of the crime. Their ability to do so is made possible by the fact that violent criminals, and not their law-abiding victims, choose the time and place of crimes and can plan accordingly.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 74.**

## III.    THE EFFECT ON PLAINTIFFS.

### Dane Harrel

75.     Dane Harrel is a law-abiding, responsible, adult resident of St. Clair County, Illinois.

> **ANSWER: St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 75.**

76.     Harrel is a retired Lieutenant Colonel in the United States Air Force, and is currently employed as a civil servant for the USAF Air Mobility Command Headquarters in the Operations Directorate.

> **ANSWER: St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 76.**

77.     Harrel is a member of Plaintiffs ISRA, SAF and FPC.

> **ANSWER: St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 77.**

78.     Harrel owns semiautomatic firearms subject to the Firearms Ban, and also owns magazines that are subject to the Magazine Ban.

> **ANSWER: St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 78.**

79.     Since the Firearms Ban and Magazine Ban have gone into effect, Harrel is subject to the use restrictions and registration requirement associated with his grandfathered firearms and magazines and will be unable to replace them in kind as they wear out from normal use.

> **ANSWER: St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 79.**

80.     It is Harrel's- present intention and desire to purchase semiautomatic firearms subject to the Firearms Ban, including a Ruger Mini-14 and a Springfield Armory

M1A, and also to purchase additional standard capacity magazines subject to the Magazine Ban for use with the firearms he currently owns and to purchase additional firearms equipped with standard capacity magazines of that size. However, since the Firearms Ban and Magazine Ban has gone into effect he is unable to purchase semiautomatic firearms subject to the Firearms Ban, or additional magazines or firearms equipped with standard capacity magazines subject to the Magazine Ban lawfully, both for fear of prosecution and because the existence of the Firearms Ban and Magazine Ban, and Defendants' enforcement of them, will extinguish the legal market for those items in Illinois, and make it impossible for Harrel to acquire them. But for the Firearm and Magazine Bans and Defendants' enforcement thereof, Harrel would acquire semiautomatic rifles described in the Firearms Ban, and additional standard capacity magazines subject to the Magazine Ban.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 80.**

## C4 Gun Store

81.     C4 Gun Store, LLC, is an Illinois limited liability company with its principal place of business in Sparta, Randolph County, Illinois. C4 is owned and managed by Christopher A. Brooks, a member of Plaintiffs ISRA, SAF and FPC.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 81.**

82.     C4 Gun Store is a federally licensed firearms dealer. Until recently, it sold semiautomatic firearms of the type prohibited under the Firearms Ban, and standard capacity magazines capable of holding more than the limits allowed under the Magazine Ban.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 82.**

83.     It is C4 Gun Store's present intention and desire to continue to transfer, accept, and sell standard capacity magazines and firearms equipped with standard capacity magazines. However, since the Firearms Ban and Magazine Ban became effective on January 10, 2023, .C4 Gun Store is no longer be able to sell semiautomatic firearms subject to the Firearms Ban, or standard capacity magazines, to customers without facing prosecution. As a result, it will lose profits from sales of subject semiautomatic firearms and standard capacity magazines as a direct result of the Firearms Ban and Magazine Ban, and its customers will be unable to purchase such firearms and magazines for self-defense and other lawful uses.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 84.**

84.     In addition to risking prosecution, C4 Gun Store could also lose its federal firearms license if it were to violate the Firearms Ban and Magazine Ban.

> **ANSWER:  Paragraph 84 calls for a legal conclusion to which no response is required.**

**Marengo Guns**

85.     Marengo Guns, Inc. is an Illinois corporation with its principal place of business in Marengo, McHenry County, Illinois. The President and owner of Marengo Guns is Dominic DeBock, a member of Plaintiffs ISRA, SAF and FPC.

> **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 85.**

86.     Marengo Guns is a federally licensed firearms dealer. Until recently, it sold semiautomatic firearms of the type prohibited under the Firearms Ban, and standard capacity magazines capable of holding more than the limits allowed under the Magazine Ban.

> **ANSWER:  *St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 86.***

87.     It is Marengo Guns' present intention and desire to continue to transfer, accept, and sell standard capacity magazines and firearms equipped with standard capacity magazines. However, since the Firearms Ban and Magazine Ban became effective on January 10, 2023, Marengo Guns is no longer be able to sell semiautomatic firearms subject to the Firearms Ban, or standard  capacity  magazines,  to customers  without facing prosecution. As a result, it will lose profits from sales of subject semiautomatic firearms and standard capacity magazines as a direct result of the Firearms Ban and Magazine Ban, and its customers will be unable to purchase such firearms and magazines for self-defense and other lawful uses.

> **ANSWER:  *St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 87. To the extent that paragraph 87 calls for a legal conclusion then no response it required.***

88.     In addition to risking prosecution, Marengo Guns, Inc. could also lose its federal firearms license if it were to violate the Firearms Ban and Magazine Ban.

