**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CALEB BARNETT, *et al.*, <br> Plaintiffs, <br><br> vs. <br><br> KWAME RAOUL, *et al.*, <br> Defendants. | Case No. 3:23-cv-209-SPM <br> ** designated Lead Case |
| DANE HARREL, *et al.*, <br> Plaintiffs, <br><br> vs. <br><br> KWAME RAOUL, *et al.*, <br> Defendants. | Case No. 3:23-cv-141-SPM |
| JEREMY W. LANGLEY, *et al.*, <br> Plaintiffs, <br><br> vs. <br><br> BRENDAN KELLY, *et al.*, <br> Defendants. | Case No. 3:23-cv-192-SPM |
| FEDERAL FIREARMS LICENSEES <br> OF ILLINOIS, *et al.*, <br> Plaintiffs, <br><br> vs. <br><br> JAY ROBERT "J.B." PRITZKER, *et al.*, <br> Defendants. | Case No. 3:23-cv-215-SPM |

**BRIEF OF *AMICUS CURIAE***
**SECOND AMENDMENT LAW CENTER**

## **TABLE OF CONTENTS**

INTEREST OF AMICUS CURIAE ............................................................................1

INTRODUCTION ....................................................................................................1

SUMMARY OF ARGUMENT ................................................................................3

ARGUMENT ..........................................................................................................4

I.  THE APPROPRIATE TIME PERIOD TO DETERMINE ORIGINAL
     PUBLIC UNDERSTANDING OF THE SECOND AMENDMENT
     IS 1791, WHEN THE BILL OF RIGHTS WAS ADOPTED ...................................4

      A.  Briefing in this case that suggests or advocates that the time
           to determine the original meaning of the Bill of Rights is
           when the Fourteenth Amendment was ratified is seriously in error. ...................4

      B.  The case law and quotations relied on to establish 1868
           as the pertinent year are illusory ........................................................6

      C.  The Constitution's meaning is fixed according to the
           understandings of the Founders ..........................................................11

      D.  Each provision of the Bill of Rights means the same thing
           when applied against the states through the Fourteenth Amendment
           as it does when applied against the federal government...................................12

      E.  *Bruen* and *Heller* both held that history from around the
           time of the Civil War or later cannot be used to contradict the
           original understanding from 1791, but can only be used to
           confirm that understanding ...............................................................13

      F.  The position that 1868 is the proper year is contrary to the
           Supreme Court's prior holdings and will not be adopted by the Court ..............14

           1. The Supreme Court's universal practice has been to look
              at the Founding era, not 1868, to determine the original
              understanding of the Bill of Rights...................................................14

           2. The Supreme Court will not overturn its fundamental
              incorporation jurisprudence to focus on 1868
              rather than the Founding ...............................................................16

i

II. HELLER DETERMINED THE LEGAL STANDARD THAT APPLIES TO BANS ON ARMS AND THAT STANDARD SHOULD BE APPLIED IN THIS CASE .......................18

CONCLUSION.............................................................................................................................19

CERTIFICATE OF SERVICE

**INTEREST OF *AMICUS CURIAE*[1]**

The Second Amendment Law Center is a 501c3 nonprofit corporation headquartered in Henderson, Nevada. The Center promotes and defends the individual right to keep and bear arms. The Center also educates the public about the social utility of private firearm ownership and publishes accurate and truthful historical, criminological, and technical information about firearms.

**INTRODUCTION**

A new argument is being advanced in Second Amendment cases all over the country.  It is now being argued that the time of ratification of the Fourteenth Amendment (1868) is the primary or exclusive time period for determining the original public understanding of the Second Amendment.  That argument is not only incorrect and illogical, but is directly contrary to Supreme Court precedent both in Second Amendment cases and other cases involving incorporated provisions of the Bill of Rights.  When it has been necessary to look to history for original meaning, the Court has always looked to the time of the original ratification of the Bill of Rights in 1791.

This *amicus* brief makes two main points: 1) *Heller* has already determined the test in arms ban cases; and 2) any inquiry into historical analogues should focus on the Founding period, not the time of ratification of the Fourteenth Amendment. In logical order, the first point is that in *Heller*[2] the Supreme Court examined the relevant text and history relating to possession of arms. Based on that text and history, the Court concluded that the kinds of arms protected by the Second

---

[1] No party's counsel authored this brief in whole or in part.  No party or party's counsel, and no person other than amicus, its members, or its counsel, contributed money that was intended to fund preparing or submitting this brief.
[2] *District of Columbia v. Heller*, 554 U.S. 570 (2008).

