# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CALEB BARNETT, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-209-SPM |
| | ) | |
| **KWAME RAOUL, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| **DANE HARREL, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-141-SPM |
| | ) | |
| **KWAME RAOUL, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| **JEREMY W. LANGLEY, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-192-SPM |
| | ) | |
| **BRENDAN KELLY, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

---

| | |
|---|---|
| FEDERAL FIREARMS ) | |
| LICENSEES OF ILLINOIS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 3:23-cv-215-SPM. |
| JAY ROBERT "JB" PRITZKER, et al., ) | |
| ) | |
| Defendants. ) | |

## REPLY IN SUPPORT OF PRELIMINARY INJUNCTION

Comes now Plaintiffs Jeremy W. Langley, Timothy B. Jones and Matthew Wilson, by and through their attorneys, Thomas G. Maag and the Maag Law Firm, LLC, and for their reply in support of their Motion for Preliminary Injunction, states as follows:

## INTRODUCTION

This case deals with a broad, nearly total ban, on some of the most popular firearms and firearms accessories in the United States. Applying the *Bruen* test, as previously articulated, this ban fails. Defendants have filed a response in support of the ban. Much of their response ignores the *Bruen* test, and instead, asks this Court to engage in, if not expressly, at least under the surface, interest balancing. For the reasons stated in this reply, as well as previously and otherwise of record, this Court should preliminarily enjoin the firearm and magazine ban at issue.[1]

---

[1] To the extent not inconsistent with these Plaintiff's briefing materials, these Plaintiff's join in the arguments made by other counsel, for other Plaintiffs, and adopt their exhibits and evidence.

## OBJECTION TO STATE'S PROFERRED MATERIALS

As an initial matter, Plaintiffs herein OBJECT, to the preferred materials of Defendants, and request they be stricken, as indicated before:

1. Various Newspaper Article (Doc. 37-1)

    Said documents are hearsay, per se, and fall into no exceptions. The entirety of the exhibit, and all references to it, should be stricken pursuant to the F.R.E.

2. Declaration of Robert Morgan (Doc. 37-2).

    The challenged portions of the documents, and all references to those portions of it, should be stricken pursuant to F.R.E.

    - A: Last sentence of paragraph 8, hearsay.
    - B: Paragraph 16. Hearsay and lack of foundation.
    - C: Paragraphs 17 and 18. Hearsay.
    - D: Paragraph 19, Hearsay and lack of foundation.
    - E: Paragraphs 20, 21, 22. Hearsay.
    - F: Paragraph 25. Irrelevant.
    - G: Paragraph 29. Hearsay.

The fact that Plaintiffs herein have not objected to other materials tendered by Defendants at this time, should not be construed to be that these Plaintiffs agree with those other materials. In fact, much of those materials are so obviously wrong

from historical or factual backgrounds, as to potentially be sanctionable. However, as this case is not yet at the deposition stage, these Plaintiffs will first cross examine said purported experts before making such formal motions.

## ARGUMENT

**Irreparable Harm**

Defendants argue that Plaintiff's will suffer no irreparable harm by allowing the statute to stand. Defendants' argument is frivolous. As noted by the U.S. Court of Appeals for the Seventh Circuit, even before *Bruen*, in *Ezell v. City of Chicago*, 651 F. 3d 684 - Court of Appeals, 7th Circuit 2011. "[I]rreparable harm is presumed. See 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). … The Second Amendment protects similarly intangible and unquantifiable interests. *Heller* held that the Amendment's central component is the right to possess firearms for protection. 554 U.S. at 592-95, 128 S.Ct. 2783. Infringements of this right cannot be compensated by damages..

Thus, Plaintiffs have shown irreparable harm. Furthermore, as to harming the public interest, allowing the State to continue to violate the fundamental constitutional rights of its own citizens is what is not in the public interest.

