IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALEB BARNETT, *et al.*,<br>　　Plaintiffs,<br>　　　vs.<br>KWAME RAOUL, *et al.*,<br>　　Defendants. | Case No.  3:23-cv-209-SPM<br>** designated Lead Case |
| DANE HARREL, *et al.*,<br>　　Plaintiffs,<br>　　　vs.<br>KWAME RAOUL, *et al.*,<br>　　Defendants. | Case No.  3:23-cv-141-SPM |
| JEREMY W. LANGLEY, *et al.*,<br>　　Plaintiffs,<br>　　　vs.<br>BRENDAN KELLY, *et al.*,<br>　　Defendants. | Case No.  3:23-cv-192-SPM |
| FEDERAL FIREARMS LICENSEES OF ILLINOIS, *et al.*,<br>　　Plaintiffs,<br>　　　vs.<br>JAY ROBERT "JB" PRITZKER, *et al.*,<br>　　Defendants. | Case No.  3:23-cv-215-SPM |

**MOTION TO STAY THE COURT'S PRELIMINARY INJUNCTION ORDER
PENDING INTERLOCUTORY APPEAL BY
<u>THE ATTORNEY GENERAL, THE GOVERNOR, AND THE ISP DIRECTOR</u>**

On April 28, 2023, this Court entered a statewide preliminary injunction against enforcement of certain provisions of the Protect Illinois Communities Act (the "Act"), specifically 720 ILCS 5/24-1.9(b) and (c), 720 ILCS 5/24-1.10, and the "amended provisions set forth in 720 ILCS 5/24-1(a), including subparagraphs (11), (14), (15), and (16)." Dkt. 101 at 29 ("Preliminary Injunction Order"). The Attorney General, the Governor, and the Director of the Illinois State Police (collectively, "State Defendants") have filed a notice of interlocutory appeal under 28 U.S.C. § 1292(a)(1) in each of the above-captioned, partially-consolidated actions. *Barnett* Dkt.

102; *FFL-IL* Dkt. 45; *Harrel* Dkt. 46; *Langley* Dkt. 37. Pursuant to Federal Rule of Civil Procedure 62(d), the State Defendants respectfully request that this Court stay the Preliminary Injunction Order during the pendency of the State Defendants' interlocutory appeal.

The Court's Preliminary Injunction Order is inconsistent with two prior rulings from two different judges in the Northern District of Illinois rejecting requests to preliminarily enjoin the Act on materially indistinguishable Second Amendment claims. *See Bevis v. Naperville*, No. 22-cv-4775, Dkt. 63, 2023 WL 2077392 (N.D. Ill. Feb. 17, 2023); *Herrera v. Raoul*, No. 23-cv-532, Dkt. 75, 2023 WL 3074799 (N.D. Ill. April 26, 2023). The Court's Preliminary Injunction Order neither mentions nor analyzes why those two rulings on the same Act and the same type of Second Amendment claims were erroneous. They were not. The Seventh Circuit has also had the opportunity to enjoin the Act while considering the *Bevis* appeal, and it denied that request on April 18, 2023. *Bevis v. Naperville*, No. 23-1353, Dkt. 51 (7th Cir.) (denying motion for injunction pending appeal).

In order to avoid inconsistency and confusion—particularly given that refusing to stay the Preliminary Injunction Order would have the practical effect of overriding the Seventh Circuit's contrary order in *Bevis*—this Court should stay its Preliminary Injunction Order while the Seventh Circuit considers the merits of the State Defendants' interlocutory appeal. Furthermore, the Court should stay its Preliminary Injunction Order because: the Act does not violate the Second Amendment and Plaintiffs' Second Amendment claims will ultimately fail on the merits; enjoining the Act inflicts irreparable harm on the public by allowing the weapons preferred by mass murderers to continue to proliferate; and the public interest favors allowing the Act's restrictions on assault weapons and large capacity magazines to remain in effect.

## **LEGAL STANDARD**

"While an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend . . . an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). In determining whether to stay an order pending appeal, a court considers "the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). A stay pending appeal is intended "to minimize the costs of error" and can be "necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits." *Id*. Such interim relief to preserve the status quo is especially appropriate with respect to a preliminary injunction, because "one reason for permitting the immediate appeal of a preliminary injunction is that such an injunction is entered after a summary proceeding, increasing the risk of error." *Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002).

