**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CALEB BARNETT, *et al.*,<br>       Plaintiffs,<br>                    vs.<br>KWAME RAOUL, *et al.*,<br>       Defendants. | Case No.  3:23-cv-209-SPM<br>** designated Lead Case |
| DANE HARREL, *et al.*,<br>       Plaintiffs,<br>                    vs.<br>KWAME RAOUL, *et al.*,<br>       Defendants. | Case No.  3:23-cv-141-SPM |
| JEREMY W. LANGLEY, *et al.*,<br>       Plaintiffs,<br>                    vs.<br>BRENDAN KELLY, *et al.*,<br>       Defendants. | Case No.  3:23-cv-192-SPM |
| FEDERAL FIREARMS<br>LICENSEES OF ILLINOIS, *et al.*,<br>       Plaintiffs,<br>                    vs.<br>JAY ROBERT "JB" PRITZKER, *et al.*,<br>       Defendants. | Case No.  3:23-cv-215-SPM |

**DIRECTOR KELLY'S RESPONSE TO *LANGLEY* PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT ON COUNTS IV AND VI (VAGUENESS)**

## Table of Contents

INTRODUCTION ................................................................................................................ 1

PROCEDURAL BACKGROUND.................................................................................... 3

STATUTORY BACKGROUND ...................................................................................... 5

ARGUMENT .................................................................................................................... 6

   I.   Plaintiffs' vagueness claims fail as a matter of law. ............................................ 6

     A.   The restrictions on large capacity ammunition feeding devices are not vague............... 9

     B.   The definition of assault weapons is not vague............................................ 14

  II.   In the alternative, the challenged provisions should be severed. ....................... 19

CONCLUSION.................................................................................................................. 20

## INTRODUCTION

In January, the Protect Illinois Communities Act ("Act") was signed into law.  It includes a host of provisions to improve public safety, including making unlawful the sale and possession of certain assault weapons and large capacity ammunition feeding devices. The *Langley* Plaintiffs immediately understood how the Act limits the purchase of new weapons and magazines and so three days later they sued to enjoin the Act under a variety of theories. Today they move on their theory that certain provisions—on their face—are unconstitutionally vague.

Although there are four actions before this Court challenging the Act on Second Amendment grounds, the *Langley* Plaintiffs stand alone in claiming that the Act is unconstitutionally vague. None of the other plaintiffs—which include prominent national firearms advocacy organizations and representatives of firearms manufacturers—claim to be befuddled by the two provisions the *Langley* Plaintiffs challenge in the present motion: the Act's 15-round limit for handgun magazines and 10-round limit for long gun magazines; and the Act's inclusion of copycat weapons in its definition of "assault weapon." The reason the *Langley* Plaintiffs stand alone in pressing their vagueness claims is because they are utterly lacking in legal or factual merit.

Oddly, the *Langley* Plaintiffs attack the Act because Illinois made the policy choice to be more permissive for handgun magazines—allowing up to 15 rounds—than for long guns—allowing up to 10 rounds. Other jurisdictions employ an across-the-board 10-round limit for magazines of any type. As the *Langley* Plaintiffs' own filing reveals, firearms manufacturers and customers have readily adapted to those limits through "State Compliant" weapons and magazines. The fact that Illinois has one limit for handgun magazines and another for long gun magazines does not somehow make the Act indecipherable.

But to create ambiguity where there is none, the *Langley* Plaintiffs fixate on the fact that some firearms manufacturers have recently started promoting magazines that work both in certain handguns and certain rifles, usually by the same manufacturer. The mere existence of a small number of interchangeable magazines does not leave the public hopelessly incapable of discerning what the Act requires. Ordinary people can understand what conduct is prohibited when selling and purchasing magazines for their firearms. A person purchasing a magazine for a handgun knows that magazine must be 15 rounds or less. And a person purchasing a magazine for a long gun knows that magazine must be 10 rounds or less. As a matter of law, this core of understandable meaning is more than sufficient to defeat a facial challenge to the Act's magazine capacity limits.

The *Langley* Plaintiffs' attack on the Act's anti-copycat provision is similarly ill-conceived. Numerous courts have rejected materially indistinguishable challenges to assault weapons laws in the past. If anything, Illinois' statute provides even more notice mechanisms to inform the public what weapons are subject to the Act's restrictions than prior assault weapon statutes. The substantial weight of precedent cutting against the *Langley* Plaintiffs' position is why they again stand alone in pressing their vagueness challenge to the anti-copycat provision.

Cumulatively, the *Langley* Plaintiffs' hodgepodge of marginal and immaterial questions shows the Act does the very thing that is required by the Fourteenth Amendment: The restrictions on assault weapons and large capacity ammunition feeding devices have an understandable core. In this facial challenge, the Court is not permitted to speculate about hypothetical and imaginary cases, and so both vagueness claims fail as a matter of law.  The Court should deny the motion for partial summary judgment on both claims. In the alternative, if the Court finds part of the Act unconstitutionally vague, it should be severed.

