```
 1                IN THE UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF ILLINOIS
 2
    CALEB BARNETT, et al.,              )
 3                                      )
                 Plaintiffs,            )
 4                                      )
    v.                                  )   No. 3:23-cv-209-SPM
 5                                      )
    KWAME RAOUL, et al.,                )
 6                                      )
                 Defendants.            )
 7  _____
    DANE HARRELL, et al.,               )
 8                                      )
                 Plaintiffs,            )
 9                                      )
    v.                                  )   No. 3:23-cv-141-SPM
10                                      )
    KWAME RAOUL, et al.,                )
11                                      )
                 Defendants.            )
12  _____
    JEREMY W. LANGLEY, et al.           )
13                                      )
                 Plaintiffs,            )
14                                      )
    v.                                  )   No. 3:23-cv-192-SPM
15                                      )
    BRENDAN KELLY, et al.,              )
16                                      )
                 Defendants.            )
17  _____
    FEDERAL FIREARMS                    )
18  LICENCES OF ILLINOIS, et al.        )
                                        )
19               Plaintiffs,            )
                                        )
20  v.                                  )   No. 3:23-cv-215-SPM
                                        )
21  JAY ROBERT "JB" PRITZKER,           )
    et al.,                             )
22                                      )
                 Defendants.            )
23  _____
           TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS
24        BEFORE THE HONORABLE STEPHEN P. McGLYNN
              UNITED STATES DISTRICT JUDGE
25
                       AUGUST 14, 2023
```

