IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CALEB BARNETT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-209-SPM |
| | ) | |
| KWAME RAOUL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| DANE HARREL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-141-SPM |
| | ) | |
| KWAME RAOUL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| JEREMY W. LANGLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-192-SPM |
| | ) | |
| BRENDAN KELLY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

**MOTION FOR SUMMARY JUDGMENT ON 5TH AMENDEMNT ISSUES**

**BY LANGLEY PLAINTIFFS**

Comes now Plaintiffs Jeremy W. Langley, et al, by and through their attorneys, Thomas G. Maag, et al, and pursuant to F.R.C.P. 56, moves for summary judgment, as to the 5th Amendment count.

## INTRODUCTION

Under well settled precedent, those who may not lawfully possess firearms, or the particular firearm (such as persons without FOID cards), may not be prosecuted for failing to register a firearm. *Haynes v. United States*, 390 U.S. 85 (1968), as doing so may tend to incriminate them as same would violate 5th Amendment rights.

Under the challenged and misnamed "Protect Illinois Communities Act, or "PICA", Illinois has dictated that possessors of certain designated firearms, and their component parts, as well as certain ammunition, be registered with the State. Failing to so register is a crime, a crime that actual criminals are apparently immune from, as, for instance felons generally cannot possess firearms or ammunition, and thus, under *Haynes* have no duty to register.

Illinois does not have firearm preemption laws, at least not complete ones. On need only look at the recent 7th Circuit opinion in this very case to see that certain municipalities have their own bans and regulations on the same kinds of firearms PICA regulates. Nothing stops these jurisdictions from accessing the PICA registration database, and using same against registrants present in those jurisdictions, including, for instance, the named Plaintiffs in this case when attending Court at the 7th Circuit in Chicago, as has been done.

Likewise, if Plaintiffs, through inadvertence or omission, fail to timely renew their FOID cards, are become the victim of a frivolous or malicious "order of protection" the information can be used against them.

The continuing duty to register is equally problematic.

In this motion, Plaintiffs seek relief, under Rule 56, for an injunction against the State of Illinois, not as to the entirety of PICA, as not all of PICA requires compelled testimony against interest, but rather, in this motion, for the enforcement of the registration or "endorsement affidavit" portion of the so called "Protect Illinois Communities Act, or "PICA." The crux of this regulation is to criminalize the possession of unregistered PICA regulated firearms.

Under PICA,

"(c) Except as otherwise provided in subsection (d), beginning January 1, 2024, it is unlawful for any person within this State to knowingly possess an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge.

(d) This Section does not apply to a person's possession of an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge device if the person lawfully possessed that assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge prohibited by subsection (c) of this Section, if the person has provided in an endorsement affidavit, prior to January 1, 2024, under oath or affirmation and in the form and manner prescribed by the Illinois State Police, no later than October 1, 2023"

In addition, PICA, subsection (d) states,

"Beginning on January 1, 2024, … Within 10 days after transfer of the weapon except to an heir, the person shall notify the Illinois State Police of the name and address of the transferee and comply with the requirements of subsection (b) of Section 3 of the Firearm Owners Identification Card Act. The person to whom the weapon or ammunition is transferred shall, within 60 days of the transfer, complete an affidavit required under this Section. A person to whom the weapon is transferred may transfer it only as provided in this subsection."

The simple fact of the matter is that, under PICA, subsection (c), a given PICA firearm is generally presumed unlawful, unless the possessor affirmatively proves otherwise, such as by registering it with the State.

It must be emphasized that the issue in this motion and under the 5th Amendment count is not whether the state has authority under the Constitution to regulate the manufacture, transfer, or possession of firearms; nor is it whether the state may, as an abstract concept, require registration of firearms or other items, Second Amendment issues aside.

A strong case can be made that registration violates the Second Amendment. That is not this count of this motion.

Rather, this motion and this count simply seeks adjudication of whether the Protect Illinois Communities Act, or PICA, regulations, that purport to require the registration of certain firearms and related items, despite assertion of the privilege against self-incrimination, is constitutionally permissible, as the statute is and is to be applied.

