## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALEB BARNETT, *et al.*,<br>        Plaintiffs,<br><br>                v.<br><br>KWAME RAOUL, *et al.*,<br>        Defendants. | Case No.  3:23-cv-209-SPM (Lead Case) |
| DANE HARREL, *et al.*,<br>        Plaintiffs,<br><br>                v.<br><br>KWAME RAOUL, *et al.*,<br>        Defendants. | Case No.  3:23-cv-141-SPM |
| JEREMY W. LANGLEY, *et al.*,<br>        Plaintiffs,<br><br>                v.<br><br>BRENDAN KELLY, *et al.*,<br>        Defendants. | Case No.  3:23-cv-192-SPM |
| FEDERAL FIREARMS<br>LICENSEES OF ILLINOIS, *et al.*,<br>        Plaintiffs,<br><br>                v.<br><br>JAY ROBERT "J.B." PRITZKER, *et al.*,<br>        Defendants. | Case No.  3:23-cv-215-SPM |

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

There are two motions pending before the Court. The first is a Motion for Preliminary Injunction (Doc. 57) filed by Plaintiffs Federal Firearms Licensees of Illinois, Guns Save Life, Gun Owners of America, Gun Owners Foundation, Piasa Armory, Debra Clark, Jasmine Young, and Chris Moore (collectively, the "*FFL* Plaintiffs") pursuant to Federal Rule of Civil Procedure 65(a). The *FFL* Plaintiffs seek to enjoin the "enforcement of the registration requirement *as a condition* of continued possession" (*see* Doc. 68, p. 17) implemented by the Protect Illinois Communities Act Emergency Relief Rules (the "Emergency Rules") filed by the Illinois State Police and implemented by the Illinois Joint Committee on Administrative Rules on September 15, 2023. *See* 49 Ill. Reg. 13848–78; (*see* Doc. 57, Ex. B, p. 1). The second motion is a Motion to Dismiss filed by the Illinois Government Defendants (Doc. 66) seeking to dismiss the *FFL* Plaintiffs' two Fourteenth Amendment due process claims. The Government integrates their response to these claims into their Memorandum in Opposition to the Preliminary Injunction. (*See* Doc. 67). The *FFL* Plaintiffs also filed a Reply (Doc. 68) and a Supplemental Response to the Motion to Dismiss (Doc. 74). Having been fully informed of the issues presented, this Court **DENIES** the *FFL* Plaintiffs' Motion for Preliminary Injunction arguing that the Illinois registration requirement is unconstitutional. The Court also **GRANTS** the Government's Motion to Dismiss the *FFL* Plaintiffs' Fourteenth Amendment due process claims.

### Relevant Factual And Procedural Background

Within six months of the Supreme Court decision in *New York State Rifle &
Pistol Ass'n, Inc. v. Bruen*,[1] Governor J.B. Pritzker signed the Protect Illinois
Communities Act into law. *See* Ill. Pub. Act 102-1116 § 1 (codified at 720 Ill. Comp.
Stat. 5/24-1.9–1.10) [hereinafter PICA]. Caleb Barnett, Brian Norman, Hoods Guns
& More, Pro Gun and Indoor Range, and National Shooting Sports Foundation, Inc.
(collectively the "*Barnett* Plaintiffs"), the *FFL* Plaintiffs, and various other citizen
firearm owners, firearm retail establishments, and firearms advocacy organizations
immediately commenced four separate actions[2] against various Illinois government
actors seeking a declaratory judgment that PICA is unconstitutional. Their argument
is that, inter alia, under the Second and Fourteenth Amendments, PICA is
unconstitutional primarily because of the precedent established in *Bruen*. *See* 142 S.
Ct. 2111 (2022); *see also McDonald v. City of Chicago*, 561 U.S. 742 (2010); *District of
Columbia v. Heller*, 554 U.S. 570 (2008). All four groups of plaintiffs sought
preliminary injunctions to enjoin the enforcement of PICA[3]; this Court imposed a
preliminary injunction in *Barnett* on April 28, 2023. *See Barnett v. Raoul*, No. 23-cv-
00141-SPM, 2023 WL 3160285 (S.D. Ill. Apr. 28, 2023) (Doc. 101). The Defendants
appealed to the Seventh Circuit on the same day. (*See* Doc. 102). The Seventh Circuit

---

[1] 142 S. Ct. 2111 (2022). *Bruen* was decided on June 22, 2022. *See id.* PICA was signed into law on
January 10, 2023. (Doc. 57, Ex. B, p. 1).
[2] This Court consolidated the following four cases for purposes of discovery and injunctive relief: *Harrel
v. Raoul*, 23-cv-00141-SPM; *Langley v. Kelly*, 23-cv-00192-SPM; *Barnett v. Raoul*, 23-cv-00209-SPM;
and *Fed. Firearms Licensees of Ill. v. Pritzker*, 23-cv-00215-SPM. *Barnett* was designated as the lead
case. (*See* Doc. 32).
[3] *See Harrel*, 23-cv-00141-SPM (Doc. 16); *Langley*, 23-cv-00192-SPM (Doc. 6); *Barnett*, 23-cv-00209-
SPM (Doc. 10); and *Fed. Firearms Licensees of Ill.*, 23-cv-00215-SPM (Doc. 28).

vacated the preliminary injunction on November 3, 2023. *See Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. Nov. 3, 2023). Various *Bevis* Plaintiffs (including the *Barnett* and *Langley* Plaintiffs) filed petitions for rehearing by the same panel and rehearing en banc, *see Bevis* (Docs. 129, 139), which were denied by the Seventh Circuit on December 11, 2023. *See Bevis* (Docs. 146, 147). Two *Bevis* plaintiffs (the National Association for Gun Rights and one of the local gun stores) filed an application for writ of injunction with the Supreme Court—Justice Amy Coney Barrett referred the application to the full Supreme Court, which denied it on December 14, 2023. *See Nat'l Ass'n for Gun Rts. v. City of Naperville*, No. 23A486 (Dec. 14, 2023). The Seventh Circuit issued the mandate in relation to *Barnett* on December 19, 2023. *See Barnett v. Raoul*, No. 23-1825 (Nov. 3, 2023) (Doc. 149).

