```
             IN THE DISTRICT OF THE UNITED STATES OF AMERICA
                  FOR THE SOUTHERN DISTRICT OF ILLINOIS
----------------------------------------------------------------
DANE HARREL, et al.,                 |
                                     |
                    Plaintiffs,      |
v.                                   |
                                     | Case No. 23-cv-141-SPM
KWAME RAOUL, et al.,                 |
                    Defendants.      |
----------------------------------------------------------------
FEDERAL FIREARMS LICENSEES OF        |
ILLINOIS, et al.,                    |
                    Plaintiffs,      |
v.                                   | Case No. 23-cv-215-SPM
                                     |
JAY ROBERT "JB" PRITZKER, et al.,    |
                    Defendants.      |
----------------------------------------------------------------
CALEB BARNETT, et al.,               |
                                     |
                    Plaintiffs,      |
v.                                   |
                                     | Case No. 23-cv-209-SPM
KWAME RAOUL, et al.,                 |
                    Defendants.      |
----------------------------------------------------------------
JEREMY LANGLEY, et al.,              |
                                     |
                    Plaintiffs,      |
v.                                   |
                                     | Case No. 23-cv-192-SPM
BRENDAN KELLY, et al.,               |
                    Defendants.      |
----------------------------------------------------------------
```

Transcript of Status Conference
January 12, 2024

Proceedings held by Zoom before
the Honorable **STEPHEN P. McGLYNN**,
United States District Judge Presiding
----------------------------------------------------------------
**REPORTED BY**:

**HANNAH JAGLER**, RMR, CRR, FCRR, Official Court Reporter,
750 Missouri Avenue, East St. Louis, Illinois 62201
618-482-9481 - Hannah_Jagler@ilsd.uscourts.gov

Following proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

**APPEARANCES**:    (Case No. 23-cv-209-SPM)

For Barnett        **MATTHEW ROWEN**
Plaintiffs:        Clement & Murphy, PLLC
                   706 Duke Street
                   Alexandria, VA 22314
                   202-742-8900
                   Matthew.rowen@clementmurphy.com

                   **GARY C. PINTER**
                   Swanson, Martin & Bell, LLP
                   103 West Vandalia Street, Suite 215
                   Edwardsville, IL 62025
                   618-655-3131
                   Gpinter@smbtrials.com

For Harrel         **DAVID G. SIGALE**
Plaintiffs:        Law Firm of David G. Sigale, P.C.
                   430 West Roosevelt Road
                   Wheaton, Illinois 60187
                   630-452-4547
                   Dsigale@sigalelaw.com

For Langley        **THOMAS G. MAAG**
Plaintiffs:        Maag Law Firm, LLC
                   22 West Lorena Avenue
                   Wood River, Illinois 62095
                   618-216-5291
                   Tmaag@maaglaw.com

                   **CARL D. MICHEL**
                   Michel & Associates, P.C.
                   180 East Ocean Boulevard, Suite 200
                   Long Beach, California 90802
                   562-216-4444
                   Cmichel@michellawyers.com

For FFL Illinois   **SEAN ANTHONY BRADY**
Plaintiffs:        Michel & Associates, P.C.
                   180 East Ocean Boulevard, Suite 200
                   Long Beach, CA 90802
                   562-216-4464
                   Sbrady@michellawyers.com

For FFL Illinois
Plaintiffs:

**CARL D. MICHEL**
Michel & Associates, P.C.
180 East Ocean Boulevard, Suite 200
Long Beach, CA 90802
562-216-4444
Cmichel@michellawyers.com

**KONSTADINOS T. MOROS**
Michel & Associates, P.C.
180 East Ocean Boulevard, Suite 200
Long Beach, CA 90802
562-216-4444
Kmoros@michellawyers.com

For Defendants
Raoul, Kelly,
and Pritzker:

**CHRISTOPHER GRAHAM WELLS**
Illinois Attorney General's Office
Public Interest Division
100 West Randolph Street
Chicago, Illinois 60601
312-814-1134
Christopher.wells@ilag.gov

**KATHRYN HUNT MUSE**
Illinois Attorney General's Office
100 W. Randolph Street, 12th Floor
Chicago, Illinois 60601
312-814-3000
Kathryn.Muse@ilag.gov

For Randolph Co.
Defendants:

**KATHERINE FAY ASFOUR**
Evans & Dixon, LLC
211 N. Broadway, Suite 2500
St. Louis, MO 63102
314-552-4005
Kasfour@evans-dixon.com

For McHenry Co.
Defendants:

**TROY OWENS**
McHenry County State's Attorney's Office
2200 North Seminary Avenue, Suite 150
Woodstock, Illinois 60098
815-334-4159
Tcowens@mchenrycountyil.gov

For Defendant Cole
Shaner:

