IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALEB BARNETT, *et al.*,<br>    Plaintiffs,<br>        vs.<br>KWAME RAOUL, *et al.*,<br>    Defendants. | Case No.  3:23-cv-209-SPM<br>** designated Lead Case |
| DANE HARREL, *et al.*,<br>    Plaintiffs,<br>        vs.<br>KWAME RAOUL, *et al.*,<br>    Defendants. | Case No.  3:23-cv-141-SPM |
| JEREMY W. LANGLEY, *et al.*,<br>    Plaintiffs,<br>        vs.<br>BRENDAN KELLY, *et al.*,<br>    Defendants. | Case No.  3:23-cv-192-SPM |
| FEDERAL FIREARMS LICENSEES OF ILLINOIS, *et al.*,<br>    Plaintiffs,<br>        vs.<br>JAY ROBERT "JB" PRITZKER, *et al.*,<br>    Defendants. | Case No.  3:23-cv-215-SPM |

## STATE DEFENDANTS' STATUS REPORT

The State Defendants in these consolidated actions—Governor JB Pritzker, Attorney General Kwame Raoul, and Illinois State Police Director Brendan Kelly—provide this status report in advance of the status conference scheduled for this afternoon at 1:30 p.m. This status report is presented solely on the State Defendants' behalf and not on behalf of any other parties.

1.  The parties appeared before the Court on Friday, January 12, 2024, at a status conference in these consolidated actions following the Seventh Circuit's remand of the interlocutory appeals of the Court's April 28, 2023 preliminary injunction ruling. At that status conference, the plaintiffs in three of these consolidated actions (*Barnett*, *Harrel*, and *Federal*

1

*Firearms Licensees of Illinois* ("*FFL*")) proposed that the Court continue to stay proceedings on their Second Amendment claims in this forum while they pursue petitions for writ of certiorari in the United States Supreme Court regarding the Seventh Circuit's November 3, 2023 ruling vacating this Court's April 28, 2023 preliminary injunction. *See Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023). The State Defendants indicated that they did not object to extending the stay pending resolution of the forthcoming cert petition. The plaintiffs in *Langley* indicated their opposition to a stay.

2.  The Court indicated that the proceedings in this forum would not be stayed pending resolution of the forthcoming cert petitions. The Court ordered plaintiffs' counsel to confer with one another the following week (specifically, January 15 through January 21) regarding a proposed case management plan, and to confer with counsel for the defendants the week thereafter (specifically, January 22 through January 29).

3.  The first correspondence the State Defendants received pursuant to the Court's order was an email from counsel for the *FFL* plaintiffs (Mr. Brady) at 7:04 p.m. CST on Wednesday, January 24, inquiring about availability for a meet-and-confer "on or before" Monday, January 29—the last date to comply with the Court's order.[1] Mr. Brady's email included seven topics and/or questions for discussion, but did not include any proposal or proposed schedule for discovery or other proceedings. Mr. Brady's email omitted counsel for multiple defendants—e.g., counsel for various State's Attorneys.

---

[1] Counsel for the State Defendants (Mr. Wells) spoke briefly by phone immediately following the January 12 status conference with one set of plaintiffs' counsel (Mr. Michel on behalf of the *FFL* plaintiffs exclusively). No specific proposal was discussed, as counsel for the four plaintiff groups had yet to confer following the January 12 status conference.

4. Counsel for the State Defendants (Ms. Muse) responded by email the next morning, January 25, indicating availability on Friday, January 26, and Monday, January 29, and proposing that the parties schedule a second, additional opportunity to confer on Thursday, February 1. Ms. Muse reminded plaintiffs' counsel that the Office of the Illinois Attorney General does not represent all defendants. The State Defendants also requested that the plaintiffs provide a simple chart illustrating each plaintiff's respective claims with columns indicating what activity regulated by the challenged statute they wished to engage in (e.g., sell, purchase, manufacture, possess) and for which regulated items. The State Defendants indicated that the plaintiffs' chart would facilitate discussion about how to streamline proceedings on the plaintiffs' overlapping claims, and would enable the State Defendants to identify what challenges to plaintiffs' standing, if any, the State Defendants would raise.

5. Plaintiffs' counsel added counsel for the additional defendants to the email correspondence, and the plaintiffs and State Defendants agreed to meet and confer by Zoom on Monday, January 29, at 2 p.m. CST. At 12:23 p.m. on January 29, counsel for the *Barnett* plaintiffs (Ms. Brookins) emailed the State Defendants the requested chart of plaintiffs' respective claims, while noting that counsel for the *Langley* plaintiffs, Thomas Maag, had not signed off on the chart at that time. Among other things, the chart indicated that two plaintiff groups—the *Langley* and *Harrel* plaintiffs—intended to challenge the prohibition on semiautomatic rifles with "grenade launcher[s]" in the Protect Illinois Communities Act ("the Act"), *see, e.g.*, 720 ILCS 5/24-1.9(a)(1)(A)(v). As with their prior correspondence, the plaintiffs failed to include any proposed case schedule.

