IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CALEB BARNETT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-209-SPM |
| | ) | |
| KWAME RAOUL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DANE HARREL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-141-SPM |
| | ) | |
| KWAME RAOUL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| JEREMY W. LANGLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-192-SPM |
| | ) | |
| BRENDAN KELLY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (FIFTH AMENDMENT ISSUES)**

Comes now the Langley Plaintiffs, by and through their attorneys, Thomas G. Maag and the Maag Law Firm, LLC, and state as follows:

## INTRODUCTION

As is attributed to the American philosopher George Santayana, "Those who cannot remember the past are condemned to repeat it."

In drafting the so called "Protect Illinois Communities Act", the proponents of same were in such a hurry to get the statue, in fact any such statute, on the books, that they utterly ignored the Illinois Constitution's three reading rule requirement, a requirement designed to slow the passage of legislation, to improve its quality, fell into a trap that had they spent a week or two researching why prior firearms laws have been declared unconstitutional, might have avoided this issue. Instead, like the Light Brigade, they rode headlong into the Valley of Death for statutes, well guarded by *Haynes* and its 5th Amendment.

Similarly, the Defendant was so desperate to respond to the Fifth Amendment issue, that it literally argued a summary judgment motion without a single document, affidavit or attachment attached.

## FACTS

The simple fact is that PICA purports to require ordinary persons, even today, who possess unregistered PICA regulated firearms to register them.

The ISP, on its own webpage states,

> "Failing to complete and submit the required endorsement affidavit while in possession of items regulated by PICA prior to January 1, 2024, is a violation of Illinois law – specifically, the FOID Act and the Criminal Code of 2012 – unless the individual is exempt. The sentencing ranges are set forth in 430 ILCS 65/14 and 720 ILCS 5/24-1(b). Persons who violate these requirements may be arrested and charged."

This is the exact situation that existed 61 days after the enactment of the original 1934 version of the Federal National Firearms Act, which required NFA regulated firearms to be registered with the IRS within 60 days of passage of that Act.  See. Ex. A, p. 2.  Possession of an unregistered NFA regulated "firearm" after that 60 days was a crime.

As stated by the Seventh Circuit of the original National Firearms Act, "Registration would be an admission that another section or other sections of the Act had been violated and might support a conviction by a court."  *Dugan v. United States*, 341 F. 2d 85, 86 - Court of Appeals, 7th Circuit 1965.  Likewise, the Seventh Circuit also stated, "we do not think that the fact that there *might* be cases where registration would not result in incrimination by the registrant is any answer to the contention that one who is required to register might thereby incriminate himself."  Id.

Defendant argue about past conduct and incrimination.  What *past* conduct can the "registration affidavit", an Orwellian euphemism for a firearm registration form, provide, that might incriminate the registration?  How about the most obvious?  The same situation that existed under the original National Firearms Act, and ruled on in *Haynes*.

Just like under the National Firearms Act of 1934, which required registration within 60 days of the act (See Ex. A, p. 2), all persons in Illinois who possessed PICA regulated firearms were supposed to register their firearms, .50 BMG ammunition and "accessories" on of before December 31, 2023.  See Ex, B, page 2, citing 720 ILCS 5/24-1.9(d), see also Ex C, p. 1) Possession of these PICA regulated items after December 31, 2023, is, drum roll, a crime.  Ex C, p 2.  Do not take Plaintiffs' or their attorney's word for it, look at what Defendant Kelly himself says, that is posted on his own website!

To wit, per the ISP official website on the relevant statute, per FAQ #26, in order for the previously possessed PICA firearm to be legal, the registration affidavit had to be submitted prior to January 1, 2024.  Ex. C, p. 2.

Per the ISP official website, FAQ # 78, while there might not be an additional penalty for submitting a "late affidavit", "the relevant jurisdiction could deem a late endorsement affidavit submittal to be invalid or insufficient."  See Ex. C, p. 3.  In addition, per the official ISP website, FAQ# 30, "failure to submit the required endorsement affidavit … prior to January 1, 2024, is a violation of Illinois law, specifically, the FOID Act and the Criminal Code of 2012…  Persons who violate these requirement may be arrested and charged." Ex. C, p.1.

In addition, even with such an "endorsement affidavit", Defendant ISP considers any PICA firearm purchased during this Court's stay of the PICA statute to be, "unlawful."  See Ex. C, p. 4, FAQ #55

On top of the foregoing, Defendant has posted the registration data on the LEADS system, making it available for police throughout Illinois.  Ex. C, p. 5.

To say that the risks of self incrimination by registration at this point is anything but real, is delusional at best.  Defendant himself is posting on his own official website warnings of potential arrest and prosecution that his lawyers are trying to suggest are make believe.

