# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALEB BARNETT et al., <br>     Plaintiffs, <br> v. <br> KWAME RAOUL et al., <br>     Defendants. | No. 3:23-cv-00209-SPM (lead case) |
| DANE HARREL et al., <br>     Plaintiffs, <br> v. <br> KWAME RAOUL et al., <br>     Defendants. | No. 3:23-cv-00141-SPM |
| JEREMY W. LANGLEY et al., <br>     Plaintiffs, <br> v. <br> BRENDAN KELLY et al., <br>     Defendants. | No. 3:23-cv-00192-SPM |
| FEDERAL FIREARMS LICENSEES OF ILLINOIS et al., <br>     Plaintiffs, <br> v. <br> JAY ROBERT "J.B." PRITZKER et al., <br>     Defendants. | No. 3:23-cv-00215-SPM |

**DIRECTOR KELLY'S REPLY IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT ON *LANGLEY* COUNT I**

Director Kelly identified three independent reasons why the *Langley* plaintiffs cannot prevail on their claim that the endorsement affidavit set forth in section 24-1.9(d) of the Criminal Code, 720 ILCS 5/24-1.9(d), violates the constitutional privilege against self-incrimination. Plaintiffs respond with a mix of errors, irrelevancies, and new arguments designed to obscure their inability to rebut any of Director Kelly's points. For this reason, and also because plaintiffs are mounting a high-profile challenge to the constitutionality of a recently enacted state law, these are exceptional circumstances justifying a reply pursuant to Local Rule 7.1(a)(4).

Director Kelly first explained registration and disclosure requirements violate the privilege against self-incrimination only if they are directed to people suspected of criminal activities and automatically subject those people to criminal penalties. ECF 152 at 2-8. The endorsement affidavit, by contrast, has neither of these features. *Id.* Plaintiffs do not dispute the governing legal standard or offer any contrary reading of the cases Director Kelly cited in support. They do not contend the affidavit is directed at the criminally suspect. And they do not argue an affidavit submitted according to the requirements of section 24-1.9(d) would automatically subject anyone to criminal penalties. These omissions are fatal to their claim.

Director Kelly next explained that the endorsement affidavit does not violate the privilege against self-incrimination because no one is compelled to submit one. ECF 152 at 8-10. A person who refuses is not exposed to penalties on that basis alone. *Id.* Plaintiffs point to emergency rules they think provide otherwise. ECF 165 at 7. But the final rules, effective February 8, refer to penalties for "***possession*** of an assault weapon without having completed an electronic endorsement affidavit." *See* 48 Ill. Reg. 2731, 2881, 2900 (emphasis added), *available at* https://www.ilsos.gov/departments/index/register/volume48/register_volume48_8.pdf. In any event, an Illinois agency cannot use its rulemaking authority to rewrite or expand a statute, *e.g.,*

1

*Du-Mont Ventilating Co. v. Department of Revenue*, 73 Ill. 2d 243, 247-48, 383 N.E.2d 197, 200 (1978), so it is the text of the Criminal Code that matters. And that text is clear. It is the act of **possessing** an assault weapon that exposes people to criminal penalties. 720 ILCS 5/24-1(a)(15), 24-1(b), 24-1.9(c), 24-1.9(d). Plaintiffs do not deny that a person who declines to submit an endorsement affidavit has viable alternatives to avoid liability for possession. Nor do they take issue with the caselaw holding mere pressure to speak in the hopes of obtaining a benefit does not make the speech compelled. Again, these omissions are fatal to their claim.

Finally, Director Kelly explained that the endorsement affidavit does not violate the privilege against self-incrimination because the information it contains does not present a real and substantial risk of incrimination. ECF 152 at 11-15. Plaintiffs do not deny their fears about traffic stops and targeting by the police are, under the caselaw, merely trifling or imaginary and thus insufficient to invoke the privilege. Once more, these omissions are fatal to their claim.

If plaintiffs have no response to any of Director Kelly's arguments, what do they have to say? Mostly, they worry about hypothetical people who might submit endorsement affidavits after the deadline. Section 24-1.9(d) provides anyone who wanted to continue possessing an assault weapon they owned on the statute's effective date must have submitted the affidavit "prior to January 1, 2024." 720 ILCS 5/24-1.9(d). But what if someone tries to submit an affidavit today—or next month, or next year? As plaintiffs see it, "all a late registration does is admit the person filing same committed a crime" because "any firearm not registered prior to January 1, 2024, is illegal, period." ECF 165 at 5, 8. Thus, they reason, the affidavit violates the privilege against self-incrimination "at least as to late registrations." *Id.* at 10.

The problem for plaintiffs is they have not provided any evidence showing they have submitted (or intend to submit) untimely affidavits. To the contrary, their response insists "there

is no 'benefit' to registration at this point." ECF 165 at 5. As the Illinois State Police guidance attached to plaintiffs' response makes clear, the deadlines are set by statute and a prosecutor may conclude a late submission is "invalid or insufficient" to exempt the affiant from criminal liability. ECF 165-3 at 3.

