# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF ILLINOIS

CALEB BARNETT, *et al.*,
    Plaintiffs,

v.

KWAME RAOUL, *et al.*,
    Defendants.

Case No.  23-cv-00209-SPM (Lead Case)

DANE HARREL, *et al.*,
    Plaintiffs,

v.

KWAME RAOUL, *et al.*,
    Defendants.

Case No.  23-cv-00141-SPM

JEREMY W. LANGLEY, *et al.*,
    Plaintiffs,

v.

BRENDAN KELLY, *et al.*,
    Defendants.

Case No.  23-cv-00192-SPM

FEDERAL FIREARMS
LICENSEES OF ILLINOIS, *et al.*,
    Plaintiffs,

v.

JAY ROBERT "J.B." PRITZKER, *et al.*,
    Defendants.

Case No.  23-cv-00215-SPM

# **MEMORANDUM AND ORDER**

**McGLYNN, District Judge:**

Pending before the Court are two motions for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The first is a Motion for Partial Summary Judgment on Count I filed by plaintiffs Jeremy W. Langley, Timothy B. Jones, and Matthew Wilson (collectively the "*Langley* Plaintiffs") (Doc. 133); the second is a Cross Motion for Partial Summary Judgment filed in response by Defendant Brendan Kelly, the Director of the Illinois State Police ("ISP") (Doc. 151). Having been fully informed of the issues presented, this Court **DENIES** the *Langley* Plaintiffs' Motion for Partial Summary Judgment arguing that the Protect Illinois Communities Act, Ill. Pub. Act 102-1116 § 1 (codified at 720 ILL. COMP. STAT. 5/24-1.9–1.10) ("PICA") is unconstitutional under the Fifth and Fourteenth Amendments. Additionally, the Court **GRANTS** Director Kelly's Cross Motion for Partial Summary Judgment.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As this is the second Motion for Partial Summary Judgment submitted by the *Langley* Plaintiffs, the Court will not belabor the factual and procedural background of the instant motions. As previously noted in this case, Illinois Governor J.B. Pritzker signed PICA within months of the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*. *See* 142 S. Ct. 2111 (2022). Caleb Barnett, Brian Norman, Hoods Guns & More, Pro Gun and Indoor Range, and National Shooting Sports Foundation, Inc. (collectively the "*Barnett* Plaintiffs"), the *Langley* Plaintiffs, and various other citizen firearm owners, firearm retail

establishments, and firearms advocacy organizations commenced four separate actions[1] against various Illinois government actors in pursuit of declaratory judgment that PICA is unconstitutional under the Second, Fifth, and Fourteenth Amendments. *See Bruen*, 142 S. Ct. 2111 (2022); *see also McDonald v. City of Chicago*, 561 U.S. 742 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008).

The Plaintiffs sought preliminary injunctions to enjoin the enforcement of PICA in each of the four cases,[2] which were granted by this Court in *Barnett* on April 28, 2023. (Doc. 101). The Seventh Circuit vacated the initial preliminary injunction on November 3, 2023. *See Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. Nov. 3, 2023). The *Federal Firearms Licensees of Illinois* Plaintiffs filed a second motion for preliminary injunction on November 13, 2023, which this Court denied on December 22, 2023. *See* 23-cv-00215-SPM (Docs. 57, 75). Various *Bevis* Plaintiffs (including the *Barnett* and *Langley* Plaintiffs) concurrently filed petitions for rehearing by the same panel and rehearing en banc, *see Bevis* (Docs. 129, 139), which were denied by the Seventh Circuit on December 11, 2023. *See id.* (Docs. 146, 147). Three *Bevis* plaintiffs[3] filed an application for writ of injunction with the Supreme Court—Justice Amy Coney Barrett referred the application to the full Supreme Court, which denied it on December 14, 2023. *See Nat'l Ass'n for Gun Rts. v. City of Naperville*, No. 23A486

---

[1] This Court consolidated the following four cases for purposes of discovery and injunctive relief: *Harrel v. Raoul*, 23-cv-00141-SPM; *Langley v. Kelly*, 23-cv-00192-SPM; *Barnett v. Raoul*, 23-cv-00209-SPM; and *Fed. Firearms Licensees of Ill. v. Pritzker*, 23-cv-00215-SPM. *Barnett* was designated as the lead case. (*See* Doc. 32).