> **ANSWER:  *St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 88. To the extent that paragraph 87 calls for a legal conclusion then no response it required.***

## <u>COUNT ONE</u>

**42 U.S.C. § 1983 - Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments of the United States Constitution.**

89.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

> **ANSWER:  St. Clair County Defendants incorporate their responses to the foregoing paragraphs as if more fully stated herein.**

90.    The Second Amendment to the United States Constitution provides: "A well- regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

> **ANSWER:  Paragraph 90 calls for a legal conclusion to which no response it required.**

91.    The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); id. at 805 (Thomas, J., concurring).

> **ANSWER:  Paragraph 91 calls for a legal conclusion to which no response it required.**

92.    "Just as the First Amendment protects modem forms of communications, and the Fourth Amendment applies to modem forms of search, the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (citations omitted).

> **ANSWER:  Paragraph 92 calls for a legal conclusion to which no response it required.**

93.    The firearms and magazines at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. They are, therefore, neither dangerous nor unusual and they cannot be banned.

> ***ANSWER:  St. Clair County Defendants lack sufficient information
> either  admit  or  deny  the  allegations  contained  in
> paragraph 93. To the extent that paragraph 93 calls for a
> legal conclusion then no response it required.***

94.    42 U.S.C. § 1983 creates a cause of action against state actors who deprive
individuals of federal constitutional rights under color of state law.

> ***ANSWER:  Paragraph  94  calls  for  a  legal  conclusion  to  which  no
> response it required.***

95.    Plaintiffs Harrel, and C4 Gun Store and Marengo Guns on, behalf. of their
customers, along with similarly situated members of ISRA, FPC, and SAF, are law-
abiding, peaceable citizens of Illinois and the United States who wish to purchase and
possess firearms that have been banned as "assault weapons" by Illinois, as well as
ammunition magazines that have been banned as "large capacity" by Illinois.

> ***ANSWER:  St. Clair County Defendants lack sufficient information
> either  admit  or  deny  the  allegations  contained  in
> paragraph 95. To the extent that paragraph 95 calls for a
> legal conclusion then no response it required.***

96.    Defendants have violated Plaintiffs' right to keep and bear arms by,
precluding them from being able to manufacture, deliver, sell, import, purchase, or
possess such rifles or being able to manufacture, deliver, sell, purchase, or possess such
magazines, because Defendants enforce 720 ILL. COMP. STAT. 5/24-1.9(b) & (c); 5/24-
1.10(b) & (c).

> ***ANSWER:  St. Clair County Defendants lack sufficient information
> either  admit  or  deny  the  allegations  contained  in
> paragraph 96. To the extent that paragraph 96 calls for a
> legal conclusion then no response it required.***

97.    Defendants' enforcement of 720 ILL. COMP. STAT. 5/24-1.9(b) & (c); 5/24-
1.lo(b) & (c), and the statutes, regulations, customs, policies, and practices related
thereto, is an infringement and an impermissible burden on Plaintiffs' right to keep and

bear arms pursuant to the Second and Fourteenth Amendments to the United States Constitution.

>    **ANSWER:  Paragraph 97 calls for a legal conclusion to which no response it required.**

98.    Defendants' enforcement of 720 ILL. COMP. STAT. 5/24-1.9(b) & (c); 5/24-1.10(b) & (c), and the statutes, regulations, customs, policies, and practices related thereto forces Plaintiffs either to comply with the unconstitutional mandate-thereby being prevented from exercising their rights under the Second and Fourteenth Amendments to the United States Constitution-or be subjected to criminal prosecution.

>    **ANSWER:  Paragraph 98 calls for a legal conclusion to which no response it required.**

99.    Therefore, as a direct and proximate result of the above infringement and impermissible burden on Plaintiffs' Second and Fourteenth Amendment rights, Plaintiffs have suffered-and continue to suffer-from an unlawful and irreparable  deprivation  of their  and, in the case of C4 Gun Store and Marengo Guns, their customers' fundamental constitutional right  to keep and bear arms.

>    **ANSWER:  St. Clair County Defendants lack sufficient information either admit or deny the allegations contained in paragraph 99. To the extent that paragraph 99 calls for a legal conclusion then no response it required.**

WHEREFORE, Defendants, James Gomric, in his official capacity as State's Attorney of St. Clair County, Illinois, and Richard Watson, in his official capacity as Sheriff of St. Clair County, Illinois, respectfully pray that this Honorable Court enter an order stating the law in this matter, and for such further relief as this Honorable Court deems just and proper.

### St. Clair County Defendants Demand a Trial by a Jury of Twelve On All Counts

Respectfully Submitted,


By: _____/s/ Thomas R. Ysursa_____
          Thomas R. Ysursa #6257701
          BECKER, HOERNER, & YSURSA, P.C.
          *Attorneys for Defendants,*
          *James Gomric, in his official capacity as*
          *State's Attorney of St. Clair County, Illinois, and*
          *Richard Watson, in his official capacity as*
          *Sheriff of St. Clair County, Illinois*
          5111 West Main Street
          Belleville, IL 62226
          Telephone: (618) 235-0020
          Facsimile: (618) 235-8558
          Email: try@bhylaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>March 16, 2023</u>, I electronically filed this document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Attorney for Plaintiffs*
David G. Sigale
Law Firm of David G. Sigale, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
Email: dsigale@sigalelaw.com

*Attorney for Defendants*
*Brendan F. Kelly and Kwame Raoul*
Laura K. Bautista
Illinois Attorney General's Office - Springfield
500 South Second Street
Springfield, IL 62701
Email: Laura.Bautista@ilag.gov

<i>/s/ Thomas R. Ysursa</i>