Amendment are those that are in "in common use," or, phrased somewhat differently, those that are "typically possessed by law-abiding citizens for lawful purposes."[3]

If the arms in question are protected under the *Heller* test, which they plainly are in this case, there is no need to examine historical analogues either in 1791 or 1868.  Indeed, it would be improper for a lower court to do so.  The job of the federal courts is to faithfully apply Supreme Court precedents and reasoning.  The *Heller* test is the first step logically speaking, but it is addressed second in this brief because the argument regarding the relevant time for determining meaning—1868 as opposed to 1791—is a novel one. Defendants have made the argument for 1868 in very limited fashion in their Opposition,[4] but the amicus brief recently filed by Everytown for Gun Safety, Doc. 54 ("Everytown Br.") presents that argument at considerable length. If this court decides to examine historical analogues, amicus submits that the proper time period for determining meaning is 1791, not 1868.  Because the contention that 1868 is the proper period is novel, it is addressed in Part I of this brief.

It has never been in question until very recently that the Founding is the relevant time period for determining the original public understanding of a constitutional provision.  Now that is being questioned post-*Bruen*,[5] and the time period of the ratification of the Fourteenth Amendment in 1868 is being proposed as the relevant time period.  The purpose of that argument is to allow much

---

[3] *Heller*, 554 U.S. at 624-25. Another way of phrasing the test is to hold that arms that are "dangerous and unusual" may be prohibited.  Because arms that are "in common use" or are "typically possessed by law-abiding citizens for lawful purposes" cannot, by definition, be "unusual," this brief concentrates on the "common use" and "typically possessed" formulations of the rule.

[4] Defendants Brief in Opposition to the Motion for Preliminary Injunction, Doc. 37 ("Opp.")

[5] *New York State Rifle & Pistol Association, Inc. v. Bruen,* 142 S.Ct. 2111 (2022).

later and more numerous laws in the late nineteenth century to be cited as "historical analogues" under *Bruen*. This brief demonstrates that the substitution of 1868 for 1791 is deeply mistaken, and that it has not and will not be adopted by the Supreme Court.

## SUMMARY OF ARGUMENT

The Supreme Court in *Heller* and *Bruen* has made it clear that the scope of the Second Amendment is determined in accordance with the scope it was understood to have when the people adopted it.  It was adopted in 1791. Now Defendants suggest that 1868, the time of adoption of the Fourteenth Amendment, which applies the Second Amendment to the states, is "also relevant." The amicus brief filed by Everytown for Gun Safety expressly argues at some length that 1868, not 1791, is the principal time for determining the Second Amendment's scope. *See* Part I.A., below.

The case law from Courts of Appeals cited in the Everytown brief does not support that position. *See* Part I.B., below. The *Gould* decision from the First Circuit was abrogated by *Bruen*. The rest merely cite a plainly erroneous statement made by the Seventh Circuit in the *Ezell* decision. That error was promptly corrected by the Seventh Circuit in another case the following year.  There is one very recent Eleventh Circuit panel decision that adopts 1868 as the appropriate year, but for reasons discussed below that decision is incorrect and not yet final. The Everytown brief cites not a single Supreme Court case that has held that 1868 rather than 1791 is the proper time for determining original meaning, and thus for evaluating the relevance of purported historical analogues. Instead, that brief discusses an "ongoing scholarly debate" briefly mentioned in *Bruen*.

The Supreme Court has clearly held that the Constitution's meaning is fixed according to the understandings of those who ratified it, although that fixed meaning can be applied to

circumstances the Founders did not foresee. Furthermore, the individual rights enumerated in the Bill of Rights have the same scope against the states as they do against the federal government. Because that meaning was fixed in 1791, the scope did not change in 1868.  Accordingly, the Court has held that post-enactment history cannot contradict the original meaning, but can only be used to confirm it. Here, Defendants and their amici seek to contradict the original meaning by offering analogues a century and more after the Founding by claiming that 1868, not 1791, is the relevant period.

The Supreme Court's universal practice when examining history to determine the meaning of incorporated provisions of the Bill of Rights has been to look to the understanding at the time of the Founding.  Numerous Supreme Court cases cited in the present brief demonstrate this, and none have looked to post-Civil War history for anything but confirmation of the 1791 understanding.