**Constitutional Rights Are Not Extinguished by Hyperbole**

More recent vintage than the Hydrogen Bomb.  That is how Defendants' categorize the firearms banned by their ill conceived statute.  As if we are talking about thermonuclear devices with special cobalt lined cases ala the Castle Bravo tests.

Such hyperbole, conflating weapons powerful enough to destroy entire cities with common and ordinary firearms is not becoming our State officials, or their attorneys.  It is also a flat out falsehood, like much of their argument.

Hydrogen Bombs, or thermonuclear bombs, were in fact, developed far after the kinds of firearms at issue in this case, the first thermonuclear explosion in November, 1952.  https://www.history.com/this-day-in-history/united-states-tests-first-hydrogen-bomb  They are much more complicated that the firearms at issue, some of which can literally be made by hand over a campfire.

On the other hand, Defendant, in their list of firearms banned by the Illinois statute, include the Mauser C96 (and in model of 1896) Broomhandle  pistol.  (See Doc. 37-3. P. 12 of 74).  Winston Churchill literally carried such a firearm during the Boer War, in 1899, while serving as a war correspondent (i.e. a reporter).  Other such banned guns and magazines that also pre-date thermonuclear weapons, include the M1A1 paratrooper carbine (and its pictured 15 round magazine), of

WWII vintage. (See Doc 37-3, P. 7 of 74). All of the other firearms shown are based on designs and concepts that are literally over 100 years old at this point.

**Arms in Common Use in the 1700s and At Time of 14th Amendment**

Even if newly developed, our Supreme Court has made it crystal clear that the argument that "that only those arms in existence in the 18th century are protected by the Second Amendment" "borders on the frivolous". *Heller,* 554 U.S., at 582. This was subsequently reaffirmed in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), which stated, "the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," *District of Columbia* v. *Heller*, 554 U. S. 570, 582 (2008).

Thus, the fact that nearly, if not all of the banned firearms and devices are of 19th or 20th Century design, if not outright manufacture, or even 21st Century design, does not remove the firearms and items from Second Amendment protection. The argument to the contrary is, at this point in Second Amendment litigation, not made in good faith.

In addition, contrary to the again false statement of Defendants, the Supreme Court in *Heller* most assuredly *did not* say that firearms like the "military grade" firearms like the M16 can be banned (See Doc. 37, P. 3). That issue was not considered in *Heller*, the supposed source of that authority. In truth, the sentence

in *Heller,* used the word, "if" similar to famous line by the Step Mother in the classic Disney Cinderella movie, includes the word, "if" and when read, shows and entirely different context, to the point of the statement by Defendants being false.

The Step Mother stated:

"Well, I see no reason why you can't go [to the Ball], **if** you get all your work done. And **if** you can find something suitable to wear." … "Of course … I said 'If.'"

The Supreme Court in *Heller* stated, in actuality, "It may be objected that **if** weapons that are most useful in military service—M-16 rifles and the like—may be banned, **then** the Second Amendment right is completely detached from the prefatory clause."  This is not a statement that any kind of gun may be banned, only a comment on a hypothetical argument, not before that Court, and not before this Court.

 Previously, the Supreme Court had stated in *Staples v. United States*, 511 U.S. 600 (1994), that the AR15 and firearms like it "traditionally have been widely accepted as lawful possessions."

Whatever Defendant's arguments are concerning "machineguns", the challenged statute simply does not address them.  The machinegun arguments made by Defendant are completely irrelevant, and any ruling concerning same

would simply be advisory, as these is not such case or controversy in this case over machineguns.

**Magazines Are Arms Deserving Second Amendment Protection**

Defendants argue that magazines are not arms, as in the absence of an actual firearm, they cannot be used for defense. Thus, the argument goes, they are not protected by the Second Amendment. The argument is again frivolous. This is the equivalent of saying that while the government cannot ban newspapers, that it can ban the presses used to print them, as of course, you cannot read a printing press.