## **ARGUMENT**

**I.  The Preliminary Injunction Order should be stayed because Plaintiffs' Second Amendment claims will fail.**

The Court should stay the Preliminary Injunction Order because the State Defendants are likely to defeat Plaintiffs' Second Amendment challenges to the Act. The Court's conclusion to the contrary misapplies *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), and *District of Columbia v. Heller*, 554 U.S. 570 (2008), while functionally overruling Seventh Circuit precedent. *See Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015); *Wilson v. Cook Cnty.*, 937 F.3d 1028, 1032–33 (7th Cir. 2019).

### A. The Act's regulations of assault weapons and large capacity magazines do not infringe the Second Amendment.

The Court should stay its Preliminary Injunction Order because its conclusions regarding Plaintiffs' likelihood of success are directly at odds with two other federal judges in Illinois who concluded materially indistinguishable Second Amendment claims were unlikely to succeed. The *Bevis* and *Herrera* courts were correct that the Act does not infringe the Second Amendment as interpreted by *Bruen* and *Heller*. *See Bevis*, 2023 WL 2077392, at *9–17; *Herrera*, 2023 WL 3074799, at *3–13.

The Act restricts the purchase and sale of assault weapons and large capacity magazines that are more akin to the machine guns, "M-16 rifles and the like," and short-barreled shotguns that *Heller* recognized could be banned from the civilian market. *Heller*, 554 U.S. at 624–27. Under *Bruen*'s "plain text" threshold step, assault weapons and large capacity magazines are not the type of "Arms" protected by the Second Amendment because they are not in "common use" for self-defense—the "'*central component*'" of the Second Amendment right. 142 S. Ct. at 2135 (quoting *Heller*). Under *Bruen*'s "historical tradition" step, restrictions of assault weapons and large capacity magazines are entirely consistent with "the Nation's historical tradition" of regulating "dangerous and unusual weapons"—as both the *Bevis* and *Herrera* courts concluded. *See Bevis*, 2023 WL 2077392, at *9–17; *Herrera*, 2023 WL 3074799, at *3–13.

Prior to *Bruen*, an injunction against the type of regulations reflected in the Act would have been unobtainable in the Seventh Circuit in light of *Friedman* and *Wilson*. Neither the Seventh Circuit nor the Supreme Court has said that *Friedman* and *Wilson* were abrogated by *Bruen*. Without mentioning *Friedman* or *Wilson*, this Court has effectively overruled them through its Preliminary Injunction Order. In light of *Bevis*, *Herrera*, *Friedman*, and *Wilson*—all of which

4

reach conclusions directly at odds with this Court—staying the Preliminary Injunction Order is appropriate.

### B. The Preliminary Injunction Order misapplies *Heller* and *Bruen*.

In concluding the Act infringes the Second Amendment, the Preliminary Injunction Order misapplies *Heller* and *Bruen* in multiple respects. When the claims are considered under the proper legal standards, the State Defendants will prevail on the merits. Given these errors, a stay is appropriate.

**Plain Text**. The Preliminary Injunction Order improperly construes "Arms" to extend beyond any interpretation recognized by the Supreme Court or the Seventh Circuit and in doing so sweeps in large swaths of non-essential firearms accessories, including those not sought by Plaintiffs. For example, the Preliminary Injunction Order appears to deem all magazines "Arms"—not on the basis of how that text was understood in 1791 or 1868 but based on how one expert in 2023 described a large capacity firearm in a single sentence of a declaration. Dkt. 101 at 18. The Preliminary Injunction Order critiques the features-based definition of "assault weapons" in the Act with arguments Plaintiffs never made, and thus the State Defendants never had the opportunity to respond to.[1] And the Court broadly concludes, without citation, that "items that aid in accuracy may be considered 'arms' and are presumptively protected by the Second Amendment." Dkt. 101 at 99. There is no precedent for such an expansive interpretation of "Arms."