2

## PROCEDURAL BACKGROUND

In January 2023, plaintiffs Jeremy W. Langley, Timothy B. Jones, and Matthew Wilson filed a complaint against Illinois State Police ("ISP") Director Brendan Kelly and Crawford County State's Attorney Cole Price Shaner. *Langley* Dkt. 1-1 ("Compl."). Plaintiffs alleged that that the Act violates their rights under the Second, Fifth, and Fourteenth Amendments to the U.S. Constitution. *Id*. Additional plaintiffs in three other actions in this District also sued officials to challenge the Act. In all four actions, plaintiffs sought a preliminary injunction. On February 24, with the parties' agreement, the Court partially consolidated the actions. Dkt. 32. The Court stayed the proceedings except to consider the common claims in the preliminary injunction motions. *Id.* at 2-3 n.1. In March and April, the parties briefed and argued those motions. On April 28, the Court granted a preliminary injunction and the State appealed. The Seventh Circuit stayed the preliminary injunction while the parties brief whether the Act's restrictions on assault weapons and large capacity ammunition feeding devices violate the Second Amendment; argument is set for June 29.

On May 19, the three *Langley* plaintiffs ("Plaintiffs") filed a partial summary judgment motion in this Court against Defendants Kelly and Shaner on two of their three stayed claims: A claim that the Act's limiting of handgun magazine capacity to 15 rounds and long gun magazine capacity to 10 rounds is unconstitutionally vague (Count IV)[1]; and a claim that the Act's prohibitions on copycat assault weapons is unconstitutionally vague (Count VI).[2] Dkt. 111

---

[1] The definition of large capacity ammunition feeding devices includes not only magazines but also "belts, drums, feed strips, or similar devices." For brevity, this response refers to all of those devices as "magazines."

[2] The complaint mis-numbers the sixth count as Count IV. Similarly, page 12 of the motion refers to the sixth count as Count IV, however, the title of the motion seeks judgment on Counts IV and VI and the arguments in the motion align with the fourth and six counts in the complaint.

("Mot."). Director Kelly moved to stay consideration of the motion pending the appeals, and alternatively asked that discovery begin before briefing. Dkt. 112. That motion is pending and so this response to Plaintiffs' motion is filed as required and within the time allowed by Local Rule 7.1(c)(1). Director Kelly continues to seek the stay and discovery separately requested.

Plaintiffs' motion for partial summary judgment is rife with misleading legal characterizations. Most factual characterizations should be disregarded because they are not supported by record citations. *See* Fed. R. Civ. P. 56(c)(1); Local R. 7.1(d). Some factual assertions purport to cite sources but should also be disregarded because the sources do not support the statement. *See* Fed. R. Civ. P. 56(c)(1). Some assertions purport to be supported by one of 14 exhibits, but 13 exhibits are inadmissible. Dkt. 111-1 (potentially print-outs from an unknown website and date); Dkt. 111-2, 111-3, 111-6, 111-9 (potentially print-outs from manufacturers' websites from unknown dates); Dkt. 111-4, 111-5, 111-8, 111-10, 111-14 (potentially print-outs from Wikipedia); Dkt. 111-7 (potentially print-out of a blog post); Dkt. 111-11 (potentially photocopied excerpts from unknown book); Dkt. 111-12 (affidavit with opinion testimony improper under Rules of Evidence 701 and 702, and which does not satisfy Fed. R. Civ. P. 56(c)(4)). The remaining exhibit is from a plaintiff who Director Kelly has not been permitted to serve with discovery or depose. Dkt. 111-13; *see* Dkt. 112 (requesting discovery before summary judgment briefing). While the motion contains numerous mischaracterizations, the majority are immaterial. Should this Court wish to consider Plaintiffs' factual positions, however, Director Kelly attaches two declarations to dispute facts mischaracterized as undisputed by Plaintiffs, refer to facts not available absent discovery, and highlight facts that cannot be genuinely disputed.

**STATUTORY BACKGROUND**

The Act amends various Illinois statutes to protect public safety. All provisions challenged by Plaintiffs amend 720 ILCS 5/24, which is an article of the Criminal Code that defines specific offenses with deadly weapons. Relevant to the motion's arguments about assault weapons:

- Section 24-1 already defined unlawful use of weapons, with a "knowingly" *mens rea* requirement in section 1(a).  The Act amends 1(a) by amending subpart (11), and adding subparts (14), (15), and (16), in part to create offenses involving "assault weapons."

- The Act adds Section 24-1.9(a) to define "assault weapons." Subsection (a)(1)(A)-(I) describes firearms types with specific features that bring them within the assault weapons definition, while subsections (1)(J)-(L) list specific firearms series and models and "copies, duplicates, variants, or altered facsimiles with the capability of" of the specifically listed firearms. Subsection (a)(2) excludes certain firearms (such as firearms operated by pump or bolt action) from the definition.