1

2

3

4

5

TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS

6
BEFORE THE HONORABLE STEPHEN P. McGLYNN

UNITED STATES DISTRICT JUDGE

7

AUGUST 14, 2023

8

9
EAST ST. LOUIS, ILLINOIS

10

11

12

13

14

15

16

17

18

19
REPORTED BY:

20
Stephanie Rennegarbe, RDR, CRR, CBC

IL CSR #084-003232

21
750 Missouri Avenue

East St. Louis, IL  62201

22
618-482-9226

Stephanie_Rennegarbe@ilsd.uscourts.gov

23

*Proceedings recorded by mechanical stenography; transcript*

24
*produced by computer-aided transcription*

25

```
 1   APPEARANCES:

 2   FOR PLAINTIFFS:       Carl D. Michel, Esq.
                           Michel & Associates, P.C.
 3                         180 East Ocean Boulevard, Suite 200
                           Long Beach, CA  90802
 4                         562-216-4444
                           cmichel@michellawyers.com
 5
                           Thomas G. Maag, Esq.
 6                         Maag Law Firm, LLC.
                           22 West Lorena Avenue
 7                         Wood River, IL  62095
                           618-216-5291
 8                         tmaag@maaglaw.com

 9                         Matthew Rowen, Esq.
                           Clement & Murphy, PLLC
10                         706 Duke Street
                           Alexandria, VA  22314
11                         202-742-8900

12                         Jennifer Craigmile Neubauer
                           Shaw Law, Ltd.
13                         33 North County Street
                           Suite 300
14                         Waukegan, IL  60085
                           847-244-4696
15                         jcneubauer@shawlawltd.com

16   FOR DEFENDANTS:       Christopher Graham Wells, Esq.
                           Illinois Attorney General's Office
17                         Public Interest Division
                           100 West Randolph Street
18                         Chicago, IL  60601
                           312-814-1134
19                         christopher.wells@ilag.gov

20                         Laura Bautista, Esq.
                           Illinois Attorney General's Office
21                         500 South Second Street
                           Springfield, IL  62701
22                         217-557-0261
                           Laura.Bautista@ilag.gov
23

24

25
```

```
 1   FOR DEFENDANTS:          Thomas R. Ysursa, Esq.
     (continued)             Becker, Hoerner & Ysursa, P.C.
 2                           5111 West Main Street
                             Belleville, IL  62226
 3                           618-235-0020
                             try@bhylaw.com
 4
                             Troy Owens, Esq.
 5                           McHenry County State's Attorney's Office
                             2200 N. Seminary Avenue
 6                           Suite 150
                             Woodstock, IL  60098
 7                           814-334-4159
                             tcowens@mchenrycountyil.gov
 8
                             Sean P. Dolan, Esq.
 9                           Katherine Asfour, Esq.
                             Evans & Dixon, LLC.
10                           211 North Broadway
                             Suite 2500
11                           St. Louis, MO  63102
                             314-552-4003
12                           sdolan@evans-dixon.com
                             kasfour@evans-dixon.com
13
                             Mike Schag, Esq.
14                           Heyl, Royster
                             105 West Vandalia Street
15                           Mark Twain Plaza, III, Suite 100
                             P.O. Box 467
16                           Edwardsville, IL  62025
                             618-656-4646
17

18

19

20

21

22

23

24

25
```

```
 1                    (Proceedings began at 1:31 p.m.)

 2                    ***********************

 3          COURTROOM DEPUTY:  The United States District Court

 4   for the Southern District of Illinois is now in session.  The

 5   Honorable Stephen McGlynn presiding.

 6          Court calls case #23-cv-209, Caleb Barnett, et al. v.

 7   Kwame Raoul, et al.  Case is called for a Status Conference.

 8          Parties, if you would please identify yourselves for

 9   the record.

10          MR. MAAG:  Thomas Maag for the Crawford County

11   Plaintiffs.

12          MR. MICHEL:  Chuck Michel for the FFL Illinois

13   Plaintiff.

14          MR. ROWEN:  Matthew Rowen for the Barnett Plaintiffs.

15          MR. OWENS:  Troy Owens for the McHenry County State's

16   Attorney's Office.

17          MS. ASFOUR:  Katherine Asfour for the Randolph County

18   Defendants.

19          MS. NEUBAUER:  Jennifer Neubauer, FFL Plaintiffs.

20          MR. SCHAG:  Mike Schag for the Crawford County

21   State's Attorney.

22          MR. YSURSA:  Thomas Ysursa for James Gomric, St.

23   Clair County State's Attorney.

24          THE COURT:  All right.  Good afternoon.  Is that

25   everybody?
```

```
 1              MR. WELLS:  Your Honor, this is Christopher Wells for
 2     the State Defendants.
 3              MS. BAUTISTA:  Laura Bautista also for the State
 4     Defendants.
 5              THE COURT:  Okay.  All right.  We have before the
 6     Court, really, the Langley motions on Counts IV -- Counts IV
 7     and VI, constitutional challenge to the statute in question on
 8     the grounds of vagueness.
 9              Now, the parties have briefed the issue, and the
10     other matters are before the Seventh Circuit.  I don't know
11     when they are going to rule, but these cases involving the
12     Second Amendment are coming in pretty fast and furious from
13     all over the country and all different circuits, and it
14     doesn't appear that we judges are of one mind with respect to
15     some of these important issues.
16              My thought is while I want to see what the Seventh
17     Circuit does with that which is up on appeal, I don't control
18     their timeline and I do want to address the constitutional
19     arguments before -- before too long.
20              And, so, for the Plaintiff, do you want to stand on
21     your briefs that you filed or do you want oral argument?
22              MR. MAAG:  I generally would prefer oral argument,
23     but it's the Court's pleasure.  I know in the Southern
24     District oral argument in recent years has become more and
25     more of a rare thing.
```

1           THE COURT:  Not in my courtroom.

2           All right.  Chris, are you going to be the lead for

3    the State?

4           MR. WELLS:  Yes, Your Honor, depending on the timing.

5    I have a family vacation scheduled next week, but I don't know

6    what the Court was thinking in terms of argument.

7           THE COURT:  I was thinking next week.

8           MR. WELLS:  You were thinking next week?

9           THE COURT:  We will pick out a time that's convenient

10   for everybody.