Again, Second Amendment and other issues are distinct from this point. For instance, while arguably the Second Amendment might well not protect any right to keep a man portable nuclear warhead, as found by the 7th Circuit (though not actually an issue in this case, as this case does not deal with nuclear weapons) one might well still have the 5th Amendment right not to potentially incriminate oneself by being compelled to register same with the state, absent certain protections, like use immunity. This is not new and unplowed ground, it being well plowed already by the U.S. Supreme Court by, in some cases, our literal and in other cases, our figurative grandparents.

**APPLICABLE LAW**

The Self-Incrimination Clause of the Fifth Amendment provides that no "person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5.

As an initial proposition, it is necessary to make clear that the invocation of the 5th Amendment is not the refuge of scofflaws or ne'er do wells.  It is the right of every American, hard won and retained with spilled blood at Lexington, Concord, and places since that most people never heard of and some cannot pronounce.  But the battlefield is not the only place this right has been fought over.  By their very nature, even the most benign governments will always seek to enlarge it own power against its people.  "Another tool in the toolbox" against this evil or that evil, the politician or prosecutor is often quoted as saying.

Regardless, we have a constitution, and we wrote it down, so that we cannot forget it.  *Marbury v. Madison,* 5 US 137, 176 - Supreme Court 1803.  Even today, there are major world powers, first world nations, that do not have written constitutions.  England, our former colonial master, is among them.

In our written constitution is, among others, the 5th Amendment, which protects several rights, including the right against self incrimination.

Although the text does not delineate the ways in which a person might be made a "witness against himself," the privilege "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." Id., at 761. "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a `witness' against himself." *Doe v. United States,* 487 U.S. 201, 210 (1988).

In this case, under PICA, Plaintiffs, and possessors of PICA regulated firearms at large, subject to, in essence, government employees, are required, under penalties of law, to disclose make, model, and serial number of firearms they possess and/or were transferred to them. This is clearly a testimonial communication made to disclose information. And it is under oath. The disclosure is certainly not voluntary, as there are serious criminal penalties for not doing so.

Like in *Haynes*, the completion of a registration form may tend to incriminate, even the most innocent among us, and even those who do their absolute best to actually comply with the law.

The U.S. Supreme Court has never held that the privilege against self incrimination is unavailable to those who claim innocence. To the contrary, it has emphasized that one of the Fifth Amendment's "basic functions ... is to protect innocent men ... 'who otherwise might be ensnared by ambiguous circumstances.'" *Grunewald v. United States*, 353 U. S. 391, 421 (1957) (quoting *Slochower v. Board of Higher Ed. of New York City*, 350 U. S. 551, 557-558 (1956)) (emphasis in original). In *Grunewald*, the Supreme Court recognized that truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth. 353 U. S., at 421-422. This has all been reaffirmed as recently as *Ohio v. Reiner*, 532 U.S. 17 (2001).

The right against self incrimination applies in both criminal and civil courts, and both federal and state courts. *McCarthy v. Arndstein*, 266 U.S. 34 (1924).

Like in *Haynes v. United States*, 390 U.S. 85 (1968), the obligation to register firearms under PICA is simply a function of having possession of a given firearm. Like in *Haynes,* not every possessor of a PICA firearm must so register. See *Caulkins v. Pritzker*, 2023 IL 129453 -

Ill: Supreme Court 2023. Basically, governmental actors are immune.[1] Like in *Haynes* and *Albertson v. Subversive Activities Control Board*, 382 U.S. 70 (1965), possessors of these arms are a "suspect class" at least by the current political class in Illinois State Government, and thus, at a minimum, could be used and abused by the State government, and others, like the City of Chicago, with access to the information.[2]

**FACTS**

In this case, in order for grandfathered firearms to be retained after December 31, 2023, they must be "registered" with the Defendant Illinois State Police, before January 1, 2024. The registration requirement is contained in 720 ILCS 5/24-1.9(d), and states that is so registering, the registrant must list the make, model, caliber, and serial number of the firearm. The crime is possessing such a firearm, not registered.

Likewise, under 720 ILCS 5/24-1.9(d), a person coming into possession of a PICA firearm is also required to register after January 1, 2024.(" The person to whom the weapon or ammunition is transferred shall, within 60 days of the transfer, complete an affidavit required under this Section.").