After submitting an Amended Complaint adding an argument that the Illinois registration scheme is unconstitutional under the Second and Fourteenth Amendments (*see* Doc. 55), the *FFL* Plaintiffs filed the instant Motion for Preliminary Injunction on November 13, 2023.[4] (*See* Doc. 57). The pending Motion concerns the Emergency Rules filed by the Illinois State Police ("ISP") with the Illinois Joint Committee on Administrative Rules ("JCAR") that went into effect on September 15, 2023. (*See id.*, Ex. B, p. 1). After PICA was signed into law in January 2023, the ISP was tasked with implementing a process via which firearms owners could register specific assault weapons, attachments,[5] and ammunition designated by PICA. (*See*

---

[4] This Motion was only filed on behalf of the *FFL* Plaintiffs in their individual case (i.e., it was not filed in *Barnett*, the lead case).

[5] Such attachments include "barrel shrouds," "flash suppressors," and the like.

*id.*). The Emergency Rules directed those in possession of these specifically designated items to upload an endorsement affidavit electronically via their Firearm Owner's Identification ("FOID") card account no later than January 1, 2024. (*See id.*). This electronic portal opened on October 1, 2023.[6] (*See id.*). The criminal penalties associated with knowing possession of designated assault weapons, ammunition, and attachments will go into effect on January 1, 2024. (*See id.*). The *FFL* Plaintiffs seek to enjoin enforcement of the registration requirement implemented by the Emergency Rules before PICA goes into effect on January 1, 2024. The Defendants responded to the Motion for Preliminary Injunction on December 1, 2023 with a Motion to Dismiss the *FFL* Plaintiffs' two Fourteenth Amendment due process claims and a Memorandum in Opposition to the Motion for Preliminary Injunction. (*See* Docs. 66 & 67). The *FFL* Plaintiffs then filed a Reply on December 6, 2023. (*See* Doc. 68). Oral arguments were held before the Court on December 12, 2023. (*See* Doc. 69). The Court provided the *FFL* Plaintiffs leave to file an additional response to the Government's Motion to Dismiss—this response was filed on December 15, 2023. (*See* Doc. 74).

## LEGAL STANDARDS

### I.   STANDING

In our tripartite system of government, the judiciary does not have unrestricted authority to determine the constitutionality of legislative or executive acts. The United States Constitution endows the federal courts with "the judicial

---

[6] The Court notes that PICA expressly indicates that the endorsement affidavits must be filed "no later than October 1, 2023." PICA at 5/24-1.9. The Emergency Rules change this timeline to being after October 1 but no later than January 1, 2023. *See* Emergency Rules § 1230.15(b).

Power of the United States." U.S. Const. art. III, § 1. While this power is not specifically enumerated like those powers assigned to Congress, the judicial power is limited to cases and controversies. *See id.* art. III, § 2; *see also id.* art I, § 8 (listing Congress's powers). Advisory opinions are forbidden. *See, e.g.*, *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947); *see also id.* at 89 n.10 (collecting cases). Additionally, more than two hundred years ago, the Supreme Court clarified that the judicial branch of the government was on even footing with the legislative and executive branches. *See Marbury v. Madison,* 5 U.S. 137 (1803).

Standing to bring suit is one of the controlling elements in the definition of a case or controversy in accordance with Article III. *See ASARCO Inc. v. Kadish,* 490 U.S. 605, 613 (1989). The plaintiff must (1) have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation and quotation marks omitted). Next, "there must be a causal connection between the injury and the conduct complained of," meaning that "the injury has to be "fairly . . . trace[able] to the challenged action of the defendant." *Id.* at 560–61 (*quoting Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed be a favorable decision.'" *Id.* (citing *Simon* at 38); ); *see also Korte v. Sebelius*, 735 F.3d 654, 667 (7th Cir. 2013); *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

## II.    INJUNCTIVE RELIEF

A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023) (quoting *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021)). The purpose of a preliminary injunction is "preserve the relative positions of the parties until a trial on the merits can be held." *Tully v. Okeson*, 78 F.4th 377, 381 (7th Cir. 2023) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). The issuance of a preliminary injunction should also "minimize the hardship to the parties pending final judgment." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).

Crucially, "[t]he party seeking a preliminary injunction bears the burden of showing that it is warranted." *Finch*, 82 F.4th at 578 (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). In the Seventh Circuit, "a district court engages in an analysis that proceeds in two distinct phases to decide whether such relief is warranted: a threshold phase and a balancing phase." *Valencia v. City of Springfield,* 883 F.3d 959, 965 (7th Cir. 2018). In order to proceed beyond the "threshold phase," the party seeking a preliminary injunction must satisfy three requirements via a showing that: "(1) it will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." *HH Indianapolis, LLC v. Consol. City of Indianapolis & Cnty of Marion*, 889 F.3d 432, 437 (7th Cir. 2018); *see also Finch* at 578 (citing *Speech First*, 968 F.3d at 637); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction

must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

Additionally, "[i]f it is plain that the party seeking the preliminary injunction has no case on the merits, the injunction should be refused regardless of the balance of harms." *Valencia*, 883 F.3d at 966 (quoting *Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359, 361 (7th Cir. 1993)). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Moreover, regarding the likelihood of success on the merits, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Id.* (quoting and disapproving *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)); *see also Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020) ("[A]n applicant for preliminary relief bears a significant burden, even though the Court recognizes that, at such a preliminary stage, the applicant need not show that it definitely will win the case. A 'strong' showing thus does not mean proof by a preponderance—once again, that would spill too far into the ultimate merits for something designed to protect both the parties and the process while the case is pending. But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case.").