**KEITH B. HILL**
Heyl, Royster, Voelker & Allen, PC
105 West Vandalia Street,
Mark Twain Plaza III, Suite 100
Edwardsville, Illinois 62025
618-656-4646
Khill@heylroyster.com

| | |
|---|---|
| 1 | **<u>TRANSCRIPT OF PROCEEDINGS</u>** |
| 2 | (Proceedings commenced at 1:32 p.m.) |
| 3 | THE COURTROOM DEPUTY:  United States District |
| 4 | Court for the Southern District of Illinois is now in session, |
| 5 | the Honorable Stephen McGlynn presiding.  Court calls Case |
| 6 | Number 23-cv-209, Caleb Barnett et al., v. Kwame Raoul, et al. |
| 7 | Case is called for a status conference. |
| 8 | Parties, if you would please identify yourselves |
| 9 | for the record. |
| 10 | MR. ROWEN:  Good afternoon, Your Honor.  This is |
| 11 | Matthew Rowen from Clement & Murphy on behalf of the Barnett |
| 12 | plaintiffs. |
| 13 | MR. MICHEL:  Good afternoon, Your Honor.  Chuck |
| 14 | Michel appearing for the FFL Illinois plaintiffs.  And with me |
| 15 | today is Sean Brady and Kostas Moros. |
| 16 | MR. SIGALE:  Good afternoon, Your Honor.  David |
| 17 | Sigale, S-i-g-a-l-e, on behalf of the plaintiffs in Harrel v. |
| 18 | Raoul, 23-cv-141. |
| 19 | MR. T. MAAG:  Thomas Maag on behalf of the |
| 20 | Langley plaintiffs. |
| 21 | MR. P. MAAG:  Peter Maag.  Peter Maag on behalf |
| 22 | of the Langley plaintiffs as well. |
| 23 | THE COURT:  Okay. |
| 24 | MR. OWENS:  Your Honor, Troy Owens on behalf of |
| 25 | McHenry County and the sheriff of McHenry County. |

 1               MR. PINTER:  Gary Pinter on behalf of the Barnett

 2    plaintiffs.

 3               MR. HILL:  Keith Hill on behalf of Cole Shaner.

 4               MR. WELLS:  Good afternoon, Your Honor.

 5    Christopher Wells on behalf of the governor, the attorney

 6    general, and ISP Director Kelly.

 7               THE COURT:  All right.

 8               MS. MUSE:  Good afternoon.  Kathryn Muse on

 9    behalf of the same parties as Mr. Wells.

10               THE COURT:  All right.  Anybody else?

11               MS. ASFOUR:  Katherine Asfour on -- Your Honor,

12    Katherine Asfour on behalf of the Randolph County defendants.

13               THE COURT:  Anybody else?  Everybody I see on my

14    screen has already identified themselves.  I'm told that there

15    are some who do not have their camera on, but are participating

16    just by watching it one direction.  Somebody else just joined

17    us?  Is that you, Peter?  I'm squinting my eyes.

18               MR. P. MAAG:  It is, Your Honor.

19               THE COURT:  Okay.  All right.  We're going to --

20    I want to set this matter to determine if there's going to be a

21    need for evidentiary hearings, to accomplish a fully developed

22    record, starting with Barnett.  Do you anticipate calling

23    witnesses or offering deposition testimony?

24               MR. ROWEN:  So this is Matthew Rowen for the

25    Barnett plaintiffs, Your Honor.  So I want to answer that in two

1    ways.  So the first way is, if we are to operate under the

2    Seventh Circuit's opinion, then yes, I do believe that we will

3    want to have a relatively robust evidentiary presentation.

4              THE COURT:  I'm having a hard time hearing you,

5    so you guys are going to have to speak loudly and clearly.  The

6    voices are getting kind of lost in this courtroom.  So I would

7    also speak a little slower than you were.  So go ahead.

8              MR. ROWEN:  Sure.  Please let me know if you

9    cannot hear me at all.

10             THE COURT:  I can hear you fine now.  Thank you.

11             MR. ROWEN:  Great.

12             So as I was saying, if we are to proceed under

13   the Seventh Circuit's opinion as it currently stands, then I do

14   believe that the plaintiff, specifically the Barnett plaintiffs

15   will want to put on a relatively robust evidentiary

16   presentation.  But, you know, I speak for the Barnett plaintiffs

17   and I believe I have at least two of the other plaintiffs'

18   groups who agree with this, that given that the Supreme Court

19   may have a different view of the law and given that our clock to

20   seek cert is ticking, that it may make more sense to pause any

21   potential evidentiary presentation pending certiorari.

22             THE COURT:  Not going to happen.  It's not going

23   to happen.  We're going forward.  There are questions of fact

24   that are raised.  And the Supreme Court's going to do what it's

25   going to do.  In this case, we are going to conduct a hearing

1   and I'm going to address all the questions of fact and apply the

2   law to those questions of fact so that we have a fully developed

3   record, and we are going to move with deliberate speed in

4   getting to that point.  So you're going to have to think about

5   what evidence you want to marshal, how you're going to present

6   it, what witnesses you're going to use, and how long that's

7   likely to take.  All right?

8            MR. WELLS:  Your Honor, I'd just like to make

9   clear for the record that the defendants are in agreement with

10   Mr. Rowen and three of the four plaintiffs' groups that a stay

11   is appropriate.  It's the parties' job to present the case as

12   they see fit.  If they think they need to seek cert and that the

13   governing standard in the case is going to change, then that's

14   the best strategy for their clients, then they're entitled to

15   pursue that strategy.  And it's a waste of resources for the

16   Court to conduct an evidentiary hearing if the plaintiffs think

17   the legal standard is going to change.