6. Based on the State Defendants' understanding of the Court's instructions, counsel for the State Defendants (Ms. Muse) emailed plaintiffs' counsel a proposed case schedule at 1:06

p.m. on January 29 in advance of the meet-and-confer. In accordance with the Federal Rules of Civil Procedure ("FRCP"), and given the number of parties involved, the apparent breadth of the plaintiffs' claims, and the schedules adopted in comparable Second Amendment challenges, the State Defendants proposed the following schedule for the Second Amendment claims:[2]

| | |
|---|---|
| February 16 | Parties exchange initial disclosures pursuant to FRCP 26(a)(1)(A) |
| March 1 | Parties to issue written discovery |
| April 1 | Parties to respond to written discovery |
| April 15 | Parties confer regarding any discovery deficiencies |
| May 1 | Deadline for filing motions to compel regarding written discovery |
| June 30 | Deadline to complete fact witness depositions |
| August 1 | Deadline for plaintiffs' expert reports pursuant to FRCP 26(a)(2) |
| September 30 | Deadline to complete depositions of plaintiffs' experts |
| October 30 | Deadline for defendants' expert reports pursuant to FRCP 26(a)(2) |
| November 30 | Deadline to complete depositions of defendants' experts |

The State Defendants acknowledged that this was an expedited schedule given the number of parties involved. Local Rule 16.1(a) provides that a multi-party case such at this should be given

---

[2] The Court has already denied the *Langley* plaintiffs' motion for summary judgment on their vagueness claims, ECF 132, and dismissed the *FFL* plaintiffs' Due Process claims, ECF 136. The *Langley* plaintiffs' Fifth Amendment claims are subject to pending cross-motions for summary judgment. ECF 133, 151. Thus, the parties discussed a case management plan for the remaining Second Amendment claims.

a 15–18 month pretrial schedule, but this proposed schedule took into consideration the Court's request for a more expedited proposal.

7. At 2 p.m. on January 29, counsel for the plaintiffs, the State Defendants, and some (though not all) State's Attorney defendants, met and conferred via Zoom for approximately one hour. In that discussion, the State Defendants came to understand that the plaintiffs' approach to prosecuting their claims was likely to be significantly different than how the plaintiffs had argued their claims in the preliminary injunction proceedings. Specifically, counsel for the *Barnett* plaintiffs indicated that plaintiffs would offer proof on 9 categories of weapons but did not indicate with specificity what those nine categories of weapons would be. Counsel for the State Defendants noted that plaintiffs' approach at the preliminary injunction stage had been heavily focused on the numerosity of "modern sporting rifles," and did not reflect the 9-category typology that plaintiffs were now proposing. Plaintiffs' counsel indicated that the 9-category approach was based on plaintiffs' understanding of what their burden is under the Seventh Circuit's decision in the interlocutory appeal, and that understanding differs from how plaintiffs understood their burden at the outset of this litigation.

8. During the January 29 meet-and-confer, counsel for the State Defendants requested that plaintiffs' counsel provide in writing a description of the 9 categories on which plaintiffs planned to offer proof and information about the scope of expert testimony plaintiffs planned to offer. In addition, counsel for the State Defendants requested that plaintiffs' counsel respond to the State Defendants' proposed case schedule. All counsel present agreed to meet and confer again on Thursday, February 1, at 2 p.m. CST.

9. On Thursday, February 1, at 12:54 p.m. CST, counsel for the *Barnett* plaintiffs emailed counsel for the State Defendants and the additional defendants a "matrix showing the

banned firearms by named model in the rows, and by statute category/feature subpart across the columns." Counsel for the *Barnett* plaintiffs expressly indicated that counsel for the *Langley* plaintiffs had not signed off on the "matrix". The "matrix" included 48 rows and 44 columns under various labels. Counsel for the State Defendants was not able to readily identify from the "matrix" the 9 categories referenced by plaintiffs' counsel in the January 29 meet and confer. In addition to attaching the "matrix," the transmittal email also identified 9 "expert topics," but without identifying the number of experts plaintiffs planned to disclose or their identities. Plaintiffs did not include a counter-proposal to the State Defendants' proposed schedule.