The online registration form does not indicate that any use or transactional immunity is being provided, at least none is obvious in the text, and Defendant fails to suggest where same might be found.  Neither does the statute.  Defendant makes no argument that neither it, nor any other prosecution authority will use this information against the registrant.  These are the facts. In

fact, the opposite is true. Just like in the original 1934 National Firearms Act, any police official can access the information. (Ex. C, p. 4).

Despite these facts, the arguments of Defendant is that the right against self incrimination is not violated, for three specific reasons. None of which hold any water, and all of which border on the legally and factually frivolous.

**Voluntary Benefit**

Defendant's first argument is that the registration provides a "voluntary benefit" to the registrant that exempts owners from criminal prosecution. (Doc. 151, p. 2). That is simply untrue, and as shown above Defendant's own website admits the prosecution authorities may consider late registration insufficient to avoid prosecution. Coupled with the fact that, as noted in the ISP has provided, and will provide the information to every law enforcement agency in Illinois, there is no "benefit" to registration at this point. Unless the registrant was previously exempt, all a late registration does is admit the person filing same committed a crime.

In fact, unlike the 1934 version of the National Firearms Act, which at least would put the registrant in compliance with the National Firearms Act by registering the firearm, under PICA, the fact of registration is not an actual defense to a crime and does not put the registrant in compliance with the law.

Instead, any perceived "benefit" of registration, at this point, is illusory. While the statute does say,

> In any administrative, civil, or criminal proceeding in this State, a completed endorsement affidavit submitted to the Illinois State Police by a person under this Section creates a rebuttable presumption that the person is entitled to possess

and transport the assault weapon, assault weapon attachment,

.50 caliber rifle, or .50 caliber cartridge.

The simple fact is that, as explained by the Illinois Supreme Court (as it is Illinois law), a rebuttable presumption provides no actual defense. To wit:

> `A rebuttable presumption, such as exists here, is not evidence in itself, but arises as a rule of law or legal conclusion from the facts proved. (*Osborne v. Osborne*, 325 Ill. 229; *Brown v. Brown* 329 Ill. 198; *Trustees of Schools v. Lilly*, 373 Ill. 431.)
>
> These presumptions "do not shift the burden of proof. Their only effect is to create the necessity of evidence to meet the prima facie case created thereby, and which, if no proof to the contrary is offered, will prevail." (*Helbig v. Citizens' Insurance Co*., 234 Ill. 251, 257; accord, *Brown v. Brown,* 329 Ill. 198; *Johnson v. Pendergast*, 308 Ill. 255.)
>
> Stated differently, the presence of a presumption in a case only has the effect of shifting to the party against whom it operates the burden of going forward and introducing evidence to meet the presumption. If evidence is introduced which is contrary to the presumption, the presumption will cease to operate."

*Franciscan Sisters Health Care Corp. v. Dean,* 95 Ill.2d 452, 462 (1983).

Said in plain English, the State simply has to show that the registration form was not timely filed, and then submit the registration form, and that is enough to convict you.

### No One Is Compelled

The next argument is that Defendant says no-one is compelled to file a registration form. This statement is carefully crafted to attempt a literal truism, but it still tastes a falsehood. In the

sense that no one is, ultimately, compelled to continue to breath, the statement is literally true. But just as failing to breath has an obvious consequence, so does failure to register a possessed PICA regulated firearm under PICA, assuming no exemption. There is a criminal penalty, as set forth below.

> f) Penalty. A person convicted of failure to possess a FOID Card as required by Section 2 of the Act **or complete an electronic endorsement affidavit as required by Section 24-1.9 of the Criminal Code of 2012**, commits a Class A misdemeanor or Class 3 or 4 felony depending upon the circumstances of the violation. (See 430 ILCS 65/14 and 720 ILCS 5/24-1(a)(15))."

See Ex. B.

If that is not compulsion, under the law, nothing is. It also looks a whole lot like the phrase in the 1934 National Firearms Act, that, "… failing to register as state above becomes liable to a penalty of …$2,000, or to imprisonment for not more than five years, or both, as provided by law." Ex. A, p. 2.   Under *Haynes,* this is and was compelled self incrimination.

### No Real and Substantial Possibility of Prosecution

In this case, if one has an unregistered PICA regulated firearm in the State of Illinois, and are not subject to a special statutory exemption, as of December 1, 2024, they are committing a crime, as noted Supra. It matters not how they obtained said firearm, the crime is the post 2023 possession. Whether or not the initial 2023 registration period violated the right against self incrimination, in the post 2023 time period it does.