Regardless, plaintiffs do not suggest, much less establish with evidence, that "they personally have been injured" due to submitting an untimely affidavit. *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Thus, they lack standing to pursue this claim on behalf of themselves. *E.g., Bria Health Services, LLC v. Eagleson*, 950 F.3d 378, 384 (7th Cir. 2020) ("The general rule is that plaintiffs must [rely on] their own injuries to establish standing."). And, as the Court recently reminded other plaintiffs in these consolidated cases, they "cannot bring suit on behalf of hypothetical, unnamed Illinois citizens." ECF 136 at 21. To the contrary, "under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Because "federal courts do not adjudicate hypothetical or abstract disputes" and "do not possess a roving commission to publicly opine on every legal question," the Court lacks jurisdiction to address plaintiffs' speculative concerns about hypothetical third parties who, by plaintiffs' own logic, would have no reason to submit an untimely endorsement affidavit. *Id.* at 423.

Besides, the argument is meritless. Just as no one was compelled to submit an endorsement affidavit **before** the deadline, no one is compelled to submit one **after** the deadline. Since "Chief Justice Marshall first gave attention to the matter in the trial of Aaron Burr, all have agreed that a necessary element of compulsory self-incrimination is some kind of compulsion." *Hoffa v. United States*, 385 U.S. 293, 303-04 (1966). But there is no compulsion here because a person who declines to submit an untimely endorsement affidavit is not "risking serious

3

punishments for refusing to do so"; in fact, there is no penalty at all. *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 76 (1965). Again, this is fatal to plaintiffs' claim.

Plaintiffs make three additional points that require quick correction:

1. Plaintiffs claim the Illinois Supreme Court has held "a rebuttable presumption provides no actual defense." ECF 165 at 6 (citing *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 461-62, 448 N.E.2d 872, 876 (1983)). It has not. The court actually said, if a rebuttable presumption is properly raised, the burden of production shifts to the opposing party, who may then attempt to introduce evidence negating the presumption. *Franciscan Sisters*, 95 Ill. 2d at 463, 448 N.E.2d at 877. If the opposing party "offer[s] no evidence to rebut the presumption," however, the party raising the presumption is "entitled to a judgment as a matter of law" on that issue. *Id.* Thus, a person who submits an endorsement affidavit is entitled to judgment that they are lawfully possessing the associated weapon ***unless*** the government produces sufficient evidence to show otherwise (perhaps because the affidavit was not accurately or truthfully completed in accordance with the law). This is the standard way rebuttable presumptions work, and plaintiffs are mistaken to suggest Illinois law is some sort of outlier.

2. Plaintiffs accuse Director Kelly of being "so desperate to respond to the Fifth Amendment issue, that [he] literally argued a summary judgment motion without a single document, affidavit or attachment attached." ECF 165 at 2. But, as Director Kelly explained, his motion "presents 'a pure question of law'" and thus "there are no relevant, material facts at issue." ECF 152 at 1 n.*. Plaintiffs do not disagree with this; they do not identify any material facts they think are relevant to the legal questions at hand. There is no rule requiring every summary judgment motion to be accompanied by attachments; to the contrary, Federal Rule of Civil Procedure 56(c)(1) requires citation to evidence only in support of "[f]actual [p]ositions."

4

3. Plaintiffs castigate the General Assembly for supposedly violating the Illinois constitution's three readings rule when passing PICA. ECF 165 at 2, 10. They did not raise any such claim in this litigation, however, perhaps because challenges under the rule are foreclosed by binding precedent. *E.g., Friends of Parks v. Chicago Park District*, 203 Ill. 2d 312, 328-29, 786 N.E.2d 161, 170-71 (2003); *see Accuracy Firearms, LLC v. Pritzker*, 2023 IL App (5th) 230035, ¶¶ 36-46, *vacated as moot*, No. 129421, 2024 WL 330592 (Ill. Jan. 24, 2024) (three readings attack on PICA unlikely to succeed). In any event, plaintiffs' musings about the purported benefits of the three readings rule are irrelevant to their self-incrimination claim.

One final point. Plaintiffs make no mention of their new due process theory concerning a purported inability "to properly actually register many common firearms that are required to be registered." ECF 133 at 11. As Director Kelly explained, plaintiffs cannot constructively amend their complaint to add this claim because they lack Article III standing to pursue it; they did not establish they were affected by these issues (or even evidence the existence of any such issues). ECF 152 at 15-16; *see Campania Management Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002) ("it is universally known that statements of attorneys are not evidence"). Plaintiffs' failure to dispute this shows they have given up their misguided effort.

Plaintiffs have no response to Director Kelly's arguments that a timely endorsement affidavit does not run afoul of the privilege against self-incrimination. And they have no right under Article III to prosecute hypothetical claims about untimely affidavits. For all these reasons, the Court should grant Director Kelly's cross-motion for summary judgment. ECF 151.

Dated: February 23, 2024                                    Respectfully submitted,

KWAME RAOUL                                                  /s/ Darren Kinkead
Attorney General of Illinois                                Darren Kinkead, ARDC No. 6304847
                                                            Office of the Attorney General
Laura K. Bautista, ARDC No. 6289023                         115 South LaSalle Street
Kathryn Hunt Muse, ARDC No. 6302614                         Chicago, IL 60603
Christopher G. Wells, ARDC No. 6304265                      (773) 590-6967
                                                            Darren.Kinkead@ilag.gov