[2] *See Harrel*, 23-cv-00141-SPM (Doc. 16); *Langley*, 23-cv-00192-SPM (Doc. 6); *Barnett*, 23-cv-00209-SPM (Doc. 10); and *Fed. Firearms Licensees of Ill.*, 23-cv-00215-SPM (Doc. 28).

[3] The National Association for Gun Rights, Robert C. Bevis, and Law Weapons, Inc. d/b/a Law Weapons and Supply filed the application in question. *See Nat'l Ass'n for Gun Rts. v. City of Naperville*, No. 23A486 (Dec. 14, 2023).

(Dec. 14, 2023). All four groups of plaintiffs also filed petitions for writs of certiorari before the Supreme Court; all of these petitions were denied on July 2, 2024. *See Harrel v. Raoul*, 144 S. Ct. 2491 (July 2, 2024) (Opinion of Thomas, J.); *see also Harrel v. Raoul*, No. 23-877 (2024); *Barnett v. Raoul*, No. 23-879 (2024)[4]; *Langley v. Kelly*, No. 23-944 (2024). At present, *Barnett* is quickly moving toward a final adjudication on the merits, with the bench trial scheduled to begin on September 16, 2024. (*See* Docs. 195, 214).

The *Langley* Plaintiffs filed their pending Motion for Summary Judgment on December 20, 2023. (Doc. 133). In the same vein as the *Langley* Plaintiffs' previous Motion for Partial Summary Judgment (*see* Doc. 111), neither the *Barnett* Plaintiffs nor the *Harrel* or *Federal Firearms Licensees of Illinois* Plaintiffs joined the motion. The pending Motion relates to Count 1 of the *Langley* Plaintiffs' original Complaint, specifically the claim that the statutory and registration scheme implemented by PICA violates the Fifth Amendment's privilege against self-incrimination. (*See* Doc. 133; *see also Langley*, 23-cv-00192-SPM (Doc. 1)). Director Kelly filed a Cross Motion for Partial Summary Judgment on January 19, 2024 (Doc. 151) to which the *Langley* Plaintiffs responded on February 13, 2024 (Doc. 165). Director Kelly filed a Reply on February 23, 2024 (Doc. 167).

## APPLICABLE LAW AND LEGAL STANDARDS

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[4] The *Barnett* and *FFL* Plaintiffs jointly filed a petition for writ of certiorari.

matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)). The non-movant cannot simply rely on its pleadings; the non-movant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

## ANALYSIS

To begin, the Court first notes that the issues before the Court are pure questions of law; as Director Kelly notes, "there are no relevant, material facts at issue in connection with this cross-motion." (Doc. 152, p. 1 n.1 (citing Jan. 12, 2024 Hr'g Tr. 25:24-26:3)). Turning to the analysis of the issues at hand, it is unconstitutional for a citizen "to be compelled in any criminal case to be a witness against himself." U.S. CONST. amend V. The Fourteenth Amendment has been held to apply the Fifth Amendment's protections for individuals against state governments. *See, e.g.*, *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963) ("[A] provision of the Bill of Rights which is 'fundamental and essential to a fair trial' is made obligatory upon the States by the Fourteenth Amendment."); *see also* U.S. CONST. amend XIV.

The *Langley* Plaintiffs argue that the purported violation of the Fifth and Fourteenth Amendments is sufficient to render the PICA registration requirement unconstitutional and request this Court to "enjoin enforcement of all such registration requirements under the present statute, including but not limited to any ban on possession of PICA regulated [sic] firearms (or accessories or ammunition) that have not been so registered." (*See* Doc. 133, pp. 17–18). The *Langley* Plaintiffs argue that the PICA registration requirement is unconstitutional because submitted registration information "can be used against them." (Doc. 133, p. 2). Their concern is that information stored in the registration database could hypothetically be used for criminal prosecution "if Plaintiffs, through inadvertence or omission, fail to timely

renew their FOID cards . . . [or] become the victim of a frivolous or malicious 'order of protection.'" (*Id.*, p. 2). They argue that compliance with PICA "might well be admitting to a violation of a local ordinance." (*Id.*, p. 9–10). They also express concerns that PICA registration information could be used as probable cause for law enforcement to conduct searches. (*See id.*, p. 10 (citing *People v. Ross*, 682 NE.2d 87 (Ill. App. Ct. 1997))).