The "ongoing scholarly debate" alluded to in *Bruen* does not change this fact.  To adopt the position advocated by the Everytown brief would overturn the Supreme Court's jurisprudence on incorporation for all provisions of the Bill of Rights.  The Court is unlikely to do that.  In any event, it has not done so and lower courts are bound by the decisions of the Supreme Court.

## ARGUMENT

### I.  THE APPROPRIATE TIME PERIOD TO DETERMINE ORIGINAL PUBLIC UNDERSTANDING OF THE SECOND AMENDMENT IS 1791, WHEN THE BILL OF RIGHTS WAS ADOPTED.

#### A.  Briefing in this case that suggests or advocates that the time to determine the original meaning of the Bill of Rights is when the Fourteenth Amendment was ratified is seriously in error.

The Supreme Court's decision in *Bruen* made it clear that "Constitutional rights are

enshrined with the scope they were understood to have when the people adopted them," *Bruen*, 142 S.Ct. 2136 (quoting *Heller*, 554 U.S. 570, 634–635 (2008)). The Second Amendment was adopted by the people in 1791, when they ratified the Bill of Rights. So it seems plain enough, since the Supreme Court has twice so held, that the scope of the Second Amendment is determined by the meaning it had in 1791. In determining its scope, laws from that time that are "historical analogues" to present day restrictions can be consulted to determine whether those present day laws are constitutional; that is, if the analogues showed that the conduct restricted by challenged laws was considered outside the scope of the Second Amendment during the Founding era. If, on the contrary, there were no such analogues at the time of the Founding then that is good evidence—indeed, nearly conclusive evidence—that the Founding generation considered the conduct protected, and modern laws infringing on such conduct are unconstitutional.

The *Bruen* Court firmly rejected any form of "balancing test,"—such as strict scrutiny, intermediate scrutiny, or general interest balancing as proposed by Justice Breyer in his dissent in *Heller*. *Heller*, 554 U.S. at 681. The test is textual and historical only, and the relevant time period for determining the scope of the Second Amendment is 1791.

The time of ratification of the Fourteenth Amendment quite literally has nothing to do with the original public understanding of the Second Amendment and tells us nothing important about the tradition of firearms regulation in this country. That is true for several reasons, explored in Parts I.C. through I.F., below.

The Everytown brief explicitly argues that 1868, and not 1791, is the "most relevant" time period for the historical inquiry because that is "when the Fourteenth Amendment was ratified and

made the Second Amendment applicable to the states." Everytown Br. 6. Positing 1868 as the appropriate time period is advantageous to those who wish to limit Second Amendment rights because it greatly expands the time window for historical analogues, to include not only the period immediately surrounding 1791, but also periods up to 1868 and, Everytown argues, at least some decades past 1868.[6]

An examination of the case law that the Everytown brief relies on to posit that 1868 is the proper year reveals that claim to be baseless. *See* Part I.B., below. Such a claim is completely illogical and barred by other principles that are firmly established in the Supreme Court's Bill of Rights jurisprudence. *See* Parts I.C., I.D., and I.E., below. Most conclusively, it is contrary to the Court's universal practice of looking at the time of the Founding, not the Reconstruction period, to determine the meaning of the substantive provisions of the Bill of Rights, including the Second Amendment. *See* Part I.F., below.

## B. The case law and quotations relied on to establish 1868 as the pertinent year are illusory.

Everytown contends that if this court conducts a historical inquiry "it should first conclude that the most relevant time period for that inquiry centers on 1868, when the Fourteenth Amendment was ratified and made the Second Amendment applicable to the states." Everytown Br. 6.

To try to support this contention, it argues that several courts of appeals have reached this conclusion. The Everytown brief first cites *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011). The brief quotes *Ezell* to the effect that "*McDonald* [*v. City of Chicago*, 561 U.S. 742

---

[6] The historical inquiry "should focus on the period around 1868, not 1791. Moreover, 1868 is not a cutoff…." Everytown Br. 11.