Magazines are not mere accessories, but essential components of modern firearms. *District of Columbia v. Heller*, 554 U.S. 570 (2008) made clear that bans on *operable* firearms are unconstitutional. *Caetano v. Massachusetts,* 577 U.S. 411 (2016), reaffirmed that modern devices, including those not dreamed of by the Founders, are constitutionally protected.

Furthermore, one need only look at the Militia Act of 1792, to see what was intended by arms at the time.

Militia members were required to equip themselves with a musket, bayonet and belt, two spare flints, a box able to contain not less than 24 suitable cartridges, and a knapsack. Alternatively, everyone enrolled was to provide himself with a rifle, a powder horn, ¼ pound of gunpowder, 20 rifle balls, a shot-pouch, and a knapsack. A Century of Lawmaking for a New Nation: U.S. Congressional

Documents and Debates, 1774 – 1875, Annals of Congress, 2nd Congress, 1st Session Pages 1391 & 1392 of 1456.  It should be remembered that, essentially, all, of age, free white males were required to be enrolled in the militia.  Id.  Thus, as a practical matter, arms included powder horns and ammunition carriers.  It is suggested that, at least, the kinds of things, or their modern analogous equivalents, are protected by the Second Amendment.

Today, with modern repeating firearms, the functions of the powder horn and box able to contain cartridges are performed by the magazine pouch and the detachable box magazine.  A modern firearm without its proper detachable box magazine, while capable of firing, would be very limited in its usefulness, much like a Revolutionary War Era Brown Bess or Charleville musket, without a shot bag or powder horn.  Both would be little more than fancy clubs at worst, or woefully obsolete, at best.  Nobody would suggest a political candidate trying to get his message out, be limited to a Gutenberg Press to make his copies.

### The Restricted Arms Include Many Defensive Arms

Defendants argue that the banned firearms are all *offensive* firearms, not suitable for self Defense.  The same argument could be made for every invention of a firearm improvement, from the matchlock, to the wheellock, to the flintlock, to the caplock, to the beach loader, to the bolt action, to the semi automatic.

Of course this belies the fact that the M1 Carbine and its 15 or 30 round magazines, were designed primarily to offer noncombat and line-of-communications troops a better *defensive* weapon … but without the recoil, cost, or weight of a full-power infantry rifle. https://thecmp.org/sales-and-service/m1-carbine information/#:~:text=The%20M1%20Carbine%20was%20designed%20primarily%20to%20offer,cost%2C%20or%20weight%20of%20a%20full-power%20infantry%20rifle.  (Accessed 3/23/2023).  The carbine was also easier for less experienced soldiers and smaller-framed people to fire than the .30 caliber infantry rifles of the day. The carbine was more convenient to carry for officers, NCOs, or specialists encumbered with weapons, field glasses, radios, or other gear. Id.  Even today, 80 years plus after production, the U.S. Carbine, Caliber .30 M1 is an ideal self defense firearm, if equipped with standard 15 or 30 round magazines.

By the same token, the first AR15/M16 rifles adopted by anyone, was adopted by the U.S. Air Force, in order to *defend* U.S. Airfields, in 1961. https://www.firearmsnews.com/editorial/colt-ar15-model-601-automatic-rifle/451457 (accessed 3/23/2023).  Contrary to a certain Colonels testimony, there is nothing special or magical about the .223 Remington or 5.56x45mm round.  The .220 Swift, of 1935 vintage, fired the same basic projectile 1,000 feet per second faster than the AR15 series.  In fact, the .223 Remington is so *underpowered* it is

actually illegal to deer hunt with in most states, and the gun was once ridiculed as the "mouse gun" for being so small and underpowered.

**Bruen's Second Step**

Finally getting to the actual applicable legal standard, Defendants claim that Plaintiff's claims fail *Bruen's* second step, to wit:

> "…the Act responds to an utterly modern concern borne of dramatic technological change—mass shootings perpetrated by lone individuals armed with assault weapons and large capacity magazines capable of carnage at a level inconceivable to the Framers of either the Second or Fourteenth Amendments."