The Preliminary Injunction Order also fails to analyze whether *large capacity* magazines are "Arms" protected by the Second Amendment. They are not, as multiple courts have concluded

---

[1] For example, the Court opines on "arm braces for semiautomatic pistols" and their potential benefits for individuals with disabilities. Dkt. 101 at 19. No Plaintiffs alleged they have disabilities or argued that the Act's restrictions regarding arm braces interfered with the self-defense rights of individuals with disabilities. Nor have Plaintiffs introduced evidence about how many semiautomatic pistols *with arm braces* are in "common use" for self-defense.

even after *Bruen*. *See Oregon Firearms Fed'n, Inc. v. Brown*, No. 22-cv-1815, 2022 WL 17454829 (D. Or. Dec. 6, 2022) (refusing to enjoin large capacity magazine ban); *Ocean State Tactical, LLC v. Rhode Island*, No. 22-cv-246, 2022 WL 17721175, at *11 (D.R.I. Dec. 14, 2022); *Hanson v. District of Columbia*, No. 22-2256 (RC), 2023 WL 3019777 (D.D.C. April 20, 2023). Large capacity magazines by themselves cannot "cast" at or "strike" another. *Ocean State Tactical*, 2022 WL 17721175, at *11 ("LCMs, like other accessories to weapons, are not used in a way that 'cast[s] at or strike[s] another.'") (quoting *Heller*). The undisputed evidence in the record also establishes that firearms capable of accepting large capacity magazines can also accept the magazines permitted under the Act. Dkt. 37-7, Busse Decl. ¶ 25. The Preliminary Injunction Order analyzes only whether a magazine of any sort is essential to a firearm. Dkt. 101 at 18. But the Act does not ban *all* magazines. Nor does it limit firearms owners to possessing a single bullet in the chamber. The Act restricts *large capacity* magazines that carry far more ammunition than is actually used in self-defense situations. *See Hanson*, 2023 WL 3019777 at *10 (citing multiple studies finding that the average number of shots fired in civilian self-defense incidents was 2.2, and that "figure has remained exceptionally stable over time"). Because large capacity magazines are not necessary to operate arms in common use for self-defense, they are not "Arms" protected by the Second Amendment. *Heller*, 554 U.S. at 624–27, 629.

**Historical Tradition**. The Court also misapplies *Bruen*'s historical tradition step. In announcing the legal standard for this step, the Court imposed a new obligation on the State Defendants to not only show the regulations are justified by historical tradition but also to "demonstrate that the 'arms' [the Act] bans are not in 'common use[.]'" Dkt. 101 at 99. Nothing in *Bruen* imposes such a burden on the State Defendants, and no other court has found that it need

not consider whether regulations are supported by historical tradition if the court believes them to regulate arms in common use today.

In assessing whether the State Defendants have met this newly created burden, the Preliminary Injunction Order improperly focuses on the sheer numerosity of AR-15s and large capacity magazines, referring multiple times to "common use" without any consideration of the nature and purpose of that use. *See, e.g.*, Dkt. 101 at 11, 21–24. But in distinguishing between different types of weapons that are protected "arms"—handguns—and others that are not—machine guns, "M-16s and the like," and short-barreled shotguns—*Heller* made clear that weapons must be in "common use" for a lawful purpose, namely, *self-defense*. *Compare* 554 U.S. at 624–27 (describing military uses of machine guns and M-16s, and criminal misuse of short-barreled shotguns) *with id. at* 629 (describing specific attributes of handguns that make them the "quintessential self-defense weapon"). Consistent with *Heller*'s consideration of the attributes of particular weapons and how they are being used in society at large, the Seventh Circuit called the approach of just counting weapons in circulation "circular" and "absurd," and the Third Circuit has likewise called it "illogical." *See Friedman*, 784 F.3d at 409 ("[R]elying on how common a weapon is at the time of litigation would be circular to boot."); *Worman v. Healey*, 922 F.3d 26, 35 n.5 (1st Cir. 2019) (noting that "measuring 'common use' by the sheer number of weapons lawfully owned is somewhat illogical"). But in the Preliminary Injunction Order, "the commonality of 'arms' banned under [the Act] is dispositive[.]" Dkt. 101 at 25.

The State Defendants actual burden under *Bruen*'s second step is to demonstrate through "analogical reasoning" to "historical analogue[s]"—not "historical twins"—that the Act is "consistent with this Nation's historical tradition of firearm regulation." *Bruen* 142 S. Ct. at 2126. But because of its view that mere commonality is all that is required for regulations of weapons to

7

be unconstitutional, the Court scarcely analyzed the State Defendants' evidence of the long-standing tradition of regulating "dangerous and unusual" weapons, a tradition that both *Heller* and *Bruen* recognized. 554 U.S. at 627; 142 S. Ct. at 2128. The Court's analysis is limited to one comment from oral argument acknowledging that many 18th and 19th century regulations within this tradition were concealed carry regulations. Dkt. 101 at 25–26. The Preliminary Injunction Order ignores how the State Defendants provided ample evidence that this tradition evolved to encompass bans on the purchase, sale, and possession of machine guns and, in some instances, semi-automatic weapons with high round capacity. *See* Dkt. 37 at 43–63; *see also Bevis*, 2023 WL 2077392, at *12. As courts who have considered the historical tradition have recognized, categorical restrictions of weapons have "developed over time in response to the type of harm that those weapons presented." *Herrera*, 2023 WL 3074799, at *7. The Court's approach in this case should have been "more nuanced" given that the Act responds to both "dramatic technological changes" and "unprecedented societal concerns," *Bruen*, 142 S. Ct. at 2132.