- The Act adds Section 24-1.9(b) and (c) to further define the offenses, including repeating the "knowingly" requirement. Sections 1.9(d) and (e) create exceptions.

- The Act adds Section 1.9(h) to authorize ISP to develop and implement a public notice and public outreach campaign to promote awareness.

The Act does not amend, nor do Plaintiffs challenge, many preexisting provisions regarding unlawful use of weapons, such as Section 24-1(a)(7)(i) regarding machine guns.

Relevant to the motion's arguments about magazines, the Act adds Section 24-1.10 to restrict the manufacture, delivery, sale, and possession of certain ammunition feeding devices:

- 1.10(a) provides definitions. With some additions and exceptions, a large capacity ammunition feeding device means "a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition for long guns and more than 15 rounds of ammunition for handguns." For this offense, handguns are defined by reference to preexisting state law and long guns are defined as a rifle or shotgun.

- 1.10(b), (c), and (g) define the elements of and fine for the crimes, including a "knowingly" requirement. Sections 1.10(d), (e), and (f) create exceptions.

- 1.10(h) authorizes ISP to develop and implement a public notice and public outreach campaign to promote awareness.

5

Finally, the Act states: "The provisions of this Act are severable under Section 1.31 of the Statute of Statutes." P.A. 102-1116 § 97.

## ARGUMENT

### I.   Plaintiffs' vagueness claims fail as a matter of law.

Plaintiffs bring a pre-enforcement facial challenge to the Act based on two provisions they claim are unconstitutionally vague in violation of the Fourteenth Amendment. Their burden in this type of challenge is extremely high, and it has not been met.

A facial challenge to a statute is "the most difficult challenge to mount successfully[.]" *United States v. Salerno*, 481 U.S. 739, 745 (1987). "The Supreme Court has repeatedly stated that facial invalidation of legislation is disfavored." *United States v. Bonin*, 932 F.3d 523, 534 (7th Cir. 2019). In considering a facial challenge, a court must be "careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008); *accord United States v. Raines*, 362 U.S. 17, 22 (1960) ("The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined."). The Seventh Circuit has cautioned courts to "be wary of invalidating state and local laws on their face when both state and federal courts are open to as-applied challenges." *GEFT Outdoor, LLC v. Monroe Cnty., Ind.*, 62 F.4th 321, 328 (7th Cir. 2023). To succeed in facially invalidating a legislative enactment outside the First Amendment context, a plaintiff "must 'establish that no set of circumstances exists under which the [law] would be valid' . . . or show that the law lacks 'a plainly legitimate sweep[.]'" *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quoting *Salerno*, 481 U.S. at 745; *Wash. State Grange*, 552 U.S. at 449); *accord Ezell v. City of Chicago*, 651 F.3d 684, 698

(7th Cir. 2011) ("[A] successful facial attack means the statute is wholly invalid and cannot be applied *to anyone*.")

Facial challenges are even more difficult when, as here, a plaintiff seeks pre-enforcement invalidation of a statute based on alleged vagueness. The Due Process Clause of the Fourteenth Amendment, which is the ostensible basis for the Plaintiffs' claims, "requires criminal statutes to have a core of understandable meaning." *Trs. of Ind. Univ. v. Curry*, 918 F.3d 537, 540 (7th Cir. 2019). This constitutional requirement means that a criminal offense must be defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *accord Johnson v. United States*, 576 U.S. 591, 595 (2015).

Perfect clarity in all circumstances is not the standard: "Some uncertainty at the margins does not condemn a statute." *Trs. of Ind. Univ.*, 918 F.3d at 540. The court's task in assessing whether a statute is unconstitutionally vague on its face is not to probe "the periphery" of "potential applications," but to determine whether the statute has a "substantial, understandable core." *Id.* Invalidating a statute "every time a court needs to decide a tough question about just how far a statute reaches" would be "fundamentally inconsistent with the Supreme Court's approach, under which a core meaning is enough to reject a vagueness challenge, leaving to future adjudication the inevitable questions at the statutory margin." *Id.* at 541.

Whether a criminal statute is unconstitutionally vague is "closely related to whether that standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). A "knowledge" requirement in a criminal statute "reduces any potential for vagueness," as the Supreme Court has repeatedly held. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 21 (2010)

(citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 523 (1994); *Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982)); *accord Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) ("[S]cienter requirements alleviate vagueness concerns[.]"). Likewise, the Seventh Circuit has repeatedly rejected vagueness challenges when "knowledge" is a necessary element for establishing a violation subject to criminal sanction. *See, e.g.*, *United States v. Jones*, 689 F.3d 696 (7th Cir. 2012), *abrogated on other grounds*, *Johnson v. United States*, 576 U.S. 591 (2015); *United States v. Johnson*, 911 F.3d 849, 853 (7th Cir. 2018) ("the word 'knowingly' . . . cure[d] any potential vagueness" in parole condition).