11          Tom, would you be -- I guess you would be doing the

12   arguing on behalf of the Plaintiffs?

13          MR. MAAG:  I would imagine that's correct.

14          THE COURT:  Okay.  But then we have -- Boy, I don't

15   know all the Defendants in *Langley*.

16          Tom, I know Brendan Kelly -- I mean, the Government

17   is -- Is that Crawford County?  Is *Langley* a Crawford County

18   case or what --

19          MR. MAAG:  Crawford County has Brendan Kelly and has

20   the State's Attorney from Crawford County.  I'd have to look

21   to see if there's anybody else, but that's all I can think of

22   offhand.

23          THE COURT:  All right.  Well, anybody that's on, are

24   you intending to or would like to participate in oral argument

25   on behalf of a named defendant in the *Langley* case?

1          MR. SCHAG:  Mike Schag for Crawford County.  I think

2   that we will probably just defer to the other arguments that

3   are going on.

4          THE COURT:  Okay.  All right.  Well, my preference is

5   always oral arguments on important motions, and so I'm going

6   to set this for oral argument.  Is there -- Does anybody

7   believe that they need additional discovery before we proceed

8   to oral argument on these motions?

9          MR. WELLS:  Yes, Your Honor, the State Defendants, as

10   we said in our response to the motion, we would like

11   discovery.  In particular we think that -- And replying, also,

12   in their opening brief, the Plaintiffs have made various

13   assertions about certain types of magazines, about whether

14   those are interchangeable.  We think there are going to be

15   factual disputes about which particular magazines are, in

16   fact, interchangeable between handguns and long guns.

17          There's also been declarations filed by the

18   Plaintiffs, as well as a third-party gun store owner, and we

19   feel we are entitled to depose those individuals.

20          THE COURT:  Have you discussed with the lawyers

21   trying to get those depositions set?

22          MR. WELLS:  We have not, Your Honor.  Our

23   understanding has been that everything has been stayed pending

24   the Seventh Circuit appellate proceedings.  We are happy to

25   reach out to Counsel and discuss a schedule to get those taken

1    care of.

2         MR. MAAG:  As far as the interchangeability goes, I

3    mean, if the Court wants actual examples, they can be brought

4    to the Court or to anywhere the Court deems appropriate for

5    inspection and demonstration.

6         MR. WELLS:  Your Honor, our view is really that while

7    we would like to contest many of the factual assertions that

8    have been made, that the interchangeability of some subset of

9    magazines by itself is not going to be sufficient to establish

10   a vagueness challenge to the statute that's been filed as a

11   facial challenge, but we are happy to get into that more in

12   argument, as you know.

13        THE COURT:  Well, here's where I am coming from:  We

14   are talking about a challenge of the doctrine of vagueness as

15   to the enforceability of a criminal statute.  It's generally a

16   question of law and not a question of fact.  And, so, but my

17   job as a District Judge is to allow a party to develop a

18   sufficient record, and, you know, if it's --

19        What depositions do you think you would need to

20   develop a sufficient record, Mr. Wells?

21        MR. WELLS:  So, I think there are essentially two

22   categories, Your Honor.  One, we would be inclined to serve

23   third-party subpoenas on firearms manufacturers to address

24   these kinds of interchangeability.  We don't think that the

25   evidence that Plaintiffs have put in the record about what's

1    interchangeable is consistent with what those manufacturers

2    would consider interchangeable.  So, obtaining records from

3    them and then conducting depositions, and then depositions of

4    the Plaintiffs themselves and the declarants that they've put

5    in the record.

6             THE COURT:  That sounds like a lot.

7             MR. MAAG:  Yes, every single firearm we pled is

8    interchangeable, we are prepared to bring actual examples to

9    demonstrate it.

10            THE COURT:  Well, you better alert the U.S. Marshals.

11            MR. MAAG:  Of course, with the appropriate permission

12   of the Court.  Or, let the State pick the ones that they

13   contest.