This information is expressly made available to "to law enforcement agencies acting in the performance of their duties." Id. This could include literally *any* police officer, states attorney or federal official, anywhere, potentially even police in foreign nations.

In contrast to the present version of the federal National Firearms Act, which provides limited use immunity ((26 U.S.C. 5646(a)) connected to registration data, nothing in the PICA

---

[1] The exceptions are sometimes couched is exempting "trained" persons, but notably, there is no exception for ISP certified firearm instructors, like under the Concealed Carry Act.
[2] It would appear that the PICA registration databases has been largely lifted from the U.S. DOJ operated NCIC system, as it appears to use the same codes and abbreviations as the NCIC. It is unclear at this time whether the PICA system is actually connected to the NCIC system, but if it is, it may violate federal law. Discovery on this topic will be requested.

statute indicates that persons who provide such registration data are not subject to having that data used against them in Court, to prosecute them. In fact, the opposite is true, as shiwn heretofore, the State expressly makes the information available to law enforcement, just like in the original NFA declared unconstitutional, under the 5th Amendment, in *Haynes v. United* States, 390 U.S. 85 (1968),

In paragraph 7 of Count I, of the Complaint, Plaintiff pleads, and Defendant Kelly, in his answer to same responds, in relevant part:

> 7. That while the purported ban purports to grandfather the existing possession of such firearms, the grandfathering mechanism, as written, violates the Fifth and Fourteenth Amendments to the U.S. Constitution, as explained in Haynes v. United States, 390 U.S. 85 (1968), in that it requires persons, without being provided any form of immunity, and for use of and by a criminal law enforcement agency, to complete a form with the Illinois State Police, and provide information on current and past conduct, which can be used against that person in a criminal court, and admit possession of certain firearms that under state law are generally declared to be unlawful.
> ANSWER: Defendant admits that the challenged statute contains a grandfather provision exempting firearms lawfully owned prior to the enactment of the statute that would otherwise be covered by the statute, <u>so long as the owner of said firearm fills out the paperwork described by the statute no later than January 1, 2024.</u>

Again, that is, "so long as the owner of said firearm fills out the paperwork described by the statute no later than January 1, 2024" the firearm will remain "legal". But maybe, just

maybe, the filling out the form itself results in a criminal charge, as it provides information to the police, literally the Illinois State Police, in a testimonial fashion, that can be used against the declarant.  Nothing in the statute prevents the Illinois State Police from providing the database and in information to, for instance, the Cook County, the Crawford County, or any other county, States Attorney.

Notably, as is likely undisputed, under PICA, the initial registration period is supposed to run from October 1, 2023, though and including December 31, 2023.  Compliance has been low, to say the least.  Per official ISP statistics, out of the claimed 2,415,481 FOID card holders in Illinois, literally, as of this date, only 6,141 persons have registered 12,086 firearms, for a compliance rate of about 0.02%. See Ex. A.

Why such low compliance?  Of course, Americans, as a people, tend to resist impositions on their liberty, whether or not the powers that be actually recognize that liberty.   This was predictable.  History notes the battles of Lexington and Concord were fought over Crown attempts to seize local arms, specifically, gunpowder.  Other states which have imposed firearm registration have also had low rates of compliance.  But Illinois' PICA apparently takes the cake for low compliance rates.  But then, Illinois did repeal its last bought with firearm registration in 1972 for general lack of compliance with same.

Could it be that residents of Cook County or Naperville, who own such firearms are afraid that local police will look at the registry, and arrest them, for violating local bans?  Nothing in the PICA statute would prohibit that.