If the threshold requirements are met, "the court must balance the equities, weighing the harm to the moving party if the requested injunction is denied against the harm to the nonmoving party and the public—including third parties—if it is

granted." *Finch* at 578 (citing *Cassell*, 990 F.3d at 545). In the second phase, "the court weighs the harm of denying an injunction to the movant against the harm of granting an injunction to the nonmovant." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023). This is accomplished via "a sliding scale—the greater the movant's likelihood of success on the merits, the less the harms need be in its favor." *Id.* (citing *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). The court must also consider the public interest. *Id.*

## III.   FACIAL CHALLENGES AND SEVERABILITY

The Supreme Court has said that "[t]he general practice, outside of the First Amendment context, has been to consider the purported vagueness of a statute in light of the facts of the particular case—i.e., as applied—rather than in the abstract." *United States v. Cook*, 970 F.3d 866, 873 (7th Cir. 2020) (footnote omitted) (citing *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *United States v. Johnson*, 875 F.3d 360, 370 (7th Cir. 2017)). That being said, "the Supreme Court has on a number of occasions entertained facial challenges to criminal statutes that do not implicate First Amendment concerns." *Id.* (collecting cases). A statute that is constitutionally void for vagueness "is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Smith v. Goguen*, 415 U.S. 566, 578 (1974); *see Cook*, 970 F.3d at 873. Such a statute without a specified standard "poses a trap for the person acting in good faith, who is given no guidepost by which he can divine what sort of conduct is prohibited." *Cook* at 873 (citing *Colautti v.*

*Franklin*, 439 U.S. 379, 395–96 (1979), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022)). When a statute does not contain a mens rea requirement, the "concern is heightened." *Id.* (citing *Colautti* at 395).

"Whether invalid provisions in a state law can be severed from the whole to preserve the rest is a question of state law." *Burlington N. & Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790, 804 (7th Cir. 1999) (citing *Leavitt v. Jane L.*, 116 S. Ct. 2068, 2069 (1996); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 506 (1985)). The Illinois Supreme Court has stated "the general test in determining whether an invalid part of a statute is severable" is the following:

> If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated.

*Com. Nat. Bank of Chi. v. City of Chicago*, 432 N.E.2d 227, 240 (Ill. 1982) (citing *Livingston v. Ogilvie*, 250 N.E.2d 138 (Ill. 1969); *City of Carbondale v. Van Natta*, 338 N.E.2d 19 (Ill. 1975); *Village of Oak Lawn v. Marcowitz*, 427 N.E.2d 36 (Ill. 1981)).

## IV.   MOTIONS TO DISMISS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals

for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## ANALYSIS

The *FFL* Plaintiffs advance two primary arguments against the ISP's implementation of the registration requirement in the Emergency Rules in their Motion for Preliminary Injunction—an argument that the registration requirement is unconstitutional under the Fourteenth Amendment's Due Process Clause and an argument that it is unconstitutional under the Second Amendment. (*See* Doc. 57). The Court will discuss each of these arguments in turn. As is the Seventh Circuit's

preference, the Court will consider the likelihood of success on the merits before considering whether or not the *FFL* Plaintiffs have alleged irreparable harm. *See Bevis*, 85 F.4th at 1186.

As an initial matter, the *FFL* Plaintiffs argue that an injunction must issue before January 1, 2024 "to protect their rights and those of the public." (Doc. 57, p. 2). Conversely, the Government argues that the *FFL* Plaintiffs "are continuing to seek appellate review of their first preliminary injunction motion" and that they desire for this Court "to overrule the Seventh Circuit's decision declining to preliminarily enjoin" PICA. (Doc. 67, p. 4). Finally, the Government argues that "the Seventh Circuit has already held that such a claim is unlikely to succeed on the merits." (*Id.*, p. 32 (citing *Bevis* at *18)).

The mechanics of Illinois's registration requirement were not implemented until September 15, 2023, more than two-and-a-half months after oral arguments before the Seventh Circuit on June 29, 2023. Moreover, the ISP submitted a second set of proposed revisions to the JCAR that were reviewed and rejected by JCAR on December 12, 2023. (*See* Doc. 68, Ex. C, D). Therefore, the mechanics of the registration process were not implemented at the time of the first preliminary injunctions in this case (and, in fact, are still in the process of revision), and, thus, the *FFL* Plaintiffs are not attempting "to circumvent the Seventh Circuit's rejection of their first request for injunctive relief" or to "to re-litigate positions the Seventh Circuit just rejected," at least, not to the degree that the Court will not assess their

claims here as related to the registration requirement, specifically. (*See* Doc. 67, p. 32 (citing Doc. 57, pp. 14–20)).

While the Government argued that the lack of mandate from the Seventh Circuit barred consideration of various aspects of this Motion (*see* Doc. 67, p. 32 (citing *Aljabri v. Holder*, 745 F.3d 816, 820 (7th Cir. 2014))), the issuance of the mandate renders these arguments moot. Therefore, this Court is within its jurisdiction to address the instant matter and the Court moves to threshold review of the *FFL* Plaintiffs' claims.

## I.    Fourteenth Amendment Due Process Clause

## A.    Inadequate Notice

First, the *FFL* Plaintiffs argue that the Emergency Rules violate the Fourteenth Amendment's Due Process Clause because the State of Illinois failed to give adequate notice of the registration requirements for weapons, attachments, and ammunition, the knowing possession of which will be subject to criminal sanctions on January 1, 2024. (*See* Doc. 57, pp. 4–7). This first argument is directed at the method by which the ISP implemented the PICA-mandated registration requirement via the Emergency Rules at issue in the instant Motion. (*See* Doc. 57, p. 3). As discussed above, pursuant to PICA, Illinois residents are directed to register certain firearms, attachments, and ammunition by January 1, 2024, when knowing possession of specific weapons, attachments, and ammunition becomes a felony. *See* PICA at 5/24-1.9(d); 720 Ill. Comp. Stat. 5/24-1(b); (*see* Doc. 57, p. 3). PICA directed the ISP to promulgate a process by which Illinois residents could register these items. *See* PICA

at 5/24-1.9(d); (*see* Doc. 57, p. 3). The JCAR issued these rules on an emergency basis on September 15, 2023. (*See id.*, Ex. B, p. 1).

Illinois law allows for the immediate implementation of rules on an emergency basis, without waiting for the completion of a public comment period. *See* Illinois Administrative Procedure Act, 5 Ill. Comp. Stat. 100/5-45(c) [hereinafter IAPA]. The *FFL* Plaintiffs argue that this process runs afoul of the Fourteenth Amendment's Due Process Clause because Illinois did not "provide direct notice" either to FOID cardholders, specifically, or to Illinois residents, more generally. (Doc. 57, p. 5; *see* Doc. 68, pp. 2–5). The *FFL* Plaintiffs argue that the lack of direct notice to FOID cardholders (and to Illinois citizens, as a whole) coupled with the short time window for compliance renders this process constitutionally insufficient. (*See* Doc. 57, pp. 5–6; Doc. 68, pp. 2–5). As they argue, this process is especially concerning because it criminalizes purchases of specific firearms and firearm accessories that were purchased legally before January 10, 2023 when PICA was signed. (*See id.*, p. 6).