18            I would note that in the Northern District, one

19   Court this morning already entered it today.  So the Seventh

20   Circuit has consolidated these cases on appeal.  The idea that

21   we would have one case out of several race forward while the

22   other cases are stayed, I don't think that's going to be well

23   received by the Seventh Circuit, Your Honor.  So while I

24   understand if the Court has an interest in moving quickly, I

25   think the -- it's ultimately up to the parties how they believe

1    it's appropriate to prosecute their claims.

2              THE COURT:  The Seventh Circuit has remanded this

3    case to me for further proceedings.

4              MR. T. MAAG:  I agree with Your Honor.  The

5    Langley plaintiffs are prepared to proceed.  The fact that the

6    Supreme Court may or may not grant certiorari I think is

7    irrelevant to whether or not this Court develops a factual

8    record and makes factual findings.

9              MR. WELLS:  My understanding from my conversation

10   with Mr. Rowen is, and based on how at least three out of the

11   four of the plaintiffs in this case have presented it, they

12   believe that they -- they should win out of the gate.  They

13   filed motions for judgment essentially when they filed their

14   complaint.  They believe I think that the Seventh Circuit's got

15   it wrong and that these factual issues that the Seventh Circuit

16   has identified are ultimately not going to be relevant, so why

17   would we spend resources of both the parties, the Court, the

18   attorneys involved, on issues that at least, you know, a large

19   majority of the people involved in this case, they think are not

20   going to be controlling.

21              And obviously if the Seventh Circuit as it's

22   ruled, if that ruling stays in effect, then it's a different

23   scenario.  But I think we are very much in alignment with the

24   Barnett plaintiffs, what I understand the Harrel plaintiffs'

25   position to be, and also the FFL plaintiffs' position.  In

1   conducting an evidentiary hearing on the merits on an

2   accelerated timeline when the legal standard is currently being

3   adjudicated through cert petition is a waste.

4                THE COURT:  This case is not -- this case is not

5   up on cert.  There have been multiple filings with the Supreme

6   Court begging them to grant certiorari in this and in many other

7   cases, and they've consistently turned that down.  One of the

8   things the Courts have said that they wanted is they would like

9   a fully developed record.  This has been remanded to me to

10  address questions of fact that have not been addressed, and

11  there's a reticence on the part of reviewing Courts to rule on

12  these things before there has been a fully developed record.  So

13  we're going to proceed in developing record and we're going to

14  proceed promptly.

15               What other plaintiffs' lawyers want to be heard

16  on that?

17               MR. T. MAAG:  Judge, Thomas Maag.  Just for the

18  record, I agree with Your Honor that we should proceed on the

19  merits on the record that the -- as the Court noted, several

20  other plaintiffs in other cases have asked the Supreme Court for

21  review.  Thus far, it has not been granted.  Obviously if the

22  Supreme Court were to grant certiorari, my position might

23  change.  But unless and until we have a writ of certiorari

24  granted, I think we have an obligation to proceed on the merits.

25               THE COURT:  All right.

1          MR. MICHEL:  Your Honor, Chuck Michel for the FFL

2     Illinois plaintiffs.  I would just add just for clarity, what

3     the plaintiffs' intention was was to file a petition for a writ

4     of certiorari within the next couple of weeks.  The other

5     case -- the other Supreme Court decisions were basically shadow

6     docket decisions where they asked for emergency relief, not cert

7     petition granting, to the extent it matters.  Just want to make

8     sure that's clear.

9          THE COURT:  I've been following it closely.

10    We're here to talk about a hearing, marshaling of your evidence,

11    putting everything before the Court that you want to put before

12    the Court for the Court to make factual findings to address the

13    issues raised by the plaintiffs in this case.  All of the

14    plaintiffs have asserted that fundamental constitutional rights

15    are involved in this case and that they individually or as a

16    group, that they are suffering significant damage and injury

17    because their constitutional rights are being violated.  So

18    we're going to get to that.

19          We went the route with requests for injunctive

20    relief.  That took a year, about a year.  And now we're here,

21    having the injunctive relief, in my situation, stayed, and the

22    case being sent back to the district judges to proceed further.

23    That's what I'm going to do.  If something happens in the

24    interim, okay.  But until then, that's what's going to happen in

25    this courtroom.  Other judges in other districts can make the

1    decisions they want to make.  A lot of the record that would be

2    developed here would be perfectly relevant to the other cases,

3    but this is what we're going to do.  So --

4              MR. WELLS:  Your Honor?

5              THE COURT:  Yes?

6              MR. WELLS:  If I may?

7              THE COURT:  Identify yourself when you speak.

8    When you speak, you have to identify yourself.

9              MR. WELLS:  Sure.  Your Honor, this is Mr. Wells.

10   Again, I understand the Court's view on how the parties chose to

11   litigate this case and their desire to pursue this matter on an

12   interlocutory appeal.  But that's the parties' decision, Your

13   Honor.  The parties are represented by capable counsel.  I

14   understand they make certain assertions about fundamental rights

15   and the Court apparently has a view that those fundamental

16   rights are being infringed, but it's up to plaintiffs' counsel

17   to decide how to litigate the case.  Plaintiffs' counsel

18   believes that they should stay the proceedings while certiorari

19   is considered because the scope of the case may change.