10. During the February 1 meet and confer, counsel for the State Defendants and plaintiffs' counsel initially discussed the "matrix" transmitted by counsel for the *Barnett* plaintiffs. In that discussion, the State Defendants noted their concern that plaintiffs' standing to challenge many of the items included in the "matrix" was not evident in their pleadings. For example, neither the *Harrel* nor the *Langley* plaintiffs make allegations about an intent to sell, purchase, or possess grenade launchers. In addition, many of the plaintiffs' complaints focused heavily on AR-15-type rifles, and plaintiffs' standing to challenge other types of firearms (e.g., weapons no longer being produced for the U.S. market) regulated by the statute was not evident. The State Defendants proposed that plaintiffs promptly amend their pleadings to identify what specific items regulated by the Act they seek to manufacture, purchase, sell, or possess in a manner prohibited by the Act. The State Defendants indicated that the amended pleadings could help avoid motion practice and streamline discovery to efficiently move the case forward. Plaintiffs' counsel indicated their willingness to consider the proposal and confer with their clients. The State Defendants also requested that plaintiffs' counsel respond in writing to the State Defendants' proposed schedule as soon as possible to determine whether an agreed-upon schedule could be presented to the Court in

advance of the February 2 status conference. The February 1 meet-and-confer lasted approximately 90 minutes.

11. Subsequent to the meet and confer with counsel for all plaintiffs, on the afternoon of February 1, counsel for the *Barnett* plaintiffs (Mr. Rowen) spoke by phone multiple times with counsel for the State Defendants (Mr. Wells).

12. This morning, at 8:23 a.m., counsel for the *Barnett* plaintiffs (Mr. Rowen) emailed counsel for the State Defendants (Mr. Wells and Ms. Muse) requesting to speak by phone. Counsel for the State Defendants (Mr. Wells and Mr. Muse) spoke with counsel for the *Barnett* plaintiffs (Mr. Rowen) for approximately 15 minutes beginning at 8:30 a.m. Mr. Rowen indicated that plaintiffs would not agree to amend their pleadings, but that Mr. Rowen would transmit a counter-proposal regarding a case schedule subject to the caveat that Mr. Maag, counsel for the *Langley* plaintiffs, had not indicated his approval or disapproval of the counter-proposal.

13. At 8:36 a.m., Mr. Rowen transmitted to Mr. Wells and Ms. Muse, exclusively, the following proposed schedule:

1. Initial disclosures pursuant to Rule 26(a)(1)(A) by February 16;
2. Fact discovery:
    - Written discovery shall issue by March 1;
    - Responses due April 1;
    - Parties confer by April 15;
    - Exchange of expert reports by April 24;
    - Motions to compel, if any, due May 1;
    - Exchange of rebuttal expert reports by May 24;
    - Depositions close June 30;
    - Expert witness depositions close July 12

14. The State Defendants respectfully object to the proposed schedule tendered by counsel for the *Barnett* plaintiffs because it is significantly prejudicial to the State Defendants and

7

inconsistent with the Federal Rules of Civil Procedure, the Local Rules (*see, e.g.*, Local Rule 16.1(a)), the State Defendant's due process rights, and typical federal court practice.

15. At this point, the State Defendants lack basic information about the scope of plaintiffs' claims and how they plan to prosecute them in light of the Seventh Circuit's ruling on interlocutory appeal. Which plaintiffs are challenging which parts of the statute? Because standing is not dispensed in gross,[3] what is the basis for each plaintiff's standing for those claims? What specific regulated items does each specific plaintiff want and for what purpose? While some counsel for some plaintiffs have endeavored to provide some of this basic information, even the information provided raises basic questions about the scope of the claims in this case. As noted, two sets of plaintiffs (*Harrel* and *Langley*) apparently believe "grenade launchers" are part of their claims. Where are those allegations in their respective complaints?

16. In the interest of streamlining this litigation and avoiding unnecessary discovery, the State Defendants respectfully request that the Court order plaintiffs to promptly amend their pleadings to specifically identify what parts of the Act they are challenging and what allegations they have that support their standing to bring those specific claims. In addition, the State Defendants respectfully suggest that the parties would benefit from meeting with the magistrate judge to develop a proposed case management schedule that accords with the Federal Rules of Civil Procedure and the Local Rules. Participation of a magistrate judge would ensure that all

---

[3] *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim they press and for each form of relief that they seek (for example, injunctive relief and damages).") *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("[T]he affiants' profession of an 'intent' . . . is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.")

parties and their counsel participate and that the parties can attempt to narrow the scope of their potential disputes and discovery needs outside the presence of the likely trier of fact.

| | |
|---|---|
| Date: February 2, 2024 | Respectfully submitted,<br>/s/ Christopher G. Wells<br>Christopher G. Wells, No. 6304265<br>Kathryn Hunt Muse<br>Office of the Attorney General<br>115 S. LaSalle St.<br>Chicago, IL 60603<br>(312) 814-3000<br>Christopher.Wells@ilag.gov<br><br>*Counsel for Defendants Governor J.B. Pritzker, Attorney General Kwame Raoul, and ISP Director Brendan Kelly* |