Defendant cites to the Illinois Supreme Court, which stated this "provision permits persons who lawfully possessed [PICA regulated] weapons before January 10, 2023, to continue

to possess them as long as they provide [a registration] to the Illinois State Police by January 1, 2024. (Doc. 152, p. 7, citing *Caulkins v. Pritzker*, 2023 IL 129453 para 8, in turn citing 720 ILCS 24-19.9(c)(d). Yes and no.

What about persons that did not register by January 1, 2024? Is not their possession a criminal offense? As noted above ISP on its official website thinks so.

720 ILCS 24-1.9(c) states:

> (c) Except as otherwise provided in subsection (d), beginning January 1, 2024, it is unlawful for any person within this State to knowingly possess an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge.

720 ILCS 24-1(d) states:

> (d) This Section does not apply to a person's possession of an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge device if the person lawfully possessed that assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge prohibited by subsection (c) of this Section, if the person has provided in an endorsement affidavit, prior to January 1, 2024, under oath or affirmation and in the form and manner prescribed by the Illinois State Police, no later than October 1, 2023:

Thus, we *know* that, subject to any statutory exceptions, any firearm not registered prior to January 1, 2024, is illegal, period. 720 ILCS 24-1(d)'s exceptions facially do not apply to post 2023 registrations, period. *Caulkins* says nothing to the contrary.

So how did the Supreme Court in *United States v. Freed*, 401 U.S. 601 (1971), uphold the federal National Firearms Act, after the 1968 revisions, following *Haynes*? According to the Supreme Court, they did it because, as noted in Freed,

> "the claimant is not confronted by "substantial and real,"' but merely "trifling or imaginary hazards of incrimination" –
>
> first by reason of the statutory barrier against use [of the registration form and data] in a prosecution for prior or concurrent offenses, and
>
> second by reason of the unavailability of the registration data, as a matter of administration, to local, state, and other federal agencies. […] Since the state and other federal agencies never see the information, he is left in the same position as if he had not given it, but "had claimed his privilege in the absence of a . . . grant of immunity." […] This, combined with the protection against use to prove prior or concurrent offenses, satisfies the Fifth Amendment requirements respecting self-incrimination."

The registration form from 1968 for the 1968 revisions to the National Firearms Act reflect these protections, to wit:

> "…The statute requiring you to register your firearms provides that information or evidence required to be submitted or retained by you (if a natural person) is registering your firearm during the special grace period shall not be used against you directly or indirectly…

(See IRS Form 4467(October 1968, "Registration of Certain Firearms During November 1968" attached hereto as Ex. D, p. 2, para. 5).

By not offering immunity, *and* publishing the registration data on LEADS to every law enforcement agency at least in the State, the PICA statute *fails,* at least as to late registrations, for the same reason that *Haynes* ruled the pre-1968 version of the National Firearms Act unconstitutional under the 5th Amendment.  Had the Illinois legislature actually complied with their own State Constitutional 3 readings rules, perhaps, just perhaps, the Illinois General Assembly would have had sufficient time to research this issue, actually read cases like *Haynes* and *Freed,* both of which are common law school texts, and both provide the immunity and confidentiality that was recognized in *Freed*, and that upheld the National Firearms Act as it was amended in 1968, at least under the 5th Amendment.  Instead, the Illinois General Assembly bumbled right into well settled law, so well settled, that our literal grandfathers could have cited the same cases fifty years ago to get the same result.

## CONCLUSION

For the same reasons that the Supreme Court, in *Haynes* rendered the original version of the National Firearms Act unenforceable and unconstitutional under the Fifth Amendment in 1968, the Illinois General Assembly wrote a fatally defective statute.  Granted, at least on Fifth Amendment issues, the *Freed* case provides a roadmap on how to solve that problem, but alas, the State has not done so, and shows no indication that it wishes to.  PICA, as written, at least the registration related components, violate the Fifth Amendment.  It is the duty of this Court, in fact, all courts, to interpret the law, and if an act is repugnant to the Constitution, to decare it to be so. *Marbury v. Madison*, 5 U.S. 137 (1803).

To that end, Plaintiffs renew their request for summary judgment in their favor on the Self Incrimination (5th Amendment) issue, enjoining Defendants, and those acting in concert with, or under the authority of Defendants, from enforcing or administering any portion of the

registration provisions of PICA, or related to possessing unregistered firearms, accessories or ammunition.

Dated:  2-13-2024                                           Respectfully Submitted,
                                                            Jeremy Langley, et al

                                                            By:s/Thomas G. Maag
                                                            Thomas G. Maag
                                                            Peter J. Maag
                                                            Maag Law Firm, LLC
                                                            22 West Lorena Avenue
                                                            Wood River, IL  62095
                                                            618-973-8679
                                                            tmaag@maaglaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed, using the CM/ECF system, which will send notification to all registered users:

Dated:  2-13-24                                              S/Thomas G. Maag