The *Langley* Plaintiffs cite both *Haynes v. United States*, 390 U.S. 85 (1968) and *United States v. Freed*, 401 U.S. 601 (1971) as standing for the proposition that it would be unconstitutional for citizens to be compelled to register firearms under the National Firearms Act if doing so would expose them to criminal liability. (*See* Doc. 133, pp. 6, 9, 15–16 (citing the same)). They argue that because Illinois "has not set forth an actual mechanism to truthfully register much of the PICA regulated firearms in actual circulation, thus requiring, either lack of registration, or a false statement by the would be [sic] registrant. But there is a right to remain silent to not be forced to commit perjury." (Doc. 133, pp. 15–16). They argue that "even assuming a person is able to register a PICA firearm, they are being compelled, under penalty of law, to provide testimonial evidence of their firearm possession (not just eligibility to possess, actual possession), which law enforcement around the state can use to justify probable cause to search their car." (*Id.*, p. 17).

The *Langley* Plaintiffs also bring a claim not previously raised in their Complaint—they argue that the PICA-mandated registration system implemented by ISP complicates registration of certain types and models of firearms. (*See id.*, pp.

11–14). They argue that, per *Bryson v. United States*, 396 U. S. 64, 72 (1969), "a citizen may decline to answer Government question [sic], or answer it honestly, but cannot with impunity knowingly and willfully answer it with a falsehood." (Doc. 133, p. 14 (citing *Bryson* at 72)). With this in mind, they claim that "the possessor of a PICA firearm made by an unlisted manufacturer must simply not provide the data, as there is no mechanism to produce it, and per *Bryson*, the possessor cannot provide false information, by, for instance, just listing a similar sounding manufacturer, or one at random." (*Id.* (citing *Bryson*)). They thus argue that "in January 1, 2024, if you try to register an unregistered firearm, under PICA, you are admitting to a crime, and not afforded any immunity for same. That crime would be . . . possession of an unregistered firearm." (*Id.*).

In his Cross Motion for Partial Summary Judgment, Director Kelly argues that the PICA registration requirement does not violate the Fifth Amendment privilege against self-incrimination for three reasons: first, the endorsement affidavit is a "voluntary benefit that exempts owners of certain assault weapons from otherwise applicable criminal penalties; it is not directed at the criminally suspect, and the act of submitting an affidavit does not constitute a confession of criminality"; second, no one is compelled to submit an affidavit; the government has no authority to impose any criminal or economic penalty on residents who are eligible to submit an affidavit but, for whatever reason, decline to do so"; and, third, "the possibility plaintiffs will be prosecuted based on the information contained within their affidavits is not real and substantial." (Doc. 152, pp. 3–4).

Director Kelly first argues that "[r]egistration and disclosure provisions are common in federal and state statutes" and that "[t]hese types of provisions only implicate the Fifth Amendment if they are directed at the criminally suspect or compel confession of criminal activity." (Doc. 152, p. 4). He argues that the registration requirement created by PICA does not fit within "the narrow circumstances in which a disclosure or registration provision may infringe the Fifth Amendment right against self-incrimination." (*Id.*). Director Kelly cites *Marchetti v. United States*, 390 U.S. 39, 42–44 (1968); *Grosso v. United States*, 390 U.S. 62, 64–65 (1968); and *Haynes v. United States*, 390 U.S. 85 (1968) as supporting this proposition. His key argument is that proscribed registration requirements "constituted an Ipso facto confession of criminality" unlike the endorsement affidavit process at issue here. (Doc. 152, p. 6 (quoting *United States v. Scherer*, 523 F.2d 371, 375 (7th Cir. 1975))). Director Kelly argues that, because the registration requirement at issue here is "clearly directed at law-abiding persons as well as criminally suspect persons" and "is a voluntary benefit available to anyone who owned an assault weapon before January 10, 2023 . . . that allows them to maintain possession of that weapon," therefore, "[p]eople who choose to submit an affidavit do not confess to criminality or automatically become subject to criminal penalties." (Doc. 152, pp. 7, 10 (quoting *Lauchli v. United States*, 481 F.2d 408, 411–12 (7th Cir. 1973))).