(2010),] confirms that if the claim concerns a state or local law, the 'scope' question asks how the right was publicly understood when the Fourteenth Amendment was proposed and ratified." *Ezell* does contain that quote, but the Everytown brief omits the Seventh Circuit's citation to *McDonald*, which was "*McDonald*, 130 S.Ct. at 3038–47." There is a fatal problem with that citation. In that ten-page range, there is no statement that the time of ratification of the Fourteenth Amendment is the relevant time period for determining the scope of the Second Amendment. Neither *Ezell* nor the Everytown brief offers a quote from *McDonald* allegedly establishing that proposition, nor a cite to a specific page within that page range on which such a statement appears. Instead, Justice Alito's *McDonald* opinion in the page range 3038-47 merely examines history during that time period to determine whether the Second Amendment should be held to be incorporated. It does not say that 1868 is the principal time period for determining the meaning or scope of the Second Amendment.

The Seventh Circuit simply made a mistake in *Ezell.* It corrected that mistake the next year in *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012). There, the Seventh Circuit held that "1791, the year the Second Amendment was ratified" was "the critical year for determining the amendment's historical meaning, according to *McDonald v. City of Chicago, supra*, 130 S.Ct. at 3035 and n. 14."

It next quotes the First Circuit to the effect that "[b]ecause the challenge here is directed at a state law, the pertinent point in time would be 1868 (when the Fourteenth Amendment was ratified)." Everytown Br. 6. The citation to the First Circuit in the Everytown brief is: "*Gould v. Morgan*, 907 F.3d 659, 668 (1st Cir. 2018) (citing cases), criticized by *Bruen*, 142 S. Ct. at 2124, 2126-27." Everytown Br. 6. But *Gould* was a pre-*Bruen* case from Massachusetts, and involved a

*discretionary* carry licensing system of the kind struck down in *Bruen*. It was one of the six states

whose licensing schemes were expressly condemned in *Bruen. Bruen*, 142 U.S. at 2124. It also

explicitly adopted the two-step interest balancing scheme rejected by *Bruen. Gould*, 907 F.3d at

668-69. Furthermore, *Gould* held that "the core Second Amendment right is limited to self-defense

in the home," *id*. at 671, another holding contrary to *Bruen. Gould* was not "criticized by" *Bruen*.

It was abrogated by *Bruen* and is no longer good law, if it ever was.

The Everytown brief next cites *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)[7]

as "following *Ezell,"* and *Drummond v. Robinson Twp.*, 9 F.4th 217, 227 (3d Cir. 2021), quoting

language that "[T]he question is if the Second and Fourteenth Amendments' ratifiers approved [the

challenged] regulations …." Everytown Br. 6-7. But as one scholar has noted:

> *Greeno* simply quoted the mistaken language in *Ezell*, apparently without investigating its accuracy.… The *Drummond* case did not hold that 1868 is the proper date. It merely stated, without any elaboration or citation of authority, that "[f]or the rim-fire rifle rule, the question is if the Second and Fourteenth Amendments' ratifiers approved regulations barring training with common weapons in areas where firearms practice was otherwise permitted." It then cited authorities from 1825, 1885, and 1895 as part of its analysis, but did not attempt to determine what the ratifiers of the Fourteenth Amendment may have understood the right's scope to be in 1868 (citations omitted). [8]

Thus, the Everytown brief relies on a mistake in *Ezell. Greeno* also relied only on the mistake

---

[7] The description of *Gould* by Everytown as "citing cases" for the proposition that 1868 is the key year really only cites one case: *Greeno.*

[8] Mark W. Smith, *"Not all History is Created Equal": In the Post-Bruen World, the Critical Period for Historical Analogues is when the Second Amendment was Ratified in 1791, and not 1868*, at 32, SSRN, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4248297.  *See also* Mark Smith, *Attention Originalists: The Second Amendment Was Adopted in 1791, not 1868*, Harvard Journal of Law & Public Policy Per Curiam (Fall 2022) https://www.harvard-jlpp.com/wp-content/uploads/sites/21/2022/12/Smith-1791-vF1.pdf.

(promptly corrected by the Seventh Circuit) in *Ezell*. And *Gould* relied only on *Greeno*. This line of cases in the courts of appeals proves nothing.