In responding to this argument, it is interesting to note that hanging in the undersigned counsel's office, as he types this, is the Swiss Model 1871 Vetterli Rifle, carried by his Great-Great Grandmother, an immigrant to barely spoke English, when she homesteaded in the late 19th and early 20th Centuries.  The rifle contains a 12 shot magazine, as is standard for such Vetterli rifles[2].  However, this magazine feat was bested, more than 10 years before the Vetterli designed, by the Civil War Era Henry rifle, which held 16 rounds in its magazine and chamber, and was able to shoot up to 28 rounds per minute.  (Doc. 58, page.8)  But even before

---

[2] Although ammunition for the Vetterli is long out of production, the rifle and its 12 round magazine are available for inspection by the Court, if the Court would find same useful in its fact finding in this matter.

this was the Girardoni air rifle, circa 1779, in service with the Austrian army from about 1780 to 1815, which could shoot 30 rounds without reloading.  Ex A.

Furthermore, the very guns banned, or others like them, have been available since at least 1896, as Defendant has literally listed a model 1896 Mauser Broomhandle, in its display of banned guns.  The M1 carbine, and its standard 15 and 30 round magazines, is from the early 1940s.[3]  This, in turn was based on a prior semi automatic rifle, with detachable magazine, the Winchester Model 1905.  See Ex B.  The Remington Model 8, also semi-automatic with detachable magazine (and from with the AK47 copied its safety selector), was also produced starting in 1905.  Ex C.  15 round magazines were available for the Model 8.  Id.  Both, these types of firearms, and these larger capacity magazines are not new inventions.

Neither is any sort of mass killing. 27 people were apparently murdered 10,000 years ago, as described by Smithsonian magazine. https://www.smithsonianmag.com/science-nature/ancient-brutal-massacre-may-be-earliest-evidence-war-180957884/ (accessed 3-23-23).  Murder is not a recent invention, as the Court can take judicial notice.

---

[3] Should the Court find same useful, Plaintiffs are prepared to demonstrate, upon request of the Court, a 1940s manufactured M1 Carbine, along with 1940s vintage M1 carbine ammunition, and 1940s vintage 15 and 30 round magazines, to demonstrate to the Court, if it would find same of use in its fact finding.

Thus, we know there is no new or recent social ill sought to be remedied, and we have no actual new technology akin to nuclear weapons that must be controlled for the sake of cities. In fact, per FBI statistics, all kinds of rifles and shotguns, combined, are less likely to be used to murder than hands and feet, and knives are more than twice as likely to be used that all kinds of rifles and shotguns combined. Ex. D.

Quite simply, rifles, pistols and shotguns are not "dangerous and unusual" in the constitutional sense. There is no historical analogue to banning any kind of rifle, pistol or shotgun.

## CONCLUSION

For the reasons stated of record, this Court should preliminarily enjoin enforcement of the challenged statute. That being said, if this Court wishes to grant the relief sought by some, and enter summary judgment in favor of Plaintiffs, these Plaintiff's have no objection to same.

Finally, should this Court have any doubt in entering the preliminary injunction, based on the content of some affidavit attached to Defendants response, Plaintiff would request leave to depose that witness or those witnesses, and submit the transcript as supplemental materials.

Dated:  3-33-2023                                     Respectfully Submitted,

                                                                                              By:<u>sThomas G. Maag</u>

                                                                                             Thomas G. Maag #6272640
                                                                                             Maag Law Firm, LLC
                                                                                             22 West Lorena Avenue
                                                                                             Wood River, IL  62095
                                                                                             618-216-5291
                                                                                             tmaag@maaglaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed, using the ECF system, which will send notification to all registered users:

Dated:  3-23-2023                                     <u>s/Thomas G. Maag</u>