In failing to engage with the historical evidence presented by the State Defendants, the Court appears to adopt the view that 1791 is the endpoint for identifying historical analogues under *Bruen*, *see* Dkt. 101 at 17, even though *Bruen* expressly declined to eschew reliance on post-1791 history. 142 S. Ct. at 2138. The State Defendants have pointed to 19th and 20th century analogues knowing that *Heller* expressly considered 20th century weapons and the regulations they prompted. 554 U.S. at 624–27, 629. The "how and why" of those regulations is "relevantly similar" to the purpose for which the Act was passed—combatting new forms of heinous massacres perpetrated with specific weapon types—and the method in which the Act operates—restricting purchase and sale of assault weapons and large capacity magazines, but allowing civilians to continue acquiring many different types of semiautomatic handguns, rifles, and shotguns for self-

8

defense. *Bruen*, 142 S. Ct. at 2133. Because the Preliminary Injunction Order approaches "historical tradition" in a manner that ignores entire centuries of the Nation's history, it is a misapplication of *Bruen* and *Heller* and should be stayed pending appeal.

**II.     Staying the Preliminary Injunction Order is necessary to prevent irreparable harm and serves the public interest.**

A stay in this case will "minimize the costs of error" and is "necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits." *In re A & F Enters., Inc. II*, 742 F.3d at 766. As both the *Bevis* and *Herrera* courts recognized, the harm imposed by enjoining the Act is the continued proliferation of weapons and accessories that have undeniably become the preferred instruments of mass murderers. *See Bevis*, 2023 WL 2077392, at 17; *Herrera*, 2023 WL 3074799, at *13. Continued access to these weapons and accessories in the civilian market increases the likelihood that Illinois will yet again suffer the type of mass shooting that prompted the Act in the first place. Even in the few weeks that passed between the close of briefing and the Court's ruling, a mass shooter used an AR-15 and large capacity magazines at an elementary school in Nashville, and another mass shooter used an AR-15 and large capacity magazines to murder several of his former co-workers in Louisville. The risk that another Illinois community adds its name to this tragic roll-call increases every day the Court's Preliminary Injunction Order remains in effect. A stay "minimize[s] the grave costs" that could arise from this Court's errors. *In re A & F Enters., Inc. II*, 742 F.3d at 766. And for the same reasons, a stay is in the public interest.

On the other side of the balance of equities, allowing the Act to remain in effect during the pendency of the appeal would merely inhibit the individual plaintiffs from acquiring *more* assault weapons and large capacity magazines than they already possess. *See* Dkt. 101 at 10 n. 5 (noting that the individual Plaintiffs wish to acquire "*more*" of the restricted firearms and magazines). But

9

the inability to add another AR-15[2] and even more large capacity magazines to a stockpile for a few weeks or months is not irreparable harm. No Seventh Circuit precedent indicates that a brief pause in the ability to stockpile AR-15s and large capacity magazines is irreparable harm.[3]

As the Court acknowledges, the harm to the businesses that sell restricted assault weapons and large capacity magazines is economic in nature, which "is generally not a basis for granting injunctive relief[.]" Dkt. 101 at 11. Despite this acknowledgement, the Court cites a district court case from the Southern District of Indiana erroneously concluding that the existence of sovereign immunity in certain forums means that the economic harm in this case is in fact irreparable. *Id.* (citing *Cmty. Pharmacies of Indiana, Inc. v. Soc. Servs. Admin.*, 801 F. Supp. 2d 802, 806 (S.D. Ind. 2011). But as the State Defendants explained in their response brief, if it were true that any damages in a suit against a defendant with sovereign immunity were necessarily irreparable, the irreparable-injury requirement would be "effectively eliminate[d]" in suits against the government. *Save Jobs USA v. DHS*, 105 F. Supp. 3d 108, 114 (D.D.C. 2015). That is why, even in cases in which financial losses may not ultimately be recovered, courts hold movants to their "considerable burden of proving that those losses are *certain, great and actual*." *Nat'l Min. Ass'n v. Jackson*,