The *Langley* Plaintiffs run headlong into each of these impediments for vagueness facial challenges. In moving for judgment on Count IV, they argue the Act is vague because there are certain long guns that could use the same magazines as certain handguns, thus making it "impossible" to know by looking at certain magazines, in isolation, whether they are lawful to possess. Mot. 8. Plaintiffs' examples prove, however, that they understand the core of how these restrictions apply: Many magazines are clearly used for only handguns (and thus subject to a 15-round limit); many are only for long guns (and thus subject to a 10-round limit); and many exceed the limit allowed for either. Yurgealitis Supp. Decl. ¶¶ 8, 10, 12, 15, 36 (attached here as Exhibit 1). Plaintiffs' speculative concerns about magazines that may hold between 11 and 15 rounds and be interoperable between a handgun and a long gun are, as a matter of law, insufficient for a facial challenge. *See Wash. State Grange*, 552 U.S. at 449; *Trs. of Ind. Univ.*, 918 F.3d at 540. Similarly, in moving for judgment on Count VI, Plaintiffs mistakenly invert the concept of due process by arguing that provisions of the Act that provide *more* information and *more* notice about what types of weapons are restricted as assault weapons make the Act vague. To create this confusion, they

use excerpts from the definition to pose questions about particular weapons while ignoring other parts of the definition that answer those precise questions. Here again, speculation about hypothetical, peripheral applications is not grounds for facially invalidating a statute.

This Court can see from the statute and the motion that these facial challenges fail as a matter of law. The Plaintiffs have not shown that the statute cannot be applied to anyone—in fact their motion demonstrates it is undisputed that it is clear how the statute applies in the vast majority of circumstances. The Court can further be assured that the statute's substantial *mens rea* requirement obviates any vagueness concerns. *See Humanitarian Law Project*, 561 U.S. at 21; *Carhart*, 550 U.S. at 149. When the Plaintiffs' imaginative scenarios are disregarded and the proper standard is applied, Plaintiffs' vagueness claims fail.

### A. The restrictions on large capacity ammunition feeding devices are not vague.

Plaintiffs seek to invalidate the Act because the Act's capacity limit for magazines is different for handguns (15 rounds) and long guns (10 rounds), and because there are some firearms that do not fall into either category. Mot. 3-12. Plaintiffs claim the policy decision to allow greater capacity for handgun magazines than long gun magazines makes the statute unconstitutionally vague. It does not. The handgun/long gun distinction is one that ordinary people understand and can comply with.

Manufacturers make magazines to be compatible with particular firearms, and gun owners select magazines appropriate for their weapon. Many handguns use magazines that are exclusively for handguns.[3] Yurgealitis Supp. Decl. ¶¶ 8–9. Many long guns use magazines that cannot be used

---

[3] Although far from a comprehensive list, these are just a few examples of handguns that use magazines that cannot be used with rifles: the Model 75 and Shadow from CZ; the P30, P2000, and USP from Heckler & Koch; the P226 and P229 from Sig Sauer; the 5900 Series and SW40F from Smith & Wesson; the P85 and P89 from Sturm Ruger; the XD Series from Springfield Armory; and the P88, PPQ, and PDP from Walther. Yurgealitis Supp. Decl. ¶ 8.

in handguns. *Id.* ¶ 10. There are some rifle magazines that can also be used in handguns, but both kinds of weapons accepting those magazines can no longer be legally purchased under the Act. *See id.* ¶ 35. When selecting magazines, there are a variety of sizes available. There are many magazines with a capacity of 15 rounds or fewer that are designed for handguns. *Id.* ¶¶ 8–9. There are many magazines with a capacity of 10 rounds or fewer that are designed for long guns. *Id.* ¶¶ 10–11, 41–42. While there are magazines designed for handguns and long guns with a greater capacity than 15 rounds, *see, e.g.*, *id.* ¶ 36, the Act prohibits their sale. In sum, for the vast majority of magazines it is clear whether they are permitted or restricted by the Act based on the type of weapon they're designed for, their capacity, or both.

Plaintiffs speculate the different capacity limitations could create confusion because "multiple long guns use the same exact magazines as handguns." Mot. 8. Plaintiffs do not and cannot allege that *all* magazines that can be used in a handgun can also be used in a long gun. *See* Yurgealitis Supp. Decl. ¶ 12. The most Plaintiffs claim is that "multiple long guns use the exact same magazines as handguns." Mot. 8. But "multiple" does not mean "all," nor does it even mean "most" in this context. Far from it. In total, Plaintiffs identify five magazine types they claim are interoperable between certain handguns and long guns: (1) 15-round magazines for the M9 Beretta pistol that can also be used for the Beretta CX4 rifle; (2) 15-rounds magazines for the Glock 19 that can also be used for the Kel Tec Sub 2000 rifle; (3) magazines for the Ruger 5.7 pistol that can also be used for the Ruger LC carbine rifle; (4) magazines that can be used in Ruger American and Glock pistols, as well as the Ruger PC carbine rifle; and (5) "AR15 or M16 type magazines" that can be used in AR-15-style pistols, as well as AR-15-style rifles. Mot. 9–10. But as Director Kelly's expert points out in his attached declaration, all Plaintiffs have identified is a small subset of magazines that can be used interchangeably between some handguns by some manufacturers