14            THE COURT:  Well, I think that -- I would like to get

15   this case argued.  Now, when the Seventh Circuit makes its

16   decision on matters that are before it now, that may or may

17   not be dispositive of what we have here, but I -- because

18   there are criminal statutes and because they implicate Second

19   Amendment rights and because, as we know, what the state law

20   is now, if you are found guilty of a felony you are not

21   allowed to possess firearms.  And, so, you have a number of

22   people that were otherwise law abiding might be tripped up on

23   the statute that would have to forfeit all their firearms.

24            I'm sorry?

25            MR. MICHEL:  My mistake, Your Honor.  I forgot to

1  mute my phone.

2       THE COURT:  That's okay.  It wouldn't be the first

3  time I had catcalls from the gallery when I was speaking....

4  which is okay, I'm used to that.

5       Anyway, so it's a serious question.  Obviously a

6  facial challenge to statutes on the ground of vagueness are

7  tough, and then you also, I think -- and I will entertain

8  arguments on this, whether in light of *Bruen*, the Supreme

9  Court is suggesting that maybe we should analyze vagueness

10  challenges regarding Second Amendment rights the same way we

11  might analyze criminal statutes that implicate First Amendment

12  rights.  But, I will let you guys argue that.

13       I think, you know, subpoenaing records of

14  manufacturers, I don't know that that's necessary.  You have

15  identified specific -- identified specific firearms, and my

16  concerns deal with the language that refers to copies, similar

17  devices, or things that are AK-like or AR-like.  I think

18  that's really going to be more closely the focus on whether

19  these statutes are vague and is there a -- what makes

20  something AR-like, what makes something AK-like without

21  actually being an armor-like rifle or what have you.  And

22  there are parts that are interchangeable.  I mean, apparently

23  it's the moves per second.

24       All right.  So, I would be anticipating asking

25  questions with respect to that.  That is a concern that I

1    have.  If there's a question what constitutes -- If it goes to

2    a legitimate question what constitutes an AR-like rifle or

3    AK-like rifle or some of the other ones that are set out

4    specifically in the statute, who's going to decide that?  Will

5    the Judge decide that?  Will the jury decide that?  Does it

6    force a Defendant to forgo Fifth Amendment rights so they

7    could testify as to their knowledge of guns and why they

8    thought something was or was not AR-like or AK-like?  I think

9    it's reasonable to allow the Government to take depositions of

10   any of the witnesses that have filed -- or I should say

11   *affiants* that have filed affidavits in support of the

12   Plaintiffs' motion, but I would like to get these -- I would

13   like to get this argued in -- Today is the 14th, right?  I

14   would like to get this argued either later next month or early

15   in October, because there's a lot at stake with the criminal

16   statute.  It's significant.

17         So, what I would suggest is, Mr. Wells, Mr. Maag,

18   maybe you guys can talk to see about getting depositions set

19   of the witnesses, and let's -- Today is the 14th.  Why don't

20   we give you -- Do you think we could get these depositions

21   taken in the next 30 days, understanding, Chris, your family

22   vacation next week, you don't have to worry about this?