Under *Haynes*, those that must deal with those jurisdictions certainly have something to fear from same.  It is certainly no secret that Cook County, Naperville, and other jurisdictions have some sort of firearm ban which overlaps the state.  Ex. B.  Complying with PICA might

well be admitting to a violation of a local ordinance. Cook County has long had a group called "CAGE", or Chicago Area Gun Enforcement" that presumably would use the registry to enforce such local "laws."  See

https://ojjdp.ojp.gov/sites/g/files/xyckuh176/files/pubs/gun_violence/profile11.html

Certainly, if Plaintiffs register any such firearms with the State, and travel to Chicago, it is all but certain that the local Chicago Police Department will use that registration data to single out Plaintiffs.  Witnesses can be presented, from Southern Illinois, who traveled to Chicago, with a valid FOID card, and an unloaded pistol cased in the trunk, who were arrested on fictitious firearm felonies, only to have those charges summarily dropped very early in the proceedings, but with the legal gun not returned.  Take, for instance, the actual case of People v. Ross, 682 NE 2d 87 - Ill: Appellate Court, 1st Dist., 6th Div. 1997, which found that the fact that Mr. Ross had a FOID card, meant there was probable cause that "that defendant owned a gun".  And as such, "Once the officers were presented with an indication that the individual with whom they were dealing owned a firearm, it was only reasonable for them to be concerned about the whereabouts of that gun and to question him regarding it."  Id.  Imagine if instead of merely showing Mr. Ross had a FOID card and was eligible to own a gun, that the officers saw Mr. Ross had actual registered firearms of a PICA nature.  This is not speculation; it is a reported state appellate opinion.

Could is be that Illinois firearms owners generally simply do not trust their government not to use this list to round up firearms in a soon to be announced ban?

Probably, but in candor that likely would not be a 5th Amendment problem, it would simply be that the people no longer trust their state.  After all, if the state can ban new firearms of

a given model, nothing stops it, short of just compensation, from banning existing firearms of that model.

Another very probable reason is that it is quote often impossible to actually comply, which leads squarely into the second part of the present issue, a 5th Amendment Due Process issue. Common sense dictates that if one wants a citizenry to voluntarily register their firearms, that there must be some actual reasonable way to do so. An incentive might help, but it must at least be possible. Much of the time in Illinois, under PICA, there simply is not either incentive, or opportunity, which again, leads to the present problem.

First, to register a firearm, one must have a FOID card. Certainly an impediment for some, but not for 2.4 million persons, including Plaintiffs who have FOID cards. But once the FOID card goes (and under a Buren analysis it will go), there goes the PICA registration requirements dependent on the FOID card. But that is an issue for another day, especially since, under *Haynes*, it is doubtful that PICA can be enforced against non FOID card holders anyway.

Second, and relevant for today, there must be a mechanism or form, that the state will accept, to register their firearm in question. For *some* firearms, check, there is an online system[3]. For others, Houston, we have a problem.

As is shown by the record here, there is no mechanism to properly actually register many common firearms that are required to be registered by the PICA statute, even many listed in the statute by make and model. Exs. D, E and F. Not now, not in the past. For many common and specifically PICA named firearms, it is impossible without going into mental gymnastics. Exs: D, E, F, G, H and I.

---

[3] There is no paper form to register a firearm, which likely, if such a document existed, would have prevented this issue from arising.

For instance, the PICA statute requires registration of certain Smith and Wesson rifles. See. Ex, G, page. 1.  Page 8 of the official State Assault Weapon Identification Guide (Ex. H) shows, as an example, a Smith and Wesson pistol which requires registration.

Similarly, the PS90, made by Fabrique National and marked as FN Columbia, SC, is on the ban list.  Ex G, p. 2.  FN, is not some obscure manufacturer, they are among the largest arms manufacturers in the world, been in operation for over a century, and the final employer of John Moses Browning.  Traditionally, most "Browning" brand firearms were and are made by FN.  FN is among, if not the top supplier of firearms to the U.S. military.

As is the folding stock U.S. M1 Carbine.  Ex H, page. 5.  U.S. M1 Carbines were made, in the literal millions, by, among others, (1) Inland Div. of General Motors, (2) National Postal Meter, (3) IBM, (4) Saginaw Steering Gear Div., and (5) Commercial Controls Corporation.  (Ex. I.).  This is not a complete list.