The Government challenges the *FFL* Plaintiffs' standing to bring this claim entirely. (*See* Doc. 67, pp. 12–15). They specifically argue that "Plaintiffs do not seek redress for their own injuries; rather, they seek redress for injuries they speculate may have been suffered by hypothetical non-parties not before the Court." (Doc. 67, p. 12 (citing Doc. 57, p. 6 n.2)). Moreover, the Government argues that "the Individual Plaintiffs cannot be injured by the endorsement affidavit process because none have alleged that they lawfully owned an assault weapon prior to the Act's effective date; and in any event, their amended complaint confirms they all have notice of the

process and the deadline for registering such weapons." (*Id.*, p. 13). Discussing each of the *FFL* Plaintiffs, the Government argues that the Gun Store Plaintiff (Piasa Armory) and the Advocacy Organization Plaintiffs (Federal Firearms Licensees of Illinois, Guns Save Life, Gun Owners of America ("GOA"), and Gun Owners Foundation ("GOF")) are not individuals and, thus, cannot be injured nor can they show specific injuries from the lack of notice of the registration requirement. (*See id.*). Moreover, the Government alleges that the Gun Store and Advocacy Organization Plaintiffs have not "seriously attempted to show the type of 'representational' standing that allows an organization to bring claims 'solely as the representative of its members.'" (*Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975); *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2157–58 (2023)). They argue that the Declaration of Todd Vandermyde (a member of all three groups) is insufficient because Vandermyde states that he has notice of the requirements. (*Id.*, p. 14). The notice claim does not reference the Individual Plaintiffs in this action (e.g., Debra Clark, Jasmine Young, and Chris Moore) at all.

The Government argues that the *FFL* Plaintiffs' burden is "at least as great as the burden of resisting a summary judgment motion," meaning they "must set forth by affidavit or other evidence specific facts, rather than general factual allegations of injury." (*Id.*, p. 12 (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020)). The Government states that the *FFL* Plaintiffs cannot manufacture standing either by "inflicting harm on themselves" or by "inflicting harm on their members," by refusing to submit endorsement affidavits. (*Id.*, p. 14 (quoting *Clapper v. Amnesty*

*Int'l USA*, 568 U.S. 398, 416 (2013)); *see also Morgan v. White*, 964 F.3d 649, 651 (7th Cir. 2020) ("One important question, when a plaintiff seeks emergency relief, is whether the plaintiff has brought the emergency on himself.").

In their Reply (Doc. 68), the *FFL* Plaintiffs argue that "[b]ecause the registration requirement applies to everyone in current possession of an 'assault weapon' or 'assault weapon attachment,' it necessarily applies to the organizational Plaintiffs' members and supporters, who are, by definition, gun owners in Illinois." (*Id.*, p. 2). They claim that it is not their responsibility to inform Illinois residents of the registration requirement and, even if it were, the current timeframe (especially during the winter holidays) would make such notice impractical. (*See id.*, p. 5; *see also id.*, Decl. of Erich M. Pratt). The *FFL* Plaintiffs also emphasize that the PICA-mandated registration requirements apply retroactively to criminalize lawful conduct that occurred before PICA, meaning that the harm is particularly acute here. (*See* Doc. 57, p. 7; Doc. 68, p. 5 n.4). In their Supplemental Response (Doc. 74), the *FFL* Plaintiffs argue that the matter of associational standing was settled by the Seventh Circuit in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011).

Notably, *Ezell* states that "[w]here at least one plaintiff has standing, jurisdiction is secure and the court will adjudicate the case whether the additional plaintiffs have standing or not." *Id.* at 696 n.7 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977); *Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009); *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 530–31 (7th Cir. 1988)). Thus, the *FFL* Plaintiffs must only demonstrate that *one* of the named

plaintiffs in their action has standing to bring suit (e.g., an Individual, the Gun Store, or one of the Advocacy Organization Plaintiffs).

As the Government states, the notice requirements apply only to *individuals* who possess FOID cards. (*See* Doc. 67, pp. 12–13). In order to electronically file an endorsement affidavit, an individual must have a FOID account, which requires an email address, state identification (driver's license or state identification), and a FOID card. *See Protect Illinois Communities Act, Regulation on Assault Weapons*, ILL. STATE POLICE, https://isp.illinois.gov/Home/AssaultWeapons [https://perma.cc/7YH2-KL7F] (last visited Dec. 6, 2023) [hereinafter *ISP Assault Weapons Webpage*]. Therefore, in the absence of specific facts, the registration requirement categorically cannot apply to non-individuals (e.g., the Gun Store and Advocacy Plaintiffs) because they cannot register for FOID accounts. As the Government argues, the *FFL* Plaintiffs do not allege that the non-individual plaintiffs have standing on behalf of their members (e.g., some kind of economic injury or chilling effect). (*See* Doc. 67, p. 13; *see also id.*, p. 15 (citing *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 384 (7th Cir. 2020); *Speech First*, 968 F.3d at 638; *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013))). The *FFL* Plaintiffs provide a Declaration which they claim establishes institutional standing for their members (*see* Doc. 68, Decl. of Erich M. Pratt) and offer *Ezell* only to argue that the Advocacy Organization Plaintiffs have standing to sue on behalf of their Illinois-resident members. (*See* Doc. 74 (citing *Ezell*)).