20             And in the interest of judicial economy, we again

21   think it makes sense, and frankly it's consistent with what the

22   Seventh Circuit has said.  And in particular, in the Ewing v.

23   Carrier case, Judge Easterbrook in 2022 said the judiciary has

24   an interest independent of litigants' goals in avoiding messy,

25   duplicative litigation.  All litigants and lawyers must avoid

1    multiplying litigation.  By pursuing this, we've got a stay in

2    the Northern District.  There's likely to be another stay in the

3    Northern District, as we understand the plaintiffs there also

4    seek certiorari, plaintiffs also seek a stay.  All of this is

5    fundamentally inconsistent with how the Seventh Circuit has

6    handled this particular case and how the Seventh Circuit views

7    these matters should be handled in the interest of judicial

8    economy.  So with all due respect, I need to make that note for

9    the record.

10                  THE COURT:  Okay.

11                  MR. T. MAAG:  Thomas Maag for the Langley

12    plaintiffs.  We do not believe that the case should be stayed.

13    So to the event counsel is asserting all plaintiffs assert that,

14    that is not true.

15                  MR. WELLS:  I'm not asserting that.  I understand

16    Mr. Maag's position is different than every other group of

17    plaintiffs' counsel in the state.

18                  MR. SIGALE:  Your Honor, may I speak?

19                  THE COURT:  Identify yourself for the record.

20                  MR. SIGALE:  David Sigale, S-i-g-a-l-e, on behalf

21    of the Harrel plaintiffs.  All the counsel that have said that

22    our position is the same as FFL and Barnett is correct.  We do

23    share in that opinion.  We'll of course comply with what the --

24    with the Court ruling.  The concern is, I'm listening to

25    everyone speak, is that we're going to be preparing a cert

1  petition and preparing for an evidentiary hearing at the same

2  time.  Might I suggest that --

3  THE COURT:  How many times have you guys briefed

4  this case?  How many times have you argued this case, in how

5  many courts?  You guys have briefed this case -- wait.  All of

6  you guys.  You have briefed this case in state courts, appellate

7  courts, and before the Illinois Supreme Court.  You briefed this

8  case and argued this case at the District Court level and at the

9  Seventh Circuit level.

10  MR. SIGALE:  Understood, Your Honor.  The only

11  thing --

12  THE COURT:  And I've read the briefs and they're

13  very detailed and they -- they're very well written.  But this

14  Court --

15  MR. SIGALE:  I was --

16  THE COURT:  Someone's trying to interrupt me.

17  Raise your hand.  Who's trying to interrupt me?

18  MR. MICHEL:  When you're finished, Your Honor,

19  I'd love to speak.  I didn't mean to interrupt.

20  THE COURT:  Well, go ahead, Chuck.

21  MR. MICHEL:  I would just point out, if we're

22  going to go forward, the briefs that we've done in the past were

23  basically the Bruen textual historical analog briefs.  It seems

24  like under the Seventh Circuit's briefs or new sort of approach,

25  we're going to have to do a lot of different things.  I don't

1    know exactly what that's going to involve, some kind of

2    distinction between military applications and civilian

3    applications, factual questions about whether or not an AR-15 is

4    the same as an M16 or something along those lines, then all the

5    other guns.  I think it's going to be a lot of expert testimony,

6    a lot of technical, firearm-related technical information that

7    would not be necessary if we -- if the Seventh Circuit had

8    adopted the approach that we urge them to adopt.

9            But now, bound by the Seventh Circuit as we all

10   are, I think it's going to be a very different type of trial if

11   the Court does want to go forward.  It might make sense to allow

12   the parties to sort of meet and confer and come up with some

13   sort of a case management plan or case presentation, like a

14   trial notebook or something, that would sort of lay out how

15   we -- what we -- what the state thinks the burden is now under

16   the Seventh Circuit, what we propose to present as evidence to

17   try and meet that burden.  Not to tell Court how to run its own

18   calendar, but I think it's going to be a bit of a can of worms

19   that we have to hopefully help the Court manage.

20           MR. WELLS:  Your Honor, if I may -- Mr. Wells on

21   behalf of the state -- just respond to that proposal.  I think

22   that that -- the extent that the Court is going to proceed,

23   despite the requests that have been made for a stay, I do think

24   there's some streamlining that could take place through

25   conversations with the parties.  We have not had a Rule 26F

discovery conference in this case.  We don't have Rule 26(a)
disclosures in this case.  There's been no discovery on the
Second Amendment claims that are common across all these claims,
across these cases.  So I do think in the interest of expediting
and not being duplicative, the parties could have very
constructive conversations about all that's already in the
record now, what do we need to add to the record or not add to
the record, or do we want to do a trial on the papers.  All of
these are the types of questions that I think we could have
constructive conversations about, if we're in the position where
the Court's insisting that we're going forward.

MR. SIGALE:  Your Honor, David Sigale again.  I
was going to suggest that perhaps we could set this matter for a
further status regarding the cert petitions and regarding the
factual issues.  And I think that request probably dovetails
nicely with what other counsel just said.