Director Kelly next argues that the registration requirement here is permissible because "the privilege against self-incrimination is violated only when a

person is 'compelled in any criminal case to be a witness against himself.'" (Doc. 152, p. 10 (citing U.S. Const., amend V)). In comparison to cases in which the defendant faces direct criminal penalties from refusal to register, Director Kelly argues that, here, "[t]he government . . . has no recourse against a person who is eligible to submit an endorsement affidavit but declines to do so" and, therefore "[t]he decision whether to submit an affidavit is entirely voluntary; choosing to refrain, on its own, does not expose anyone to any penalties at all." (Doc. 152, p. 12). Instead, he argues that, here, Illinois citizens "who do not wish to submit an affidavit have other options available to avoid criminally possessing their exempt assault weapons in Illinois; they can sell the firearm to an eligible purchaser, retain ownership but move it out of state, give the firearm to law enforcement, or permanently disable or destroy it." (*Id.*). Even though firearm owners may find such alternatives to be "undesirable," Director Kelly argues that government "pressure" does not equate to "compulsion" under the Fifth Amendment. (*Id.* (quoting *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 287–88 (1998))).

Third, Director Kelly argues that while the "plaintiffs speculate their endorsement affidavits 'could be used and abused by the State government, and others, like the City of Chicago, with access to the information,'" they are "cagey about how they think this could be done" and "do not identify any past or present acts or omissions as to which information contained in their affidavits could be incriminating." (Doc. 152, pp. 12–13 (citing Doc. 133, p. 7)). He argues that "the constitutional protection is confined to real danger . . . and does not extend to remote

possibilities out of the ordinary course of law." (Doc. 152, p. 13 (quoting *Heike v. United States*, 227 U.S. 131, 144 (1913))). Moreover, "to invoke the privilege, the claimant must identify a 'possibility of prosecution which is more than fanciful.'" (*Id.* (quoting *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871 (7th Cir. 1979))).

Finally, Director Kelly also argues that the *Langley* Plaintiffs are attempting to fashion an additional due process claim regarding unnamed individuals having difficulty in registering specific weapons and attachments. (*See* Doc. 152, p. 17 (citing Doc. 133 at 11; *id.* Ex. 5)). He argues that, because the *Langley* Plaintiffs have not indicated conclusively that any of the named plaintiffs in this action have had difficulty registering weapons, they do not have standing to assert such claims. (See Doc. 152, p. 18 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)) (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020); *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 384 (7th Cir. 2020); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019))).

In their Response (Doc. 165), the *Langley* Plaintiffs reiterate their argument that the instant registration requirement is "an Orwellian euphemism for a firearm registration form" and is analogous to "the situation that existed under the original National Firearms Act, and ruled on in *Haynes*." (*Id.*, p. 3). They argue that the ISP's website indicates that "failure to submit the required endorsement affidavit . . . prior to January 1, 2024, is a violation of Illinois law, specifically, the FOID Act and the

Criminal Code of 2012 . . . . Persons who violate these requirements[5] may be arrested and charged." (*Id.*, p. 4 (citing FAQ 30, PROTECT ILLINOIS COMMUNITIES ACT, REGULATION ON ASSAULT WEAPONS, ILL. STATE POLICE, https://www.isp.illinois.gov/Home/AssaultWeapons [https://perma.cc/9RVL-ZY9S] (last visited Sept. 9, 2024))). They dispute Director Kelly's argument that the registration affidavit is a "voluntary benefit," insisting that "any perceived 'benefit' of registration, at this point, is illusory" because it only confers a "rebuttable presumption [which] provides no actual defense." (*Id.*, pp. 5–6 (citations omitted)). They argue that "the State simply has to show that the registration form was not timely filed, and then submit the registration form, and that is enough to convict you." (*Id.*, p. 6). They argue that "just as failing to breath [sic] has an obvious consequence, so does failure to register a possessed PICA regulated firearm under PICA, assuming no exemption." (*Id.*). The *Langley* Plaintiffs point to § 1230.15 of the Illinois Administrative Code which states that "[a] person convicted of failure to possess a FOID Card as required by Section 2 of the Act or complete an electronic endorsement affidavit as required by Section 24-1.9 of the Criminal Code of 2012, commits a Class A misdemeanor or Class 3 or 4 felony depending upon the circumstances of the violation." (*Id.*, p. 7 (citing 430 ILL. COMP. STAT. 65/14; 720 ILL. COMP. STAT. 5/24-1(a)(15))). Finally, they argue that by "not offering immunity, and publishing the registration data on LEADS to every law enforcement agency at least in the State, the PICA statute fails, at least as to late registrations, for the same

---

[5] There is a typographic error in the quotation used by the *Langley* Plaintiffs in their transcription of this quotation. The correct quotation is used here for clarity.

reason that *Haynes* ruled the pre-1968 version of the National Firearms Act unconstitutional under the 5th [sic] Amendment." (*Id.*, p. 10).