The Everytown brief does rely on a very recent panel decision of the Eleventh Circuit, determining that 1868 is the proper year.  Everytown Br. 6.  For the reasons stated in this brief, that decision is simply incorrect.  As the Supreme Court in *McDonald* observed, 561 U.S. at 780, the Second Amendment is not a second-class right, so if 1868 is the proper year, courts must look at 1868 to determine the historical meaning of all other incorporated provisions of the Bill of Rights. One may reasonably ask, when the next case regarding freedom of speech, freedom of religion, the Establishment Clause, the protection against unreasonable searches and seizures, the right to counsel, the right to jury trial, or another protection in the Bill of Rights comes before the Eleventh Circuit, will that court jettison existing Supreme Court precedent that looked to the Founding to ascertain those rights, and make a new determination based on 1868?  One suspects it will not.

That panel decision is not yet final, because on the day the opinion was issued a judge of the Eleventh Circuit directed the clerk to withhold the mandate. *National Rifle Association v. Bondi*, No. 21-12314, Doc. No. 67 (Mar. 9, 2023).  Among other things, this action might suggest a rehearing en banc, in which case the panel decision would be vacated.  Also, one of the three judges on the panel only concurred in the judgment, noting that:

> I would wait to issue an opinion until the current session of the Florida legislature completes its consideration of H.B. 1543, 2023 Leg., Reg. Sess. (Fla. 2023), which may render the issue moot. . . . However, I concur in the judgment given the law as it exists today.

*National Rifle Association v. Bondi*, No. 21-12314, 2023 WL 2416683, *14 (Mar. 9, 2023).  Thus, it would be prudent not to give too much weight to this decision before the procedural history is

played out.

What does the Everytown brief *not* cite for the proposition that the 1868 time of ratification is or ought to be controlling? It does not cite a single Supreme Court case that has ever held that 1868 is the principal relevant time for determining the original public understanding of the Second Amendment or of any of the first eight provisions of the Bill of Rights. That is because when history is consulted by the Supreme Court to determine the original meaning of a provision of the Bill of Rights it has always looked to the Founding era as the principal focus. *See* Part I.F., below. It has never considered 1868 to be the uniquely relevant time period or, really, very relevant at all.

The Everytown brief does mention *Bruen,* but tries to transmute a passing remark made by Justice Thomas, the author of the *Bruen* opinion, into a holding that 1868 is the key year for determining meaning, which neither *Bruen* nor any other Supreme Court opinion has ever held.

*Bruen* merely noted the unexceptionable principle that:

Strictly speaking, New York is bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second….[citation omitted] Nonetheless, we have made clear that individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government. [multiple citations omitted] And we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791. [citing three Court cases from the past twenty years holding that 1791 is the proper period for determining public understanding of the First, Fourth, and Sixth Amendments].

Justice Thomas's opinion then continued:

We also acknowledge that there is an ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope (as well as the scope of the right against the Federal Government). See, *e.g.*, A. Amar, The Bill of Rights: Creation and Reconstruction xiv, 223, 243 (1998); K. Lash, Re-Speaking

the Bill of Rights: A New Doctrine of Incorporation [now published at 97 Ind. L.J. 1439 (2022)] ("When the people adopted the Fourteenth Amendment into existence, they readopted the original Bill of Rights, and did so in a manner that invested those original 1791 texts with new 1868 meanings"). We need not address this issue today because . . . the public understanding of the right to keep and bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public carry.

*Bruen*, 142 S.Ct. at 2138.

Several things are worth noting in this passage. First, though characterized as an "assumption," the test actually applied by the *Bruen* court, and in numerous cases cited by *Bruen*, was 1791, not 1868. Second, the acknowledgement of an "ongoing scholarly debate" does not imply that the Court has changed or will change the historical period it will look at for determining original public understanding, through "historical analogues" or other means. Third, adoption of 1868 as the historical period to determine original meaning would nullify the entire course of Supreme Court incorporation jurisprudence, and would require that all Bill of Rights cases, whether based on incorporation against the states or directly against the federal government, be revisited.

## C. The Constitution's meaning is fixed according to the understandings of the Founders.

*Bruen* expressly held that the Constitution's "meaning is fixed according to the understandings of those who ratified it," although "the Constitution can, and must, apply to circumstances beyond those *the Founders* specifically anticipated." *Bruen*, 142 S.Ct. 2132. Thus, it is the understanding of "the Founders" that is dispositive. For that proposition, *Bruen* cited *United States v. Jones*, 565 U.S. 400, 404–405 (2012), a Fourth Amendment case that held that installation of a tracking device "would have been considered a 'search' within the meaning of the Fourth Amendment *when it was adopted*") (emphasis added). As noted, it was adopted in 1791. *Heller* also expressly determined that the Founding was the relevant time for ascertaining original public

understanding. It specifically noted that the "Constitution was written to be understood by the voters," and that "Normal meaning … excludes secret or technical meanings that would not have been known to ordinary citizens *in the founding generation*." *Heller*, 554 U.S. at 576-77 (emphasis added). So, the Constitution, including the Bill of Rights and Second Amendment, had an ascertainable, fixed meaning at the time it was adopted, which is the time of the Founding.