---

[2] The Court faults the State Defendants for focusing on the AR-15. Dkt. 101 at 23. But the AR-15 is what *Plaintiffs* focus on in their complaint and motions. Plaintiffs have not put forward allegations or evidence regarding particular firearms and firearm features that the Preliminary Injunction Order discusses. It is Plaintiffs' burden to show that they wish to engage in conduct restricted by the Act, that that conduct is protected by the Second Amendment, and that their inability to engage in the conduct constitutes irreparable harm justifying preliminary injunctive relief and the drastic relief of enjoining a state statute.

[3] Recognizing as much, the Court looks beyond the Plaintiffs with claims before the Court to a hypothetical "lawful citizen" who "only possesses items that are banned by [the Act]" who would "have to purchase a non-banned firearm in order to legally defend oneself under the Second Amendment." Dkt. 101 at 9. But even the hypothetical misapplies the Act—this "lawful citizen" can continue possessing and using whatever assault weapons and large capacity magazines he or she lawfully owned as of the Act's effective date. *See* 720 ILCS 5/24-1.9(d), 1-10(d). At most, the Court's hypothetical "lawful citizen," like the individual Plaintiffs, is restricted from acquiring *more* such weapons and accessories.

768 F. Supp. 2d 34, 52-53 (D.D.C. 2011). *See, e.g.*, *McHenry County v. Raoul*, No. 21-cv-20341, 2021 WL 8344241, at *2 (N.D. Ill. Dec. 27, 2021) (refusing to find irreparable harm sufficient to enjoin a state statute where affidavits regarding loss revenue showed only a "disruption in cash flow" that did not "threaten" plaintiffs' "existence"); *McHenry County v. Raoul*, No. 21-3334, 2022 WL 636643, at *1 (7th Cir. Jan. 12, 2022) (finding plaintiffs suing State had not shown feared economic losses were "imminent irreparable harm" because they had "not shown that they will lose substantial revenue absent an injunction or that this loss of revenue is permanent" and refusing to stay the statute's enforcement pending appeal). The Court erred by concluding the economic harm to the business Plaintiffs is irreparable.

Further compounding the harm to the public of the Preliminary Injunction Order is its sheer breadth. Rather than finding particular provisions of the Act are likely to be unconstitutional and then enjoining those, the Court opted to enjoin the entirety of the Act's restrictions on assault weapons and large capacity magazines because it believes some portions of the Act ultimately may be unconstitutional. See Dkt. 101 at 21. Indeed, the Preliminary Injunction Order enjoins restrictions on weapons and features—like the Act's restriction on grenade launcher attachments—that several Plaintiffs conceded were not protected by the Second Amendment. *Compare* Dkt. 101 at 7 n.4 with *Barnett* Compl. ¶ 52, n.6. The imprecision of the Court's injunction is also grounds to stay the Preliminary Injunction Order. At a minimum, in the alternative, the Court should stay the statewide effect of the Preliminary Injunction Order and limit any relief to the parties in these actions.

## CONCLUSION

For the foregoing reasons, the State Defendants request that the Court enter an order staying the effect of the Preliminary Injunction Order during the pendency of the State Defendants' interlocutory appeal.

Dated: April 28, 2023

Respectfully submitted,

KWAME RAOUL
*Attorney General of Illinois*

| | |
|---|---|
| /s/ Christopher G. Wells | /s/ Kathryn Hunt Muse |
| Christopher G. Wells, No. 6304265 | Kathryn Hunt Muse, No. 6302614 |
| Chief, Public Interest Division | Deputy Chief, Public Interest Division |
| Office of the Attorney General | Office of the Attorney General |
| 100 W. Randolph Street, 12th Floor | 100 W. Randolph Street, 12th Floor |
| Chicago, IL 60601 | Chicago, IL 60601 |
| (312) 814-3000 | (312) 814-3000 |
| Christopher.Wells@ilag.gov | Kathryn.Muse@ilag.gov |
| *Counsel for Attorney General Raoul, Governor Pritzker, and ISP Director Kelly* | *Counsel for Attorney General Raoul, Governor Pritzker, and ISP Director Kelly* |

## CERTIFICATE OF SERVICE

I certify that on April 28, 2023, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ Christopher G. Wells
Christopher G. Wells
Chief, Public Interest Division