10

and some rifles by some (usually the same) manufacturers. Yurgealitis Supp. Decl. ¶¶ 6–8. This indisputable fact—which is confirmed by the myopic focus of Plaintiffs' own examples—shows that Plaintiffs have not established that "'no set of circumstances exists under which the [law] would be valid,'" *Americans for Prosperity*, 141 S. Ct. at 2387 (quoting *Salerno*, 481 U.S. at 745), or that the Act lacks "a core of understandable meaning." *Trs. of Ind. Univ.*, 918 F.3d at 540.

Plaintiffs' examples also cut against them and confirm the Act's magazine capacity limitations have an understandable core. *Id.* Plaintiffs point to the interoperability of magazines for the Ruger 5.7 pistol and LC carbine yet conspicuously omit reference to their standard round capacity: Both weapons come standard with 20-round magazines.[4] Obviously, a 20-round magazine exceeds both the 15-round handgun limit and the 10-round long gun limit. "[O]rdinary people" seeking to comply with the Act would know not to purchase the 20-round magazine, whether for a rifle or for a handgun. *Kolender*, 461 U.S. at 357. The ease of discerning the legal line is confirmed by Ruger itself, which markets "State Compliant" versions of both the 5.7 pistol and the LC carbine, each of which comes with a 10-round magazine.[5] A 10-round magazine is compliant with the Act for either a handgun or long gun. Another of Plaintiffs' examples— magazines that are interchangeable between the Ruger American pistol and the Ruger PC Carbine—also proves the opposite of what they intend. Both the Ruger American pistol and the Ruger PC Carbine come with a standard magazine that, at 17 rounds, exceeds both the 15- or 10-round limit in the Act, but both are also already sold in "State Compliant" versions equipped with 10-round magazines. Yurgealistis Supp. Decl. ¶¶ 22–26. Gun manufacturers are already

---

[4] *See* DiDomenico Decl., at Ex. 2-A (print-out of manufacturer's description of Ruger LC Carbine listing 20 capacity); *id.* Ex. 2-B (print-out for Ruger 5.7 Pistol listing 20 capacity).
[5] *See* DiDomenico Decl., Ex. 2-A, Ex. 2-B. The Act is more permissive than other state's magazine capacity laws, so in addition to the "State Compliant version" Illinois residents have the additional option of purchasing a 15-round magazine for the Ruger 5.7 pistol. Yurgealitis Supp. Decl. ¶ 21.

complying with limits on magazine capacity for handguns and long guns, as Plaintiffs' examples demonstrate. The fact that Illinois has chosen to adopt a more permissive numerical limit for handgun magazines than long gun magazines has not made simple math somehow indecipherable.

Plaintiffs' chief objection is that the same magazine could be lawful to possess or acquire in one circumstance—for use as a handgun magazine—but unlawful in another circumstance—for use as a long gun magazine. Mot. 10-12. This hypothetical ignores the role of *mens rea* in mitigating vagueness. It is not uncommon for an object to be legal if possessed for one purpose but illegal if possessed for another. The Seventh Circuit recognized as much in considering paper clips—innocuous in most contexts, but "drug paraphernalia" when possessed with a specific, illicit intent. *See Levas & Levas v. Vill. of Antioch*, 684 F.2d 446, 453 (7th Cir. 1982). Reasoning "that an intent requirement can cure an otherwise vague statute," the court noted that the challenged law imposed liability only on those who sell items they know are for drug use. *Id.* A scienter requirement "is the only practical way of defining when a multi-purpose object becomes paraphernalia," the court explained, and "this sort of intent will suffice to distinguish" an ordinary paper clip from an illicit one. *Id.* The same logic dooms Plaintiffs' challenge to the Act's magazine capacity limits. If a *mens rea* requirement mitigates vagueness concerns for paper clips, then surely it does the same for those few 11- to 15-round magazines that might be legal to possess as handgun magazines, but illegal to knowingly possess as rifle magazines.