23         MR. MAAG:  I can make all of my affiants available

24   for deposition, understanding his vacation, within three

25   weeks.

```
 1            MR. WELLS:  Your Honor, 30 days may be aggressive,
 2   but 45, I think, is feasible.
 3            THE COURT:  All right.  45 it is.
 4            MR. WELLS:  And just to be clear, Your Honor, my
 5   understanding is that we are talking about depositions of the
 6   Plaintiffs.  I do, again, think that we would be inclined to
 7   subpoena firearms manufacturers.  If Your Honor is not going
 8   to allow that, I just want to be clear that that is our
 9   request.
10            THE COURT:  I understand that.
11            MR. MAAG:  And if they are going to be taking
12   depositions of my affiants, I would like the reciprocity of
13   being able to take deposition of theirs.
14            THE COURT:  Any objection to that, Mr. Wells?
15            MR. WELLS:  No.  I think if we are talking about
16   discovery, it's a two-way street.
17            THE COURT:  All right.  So, I will go along with
18   that.  The one thing I had about manufacturers is because this
19   is a facial challenge to the statute, isn't that a question of
20   law?
21            MR. WELLS:  I think it certainly could be contributed
22   to a question of law, but I don't think it -- The way that
23   Plaintiffs have argued it, it seems to be a mixed question of
24   fact and law as they're presenting it, and, again, in
25   particular it's specific claims that the Plaintiffs are making
```

1    about the scope of interchangeability.  And, as Your Honor

2    knows based on the briefing, it's not enough for them to just

3    show that, hey, there are one or two firearms where -- or more

4    firearms where you can have interchangeability.  They have to

5    show that the statute lacks a core of understandable meaning,

6    and I think that is -- could be a mixed question of fact and

7    law.

8             THE COURT:  What about a pump-action shotgun that

9    looks exactly like an AR-15?  Could that be a AR-like weapon,

10   or does it have to be a weapon that it's semi-automatic?

11            MR. WELLS:  Well, Your Honor, I think speculation and

12   hypotheticals about particular firearms are not appropriate in

13   the context of a facial challenge.  The obligation is to show,

14   by Plaintiffs, that there is no set of circumstances in which

15   the statute could be applied constitutionally.  And, as we

16   laid out in the briefing, we think that with respect to this

17   statute there are three different notice mechanisms.  There's

18   the list of covered weapons, there's the list of

19   characteristics, and then there's the list that will be

20   published by ISP on October 1st.

21            THE COURT:  I understand your argument.

22            MR. WELLS:  Right.  So, while I certainly am

23   interested in having a complete record, to the extent that the

24   Court is going to rest its decision on particular firearms or

25   descriptions of particular firearms, we would want to be able

1    to develop the record along those lines that allow the Seventh

2    Circuit -- In terms of the oral argument, I think there were

3    unresolved factual questions that they were struggling with

4    and -- on the Second Amendment claims, and certainly in this

5    context there may be unresolved factual questions, as well.

6    We think in the interest --

7            THE COURT:  Well, with respect to my case, what were

8    the unresolved factual questions that they had with respect to

9    my case?  And, I mean, Barrett and these cases -- or *Barnett*

10   and these cases.

11           MR. WELLS:  So, I think there were -- Judge Wood in

12   particular asked questions about the composition of the 24

13   million number that was quoted at various points, who owns

14   those 24 million, are all of them lawfully owned, how do we

15   make that determination, how were these weapons being used in

16   practice.  There were surveys that were cited in the record

17   that I think the Court was certainly interested in trying to

18   unpack what the record actually showed in that space, and I

19   think there were an acknowledgement in oral argument that

20   there were unresolved questions in the record.  Whether or not

21   those are, you know, materially-disputed facts, we don't know

22   how and what will weigh into the preliminary injunction ruling

23   by the Seventh Circuit.  We don't know, but there certainly

24   seem to be some remaining questions in the oral argument.

25           THE COURT:  Well, I am going to let you take the

1    depositions of the affiants in *Langley*.  And if their evidence

2    is insufficient or not adequate to support the claim, then so

3    be it.  Once you take your depositions, if you believe that in

4    light of their depositions there has to be some other -- some

5    additional discovery that's conducted, I'll entertain that.

6    But, what I would like to do now is pick a date that we can

7    calendar for oral argument of the *Langley* challenge to the

8    constitutionality of the statute on the grounds of vagueness.