If one wanted to register one of the 200 or so firearms made by Piasa Arms company, a small gun shop in the Southern District of Illinois, it is listed and available for registration, but not such mega producers of literally millions of firearms, such as (1) Smith and Wesson, (2) FN, Columbia, S.C., (3) most of the manufacturers of M1 Carbines, (4) the former number 1 manufacturer of AR15 pattern rifles, Bushmaster, or its longtime competitor, (5) Olympic Arms. Ex. D, F.  Izhmash, who makes many of the verboten arms, not a recognized manufacturer on the PICA registration list, nor is SWD, the original 1980s manufacturer of the M-11 9mm pistol.  Ex.F  The large French arms maker MAS, whose collectable MAS 49/56 was made in the hundreds of thousands, and is now a valuable collectable, and probably a PICA firearm, not on the list.  Ex. F  TNW, who made .50 belt fed semi autos, and other PICA regulated firearms, and

still does, not on the list. Ex. F.  But obscure and defunct manufactures on single shot shotguns from the 1930s, that are not even required to be registered under PICA, dozens on the list.

So what is the possessor of a firearm so regulated to do?

One *might* send an e-mail to the official ISP firearms e-mail address and ask?  (Ex E). Good luck.

One *might* just pick a manufacturer that is sort of close, maybe, or one at random.  But, the disclosure page indicates that this might be a crime

> "Warning: Entering false information on this form is punishable as perjury under Section 32-2 of the Criminal Code of 2012. Entering false information on this form is a violation of the Firearm Owners Identification Card Act"

The filing is also verified, under oath, as follows "Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure [735 ILCS 5/1-109], I, under oath, swear, affirm, and certify by checking this box, that the statements set forth in this instrument are true and correct."

So putting the wrong manufacturer, on purpose, just to get the item "registered" is a double fail, as (1) its committing a crime, and (2) it does not register the firearm anyway.

One might even mark, "unknown" despite knowing full well who made the firearm, since on most guns, even 100 year old relics, the makers name is stamped on the gun.  One cannot simply mark, "unknown", as it will autofill with other options, that for the most part, simply do not apply.  See Ex. I. "Unknown" overlooks the fact that the manufacturer, is known, its simply not on the list, and at that, the closest "unknown" entry directs the registrant to literally "see NCIC operating manual, 2.5.3.1…. make code when gun make not listed" Ex. I.  Not does trying to type in "other".  Id.

So what is the owner to do? As the total universe of possibilities is either make a false statement, or make no statement at all, most honorable persons will choose to say nothing rather than a false statement. But this leaves the firearm, unregistered.

Per *Bryson v. United States*, 396 U. S. 64, 72, a citizen may decline to answer a Government question, or answer it honestly, but cannot with impunity knowingly and willfully answer it with a falsehood.

Thus, the possessor of a PICA firearm made by an unlisted manufacturer must simply not provide the data, as there is no mechanism to produce it, and per *Bryson*, the possessor cannot provide false information, by, for instance, just listing a similar sounding manufacturer, or one at random. There is no "other" selection available. Ex. I.

Likewise, assuming the state actually *fixes*[4] this problem, and it is after the new year, any person who might register their firearms would be admitting to not previously registering their firearms, a crime. Said another way, in January 1, 2024, if you try to register an unregistered firearm, under PICA, you are admitting to a crime, and not afforded any immunity for same. That crime would be, possession of an unregistered firearm. Likely, the same firearm that the ISP registration database will not physically allow to be properly registered today, or yesterday, or at any time between October 1, 2023 and January 1, 2024. These are not all obscure firearm,

---

[4] A simple solution to this problem had the State Beta tested this system would be either (1) accept paper form that one writes in the information, or (2) modify the online system to allow the registrant to select either "other" as an option, or type in the name of unlisted manufacturers. Instead, in typical fashion, we end up with obscure manufacturers, like Piasa Arms, who have made fewer than 200 firearms total, being listed, and such firearms giants, as Inland Division of General Motors and Bushmaster Firearms, whose products were once turned out in the *Millions*, not being listed. Even Altor Firearms, whose only known product is a single shot pistol, is listed as a manufacturer under the PICA registration system, despite never apparently making a repeating firearm.

many many of these, as noted, are common firearms, but large manufacturers, listed by name in the ban!

In 1968, several years after the 7th Circuit came to the same conclusion, the Supreme Court of the United States faced a similar problem, in *Haynes v. United States*, 390 U.S. 85 (1968), wherein, under the original version of the National Firearms Act, the possessor of an unregistered "firearm" as defined was compelled to file registration paperwork for same, and to thus, admit his possession of same. This database, like the PICA database, was available to local law enforcement. Thus, registration could be dangerous for an unregistered possessor.