In *Ezell*, the City of Chicago passed a municipal ordinance banning firing ranges within city limits. *Id.* Individual and associational plaintiffs challenged this

requirement under the Second Amendment. *Id.* The District Court determined that the associational plaintiffs did not have standing and denied the plaintiffs' motion for a preliminary injunction to enjoin the ordinance. *Id.* Overruling the District Court's dismissal of the motion for preliminary injunction, the Seventh Circuit stated that because "the plaintiffs are not seeking an injunction against the range-training requirement," it did not matter that range training was available and accessible *outside* the city limits. *Id.* Therefore, the plaintiffs were not required to produce evidence of individual Chicago citizens who were "unable to travel" to a range. *Id.*

Therefore, the question is whether the instant Motion is distinguishable from that at issue in *Ezell*. Here, the *FFL* Plaintiffs argue that the attachment of criminal penalties for failure to register assault weapons, attachments, and ammunition prior to the January 1, 2024 deadline is an adequate injury-in-fact to confer standing. (*See* Doc. 57, p. 6). In *Ezell*, the plaintiffs were challenging the constitutionality of Chicago's firing range ban entirely under the First and Second Amendments. *See Ezell* at 696. They were not seeking an injunction to enjoin the range-training requirement. *Id.*; *see also id.* at 697 ("The pertinent question is whether the Second Amendment prevents the City Council from banning firing ranges everywhere in the city; that ranges are present in neighboring jurisdictions has no bearing on this question."). Here, the *FFL* Plaintiffs are directly challenging *notice of the registration requirement*, not (at least, in this due process claim) whether or not the Second Amendment precludes registration of certain assault weapons entirely. (*See* Docs. 57, 68, 74).

Additionally, *Ezell* requires that plaintiffs must meet the following requirements for associational standing: "(1) their members would otherwise have standing to sue in their own right; (2) the interests the associations seek to protect are germane to their organizational purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit." *Id.* at 696. Factors (2) and (3) are clearly met in this case. The question is then, once more, whether individual members *would have* standing to sue. The three individual *Ezell* plaintiffs had standing to sue (regardless of the status of the organizational plaintiffs) because two of them completed range training outside of Chicago and a third did not and, therefore, "must keep his firearm outside the city to avoid violating the Ordinance." *Id.* at 696. It should be noted that these three plaintiffs took *affirmative steps* to follow the municipal ordinance, even if they clearly believed it to be unconstitutional. *Id.* Thus, willful noncompliance with the registration scheme because of its alleged unconstitutionality would seem to *not* be a viable option when compliance is possible, reading between the lines in *Ezell*.

As discussed above, the *FFL* Plaintiffs have not argued that any of the Individual Plaintiffs have standing to sue (i.e., that any of the individuals are facing imminent harm from inadequate notice of the registration requirement or that they even have assault weapons, attachments, or ammunition proscribed by PICA). The *FFL* Plaintiffs merely state that, because there are members of the Advocacy Organizations who have expressed confusion and because hypothetical Illinois

citizens[7] may not have notice of the registration requirements, that this confers associational standing. (*See* Doc. 57, pp. 6 n.2). The *FFL* Plaintiffs offer Vandermyde's Declaration (stating that he is a member of Guns Save Life, Gun Owners of America, and Federal Firearms Licensees of Illinois), Pratt's Declaration (stating that he is a Senior Vice President of both Gun Owners of America and Gun Owners Foundation), and statements regarding the hypothetical Illinois citizens that may not be informed of the requirements. (*See* Doc. 57, pp. 6 n.2, 14; *see also id.* Ex. B; Doc. 68, Ex. B). The *FFL* Plaintiffs do not allege that specific individuals did not have notice of the requirements; they only argue that the Illinois government did not give adequate notice to the *public* as evidenced by the number of FOID cardholders who have filed endorsement affidavits. (*See* Doc. 68, p. 3 n.2 (citing Greg Bishop, *Just 0.08% of Illinois Gun Owners Register Banned Firearms in Week 3 of Registry*, CTR. SQUARE (Oct. 25, 2023), https://www.thecentersquare.com/illinois/article_1ddd6e46-737e-11ee-89d9-73b7b802bd68.html [https://perma.cc/E8AV-TXT7])). As of the date of this Order, 8,143 individuals out of 2,415,481 Illinois FOID cardholders (0.34%) have submitted affidavits. *FOID Statistics*, ILL. STATE POLICE, https://isp.illinois.gov/Foid/Statistics [https://perma.cc/X2XK-35XF] (last visited Dec. 22, 2023); *see* Greg Bishop, *Illinois Gun Owners Struggle with State's Looming Banned Gun Registry*, CTR. SQUARE (Dec. 22, 2023), https://www.msn.com/en-us/news/us/illinois-gun-owners-struggle-with-state-s-looming-banned-gun-registry/ar-AA1lTMbX [https://perma.cc/PQP8-FZNY].

---

[7] The *FFL* Plaintiffs specifically reference deployed military members as potentially having inadequate notice of the Emergency Rules. (*See* Doc. 57, p. 6 n.2).

The Government is correct that, absent a clear indication that the Advocacy Organizations have standing to sue on behalf of their members, the *FFL* Plaintiffs cannot bring suit on behalf of hypothetical, unnamed Illinois citizens who allegedly do not have adequate notice of the registration requirements. (*See id.*, p. 12 (citing Doc. 57, p. 6 n.2)). Moreover, the fact that FOID cardholders have not filed endorsement affidavits does not necessarily mean that they lack notice of the new requirements. Thus, the *FFL* Plaintiffs have not sufficiently alleged that they have standing to bring a due process claim for lack of notice. The Court notes that the discussion of standing is applicable to the notice claim *only*, not to the claims on vagueness or under the Second Amendment as discussed *infra*. Moreover, as they are without standing to bring this claim, it must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted.

That being said, even though the *FFL* Plaintiffs lack standing to sue on behalf of Illinois citizens who did not receive adequate notice absent additional factual declarations and caselaw, the Court will address their arguments on the merits in order to adequately develop the record. The Seventh Circuit has stated that "the statute or regulation is adequate notice in and of itself as long as it is clear." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 600 (7th Cir. 2016) (citing *Walker Stone, Inc. v. Sec'y of Labor*, 156 F.3d 1076, 1083 (10th Cir. 1998); *Becker v. Lockhart*, 971 F.2d 172, 174 (8th Cir. 1992)). That being said, this notice requirement applies to PICA and does not necessarily extend to the Emergency Rules promulgated on September 15, 2023.