MR. T. MAAG:  Thomas Maag for the Langley
plaintiffs.  I have a motion requesting to either conduct
discovery or have the Rule 26 discovery conference.  I think
discovery is appropriate.  And whether a cert petition is filed,
I think it's highly likely it will be, and whether a cert
petition is ultimately granted, which is potentially another
question, I think it's a completely different question than
whether or not the parties are ordered to exchange initial
disclosures, to send interrogatories and document requests and

1    potentially take depositions.  This doesn't require years of

2    discovery, but certainly something if we're going to have an

3    evidentiary hearing, which is clear under the Seventh Circuit's

4    order, if it stands, we're going to, we need to conduct that

5    discovery.

6            Yes, we've repeatedly briefed this under various

7    standards, but we need to have the facts so that when the case

8    is presented, whether it's under the Bruen standard, under the

9    Seventh Circuit standard, or possibly if the Supreme Court

10   issues an opinion, Ravini [phonetic], whatever that case is,

11   under that standard, if it's any different, we need to -- I'll

12   present whatever facts, the controlling authority, the appellate

13   or Supreme Court level thinks is appropriate.  We just need to

14   get to that.

15           THE COURT:  Mr. Wells, what type of discovery do

16   you believe that the government needs to engage in to figure out

17   whether or not the legislation it passed is constitutionally

18   sound or unsound?

19           MR. WELLS:  Well, Your Honor, I would say a

20   couple things to that.  One, as the record currently stands, the

21   Seventh Circuit found that we're likely to succeed on the

22   merits.  We're the defendants.  So it's really -- we're in a

23   responsive posture here.  We understand from plaintiffs' counsel

24   that they -- they have strategic choices they have to make about

25   how they're going to shape their case, given what the Seventh

1    Circuit has said, which I think is clearly different than what

2    they thought it might say.  So that's why I -- I'm not trying to

3    be evasive.  We really need to know who they plan to call.

4              So for instance, they cite things like a survey

5    from Professor William English.  We don't know if that's going

6    to be one of their witnesses.  If so, we'd like to depose him.

7    Professor Gary Kleck, somebody else they cite various articles

8    from in their complaint.  Is that a party expert witness, is

9    that somebody they're going to call as a witness?  If so, we'd

10   like to depose him.  There's another Professor David Kopel.  We

11   don't know whether that's going to be an expert witness that

12   they're going to call.  We have no -- again, we have no

13   Rule 26(a) disclosures from the plaintiffs telling us who

14   they're going to use to prove their case.  Obviously before any

15   evidentiary hearing, we'd want to depose those folks to know

16   what they're going to say.  So in terms of --

17             THE COURT:  And you know what, all that stuff is

18   going to happen.  That's why we're having this get-together.

19   You guys are now going to think about how you are going to

20   present this case for a hearing on the merits, one.

21             Two, how we are going to fully develop the record

22   so that when there is a final determination, the Courts can look

23   at the various firearms, the various attachments, the -- and

24   decide whether or not they fall into whatever particular test

25   they decide to apply.  Is it going to be Heller and Bruen as the

1    plaintiffs understand Heller and Bruen?  Is it going to be

2    Friedman and Bevis?  I mean, this is -- does he pronounce it

3    Bevis or "Bevis"?  I've heard it pronounced both ways.

4              MR. WELLS:  I believe it's "Bevis," Your Honor.

5              THE COURT:  Okay.  So, but we've had substantial

6    delays in trying to get this case resolved on the initial

7    pleadings and those have not succeeded.  My job as a trial judge

8    is to get this case moving and get the factual issues developed,

9    resolved, and then the -- this isn't going to be the last place

10   where this case is going to be reviewed.  But this is going to

11   be a place where a record is fully developed and then the Courts

12   of review, Seventh Circuit, Supreme Court, can make their

13   decision, where I got it wrong, where I got it right.

14             And so Plaintiffs, you guys have been appellate

15   lawyers.  You're about to become trial lawyers.  How am I going

16   to try this case; who are we going to -- what experts am I going

17   to offer, if any; how am I going to prove what firearms are

18   commonly held or in common use; how am I going to prove the

19   technical capabilities of these particular firearms?  You guys

20   are going to decide what you're fighting over.

21             For instance, I don't know if anybody is

22   particularly worked up at the state of Illinois says you can't

23   have a grenade launcher.  I don't know if that's going to be

24   disputed.  But we are going to start dealing with those sort of

25   things now.

1          MR. WELLS:  Your Honor --

2          THE COURT:  When I set aside time for that

3     hearing, one of the things that we want to talk about is, all

4     right, here's how many witnesses we anticipate calling, whether

5     they're going to be live, whether we have an evidence

6     deposition, whether we have certain documents that we've all

7     stipulated to can be admitted to prove or support different

8     things.  There's nothing to prevent you to do that and you're

9     going to be required to meet and probably meet on multiple

10    occasions to try to work this thing through and figure out how

11    you're going to present your case.  The parties do not agree on

12    the law or the facts in this case.