In his Reply (Doc. 167), Director Kelly further argues that he "first explained registration and disclosure requirements violate the privilege against self-incrimination only if they are directed to people suspected of criminal activities and automatically subject those people to criminal penalties." (*Id.*, p. 2 (citing Doc. 152, pp. 2–8)). Director Kelly argues that the fact that (1) "Plaintiffs do not dispute the governing legal standard or offer any contrary reading of the cases Director Kelly cited in support," (2) "[t]hey do not contend the affidavit is directed at the criminally suspect," and (3) "they do not argue an affidavit submitted according to the requirements of section 24-1.9(d) would automatically subject anyone to criminal penalties," makes "[t]hese omissions . . . fatal to their claim." (*Id.*).

Director Kelly argues next that "the endorsement affidavit does not violate the privilege against self-incrimination because no one is compelled to submit one. A person who refuses is not exposed to penalties on that basis alone." (*Id.* (citing Doc. 152, pp. 2–8)). He argues that the emergency rules cited by the *Langley* Plaintiffs (see Doc. 165, p. 7) were superseded by final rules on February 8, 2024 which indicate that criminal penalties exist for "*possession* of an assault weapon without having completed an electronic endorsement affidavit." (Doc. 167, p. 2 (quoting 48 Ill. Reg. 2731, 2881, 2900)); *see also* FAQ 30, PROTECT ILLINOIS COMMUNITIES ACT, REGULATION ON ASSAULT WEAPONS, ILL. STATE POLICE, https://www.isp.illinois.gov/Home/AssaultWeapons   [https://perma.cc/9RVL-ZY9S]

(last visited Sept. 9, 2024). He also argues that because "an Illinois agency cannot use its rulemaking authority to rewrite or expand a statute," that "it is the text of the Criminal Code that matters." (*Id.*, p. 3 (citing *Du-Mont Ventilating Co. v. Department of Revenue*, 73 Ill. 2d 243, 247-48, 383 N.E.2d 197, 200 (1978))). Once again, Director Kelly argues that because (1) "Plaintiffs do not deny that a person who declines to submit an endorsement affidavit has viable alternatives to avoid liability for possession" (2) "[n]or do they take issue with the caselaw holding mere pressure to speak in the hopes of obtaining a benefit does not make the speech compelled," that "these omissions are fatal to their claim." (*Id.*, p. 3).

Regarding Director Kelly's argument "that the endorsement affidavit does not violate the privilege against self-incrimination because the information it contains does not present a real and substantial risk of incrimination," Director Kelly argues that "Plaintiffs do not deny their fears about traffic stops and targeting by the police are, under the caselaw, merely trifling or imaginary and thus insufficient to invoke the privilege." (*Id. (*citing Doc. 152, pp. 11–15)).

Overall, Director Kelly argues that "[t]he problem for plaintiffs is they have not provided any evidence showing they have submitted (or intend to submit) untimely affidavits" and that "plaintiffs do not suggest, much less establish with evidence, that 'they personally have been injured' due to submitting an untimely affidavit." (*Id.*, pp. 3–4 (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975))). He insists that "there is no compulsion here because a person who declines to submit an untimely endorsement affidavit is not 'risking serious punishments for refusing to do

so'; in fact, there is no penalty at all." (*Id.*, pp. 4–5 (citing *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 76 (1965))). He also takes issue with the *Langley* Plaintiffs' statements regarding the rebuttable presumption associated with a registration affidavit (he argues that the *Langley* Plaintiffs have misinterpreted the law); with the *Langley* Plaintiffs' argument that Director Kelly failed to include factual affidavits when facts are not in dispute; and states that the *Langley* Plaintiffs' argument about the Illinois Constitution's three-readings rule is not relevant to the instant claim. (*Id.*, pp. 5–6). Finally, Director Kelly argues that "Plaintiffs make no mention of their new due process theory concerning a purported inability 'to properly actually register many common firearms that are required to be registered.'" (*Id.*, p. 6 (citing Doc. 133, p. 11)).