**D.  Each provision of the Bill of Rights means the same thing when applied against the states through the Fourteenth Amendment as it does when applied against the federal government.**

*Bruen* itself made it clear that "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." *Bruen*, 142 S.Ct. at 2137. The Second Amendment therefore cannot have one meaning when applied against the federal government and a different meaning when incorporated against the states. That principle was conclusively established in *Malloy v. Hogan*, 378 U.S. 1 (1964) after debate among the members of the Court over a period of years. It has been adhered to by the Court ever since. *McDonald* reviewed the debate on this issue, and concluded that *Malloy* "decisively held that incorporated Bill of Rights protections 'are all to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment.'" *McDonald*, 561 U.S. at 765-66 (citing cases).

If the Second Amendment meant something in 1791 regarding the restraints placed on the federal government, as it surely did (*see Heller*), then the principle just described means that it meant the identical thing when applied to restrain the states in 1868 and thereafter. And that meaning was fixed in 1791, as seen above. Thus, no amount of "historical analogues" in later times

can change the 1791 meaning.

**E.  *Bruen* and *Heller* both held that history from around the time of the Civil War or later cannot be used to contradict the original understanding from 1791, but can only be used to confirm that understanding.**

Although both *Heller* and *Bruen* examined a small amount of evidence from the mid- to late-nineteenth century, they clearly did so only to confirm the original understanding from the time of the ratification of the Second Amendment in 1791. *Bruen* relied on *Gamble v. United States*, 139 S.Ct. 1960 (2019) to make that point concisely. The *Bruen* opinion noted that "we made clear in *Gamble* that *Heller's* interest in mid- to late-19th-century commentary was secondary. *Heller* considered this evidence 'only after surveying what it regarded as a wealth of authority for its reading—including the text of the Second Amendment and state constitutions.'" *Bruen,* 142 S.Ct. at 2137 (quoting *Gamble*, 139 S.Ct. at 1975–76). Any evidence from the mid- to late-nineteenth century was treated as "mere confirmation of what the Court thought had already been established." *Id*.

Furthermore, both *Heller* and *Bruen* noted that little weight should be given such nineteenth century evidence under any circumstances. *Bruen* expressly cautioned "against giving postenactment history more weight than it can rightly bear." *Bruen*, 142 S.Ct. at 2136. *Bruen* also quoted *Heller* regarding post-Civil War discussions of the right to keep and bear arms, observing that because they "took place 75 years after the *ratification of the Second Amendment*, they do not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S.Ct. at 2137 (emphasis added). If 1868 were the proper period, then such evidence would be the most relevant of all; but both *Heller* and *Bruen* viewed the "ratification of the Second Amendment" as the proper

13

period for determining original meaning. In fact, the Court in *Bruen* refused even to consider "any of the 20th-century historical evidence brought to bear by respondents or their amici." *Bruen*, 142 S.Ct. at 2154 n.28. The Court's reason was straightforward: "As with their late-19th-century evidence, the 20th century evidence presented by respondents and their amici does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.*

Of course, the reason that Defendants offer evidence or historical analogues from the late nineteenth century and twentieth century is precisely *because* they contradict earlier evidence. The tradition at the time of the Founding, and up until a smattering of short-lived laws in the 1920s and 1930s, was that the government could not ban the sale or possession of arms.

**F. The position that 1868 is the proper year is contrary to the Supreme Court's prior holdings and will not be adopted by the Court.**

**1. The Supreme Court's universal practice has been to look at the Founding era, not 1868, to determine the original understanding of the Bill of Rights.**

As noted, Defendants and Everytown have not cited a single Supreme Court case in which the Court looked to 1868 or the Reconstruction period as the principal time period to ascertain the original meaning of the provisions of the Bill of Rights. Of course, the Court does not always need to consult history to determine the outcome of a case involving an incorporated provision of the Bill of Rights. But when it has employed history, the Court has always considered the Founding period, or very shortly before or thereafter, to be the principal or exclusive period that is determinative. Following is a partial list of such cases using history from the Founding:[9]

**First Amendment:** *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1894–912 (2021) (Free

---

[9] This list is based in part on the list contained in Smith, *Attention Originalists*, *supra* n.6, at 7 n.35.