To concoct a scenario where any uncertainty about the 10-versus-15-round threshold could arise requires Plaintiffs to "speculate about 'hypothetical' or 'imaginary' cases"—which is not appropriate for a facial challenge. *Wash. State Grange*, 552 U.S. at 449; *accord Raines*, 362 U.S. at 22. For example, Plaintiffs point to the interoperability of a 15-round Beretta M9 pistol magazine with the Beretta CX4 rifle. The Beretta CX4 rifle is specifically included in the list of "assault

12

weapon[s]" restricted by the Act, so purchasing a CX4 rifle is no longer legal anyway for most people in Illinois, regardless of what magazine it is sold with.[6] 720 ILCS 5/24-1.9(a)(1)(J)(v). That means for the alleged ambiguity associated with the magazine capacity limits to come into play, a person would have to possess a CX4 rifle legally acquired before the Act's effective date as well as a Beretta M9 pistol. Only if that person sought to acquire or possess an additional 15-round Beretta magazine would this hypothetical person have to consider the difference in magazine capacity limits. This hypothetical person could acquire and possess a 15-round magazine for use in the M9 pistol, but not for the CX4 rifle. To be prosecuted for acquiring or possessing that magazine, however, the government would have to show beyond a reasonable doubt that the person knowingly acquired or possessed the magazine for use with the CX4 rifle, not the M9 pistol. 720 ILCS 5/24-1.10(b). Of course, Plaintiffs point to no instance in which this drawn-out hypothetical has materialized. Speculation about the "periphery" of "potential applications" of the Act cannot form the basis of a successful facial challenge. *Trs. of Ind. Univ.*, 918 F.3d at 540. Should this unlikely scenario come to pass "both state and federal courts" will remain "open to as-applied challenges." *GEFT Outdoor*, 62 F.4th at 328. Facially invalidating the Act now based on Plaintiffs' contrived fears, however, is the opposite of what precedent requires.

Based on the actual legal standard and undisputed material facts, Plaintiffs' request for summary judgment on Count IV should be denied.

---

[6] The same is true for several of Plaintiffs' other examples: neither AR-15 pistols nor AR-15 rifles are legal under the Act (absent an applicable exception) because they are specifically included in the Act's list of assault weapons; and the Kel Tec Sub 2000 rifle, which Plaintiffs also cite, is also specifically identified in the Act as an assault weapon subject to the Act's prohibitions.

**B.     The definition of assault weapons is not vague.**

Plaintiffs also ask the Court to invalidate the Act because its definition of assault weapons includes duplicates of specifically listed weapons. Mot. 12–20. To do so, they present a vagueness theory that numerous courts have rejected in materially indistinguishable cases.

Like the federal assault weapons ban and numerous other state and local assault weapons laws, the Act uses a two-pronged approach in defining "assault weapon[s]" subject to its restrictions. *See, e.g.*, Pub. L. No. 103-322, § 110102(b), 108 Stat. 1796 (amending 18 U.S.C. § 921(a)). The Act includes both a characteristics-based definition and a specific list of weapons by make and model. 720 ILCS 5/24-1.9(a)(1). There is substantial overlap between the two definitional categories because many (if not all) of the weapons listed by make and model also possess at least one (and often several) of the delineated characteristics that bring a particular firearm within the definition of an "assault weapon." The prefatory clauses to the make-and-model lists explicitly encompass "copies, duplicates, variants, or altered facsimiles with the capability of" any of the weapons subsequently listed. 720 ILCS 5/24-1.9(a)(1)(J), (K), (L).

Vagueness challenges to assault weapons statutes with similar language have repeatedly failed in state and federal court. In *Wilson v. County of Cook*, 2012 IL 112026, the Illinois Supreme Court, applying federal law, rejected a similar vagueness challenge to Cook County's assault weapons ordinance, which included "copies or duplicates" of specifically identified weapons in its definition of "assault weapon." The *Wilson* court recognized that the inclusion of "copies or duplicates" served "to prevent manufacturers from simply changing the name of the specified weapons to avoid criminal liability." *Id.* ¶ 31 (citing *Olympic Arms v. Buckles*, 301 F.3d 384 (6th Cir. 2002)). Applying the vagueness standard articulated by the U.S. Supreme Court, the Illinois Supreme Court held that "[a] person of ordinary intelligence would understand that [the ordinance's definition of 'assault weapon'] includes the specific weapons listed and any imitations

14

or reproductions of those weapons made by that manufacturer or another." *Id.* ¶ 32. The court also pointed to the characteristics-based definition in the ordinance as "put[ting] an individual on notice whether a particular weapon is banned based on the specific characteristics of the weapon." *Id.*

Federal courts have also rejected vagueness challenges to statutes that, like the Act, adopt a two-pronged definition of assault weapons.  In *N.Y. State Rifle & Pistol Association v. Cuomo*, 804 F.3d 242, 267 (2d Cir. 2015),[7] the Second Circuit rejected a vagueness challenge to Connecticut's statute defining assault weapons "to include certain specified firearms and any 'copies or duplicates thereof with the capability of' the listed models." *Id.* (quoting Conn. Gen. Stat. § 53-202a(1)(B)-(D)). As in *Wilson*, the *Cuomo* court found that the two-prong definition of "assault weapon" in the statute "provides two independent means by which an individual may determine if his firearm is prohibited: he may consult the list of illegal models and, if still concerned that the firearm may be an unlawful 'copy or duplicate,' he may cross-reference the list of prohibited military-style features." *Id.*