9           So, Jackie, what do we have in, say, mid October?

10          COURTROOM DEPUTY:  Mid October you have a two-week

11   trial, so --

12          THE COURT:  Which one is that?  Is that --

13          COURTROOM DEPUTY:  *Anderson*.

14          THE COURT:  *Anderson*.

15          COURTROOM DEPUTY:  *Anderson*, uh-huh.

16          THE COURT:  That's probably going to go.

17          How about the third week of October?

18          COURTROOM DEPUTY:  Well, you have, like, the second

19   week, which is the week of -- Monday is Columbus Day, but you

20   have availability, it looks like, the 10th, 11th, and 12th

21   that week.

22          THE COURT:  All right.  Mr. Wells, 10th, 11th, or

23   12th.

24          You are muted.  Chris, you are muted.

25          MR. WELLS:  Sorry, Your Honor.  The 10th or 11th or

1    12th of October would work.

2          THE COURT:  Tom?

3          MR. MAAG:  Court's pleasure.

4          THE COURT:  Okay.  I will set it for 1:30 in the

5    afternoon.  I like to do these in person.  I will set them in

6    the afternoon because that accommodates travel time.  But,

7    if -- I let the people who travel the farthest distance give

8    me a time.  If you would rather have it at 10:30 in the

9    morning, Mr. Wells, I can do 10:30; otherwise, it will be

10   1:30.

11         MR. WELLS:  1:30 is fine, Your Honor.

12         And, just one clarification about the scope.  So, the

13   motions that are -- for which there have been briefs filed

14   relate to the vagueness challenge.  The Fifth Amendment

15   challenge has not been briefed yet.

16         THE COURT:  That's correct.  Go ahead.

17         MR. WELLS:  Are you going to focus -- Is the hearing

18   going to be limited to the vagueness challenge or to both?

19         THE COURT:  You didn't brief the Fifth Amendment, Mr.

20   Maag, and so I'm going to stick with only the vagueness

21   challenge.

22         MR. MAAG:  Understood.

23         THE COURT:  Okay.  So, it's *vagueness*.

24         I can understand your answer, because I did reference

25   the fact that the Fifth Amendment would have, with the

1    statute, somehow compel a litigant or Defendant to forego

2    Fifth Amendment rights to try to explain why he or she thinks

3    this is not an AR-like weapon or a variation or whatever.

4           So, let's do -- What are those dates, Jackie?

5           COURTROOM DEPUTY:  They are October 10th, is a

6    Tuesday; 11th, Wednesday; 12th, Thursday.

7           THE COURT:  Let's do -- How does Tuesday sound?

8    Tuesday or Wednesday?

9           MR. MAAG:  Perfect.

10          THE COURT:  Perfect?

11          MR. MAAG:  Perfect.

12          MR. WELLS:  I'm just checking the calendar here real

13   quick.  So, that Monday is, I believe, a holiday.  So,

14   Wednesday --

15          THE COURT:  Oh, let's do Wednesday, then.  We will

16   have a day in the office to prepare.

17          MR. WELLS:  The other request I would have, Your

18   Honor, is to the extent that this type of discovery is going

19   to be taking place, how would you like the Court to be

20   apprised of any other kind of additional factual points or

21   points of law that we might want to raise?

22          THE COURT:  I'm going to let you file -- There's a

23   couple of things, and I was going to move to that next.

24          There's going to be -- When I started off I said that

25   there's a lot of Courts that are looking at a number of

1    different Second Amendment claims both in the regulatory

2    capacity and the criminal capacity, and so I anticipate that

3    there are going to be other decisions that come down and one

4    side or the other might say, "Well, here's a case that came

5    out of North Carolina we think you should read, Judge."  I'm

6    going to liberally grant leave to supplement your briefs with

7    cases that may come down between now and the time of oral

8    argument, and really it's between now and the time that you

9    get a written decision from them.