Three years later, in *United States v. Freed*, 401 U.S. 601 (1971), the Supreme Court had opportunity to inspect the revised National Firearms Act, enacted after *Freed*. In *Freed*, the Supreme Court noted that use immunity was provided to registrants, the information was not made available to law enforcement, or any one else, except to prosecute a violation of the actual Act, and similar other reforms made, thus, there was no risk of self incrimination under the revised act. Basically, NFA registration data was, and in theory at least (if sometimes not actual practice) supposed to be limited to ATF officials who enforces the NFA, and at that, only to ensure compliance with the NFA, not random other statutes.

Here, even assuming at this point that the state did fix the problem with not being able to register a firearm by an unlisted manufacturer (like Inland Div of General Motors or Bushmaster Firearms, or Smith and Wesson), or simply provided a plain "unknown" or "other" without comment or suggestion of reading the NCIC manual, it would be a day late and a dollar short. In two weeks, anyone registering a firearm, whether or not possible to previously register, is almost certainly being compelled to provide testimony to potentially incriminate themselves, which they have a right not to do under the 5th Amendment. If not so fixed, the State has not set forth an

actual mechanism to truthfully register much of the PICA regulated firearms in actual circulation, thus requiring, either lack of registration, or a false statement by the would be registrant. But there is a right to remain silent to not be forced to commit perjury. In the meantime, even assuming a person is able to register a PICA firearm, they are being compelled, under penalty of law, to provide testimonial evidence of their firearm possession (not just eligibility to possess, actual possession), which law enforcement around the state can use to justify probable cause to search their car, like in *People v. Ross*, and worse.

And even overlooking all of the foregoing, as every police officer in the State will be notified that a given person has or has not registered firearms under PICA, there will be some interesting traffic stops, especially in areas with local firearms regulation, but also potentially across the State, including Crawford County, about whether or not their PICA registered .22 pocket pistol, with a threaded barrel, is at home, or in some place it cannot be carried under PICA.

## CONCLUSION

The Fifth and 14th Amendments protect due process and rights against self incrimination. Requiring a person to register a given firearm, but not allowing them to list the actual manufacturer known to owner is a due process violation, as it requires either making a false statement, or not complying, and risking punishment. Likewise, under *Haynes*, the right to not provide information that could be reasonably used against you in registering a firearm, bars any enforcement of any statute criminalizing same.

The bottom line is the same, the registration requirements are unconstitutional under the 5th Amendment, for either lack of due process, violating rights against self incrimination, or both.

      The remedy for the due process and the self incrimination problem is the same, this Court should find the existing prohibition on the possession of any firearm or item, possessed in violation of the registration requirements of PICA, violates the 5th Amendment, and enjoin enforcement of all such registration requirements under the present statute, including but not limited to any ban on possession of PICA regulated firearms (or accessories or ammunition) that have not been so registered.

      While the lack of listed manufacturers could potentially be remedied with software edits and a temporary extension of the registration period, the self incrimination defect is a fatal flaw of the PICA statute, just as it was under the original NFA, as set forth in *Haynes*.  *Haynes* remains good law, and the unequivocal opinion of our Supreme Court.  To that end, this Court has a duty to strike, at a minimum, the registration requirements of PICA.  This Court, like all courts, is duty-bound to strike down unconstitutional acts of the legislature. As The Constitution of the United States and the decisions of the United States Supreme Court are the supreme law of the land, and bind every court in the land. *People v. Gersch*, 553 NE 2d 281 (Ill 1990) citing *People v. Loftus* (1948), 400 Ill. 432, 436.).

Dated:  12-20-2023                  Respectfully Submitted,

                                                      Jeremy Langley, et al

                                                      By:s/Thomas G. Maag

                                                      Thomas G. Maag
                                                      Peter J. Maag
                                                      Maag Law Firm, LLC
                                                      22 West Lorena Avenue
                                                      Wood River, IL  62095
                                                      618-973-8679
                                                      tmaag@maaglaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed, using the CM/ECF system, which will send notification to all registered users:

Dated:  12-20-2023                                                                S/Thomas G. Maag