The key issue is whether or not Illinois's actions offend due process. Notably, Illinois has taken the appropriate actions in line with the IAPA. A press release regarding the Emergency Rules was filed on September 15, 2023. *See* Press Release, Illinois State Police, Protect Illinois Communities Act Emergency Rule Filed (Sept. 15, 2023), https://isp.illinois.gov/Media/CompletePressRelease/850 [https://perma.cc/9W32-P97Z] [hereinafter Emergency Rules Press Release]; (*see* Doc. 57, Ex. B., p. 1). The ISP filed their proposed rule with the JCAR, which then approved it and published it in the Illinois Register, including "[t]he agency's finding and a statement of the specific reasons for the finding." *See* IAPA at 5-45(b). The ISP's website provides the public with a means to submit comments on the regulation[8] and three public hearings were conducted for the public to attend in November 2023.[9] *See* Emergency Rules Press Release; (*see* Doc. 57, Ex. B., p. 1). The ISP continues to update the website as questions arise. (*See* Doc. 68, p. 11). In addition to the above, the IAPA contains a catchall provision which states that "[t]he agency shall take *reasonable and appropriate measures* to make emergency rules known to the persons who may be affected by them." *See* IAPA at 5-45(b) (emphasis added). As previously

---

[8] *See Protect Illinois Communities Act, Regulation on Assault Weapons*, ILL. STATE POLICE, https://isp.illinois.gov/Home/AssaultWeapons (last visited Dec. 6, 2023).

[9] The hearings were conducted in Springfield on Nov. 2; in Chicago on Nov. 3; and in Caseyville on Nov. 6. *See id.* The *FFL* Plaintiffs state that no public comment was considered *before* the Emergency Rules were implemented. (*See* Doc. 57, p. 3 n.1). While the IAPA does not require a public comment period prior to the implementation of emergency rules, it does state that "[t]he agency shall accept data, views, arguments, or comments regarding the emergency rulemaking from any interested persons. The agency shall accept submissions in writing, including submissions by email or by other publicly accessible electronic means through its website. In the discretion of the agency, submissions may be submitted orally." IAPA, 5 Ill. Comp. Stat. 100/5-45(c). Thus, while comments were not taken before the Emergency Rules were filed, public comment was considered after the Rules went into effect.

stated, an individual cannot apply for a FOID card without an electronic FOID account. *See ISP Assault Weapons Webpage*. Even without logging into the FOID card system, a "System Alert!" appears with links to a list of those who are required to submit an affidavit, frequently asked questions ("FAQ"), and the Assault Weapon Identification Guide. *See Applicant Portal*, ILL. STATE POLICE FIREARMS SERV. BUREAU, https://www.ispfsb.com/Public/login.aspx [https://perma.cc/BM3G-Z2D6] (last visited Dec. 12, 2023). While the *FFL* Plaintiffs argue that the Illinois government should have issued direct notice by sending emails to each individual FOID cardholder, the Government argues that due process does not require such a measure. (*See* Doc. 69). The Government insists that the only notification required in line with due process is publication and that Illinois is not required to provide any form of "direct notice" to citizens of Illinois, regardless of whether it is logistically possible to do so. (*See* Doc. 70).

While not directly in line with the IAPA, in a case involving the federal Administrative Procedure Act, 5 U.S.C. § 553(b), the Seventh Circuit stated that "notice is adequate if it apprises interested parties of the issues to be addressed in the rulemaking proceeding with sufficient clarity and specificity to allow them to participate in the rulemaking in a meaningful and informed manner." *Alto Dairy v. Veneman*, 336 F.3d 560, 569 (7th Cir. 2003) (quoting *Am. Med. Ass'n v. United States*, 887 F.2d 760, 767 (7th Cir. 1989)).

Considering all of the means Illinois has employed to confer notice (the press release, public hearings, the "system alert" on the FOID account system, and, more

generally, by the fact that PICA was passed), the Court finds that, even if they did have standing, the *FFL* Plaintiffs do not have more than a negligible likelihood of success on the merits, especially since Illinois carried out this process pursuant to the IAPA. Critically, the *FFL* Plaintiffs do not challenge the IAPA in the instant Motion; they only argue that more direct notice should have been issued. (*See* Doc. 57, pp. 5– 6). The Court does not disagree that the onus is on the individual firearm owner to log into the portal to submit an endorsement affidavit in the first place and that there is a substantial probability that there exist Illinois citizens who may be unaware of the requirement. However, these facts alone are not sufficient to merit such a far-reaching solution as a preliminary injunction on a lack of notice claim, especially since members of the Advocacy Organizations admit that they are aware of the requirements. (*See* Doc. 68, Decl. of Erich M. Pratt, ¶ 4 ("While GOA and GOF are national organizations, we try to keep our members and supporters apprised of developments in various states pushing onerous new gun control laws, particularly when we are involved in litigation challenging those laws, as is the case here. Invariably, GOA and GOF receive questions and concerns from our members and supporters regarding how laws like the Illinois registration requirement may affect them, and we do our best to answer such questions.")).

In summary, specifically in regard to the registration requirement, Illinois has taken various actions to notify Illinois citizens of the requirements under PICA and the Emergency Rules. Thus, the Court finds that the *FFL* Plaintiffs have not established a reasonable likelihood of success on the merits of their notice claim, even

if they did have standing to bring it in the first place. Although this alone is fatal to this claim, regarding irreparable harm, the individual failure to register his or her firearms, attachments, and ammunition by the January 1, 2024 does not, by itself, cause criminal penalties to *automatically* attach and issue. Rather, the Government must prove that the individual in question "knowingly possess[es]" the item in question.[10] *See* PICA at 5/24-1.9.

Therefore, the Court finds that the *FFL* Plaintiffs did not meet their burden in the threshold phase to proceed to the balancing phase on their notice claim. Moreover, as discussed *supra*, their notice claim must be dismissed for failure to state a claim on which relief can be granted.

## B.   Vagueness

The *FFL* Plaintiffs next argue that the list of proscribed items in the Emergency Rules is constitutionally void for vagueness under the Fourteenth Amendment's Due Process Clause. (*See* Doc. 57, pp. 7–12). The *FFL* Plaintiffs specifically argue that various statutory terms imported from PICA into the Emergency Rules are facially void for vagueness.[11] (*See id.*, pp. 6–12). The Court has

---

[10] The mens rea requirement is discussed in more detail *infra*.