13          For the Second Amendment claims, this is not a

14    pure question of law.  There are questions of fact that have

15    been sent back to me by the Seventh Circuit.  And so if you're

16    not a trial lawyer, talk to trial lawyers in your firm and say,

17    how would you try this case, how would you present it?

18          And by the way, this is not -- this is not

19    something we're going to take three years to conduct discovery.

20    This case is going to be presented very promptly.  Nobody's

21    going to miss a summer vacation working on this.  It's going to

22    be done before that.  So you need to think about it.  I'm

23    hearing a lot of resistance, but start putting together your

24    case.

25          Barnett, who wants to be -- so let's just -- let

1   me just put it this way.  You guys are going to figure out what

2   witnesses you're going to call.  You're going to make those

3   witnesses available for deposition if the other side wants a

4   deposition.  That's going to be done promptly.  The plaintiffs'

5   lawyers are going to work out amongst themselves what lawyer is

6   going to examine the witness or conduct the examination or the

7   cross-examination on behalf of the plaintiffs.  We're not going

8   to have -- we're not going to have 16 different lawyers asking

9   the same questions.  I do understand that there are some

10  variations for some of the parties, and under those

11  circumstances, counsel will be allowed to inquire of the witness

12  about factual issues that may not be relevant to one of the

13  other party plaintiffs.  So you're going to work that out and

14  we're going to pull this all together.

15              Assault weapons is not a scientific term.  It's

16  more of a political term.  And it varies from who you talk to,

17  and it varies how it's defined.  I'm going to look at each and

18  every one of these guns, each and every one of these attachments

19  that the parties are saying violates the -- banning them

20  violates their rights, and we're going to analyze each of them.

21  We're going to analyze each of them with respect to whether they

22  are truly reserved for military use.  If civilian --

23              Somebody's dying to talk, but they ought to be

24  dying to listen.

25              We're going to look at each of these things.

1   We're going to study each of these things.  And I'll make an

2   independent judgment with respect to the -- these items, these

3   arms, and then having analyzed their capabilities, their design,

4   their uses, then plug in the tests that are or may be

5   applicable.

6        As I sit here, I anticipate saying that this

7   test, Test A is articulated in this case and that case.  Test B

8   is articulated in a different case.  Under both tests, I will

9   analyze these cases.  I understand that the parties see things

10  widely differently on the law.  But there is a lot of things

11  in -- there's a lot of ways I think that Supreme Court cases and

12  Friedman and Bevis can be harmonized for purposes of this

13  proceeding.

14       The Supreme Court can always take cert, but until

15  then, we are now at the trial phase of -- or the evidentiary

16  phase of this hearing.  It's not a jury trial.  This is a

17  request for declaratory judgment.  And so I'm going to declare

18  one way or the other what the judgment of this case is based

19  upon the facts.  So I'm going to keep a short leash on this.

20       How long do the plaintiffs' lawyers need to

21  confer amongst themselves and then with Mr. Wells?

22       MR. ROWEN:  This is Matthew Rowen, Your Honor,

23  for the Barnett plaintiffs.  I think among the plaintiffs'

24  lawyers, we'd need, you know, at least a week.  You can't hear

25  me.  We need at least a week among the plaintiffs' lawyers.  You

1    know, we have tried a similar case and so, you know, we have

2    some experience in terms of witnesses and how all that goes.

3    That was a large capacity magazine case in Oregon where it was

4    six trial days.

5            THE COURT:  Okay.  How long did it take -- how

6    long did it take to try that case?

7            MR. ROWEN:  It was six trial days, and before

8    then, there were I believe a dozen depositions, and that was

9    just on magazines.  And, you know, here we're adding the overlay

10   of a thousand different models of firearms.  So, you know, I

11   think it's going to take some time to get the level of

12   granularity that is arguably required by what the Seventh

13   Circuit decided.  But, you know, we will discuss amongst

14   plaintiffs' counsel, and then we will put forward a plan that we

15   can, you know, meet and confer with Mr. Wells and the state and

16   the other defendants.

17           THE COURT:  Any other plaintiffs' counsel want to

18   be heard?

19           MR. T. MAAG:  Thomas Maag.  I think a week to

20   discuss amongst plaintiffs' counsel is entirely reasonable.  I

21   think that we'd probably ought to be required to at least

22   initiate written discovery in the meantime in the interest of

23   getting this case moving.  Whether or not we have agreement with

24   the defendants on the exact parameters, we're going to have to

25   engage in written discovery anyway.

1       MR. WELLS:  Your Honor, if I could be heard

2  briefly on that discovery discussion.

3       THE COURT:  Can't tell who's talking.

4       MR. WELLS:  I'm sorry.  It's Mr. Wells.  I'm

5  sorry, Your Honor.  So I would again just reiterate, we need

6  Rule 26(a) disclosures to know --

7       THE COURT:  All right.

8       MR. WELLS:  Your Honor said --

9       THE COURT:  How many days do you need to make

10  your Rule 26 disclosures?

11       MR. WELLS:  That's plaintiffs' question at this

12  point, because as I said, the record at this point -- it's

13  theirs to develop.

14       MR. ROWEN:  Yes, Your Honor --

15       MR. T. MAAG:  Thomas Maag for the Langley

16  plaintiffs.  I can have my Rule 26 disclosures out in ten days

17  or less.