Before diving into the analysis here, the Court notes that the *Langley* Plaintiffs challenge PICA's registration scheme not under the Second Amendment, but under the Fifth Amendment; in other words, they are not claiming that the registration requirement is unconstitutional under *Bruen* or *Bevis* but, rather, that it offends the Fifth Amendment prohibition against self-incrimination. As this Court has previously noted, the Supreme Court has expressly stated that "[f]acial challenges are disfavored for several reasons." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). First, "[c]laims of facial invalidity often rest on speculation [and,] [a]s a consequence, they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Id.* (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). Second, "[f]acial challenges also run contrary to the

fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id.* (quoting *Ashwander v. TVA*, 297 U.S. 288, 346–347 (1936) (Brandeis, J., concurring)). Additionally, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" *Id.* at 451 (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006)).

Looking at the established caselaw, *United States v. Scherer*, 523 F.2d 371, 375 (7th Cir. 1975) expressly states that "[t]he objectionable feature of the statutes found in *Marchetti* and the related cases of *Grosso v. United States*, 390 U.S. 62 (1968), and *Haynes v. United States*, 390 U.S. 85 (1968), was that the act of registration itself constituted an Ipso facto confession of criminality." (citing *Marchetti*, 390 U.S. 39). In *Scherer*, the Seventh Circuit ruled that "the mere act of recording the sales of firearms or engaging in their transfer does not automatically subject a licensed firearms dealer to criminal penalties" because the individual is not "subject to the incriminating straight-jacket of alternatives created in the cases above." Put simply, as the State Defendants have previously argued, Illinois FOID cardholders have other options besides registration under PICA: they can sell their weapons, house their weapons

out of state, turn them into law enforcement, or destroy them. (*See* Doc. 152, p. 12).

An endorsement affidavit merely allows them to continue to possess them in Illinois.

With the above in mind, PICA does not impose any penalties whatsoever for failure to *submit* an endorsement affidavit *alone*—criminal penalties arise from possession of a prohibited weapon or item *and* failure to submit a registration affidavit.[6] *See* 720 ILL. COMP. STAT. 5/24-1.9(d), 24-1(a)(15), 24-1.9(c); (Doc. 152, p. 12 (citing the same)). As the State Defendants have argued previously and as this Court has discussed, the criminal penalties attach under PICA for "knowing" possession *only*. (*See* Doc. 136, p. 29 (citing Docs. 125, 132)). Both PICA itself and the final administrative rule adopted by the Illinois Legislature reflect this. *See* ILL. ADMIN. CODE tit. 20 § 1230.15(f) ("Possession of a firearm without a FOID Card as required by Section 2 of the Act or possession of an assault weapon without having completed an electronic endorsement affidavit as required by Section 24-1.9 of the Criminal Code of 2012, is a Class A misdemeanor or Class 3 or 4 felony depending upon the circumstances of the violation." (citing 430 ILL. COMP. STAT. 65/14; 720 ILL. COMP. STAT. 5/24-1(a)(15))). This mens rea requirement establishes that the Government must meet their burden to prove the elements of the offense beyond a reasonable doubt. Therefore, any potential confusion regarding the manufacturer or type of weapon could be adjudicated in that fashion. Thus, while *knowing possession* of a

---

[6] Additionally, the ISP has publicly declared that, because the law does not impose penalties for late registration, that they will keep the PICA registry open for the immediate future. *See* Greg Bishop, *With Gun Ban Rules Sustained, Pritzker Says Registry Will Be 'working the way it should'*, Ctr. Square (Jan. 17, 2024), https://www.thecentersquare.com/illinois/article_8d346d9e-b582-11ee-9dde-f32b9f050097.html [https://perma.cc/VK2S-VVS4].

prohibited item without an endorsement affidavit after January 1, 2024 imposes criminal penalties, late submission of an endorsement affidavit or wholesale failure to submit an endorsement affidavit does not by itself.

Moreover, as Director Kelly notes, this Court has previously addressed challenges brought on behalf of hypothetical, unnamed Illinois citizens. (*See* Doc. 152 (citing Doc. 136, p. 21)). The *Langley* Plaintiffs have not demonstrated personal injury sufficient to prove that they have standing to bring this claim—they have not demonstrated than any of them (1) have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted). They have not indicated that any of the named plaintiffs have filed endorsement affidavits or whether any of them have retained possession of weapons proscribed by PICA after January 1, 2024. As the Court has previously noted, it will not entertain arguments made on behalf of hypothetical Illinois citizens; the movants must present concrete evidence, not scattershot theories regarding how PICA and the associated administrative rules might be interpreted. (*See* Doc. 136, p. 19). Should the *Langley* Plaintiffs wish to bring an as-applied challenge to the statute and demonstrate a *concrete injury* in accordance with the established standing doctrine, the Court would consider those arguments. However, what is currently before the Court does not rise to that level.