Exercise Clause) (concurrence by Justices Alito, Thomas, and Gorsuch); *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 182–84 (2012) (Establishment Clause and Free Exercise Clause); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (freedom of speech); *Lynch v. Donnelly*, 465 U.S. 668, 673–74 (1984) (Establishment Clause); *Near v. Minnesota*, 283 U.S. 697, 713–17 (1931) (freedom of the press); *Reynolds v. United States*, 98 U.S. 145, 163 (1878) (Free Exercise Clause).

**Second Amendment:** *New York State Rifle Association v. Bruen*, 142 S. Ct. 2111, 2136 (2022); *District of Columbia v. Heller*, 554 U.S. 570, 634–635 (2008).

**Fourth Amendment:** *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008); *Wyoming v. Houghton*, 526 U.S. 295, 299 (1999); *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995).

**Fifth Amendment:** *Gamble v. United States*, 139 S. Ct. 1960, 1965 (2019) (Double Jeopardy Clause); *Benton v. Maryland*, 395 U.S. 784, 795–96 (1969) (Double Jeopardy Clause).

**Sixth Amendment:** *Ramos v. Louisiana*, 140 S. Ct. 1390, 1395–96 (2020) (Jury Trial Clause); *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004) (Confrontation Clause); *Duncan v. Louisiana*, 391 U.S. 145, 151–54 (1968) (right to jury trial in state cases); *Klopfer v. North Carolina*, 386 U.S. 213, 223–25 (1967) (right to speedy trial); *Washington v. Texas*, 388 U.S. 14, 20, 23 (1967) (Compulsory Process Clause); *In re Oliver*, 333 U.S. 257, 266–268 (1948) (right to public trial); *Powell v. Alabama*, 287 U.S. 45, 60–67 (1932) (Right to Counsel Clause).

**Eighth Amendment:** *Timbs v. Indiana*, 139 S. Ct. 682, 687–99 (2019) (Excessive Fines Clause).

Justice Thomas's statement in *Bruen* that the Court has "generally *assumed* that the scope

of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791," is thus too modest. *Bruen*, 142 S.Ct. at 2137. The cases listed above demonstrate that, when the Court looks at history, the period around 1791 has been the central, often only, time period that it has examined to determine original public understanding of the Bill of Rights.

###   2.  The Supreme Court will not overturn its fundamental incorporation jurisprudence to focus on 1868 rather than the Founding.

The "ongoing scholarly debate" referenced by the *Bruen* opinion has not turned out to be much of a debate.  The Court cites only two books or articles on the subject, Prof. Akhil Reed Amar's 1998 book on the Bill of Rights,[10] and a recent law review article by Prof. Kurt Lash.[11] The most relevant of these is the article by Lash. According to Westlaw at the time this is written, there have been sixteen citations to Lash's article. Fifteen were in briefs filed by Everytown or responding to Everytown, and one was in a law journal article, in which Lash's article is cited once in a footnote.

Amar's book does not argue that 1868 is the central or exclusive time focus for determining the original meaning or public understanding of the Bill of Rights.  His approach is more subtle, arguing that "a particular principle in the Bill of Rights may change its shape in the process of absorption into the Fourteenth Amendment."  Amar at xiv. With regard to the Second Amendment, Amar argues that the words of that Amendment "take on a different coloration and nuance when they are relabeled 'privileges or immunities of citizens' rather than 'the right of the people,'" and

---

[10] AKHIL REED AMAR, THE BILL OF RIGHTS: CREATION AND RECONSTRUCTION (1998);
[11] K. Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation*, 97 Ind. L.J. 1439 (2022).  Justice Thomas cited to the version of the article as it existed then on SSRN.

that "the core applications and central meanings of the right to keep and bear arms and other key rights were very different in 1866 than in 1789." Amar at 223. Thus, "when we 'apply' the Bill of Rights against the states today, we must first and foremost reflect on the meaning and the spirit of the amendment of 1866, not the Bill of 1789." *Id.* He stopped far short of contending that in determining original public understanding of the Bill of Rights, the time of the Fourteenth Amendment should prevail over and replace the time of the Founding.