This same rationale foreclosed a vagueness challenge to New Jersey's assault weapons statute that included firearms that were "substantially identical" to specifically listed firearms in its definition of "assault firearm." *Coalition of N.J. Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 679 (D. N.J. 1999). There, the court found that the phrase "substantially identical" did not lack a "core" because its meaning could be discerned "by reference to the prohibited list of weapons, the prohibited characteristics contained in the other definitions of assault firearms, and just a cursory examination of pictures of prohibited weapons[.]" *Id.*

---

[7] *Cuomo*'s Second Amendment ruling, which employed intermediate scrutiny analysis, was abrogated by *N.Y. State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), which clarified the text-and-history standard by which Second Amendment claims must be assessed. *Bruen* did not disturb *Cuomo*'s vagueness analysis.

Plaintiffs here are in the same position as the plaintiffs in *Wilson*, *Cuomo*, and *New Jersey Sportsmen*. To the extent they are uncertain about whether a particular weapon qualifies as a "cop[y]" or "duplicate[]" of the specifically listed weapons, the characteristics-based definition in the Act provides them with another way to make that determination and conform their conduct to the Act's requirements. That is all due process requires, and that, by itself, is enough to defeat Plaintiffs' vagueness challenge to the Act's copycat provision.

But the Act goes even farther in providing an additional form of notice regarding the scope of the copycat provision and, in doing so, makes Plaintiffs' vagueness challenge even weaker than the previously unsuccessful claims in *Wilson*, *Cuomo*, and *New Jersey Sportsmen*. The Act directs ISP to annually publish, through rulemaking, a "list of assault weapons" subject to the Act's restrictions. 720 ILCS 5/24-1.9(d)(3). The list must identify "copies" covered by the Act:

> The list shall identify, but is not limited to, the copies, duplicates, variants, and altered facsimiles of the assault weapons identified in paragraphs (J), (K), and (L) of subdivision (1) of subsection (a) of this Section and shall be consistent with the definition of 'assault weapon' identified in this Section.

*Id*. This type of disclosure publication has been yet another basis courts have cited to dismiss vagueness arguments regarding copycat provisions in assault weapons statutes. *See Harrott v. Cnty. of Kings*, 25 Cal.4th 1138, 1152–53 (Cal. 2001) (requirement that California Attorney General publish a list of firearms deemed to be "assault weapons" obviated vagueness concerns where statutory definition included "variations, with minor differences" of listed models). This type of publication ensures that "concerned citizens need not struggle with the question whether, for example, a particular firearm is identical to one of the listed assault weapons except for slight modifications. The citizens may simply consult the amended list." *Id.* at 1152.

The same will be true for Illinois residents. If Plaintiffs are concerned about whether additional weapons will be considered copies of the Act's listed assault weapons, they need "only

consult the [Illinois] Code of Regulations." *Id.* at 1153. This additional form of notice places the Act well beyond the baseline notice requirement imposed by the Due Process Clause. Indeed, the Fourth Circuit found a far less robust form of notification clarifying the meaning of "copies" in Maryland's assault weapons law—a single opinion by the Maryland Attorney General and a subsequent bulletin by the Maryland State Police—more than sufficient to defeat a vagueness challenge. *Kolbe v. Hogan*, 849 F.3d 114, 148 (4th Cir. 2017) (en banc) (quoting Md. Code Ann., Pub. Safety § 5-101(r)(2)).[8] By providing three different sources Illinois residents may consult in considering whether a particular firearm is a restricted assault weapon—the make-and-model list in the statute, the characteristics list, and ISP's annually published list—the Act far surpasses the constitutional requirement to notify the ordinary person of criminally proscribed conduct. *Kolender*, 461 U.S. at 357.

The one case Plaintiffs point to in support of their position dealt with an ordinance that is readily distinguishable from the Act. *Springfield Armory v. City of Columbus*, 29 F.3d 250 (6th Cir. 1994), invalidated a Columbus, Ohio ordinance as unconstitutionally vague because it banned thirty-four specific rifles, three specific shotguns, nine pistols, and "'[o]ther models by the same manufacturer with the same action design that have slight modifications or enhancements[.]'" *Id.* at 252 (quoting ordinance). The Sixth Circuit faulted the ordinance for prohibiting certain brand-name weapons but not other "similar assault weapons of the same type, function or capability." *Id.* Lacking any "generic" or categorical definition for covered weapons, the "slight modifications" requirement "defie[d] definition." *Id.* at 252–53. The manufacturer-specific list in the ordinance

---

[8] *Bruen* abrogated *Kolbe*'s Second Amendment analysis, which employed means-end scrutiny rather than the text-and-history approach specified in *Bruen*. As with *Cuomo*, *Bruen* did not disturb *Kolbe*'s vagueness analysis.

also meant that an ordinary consumer would need to "know the developmental history of a particular weapon" to know if the "modification" provision applied. *Id.* at 253.