10         With respect to discovery, you should notify me that

11   the depositions have been completed.  If there's a problem

12   getting them completed in time, let me know, we will see if we

13   can work through that.  But, you are free to file any motion

14   where you say, look, in light of certain facts that were

15   developed in the depositions, the Court may deem it prudent to

16   allow further discovery or limit what would otherwise be

17   considered in arguments before the Court.  And, you know, we

18   can deal with that in -- I can deal with that in real time.

19         MR. WELLS:  Understood.  And I assume that with

20   respect to any depositions, obviously if the Seventh Circuit,

21   however it rules in the case, comes back in its entirety, you

22   know, there will be questions about whether or not we will

23   have the opportunity to depose based on the Second Amendment

24   claim, I want to make sure that we reserve our right to, you

25   know, explore discovery on those claims, as well, when we get

 1 | there.

 2 |         THE COURT:  So, here's what I would propose:  If the

 3 | Seventh Circuit enters a ruling in the other issues that are

 4 | before it in the consolidated cases under *Barnett*, I would

 5 | probably set a quick status conference, maybe a Zoom

 6 | conference where the lawyers can talk and say, all right, in

 7 | light of the Seventh Circuit's decision what -- what's left to

 8 | be done, and then we will just deal with that on the fly,

 9 | because I have no idea how they are going to rule and it might

10 | make some of what we are talking about moot, it might make --

11 | it might mean that the depositions that are being taken might

12 | want to cast a wider net than just the -- that which is part

13 | of the -- raised in Counts IV and VI of the *Langley*

14 | litigation.

15 |         How does that sound?

16 |         MR. WELLS:  Understood.  And I recognize we are at a

17 | moment of uncertainty, obviously, given that we are waiting on

18 | the Seventh Circuit, but I appreciate the Court's

19 | consideration and we will take it as it comes.

20 |         THE COURT:  Tom, does that sound like a fair way to

21 | work it with you?

22 |         MR. MAAG:  Lovely.

23 |         THE COURT:  All right.  Yeah, maybe the Seventh

24 | Circuit was just waiting to see what the Illinois Supreme

25 | Court was going to do.  And they did what they were going to

1    do this past Friday, so who knows?  But, it's -- They can, in

2    their discretion, in good time, release a decision that they

3    think is appropriate.  I just want to make sure that I don't

4    wait too long on some of these things, because, as I say, it

5    is a request relief for -- (inaudible) emergency relief, but

6    it's a request to determine if going forward the statute is

7    even enforceable as written in a criminal context.

8          All right.  Anything else for the Plaintiff in

9    *Langley*?

10         MR. MAAG:  No, thank you, Judge.

11         THE COURT:  Anything else for any of the Defendants?

12         MR. WELLS:  Nothing further, Your Honor.

13         THE COURT:  All right.

14         Well, thank you.  And the oral arguments will be the

15   Wednesday -- Is that the 12th?  We will do it in person here

16   at the courthouse.

17         COURTROOM DEPUTY:  That's the 11th.

18         THE COURT:  The 11th.  And I know that maybe there's

19   -- I have not given as fixed a deadline on things as we

20   normally see in Federal Court, but I wanted to give the

21   parties the flexibility to try to get accomplished what they

22   want to get accomplished before oral argument on this, and

23   invariably if I set a very, very tight deadline, there's a

24   motion to revise it because something else has popped up.

25         All right.  We are off the record.

1           (Off the record).

2           (Proceedings adjourned at 2:02 p.m.)

3

4

5

6                    REPORTER'S CERTIFICATE

7                 *   *   *   *   *   *   *

8    I, Stephanie K. Rennegarbe, RDR, CRC, Official Court

9  Reporter for the U.S. District Court, Southern District of

10 Illinois, do hereby certify that I reported with mechanical

11 stenography the proceedings contained in pages 1-22; and that

12 the same is a full, true, correct and complete transcript from

13 the record of proceedings in the above-entitled matter.

14

15 */S/ Stephanie K. Rennegarbe,*          08/16/2023
   IL CSR, RDR, CRC
16

17

18

19

20

21

22

23

24

25