[11] The *FFL* Plaintiffs claim that they are advancing both facial and as-applied challenges. (*See* Doc. 57, p. 12 n.6). That being said, as neither PICA nor the Emergency Rules have yet been enforced and because the *FFL* Plaintiffs seek an injunction here, the Court construes their arguments as a facial challenge only. *See Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) ("As the Supreme Court has explained, 'the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge.' Rather, 'it goes to the breadth of the remedy employed by the Court': a facial challenge usually invites prospective relief, such as an injunction, whereas an as-applied challenge invites narrower, retrospective relief, such as damages.")). The Government addresses this argument, as well. (*See* Doc. 67, p. 21 n.14).

entertained and dismissed a separate facial challenge to the text of PICA related to its prohibition of certain types of ammunition and weapons.[12] *See Barnett* (Docs. 111, 132). Notably, the text of the Emergency Rules is imported directly from PICA, a fact that the *FFL* Plaintiffs do not dispute. *Compare* PICA *with* 47 Ill. Reg. 13862 (Sept. 29, 2023); (*see* Doc. 67, p. 15 (citing Doc. 57, pp. 4–5)).

The *FFL* Plaintiffs argue that various terms related to firearm attachments like "barrel shroud," "flash suppressor," and "pistol grips" as well as the definition of an "assault weapon" itself are sufficiently unclear such that Illinois citizens "may reasonably not understand what needs to be registered or how to register certain Regulated Items, and thus may unintentionally violate the law," which would leave "at the whim of 'relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide.'" (*Id.*, p. 12 (citing *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019))). They claim that these are not so-called "margin questions" because nearly every definition is vague. (*See id.*).

The Government makes similar arguments to those they raised against the *Langley* Plaintiffs' vagueness arguments in their Motion for Partial Summary Judgment. *See Barnett* (Docs. 111, 116, 124). Namely, they argue that the Emergency Rules have a "substantial, understandable core" and that all of the arguments about the definitions of different parts are so-called "edge questions," when the actual definition at issue is that of an "assault weapon." (Doc. 67, p. 22 (quoting *Trs. of Ind.*

---

[12] This action was on behalf of the Plaintiffs in the *Langley* case, 23-cv-00192-SPM. *See Barnett*, 23-cv-00209 (Doc. 111).

*Univ. v. Curry*, 918 F.3d 537, 541 (7th Cir. 2019)); *see also id.*, pp. 19–31). Moreover, the Government argues that the inclusion of a mens rea requirement "reduces any potential for vagueness." (*See id.*, p. 20 (citing *Holder v. Humanitarian L. Project*, 561 U.S. 1, 21 (2010))). They also argue that the additional documentation provided by the ISP on their website helps to alleviate questions regarding certain attachments, including a FAQ section and an Assault Weapon Identification Guide. (*See* Doc. 67, p. 7 n.3 (citing *ISP Assault Weapons Webpage* (click "PICA Identification Guide")).

In their Reply (Doc. 68), the *FFL* Plaintiffs argue that the continuous updates ISP has made (and continues to make) to the FAQ portion of the website, combined with the filing of Amended Emergency Rules with the JCAR, proves that the definitions of various firearms attachments are vague. (*See id.*, p. 10 ("[T]he State's own police force . . . has struggled to achieve clarity. Indeed, as of the filing of this brief, it is still in the process of refining its implementing Rules, despite there only being a few weeks left until the deadline to register. The ISP has also repeatedly amended its FAQ on its website about what is covered. This is because the terms are vague." (citations omitted))).

As discussed in the Court's Order denying the *Langley* Plaintiffs' Motion for Partial Summary Judgment, *see Barnett* (Doc. 132), the Supreme Court has made it clear that facial challenges are "disfavored for several reasons." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). First, "[c]laims of facial invalidity often rest on speculation. As a consequence, they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Id.*

(quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). Second, they "run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id.* (quoting *Ashwander v. TVA*, 297 U.S. 288, 346–347 (1936) (Brandeis, J., concurring)). Third, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" *Id.* at 451 (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006)). Overall, "[e]xercising judicial restraint in a facial challenge 'frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy.'" *Id.* at 450 (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)).

The *FFL* Plaintiffs more or less recycle the arguments used by the *Langley* Plaintiffs (in relation to "AR-type" and "AK-type" weapons) to argue that the Emergency Rules' use of terms like "barrel shroud" and "flash suppressor" leave reasonable individuals confused on what is proscribed and what is not. (*See* Doc. 57, pp. 7–12; Doc. 68, pp. 7–12). The *FFL* Plaintiffs' arguments here fail for the same reason that the *Langley* Plaintiffs' Motion for Partial Summary Judgment was denied. *See Barnett* (Doc. 132). While neither PICA nor the Emergency Rules provide

detailed definitions of specific assault weapon attachments, the ISP website's FAQ section and Assault Weapon Identification Guide address myriad firearms, including with descriptions and images of the weapons in question. *See ISP Assault Weapons Webpage*. While the *FFL* Plaintiffs argue that the pending updates to the Emergency Rules and to the ISP website evince unconstitutional vagueness in both PICA and the Rules themselves, the ISP's actions can also be interpreted as an attempt to ensure Illinois citizens have as much detailed information as possible so that they can make informed decisions about registration. "Ordinarily a person is conclusively presumed to know the law, which is to say that ignorance of the law that one has violated is not a defense to conviction for the violation." *United States v. Dobek*, 789 F.3d 698, 700 (7th Cir. 2015). Moreover, as the Government argued in the Motion for Partial Summary Judgment in the *Langley* case, the mens rea requirement in PICA indicates that the Government must prove that the defendant acted "knowingly" beyond a reasonable doubt. *See Barnett* (Docs. 125, 132).

Thus, the Emergency Rules implementing the PICA registration requirement are not unconstitutionally vague. Rather, they are clear in what they prohibit, serious issues with the Second Amendment aside. Additionally, concerns about individual parts are clearly "edge questions" in a statute focused on defined "assault weapons" and do not interfere with the statute's core meaning. Moreover, the Court has already discussed vagueness as related to specific weapons and high-capacity magazines in *Barnett. See id.* (Doc. 132). The Emergency Rules (and PICA, more generally) may well be unconstitutional as determined in this Court's review on the merits. However,

they are not vague. For this reason, the *FFL* Plaintiffs have not demonstrated that they have a high likelihood of success on the merits and, therefore, have not met the high burden to demonstrate that the Emergency Rules are facially void. This claim also does not survive the threshold phase.