18       THE COURT:  All right.  So I'm going to direct

19  that the plaintiffs' attorneys meet and confer and to come to

20  grips with the fact that there is going -- that this case is

21  going to proceed to a hearing in which contested questions of

22  fact are going to be addressed, and that the record you develop

23  will be considered a, quote, fully developed record, what do you

24  need to prove your case.

25       I'm going to give the -- today is Friday.  The

1    lawyers are to confer between now and a week from this Monday,

2    then have an additional seven days to confer with the

3    defendants.

4                I'm going to set this for another status hearing

5    in two and a half weeks.  We're going to revisit this.  And you

6    guys are -- I invite you to come up with something that you

7    think you can live with and that works.  But this is -- this is

8    not going to be a long, drawn-out process.  The hearing itself

9    might take several days to put -- to set aside.

10              But I anticipate, based upon the record that we

11    have, which is quite extensive, that there's going to be some

12    experts that come in and testify.  There's going to be maybe

13    some storeowners that come in and testify about the sales of

14    firearms in Illinois and what they experience, what there's a

15    market for in Illinois, what they were selling prior to this.

16    And there may be some documents that you guys stipulate to with

17    respect to the specific capabilities of each banned firearm.

18    And, you know, you can get -- I would suspect that the

19    manufacturers would cooperate with the plaintiffs' lawyers.

20    Here's what our -- you know, here's what the owner's manual

21    says, here's what the specifications are, we know what the

22    military reserves for itself, we know what MIL-SPEC means.  And

23    so we're going to take a look at those things.

24              But this is going to be on an expedited docket.

25    We're going to expedite this, because we owe it -- we owe it to

1    everybody involved to get, at least at the District Court level,

2    since the Seventh Circuit has said this is a case that cannot be

3    resolved, cannot be resolved by preliminary injunctive relief,

4    it has to go to declaratory judgment.  It cannot be resolved in

5    a preliminary judgment decision.

6              And I'm instructed to develop the record further.

7    I know I sound like a broken record.  But it's important that

8    you guys understand what you're going to be dealing with.  There

9    are a lot of very fine lawyers in this case and a lot of lawyers

10   who have litigated these cases all over the country, lawyers who

11   have argued these cases before federal circuit courts, before

12   the United States Supreme Court.

13             It's not -- I have been studying this.  I have

14   gone through all the stuff that you guys have submitted.  I

15   don't think that the -- an evidentiary hearing as part of the

16   presentation for a request for declaratory judgment is going to

17   be that particularly complicated.  I don't think the discovery

18   is going to take a tremendously long period of time.  The

19   government -- the government has its position on why it ruled or

20   why it legislated the way it did.  The plaintiffs disagree with

21   it and believe that under existing case law, the facts are that

22   some or all of these guns and attachments cannot be banned.

23   They are protected by the Second Amendment.

24             I know, Mr. Maag, you have a Fifth Amendment

25   argument.  That's actually I think a pure question of law.  I

| | |
|---|---|
| 1 | don't anticipate there -- I mean, that's something that can |
| 2 | probably be addressed in summary judgment.  But on these other |
| 3 | ones, it's contested fact. |
| 4 | So let's pick a date for the next status |
| 5 | conference.  Jackie, let's look at what -- |
| 6 | THE COURTROOM DEPUTY:  In two and a half weeks, |
| 7 | you're in trial, so. |
| 8 | THE COURT:  If I'm in trial, I can walk and chew |
| 9 | gum at the same time. |
| 10 | THE COURTROOM DEPUTY:  Your three-week criminal |
| 11 | trial. |
| 12 | THE COURT:  We'll do the same thing.  We're going |
| 13 | to set it for a status conference on Friday. |
| 14 | THE COURTROOM DEPUTY:  That's the 2nd.  That's |
| 15 | the first Friday. |
| 16 | THE COURT:  We'll work with that too.  That's |
| 17 | February -- three weeks from now is February the 2nd? |
| 18 | THE COURTROOM DEPUTY:  Mm-hmm. |
| 19 | THE COURT:  Three Fridays from now? |
| 20 | THE COURTROOM DEPUTY:  Mm-hmm. |
| 21 | THE COURT:  All right.  We're going to set it at |
| 22 | 1:30.  Is that a date that you or -- and I should say, and none |
| 23 | of the lawyers in your firm would be available?  None of the |
| 24 | lawyers in your office would be available? |
| 25 | MR. SIGALE:  David Sigale, Your Honor. |

1  February 2nd at 1:30 is fine.

2  THE COURT:  Mr. Wells?

3  MR. WELLS:  Works for us, Your Honor.

4  THE COURT:  All right.

5  MR. T. MAAG:  Thomas Maag.  That's fine.

6  THE COURT:  Anybody else want to be heard?

7  So between now and February the 2nd, you guys

8  can -- you can agree that we're going to do witness disclosures,

9  preliminary rule disclosures, share it with the other side, and

10  you can even start talking about depositions.  The -- one thing

11  I think we've learned today is that the fact that you guys might

12  agree to a particular schedule doesn't mean that I'm going to go

13  along with it and this case is being expedited.