Additionally, the Court notes that the Seventh Circuit stated in *Bevis* that, with the limited record before them, the PICA registration requirement "is no more

onerous than many found in history." *Bevis* at 1199. In fact, the plaintiff is *Herrera v. Raoul*, No. 23-CV-00532, 2023 WL 3074799 (N.D. Ill. Apr. 25, 2023) brought a similar challenge to that brought by the *Langley* Plaintiffs here. *See Bevis* at 1185–86. While Herrera argued that the registration requirement was "a burden on his Second Amendment rights" and "worrie[d] that it may in the future lead to confiscatory acts on the part of the state," the Seventh Circuit stated that "the registration requirement will be valid as long as it can withstand rational basis review" and that they saw "nothing particularly onerous about it, though as with everything we have said, this is a *preliminary assessment*." *Bevis* at 1202. Moreover, "Herrera ha[d] until the end of 2023 to file the necessary forms, and if he does so, he may retain all of the covered weapons he already owns; the Act will prohibit only his acquisition of additional assault weapons or high-capacity feeding devices." *Id.* The *Langley* Plaintiffs' challenge meets a similar end here.

Regarding their detailed discussion of specific firearms, the *Langley* Plaintiffs appear to be using their second motion for summary judgment to argue a different facet of their facial vagueness argument from their first motion for summary judgment; put differently, their claim that the ISP's registration portal does not permit registration of specific firearms is another vehicle for them to argue that PICA does not appropriately classify and cover the firearms that it should. (*See* Doc. 111). They claim that, because the owner of specific firearms may be confused about how to register them on the FOID card portal or may register them incorrectly, that this will expose individual, unnamed, hypothetical Illinois citizens to criminal liability for

failing to register or incorrectly registered their PICA-proscribed firearms, attachments, and ammunition. (*See* Doc. 133, pp. 11). However, as previously discussed, they have not demonstrated standing to bring this claim, either; the *Langley* Plaintiffs provide examples of weapons they claim cannot be registered properly, yet do not indicate whether or not they possess or seek to register such weapons.

With the limited record before them, both the Seventh Circuit and the Supreme Court determined that a full review on the merits must be conducted; this Court has jurisdiction to fully develop the evidentiary record on the merits. *See Harrel v. Raoul*, No. 23-1010, 2024 WL 3259606 (July 2, 2024) (Mem.); *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. Nov. 3, 2023). At this stage, the *Langley* Plaintiffs have failed to advance any arguments that indicate that the PICA-mandated registration requirement has, in fact, led to unconstitutional self-incrimination in violation of the Fifth Amendment. Late registration does not carry criminal penalties in accordance with PICA and the administrative rules. They do not argue that any specific individual or that any of the named Plaintiffs have been subjected to self-incrimination in violation of the Fifth and Fourteenth Amendments. In fact, they do not dispute any of the material facts in question, as Director Kelly has indicated. Because there are no genuine issues of material fact in dispute, summary judgment is, therefore, appropriate.

At this stage, the Court holds that the endorsement affidavit process provides a means for Illinois FOID cardholders to continue to keep weapons they are no longer

able to purchase in Illinois. The Court will adjudicate the Second Amendment claims in its final review on the merits, during which the registration requirement will be assessed in accordance with the Second Amendment guidance set forth in *Bevis* and in *Bruen*. In summary, the *Langley* Plaintiffs' Fifth Amendment arguments are legally deficient and do not hold water with established caselaw. Because of this, the *Langley* Plaintiffs' Motion must be dismissed and Director Kelly's Cross-Motion must be granted.

## CONCLUSION

For the reasons set forth above, the *Langley* Plaintiffs' Motion for Summary Judgment (Doc. 133) is **DENIED** because they have failed to meet their burden to prove that PICA-mandated registration requirement is unconstitutional under the Fifth and Fourteenth Amendments. Additionally, Director Kelly's Cross Motion for Partial Summary Judgment (Doc. 151) is **GRANTED**. This ruling is confined to the Fifth and Fourteenth Amendment challenge brought by the *Langley* Plaintiffs in Count 1 of their Complaint only.  (*See* Doc. 1).

**IT IS SO ORDERED.**

**DATED: September 10, 2024**


**/s/ Stephen P. McGlynn**
**STEPHEN P. McGLYNN**
**U.S. District Judge**