Lash takes the forthright, albeit erroneous, position that the relevant time period for determining meaning is 1868, not 1791. He claims that when the Fourteenth Amendment was ratified, the people "respoke" the provisions of the Bill of Rights and "invested those original 1791 texts with new 1868 meanings." Lash at 1441. He calls this "reverse incorporation,"[12] and contends that his version of "reverse incorporation" would turn that "proposition about equal protection and a single clause of the Fifth Amendment into a proposition about the entire content of the Bill of Rights." Lash at 1442. This is essentially the position advocated by the Everytown brief.

Recall that the provisions of the Constitution have one meaning, fixed at the time of the Founding. For the Bill of Rights, that meaning cannot apply differently to the federal government and the states. A special rule regarding which time period to use cannot be employed for the Second Amendment, because as the Supreme Court has said, that amendment is not a "second class right." *McDonald*, 561 U.S. at 780.    That means that the Supreme Court's entire incorporation

---

[12] That is the term sometimes used for the unique approach taken in *Bolling v. Sharpe*, 347 U.S. 497 (1954), a companion case to *Brown v. Board of Education*, 347 U.S. 483 (1954), in which the equal protection clause of the Fourteenth Amendment was "read back" into the Fifth Amendment's due process clause.

jurisprudence would have to be overturned for *all* provisions of the Bill of Rights, and *all* decisions regarding the original meaning of those provisions would have to be revisited, with an allegedly different understanding from 1868 substituted for the original understanding of 1791.

Needless to say, that is unlikely to happen.  In any event, it has not happened, and lower courts are bound by the decisions of the Supreme Court.  Accordingly, talk about substituting an 1868 understanding for the original understanding of 1791 should be dismissed.

## II.  *HELLER* DETERMINED THE LEGAL STANDARD THAT APPLIES TO BANS ON ARMS AND THAT STANDARD SHOULD BE APPLIED IN THIS CASE.

As described above, *Heller* has already determined the legal test to be applied in arms ban cases. An arm is protected by the Second Amendment if it is "in common use" today, or is "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625.  While Defendants seek to limit the common use test to employment of a gun in cases of self-defense only, there is nothing in *Heller* that supports such a limitation.  Possession for any lawful purpose, be it self-defense, hunting, recreational shooting, home defense, or competition, is protected by the Second Amendment.

Plaintiffs have presented evidence that so-called assault weapons are merely ordinary semiautomatics, that so-called "large capacity" magazines are, in fact, standard capacity, and that these firearms are owned in the tens of millions and the magazines are owned in the hundreds of millions. *See, e.g.*, Plaintiffs' Motion for Preliminary Injunction in *Barnett v. Raoul* at 9-12, 16-19. Amicus will not repeat those figures here.  Suffice it to say that these firearms and magazines unquestionably meet the *Heller* test that they be "typically possessed by law-abiding citizens for lawful purposes."

18

*Heller* has already done the historical analysis and defined a constitutional test for what arms are protected by the Second Amendment. *Bruen* did not disturb the test announced in *Heller* as to what arms are protected. All that remains is for courts and litigants to apply that test to the arms in question in a particular case.  It is not only unnecessary for courts and litigants to look for historical analogues when deciding what kinds of arms may be possessed under the protection of the Second Amendment.  It is also improper, because *Heller* has already made that determination, and it is not the province of lower courts to devise a different standard to replace it.

Amicus has devoted most of this brief to refuting the newly advanced theory that the Second Amendment should be interpreted in accordance with its meaning in 1868 and years thereafter.  But the simple answer for deciding this case is that *Heller* governs, and that is the end of the matter.  All of the discussion of alleged analogues in 1868 and thereafter is an attempt to divert attention from that straightforward truth.

**<u>CONCLUSION</u>**

The Motion for Preliminary Injunction should be granted.

Respectfully submitted,

<u>/s/ Dan M. Peterson</u>
Dan M. Peterson
Dan M. Peterson PLLC
3925 Chain Bridge Road, Suite 403
Fairfax, Virginia 22030
(703) 352-7276
dan@danpetersonlaw.com
*Counsel for Amicus Curiae*

19

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 17, 2023, an electronic PDF of the foregoing Amicus Brief of the Second Amendment Law Center was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

<u>/s/ Dan M. Peterson</u>
Dan M. Peterson