None of these infirmities are present in the Act. Unlike the *Springfield Armory* ordinance, the Act includes a characteristics-based definition that is generic and unconnected to a particular manufacturer. Multiple courts have distinguished *Springfield Armory* on that basis. *See Wilson*, 2012 IL 112026 ¶ 33; *Cuomo*, 804 F.3d at 267. Not only that, the Act requires ISP to annually publish a list identifying "copies" of listed assault weapons that are also subject to the Act. The California Supreme Court distinguished *Springfield Armory* based on a similar notice provision in *Harrott*. *See* 25 Cal.4th at 1152–53. Even the Sixth Circuit declined to extend *Springfield Armory* in a subsequent case, *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 292 (6th Cir. 1997), involving a vagueness challenge to the federal assault weapons ban. *Magaw* found *Springfield Armory* distinguishable in part because the federal statute being challenged had yet to be interpreted by the Secretary of the Treasury, to whom Congress had delegated rulemaking authority regarding the law. Given that posture, the Sixth Circuit determined it "should not intervene and determine whether a statute enacted by Congress is unconstitutionally vague on its face before the agency with rulemaking authority has had an opportunity to interpret the statute." *Magaw*, 132 F.3d at 292. The same rationale cuts against Plaintiffs' attempt to facially invalidate the Act here, before ISP, the agency to whom the General Assembly has delegated rulemaking authority, has published its first annual list identifying "copies" covered by the Act.

Just as Plaintiffs ignore how the Act differs from the law at issue in *Springfield Armory*, they also ignore many parts of the definition that explain how to determine if a particular firearm is an assault weapon. For example, in the motion Plaintiffs repeatedly frame the relevant question as only about whether a specific firearm is or is not a true "AK Type" or "AR Type." Mot. 15-19

18

(quoting 720 ILCS 5/24-1.9(J)(i) and (ii)). The proper legal question is whether the definition—as a whole—allows us to ascertain which weapons are "assault weapons."  Through its characteristics description and its instruction to ISP to publish a list annually, it does.

In sum, numerous plaintiffs have tried and failed to invalidate anti-copycat provisions as unconstitutionally vague. Here, the anti-copycat provisions in the Act incorporate the same type of statutory language and notice provisions that have doomed prior vagueness challenges. The sole case Plaintiffs cite in support involved a statute with significantly different terminology, no comparable notice provisions, and no *mens rea* requirement; subsequent courts have repeatedly cabined it to its facts. Plaintiffs' challenge to the definition of assault weapons fails as a matter of law and their request for summary judgment on Count VI should be denied.

## II. In the alternative, the challenged provisions should be severed.

The Plaintiffs ask this Court to invalidate the entire Act, Mot. 20-21, despite its severability clause.  As explained above, the Act is not vague.  But if the Court disagrees, then only the specific provisions Plaintiffs are deemed to have shown to be invalid should be enjoined. *See* Mot. 3–12 (arguing 720 ILCS 5/24-1.10 is vague), 12–20 (arguing 720 ILCS 5/24-1.9(J)(i) and (ii) is vague).

"Whether invalid provisions in a state law can be severed from the whole to preserve the rest is a question of state law." *Burlington N. & Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790, 804 (7th Cir. 1999) (finding provisions of a state law severable due to that state's general statute on severability).  When a statute clearly states that the legislature intends it to be severable, that language is determinative. *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (finding statute's severability clause applied). Here, state law could not be clearer. The Act contains a severability clause. The clause explicitly references the State's general statute on statutes, 5 ILCS 70/1.31, which reads, in part: "If any provision of an Act . . . is held invalid, such invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid application

or provision, and to this end the provisions of each Act enacted after the effective date of this amendatory Act are severable[.]"

If this Court agrees with Plaintiffs that phrases in Section 1.10 and Sections 1.9(J)(i) and (ii) are unconstitutionally vague, only those provisions should be enjoined. Plaintiffs have not argued that most of the provisions defining assault weapons are vague, *compare* Mot. *with* §§ 1.9(a)(1)(A)-(I), (J)(iii)-(xxvi), (K)(iii)-(xiv), (L), nor have they made claims regarding the many provisions of the Act that do not relate to assault weapons and magazine size, *see, e.g.*, P.A. 102-1116 § 15 (amending the Firearms Restraining Order Act). This Court should defer to the General Assembly's clear preference and allow the remainder of the Act to stay in effect.

## CONCLUSION

The Court should deny the Motion for Summary Judgment Counts IV and VI (Dkt. 111).

Respectfully submitted,

/s/ Christopher G. Wells
Christopher G. Wells, No. 6304265
Kathryn Hunt Muse
Gretchen Helfrich
Rebekah Newman
Office of the Attorney General
100 W. Randolph Street
Chicago, IL 60601
(312) 814-3000
Christopher.Wells@ilag.gov

*Counsel for ISP Director Kelly*