Moreover, based on the discussion above, the *FFL* Plaintiffs facial vagueness challenge also fails to surmount the Government's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. 67). The *FFL* Plaintiffs' argument in their Amended Complaint (Doc. 55) that the statute is facially void for vagueness claims that PICA "defines as an 'assault weapon' any semiautomatic rifle having, among other features, a 'pistol grip,' an 'additional protruding grip,' an 'adjustable stock,' or a 'flash suppressor.'" (*Id.*, ¶ 186 (citing PICA at 5/24-1.9(a)(1)(A)). This is just subsection (A) of PICA; the definition continues through subsection (L) before section 1.9(a)(2) defines weapons that are not assault weapons. *See* PICA at 5/24-1.9(a)(1)(A)–(L). This is just the language of PICA itself and does not include the additional context provided on the ISP's FAQ page and in their issued Assault Weapons Identification Guide. *ISP Assault Weapons Webpage*; *see also id.* (click "PICA Identification Guide").

The provisions in PICA and in the Emergency Rules are therefore not facially void for vagueness. While they may very well be determined to be unconstitutional in an as-applied challenge on the merits and in in a trial setting after discovery has been completed, the *FFL* Plaintiffs cannot plausibly allege that they are facially void at

this stage in litigation. This claim does not survive the Government's Motion to Dismiss, either.

## II.    Second Amendment

The *FFL* Plaintiffs next seek a preliminary injunction to bar enforcement of Illinois's registration scheme as it violates the Second Amendment. Because the Seventh Circuit had not yet issued its mandate at the time of the filing of their Motion for Preliminary Injunction, they focused their argument on firearm parts and attachments, as these were not explicitly discussed in Bevis. (*See* Doc. 57, p. 20). The Government argues that the *FFL* Plaintiffs are attempting to "sidestep" and "functionally overrule the Seventh Circuit" with their attempt to obtain another preliminary injunction after the *Barnett* injunction was vacated. (Doc. 67, pp. 33, 35); *see Bevis* at 1203.

Even with the issuance of the mandate following the Seventh Circuit denial of the petitions for rehearing and for rehearing en banc, *see Bevis* (Docs. 146, 147), and the Supreme Court's denial of the writ of injunction, *see Nat'l Ass'n for Gun Rts. v. City of Naperville*, No. 23A486 (Dec. 14, 2023), judicial restraint is most appropriate here. The *FFL* Plaintiffs' claims regarding firearm parts and attachments *depend* on whether assault weapons are included within the definition of "Arms" under the Second Amendment. (*See* Doc. 57, p. 20 ("Plaintiffs' analysis assumes that [Regulated weapons and attachments] are 'Arms.'")). Additionally, the Seventh Circuit clearly indicated that "Second Amendment challenges to gun regulations often require more evidence than is presented in the early phases of litigation." *Bevis* at 1197. Therefore,

this Court declines to conduct threshold review of the *FFL* Plaintiffs' Second Amendment arguments.

Crucially, both the *Bevis* majority and the dissent mention the registration scheme enacted by PICA. *See Bevis* at 1199 ("The laws before us have one huge carve-out: people who presently own the listed firearms or ammunition are entitled to keep them, subject only to a registration requirement that is no more onerous than many found in history. In addition, as we noted at the outset, the laws do not purport to regulate many other special uses."); *id.* at 1202 ("If we are correct in our prediction that the state will prevail in its defense of the Act against the Second Amendment arguments, then the registration requirement will be valid as long as it can withstand rational basis review. At this juncture, we see nothing particularly onerous about it, though as with everything we have said, this is a preliminary assessment."); *id.* at 1219 (Brennan, J., dissenting) ("To finish up likelihood of success on the merits, I agree with my colleagues that on this record, the registration requirement does not appear to be unconstitutional.").

This Court reads this language as clearly discouraging any further preliminary determinations about the likely outcome of the challenges to the statute and registration scheme. Such language directs the lower courts to advance to merits review of all the claims. This Court will expeditiously conduct a full review of the legal challenges to PICA on the merits. This also points toward foregoing further preliminary wrangling and going straight to an exhaustive review of PICA and the Emergency Rules on the merits. Additionally, Illinois FOID cardholders' level of

compliance with the registration scheme will be discernible within mere days. This overall level of compliance will likely be *highly* relevant to the review of certain claims on the merits.

Thus, as addressed *supra*, the notice and vagueness claims under the Fourteenth Amendment do not survive threshold review and, thus, do not advance to the balancing phase. Additionally, given the unique posture of this case, this Court declines to entertain the request to issue a preliminary injunction on Second Amendment grounds with respect to the required registry of firearms as well as firearm parts and attachments. The deadline for registration is steeply upon us. Enjoining only the registration requirement for attachments and parts but not firearms would likely lead to more confusion than clarity. It may also create further delays in this litigation when the constitutional rights of the citizens demand an expeditious resolution on the merits.

Neither the legislative branch, the executive branch, nor the judicial branch may change the fundamental relationship between citizens and government. Government exists to serve us, not lord over us. The Constitution places limits on government's power while guaranteeing freedom and liberty to the People. The Second Amendment guarantees are fundamental and belong to the citizens. The Second Amendment acknowledges a right of the People, not a license to be issued or denied by the government as it sees fit.

This Court will endeavor to faithfully apply *Heller*, *McDonald*, and *Bruen* and to harmonize the Seventh Circuit opinions in *Friedman v. City of Highland Park*, 784

F.3d 406 (7th Cir. 2015) and *Bevis* with them. Any entreaties to ignore, erode, or infringe the constitutional rights of the People will not gain traction in this Court.

CONCLUSION

For the reasons set forth above, the *FFL* Plaintiffs' Motion for Preliminary Injunction is **DENIED** because their notice and vagueness claims under the Due Process Clause of the Fourteenth Amendment do not surmount the threshold phase of review and because the Court declines to address their Second Amendment claims at this preliminary stage of litigation. The Government's Motion to Dismiss with respect to the notice and vagueness claims is **GRANTED**. Therefore, the *FFL* Plaintiffs' notice and vagueness claims are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

**DATED: December 22, 2023**

<u>**/s/ Stephen P. McGlynn**</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**