14  All right.  Anything else for any of the

15  plaintiffs?

16  MR. SIGALE:  David Sigale, Your Honor.  No.

17  Thank you, Your Honor.

18  THE COURT:  Mr. Wells, anything else on behalf of

19  the state parties?

20  MR. WELLS:  Just in terms of the scope of the

21  claims, Your Honor, I think we agree with your view on the Fifth

22  Amendment question, and we'll be filing our response on the

23  19th.  There is the unresolved question of the Langley vagueness

24  claims.  We think the Court's rulings in December are strongly

25  indicative that it's a question of law and that those claims

1    should also be dismissed.  So we --

2                   THE COURT:  Are you talking about vagueness?

3                   MR. WELLS:  Yes, Your Honor.

4                   THE COURT:  Okay.

5                   MR. WELLS:  So we will confer as a team, but I

6    think one of the ways in which we think this could be expedited

7    is to again streamline and focus on the Second Amendment claims

8    as opposed to the additional claims that are in the Langley

9    case.  And just wanted to note that for the Court's benefit so

10   that we can again focus on where we think the commonality here

11   is to move expeditiously.

12                  THE COURT:  Yeah, I don't -- I don't think -- I

13   don't think anyone has raised -- has anyone raised a vagueness

14   claim on the basis of, as applied to them, with respect to like

15   the registration?

16                  MR. WELLS:  Not that I'm aware of, Your Honor.

17   It's Mr. Wells.

18                  THE COURT:  As I said in my order, the -- it

19   doesn't suffer from a lack of clarity of what they're trying to

20   accomplish.  We understand what the core of this -- what the

21   statute is and we understand what's at the core of the

22   registration requirements.  It's people who have these firearms

23   who owned them prior to the date of the enactment have to

24   register the firearms going forward so that if they are found

25   with them, the government is alerted that, yes, you proved that

1    you owned these before the statute was put in place, and you are

2    allowed to possess them.  So we understand those things.

3            What this is -- the focus of what I think that

4    the factual disputes are going to be is the guns, the nature of

5    the right, the specifics, and whether they fall inside or

6    outside Bevis's -- whether they constitute an arm under Bevis

7    and Friedman or whether they do not.  And if they constitute an

8    arm, what's their principal application, is the principal

9    application military, if they are arms, are they commonly held

10   for any lawful purpose.

11           I know that Bevis spent most of his time talking

12   about self-defense in the home, but of course the Second

13   Amendment clearly allows for the right to extend beyond --

14   beyond the interior of their home, beyond their yard, that

15   you're entitled to defend yourself in public.  The Supreme Court

16   has also said that the Second Amendment applies for any lawful

17   use, not just self-defense.  But at the core, obviously, it's

18   concepts of self-defense and that's why it's such an important

19   and fundamental right.

20           So any of the plaintiffs' lawyers, are there

21   as-applied challenges in your pleadings that would be taken up

22   differently than a simple analysis of the firearms and the

23   attachments themselves?

24           MR. MICHEL:  Chuck Michel, Your Honor.  I believe

25   we said in our motion papers in our complaint that we were

1    making an as-applied challenge, that it was not perfected at the

2    time of our motion.  I don't want to really -- I don't want to

3    waive that, but I also don't want to get bogged down in that for

4    the purposes of this evidentiary hearing.  I think we're better

5    off focusing --

6              THE COURT:  No, that's a great point.  And I

7    think that's some of the things that I want the plaintiffs'

8    lawyers to talk about.  That's some of the things that we want

9    the defense lawyers to talk with the plaintiffs' lawyers about.

10   And as long as we are -- as long as we're moving forward towards

11   developing a full record with respect to these firearms, I'm

12   happy with that.  There might be some -- there might be some

13   unique wrinkles that the parties might agree that they -- they

14   live to fight another day on that one, and there are some things

15   that are raised in the pleadings that even if the United States

16   Supreme Court granted certiorari, that those claims may not be

17   addressed by the Supreme Court on certiorari.

18             So any other plaintiffs want to be heard on that?

19   All right.  Thank you.  Think about your case, think how long it

20   will take you to present it, think about the way it can be

21   expedited.  You know who the experts are.

22             Mr. Wells, you took depositions of -- or people

23   on your staff took depositions of certain witnesses who offered

24   affidavits with respect to the vagueness claims.  You know, I

25   don't know how much of that's redundant.  But if you put your

1    heads together, I think you'll find you guys can make a very

2    effective presentation on behalf of your clients' interests,

3    even in a case on an expedited docket.

4                    All right.  Anything else?  All right.  Enjoy

5    your weekend.  We are adjourned.

6                    (Proceedings concluded at 2:20 p.m.)

7

8

9                    ° ° ° ° ° ° ° ° ° ° °

10                   **COURT REPORTER'S CERTIFICATE**

11                   I certify that the foregoing is a correct
     transcript from the record of proceedings in the above-entitled
12   matter.

13

                     Dated this 13th day of January, 2024
14

15                   /s/ Hannah Jagler

16                   _____

17                   Hannah Jagler, RMR, CRR, FCRR
                     Official Court Reporter

18

19

20

21

22

23

24

25